# EXHIBIT 1

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| HARRIS N.A., and<br>BMO CAPITAL MARKETS FINANCING, INC., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) Case No. 10 L _____<br>) |
| PASQUINELLI HOMEBUILDING LLC, BRUNO A.<br>PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI<br>MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC,<br>PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI<br>HOMEBUILDING TRUST, PASQUINELLI FAMILY<br>FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST,<br>ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989<br>FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H.<br>PASQUINELLI, CHRISTINE PASQUINELLI, BETSY<br>PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI,<br>JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA<br>PASQUINELLI, ANN MARIE PASQUINELLI, JOAN<br>PASQUINELLI, SALLY PASQUINELLI, as Trustee and<br>MARYANN PASQUINELLI, as Trustee | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

### COMPLAINT AT LAW

**NOW COMES** Plaintiff, Harris N.A., together with its affiliate, BMO Capital Markets

Financing, Inc. (*"BMO"*) (BMO and Harris N.A. are jointly referred to herein as *"Harris"*), by

and through its attorneys, and pursuant to the provisions of the Uniform Fraudulent Transfer Act

(740 ILCS 160/1 *et seq*.) complains of the Defendants Pasquinelli Homebuilding LLC, Bruno A.

Pasquinelli, Anthony R. Pasquinelli, Pasquinelli Management, LLC, Pasquinelli Financial LLC,

Pasquinelli Homebuilding, L.P., Pasquinelli Homebuilding Trust, Pasquinelli Family

Foundation, B&A Homes, LLC, ARP 2003 Trust, ARP 1989 Family Trust, BAP 2003 Trust,

BAP 1989 Family Trust, Anthony J. Pasquinelli, Bruno H. Pasquinelli, Christine Pasquinelli,

Betsy Pasquinelli, John Pasquinelli, David Pasquinelli, Joseph Pasquinelli, Ellen Pasquinelli,

Maria Pasquinelli, Ann Marie Pasquinelli, Joan Pasquinelli, Sally Pasquinelli, as Trustee, and Maryann Pasquinelli, as Trustee, and respectfully alleges as follows:

## NATURE OF THE ACTION

1.      Defendants and brothers Bruno A. Pasquinelli and Anthony R. Pasquinelli (jointly referred to herein as *"Bruno and Anthony"*) founded an Illinois-based residential homebuilding enterprise spanning many states which they grew and operated through a complex web of wholly owned affiliates.  Bruno and Anthony currently own and control such entities through several grantor trusts they established over the last decade.  A chart illustrating the Pasquinelli "family" of companies is attached hereto as Exhibit A.  The other individuals named as defendants herein are trustees and beneficiaries of the trusts and/or, on information and belief, are subsequent transferees as discussed more fully below.  Many, if not most, of these individuals are also members of Bruno's and Anthony's family.

2.      Defendant Pasquinelli Homebuilding LLC (*"Homebuilding"*) sits atop the Pasquinelli corporate hierarchy and was utilized as the primary vehicle through which earnings of multiple operating subsidiaries (which sat at the bottom of the Pasquinelli pyramid) were upstreamed to Pasquinelli Homebuilding L.P. (*"Pasquinelli LP"*) and then to Bruno's and Anthony's respective trusts.

3.      To fund certain Pasquinelli residential real estate developments, various Pasquinelli operating subsidiaries borrowed significant sums from plaintiffs, all of which obligations were secured by certain real estate (which was owned by the respective operating subsidiaries) and unconditionally guaranteed by Homebuilding.

4.      As the residential real estate market began to decline, Bruno and Anthony caused Homebuilding to transfer and upstream, while Harris was a creditor, nearly $88 million dollars in

cash and property out of Homebuilding during 2005-2009 (in addition to substantial sums received during prior periods) to their trusts and, on information and belief, further transferred portions of such funds to various children and grandchildren who were employees of Pasquinelli companies and/or beneficiaries of the trusts.

5. Such transfers ultimately resulted in the operating subsidiary borrowers and Homebuilding being unable to satisfy their respective loan and guaranty obligations to their creditors, including Harris, and left them inadequately capitalized and/or insolvent.

6. By late 2007, many of the Pasquinelli operating subsidiaries began to default on their loans to Harris (which were secured at the operating subsidiary level by real estate), and, in the Spring of 2008 and thereafter, Harris began to make demands on Homebuilding's guarantees and subsequently commenced foreclosure proceedings against various real properties held at the operating subsidiary level.

7. Through foreclosures, Harris obtained title to certain real property worth substantially less than the amount Harris was owed. As a result, Harris has approximately $19 million in deficiency judgments to date against various Pasquinelli operating subsidiaries as well as Homebuilding on account of its guarantee of such obligations. In addition, Harris obtained a judgment in excess of $4 million against Homebuilding arising out of the termination of an interest rate swap agreement. Additional proceedings remain outstanding in Texas. Furthermore, there is currently over $5 million in deficiencies against Homebuilding in connection with other developments.

8. To date, Harris is owed in excess of $28 million by Homebuilding by virtue of its guarantees and Harris's judgments and other accrued and unpaid fees and expenses.

9.      In this Complaint, Harris, a creditor of Homebuilding, seeks recovery of in excess of $20 million of the transfers Homebuilding made upstream through Pasquinelli LP to Bruno's and Anthony's trusts and, subsequently, to various Pasquinelli family members under several theories.

10.      First, it has been discovered that approximately $1.8 million in cash and property were transferred by Homebuilding to one or more of the defendants *after* Harris gave notice of default on loans that had been guaranteed by Homebuilding.  Worse, Homebuilding transferred approximately $1.2 million in property after Harris had obtained a *judgment* in excess of $4 million against Homebuilding.  In addition, one or more of the Pasquinelli Defendants knew that Homebuilding was insolvent when certain loan transactions with Harris were executed and funds advanced while, at the same time, transfers upstream from Homebuilding to Bruno and Anthony continued.  Therefore, Harris seeks recovery of certain transfers made during the 4th quarter of 2007 through 2009 under an "actual" fraudulent conveyance theory.

11.      Second, Homebuilding was insolvent, inadequately capitalized or unable to satisfy its debts from potentially as early as the 2006 time period.  As such, Harris seeks recovery of certain transfers Homebuilding made upstream during the 2006-2009 time period under a "constructive" fraudulent conveyance theory, as these transfers were made by Homebuilding for no exchange of reasonably equivalent value.

12.      As directors and officers of Homebuilding, one or more of the Pasquinelli Defendants owed fiduciary duties to Harris as a creditor of Homebuilding once Homebuilding became insolvent.  Such duties were breached when, *inter alia,* such directors and officers caused Homebuilding to make distributions that were known to directly benefit those directors and officers or their family members and failed to properly assess the impact of the housing

market downturn on Homebuilding's ability to remain solvent, adequately capitalized and able to pay its debts as they came due.

13.     The Pasquinelli Defendants engaged in further breaches of fiduciary duty and deepened the insolvency of Homebuilding and its respective operating subsidiaries when the Pasquinelli Defendants (i) failed to cease work by contractors to minimize the attachment of mechanic's liens and (ii) failed to cause loan funds advanced to pay contractors, thereby exposing Harris' collateral to mechanic's liens. Specifically, the operating subsidiaries incurred further liabilities to mechanics lien claimants after they became insolvent and/or informed Harris that they were walking away from these developments. The effect of the Pasquinelli Defendants' conduct was not only to force Harris into litigation with these lien claimants and force Harris to incur significant additional expense to maintain these partially completed projects, but also to leave exposed and partially completed houses in these communities that became havens for squatters and dangers to children and others in the community. As a result, despite the significant expense incurred, many of these houses had to be torn down for safety reasons. Further, despite these significant mechanics lien claims, Harris has been unable to adequately trace the draw requests advanced under Harris' construction loans to the actual payments to contractors on these projects, calling into question whether the draw requests advanced were actually used to fund developments.

14.     In addition, on information and belief, Bruno and Anthony reaped (or stand to reap) the benefits of potential tax refunds on account of carrying back net operating losses, or NOLs, incurred by operating subsidiaries that are passed through to Bruno and Anthony, which could include refunds of taxes that were originally paid from distributions and transfers from Homebuilding to Pasquinelli LP and then to the trusts. Accordingly, the defendants have been

(or will be) unjustly enriched and should be ordered, out of equity and fairness, to (i) utilize NOLs attributable to Homebuilding or any of its subsidiaries in a manner that would maximize the amount of tax refunds received or able to be received (or related benefits) and (ii) turn over any such refunds received to Harris for application against Homebuilding's outstanding and unpaid debt to Harris.

15.     Finally, given the use and exploitation of the various Pasquinelli entities described herein to avert creditors' claims, the corporate veils of such entities should be pierced, resulting in Bruno and Anthony being personally liable to Harris for the debts and obligations of Homebuilding and its various operating subsidiaries.

16.     In sum, the reason for these staggering distributions was simple.  Homebuilding had guaranteed tens of millions of dollars of indebtedness to Harris and possibly hundreds of millions of additional debt to other banks.  By rendering Homebuilding an insolvent, empty box, Bruno and Anthony (as well as their family members) were attempting to avoid liability on Homebuilding's guarantees and appropriate money which should have been reserved to satisfy Homebuilding's guaranty obligations (as well as the various operating subsidiaries' obligations) to Harris.  In short, this conduct rendered the Homebuilding guarantees essentially worthless to Harris.

17.     Indeed, if Bruno and Anthony had reserved less than one-third of the nearly $87 million they caused Homebuilding to transfer to themselves and members of their immediate family during 2005-2009, Homebuilding would have been able to satisfy its obligations to Harris in full.

## THE PARTIES

18.     Plaintiff Harris N.A. is a national banking association with its principal place of business at 111 West Monroe Street, Chicago, Illinois. Harris N.A. is the successor by merger with Harris Trust and Saving Bank. Plaintiff BMO Capital Markets Financing, Inc. is an Illinois corporation with its principal place of business at 111 West Monroe Street, Chicago, Illinois.

19.     Defendant Homebuilding is a limited liability company formed under the laws of the State of Illinois with its principal place of business at 6880 North Frontage Road, Suite 100, Burr Ridge, Illinois. Upon information and belief, Pasquinelli Homebuilding, LLC's offices have been transferred to 535B Plainfield Road, Willowbrook, Illinois. Homebuilding is wholly owned by Pasquinelli LP.

20.     On information and belief, Defendant Bruno A. Pasquinelli is an individual domiciled in the State of Illinois.

21.     On information and belief, Defendant Anthony R. Pasquinelli is an individual domiciled in the State of Illinois.

22.     Defendant Pasquinelli Management, LLC is a limited liability company formed under the laws of the State of Illinois with its principal place of business at 6880 North Frontage Road, Suite 100, Burr Ridge, Illinois. Upon information and belief, Pasquinelli Management, LLC's offices have been transferred to 535B Plainfield Road, Willowbrook, Illinois.

23.     Defendant Pasquinelli Financial LLC is a limited liability company formed under the laws of the State of Illinois with its principal place of business at 6880 North Frontage Road, Suite 100, Burr Ridge, Illinois. Upon information and belief, Pasquinelli Financial LLC's offices have been transferred to 535B Plainfield Road, Willowbrook, Illinois.

24.     Defendant Pasquinelli L.P. is a limited partnership formed under the laws of the State of Illinois with its principal place of business at 6880 North Frontage Road, Suite 100, Burr Ridge, Illinois.  Upon information and belief, Pasquinelli Homebuilding, L.P.'s offices have been transferred to 535B Plainfield Road, Willowbrook, Illinois.  Pasquinelli LP owns 100% of Homebuilding.

25.     On information and belief, Defendant Pasquinelli Homebuilding Trust is a trust formed under the laws of the State of Illinois.  On information and belief, Defendants Bruno H. Pasquinelli, Christine Pasquinelli, Betsy Pasquinelli, John Pasquinelli, Anthony J. Pasquinelli, David Pasquinelli, Joseph Pasquinelli, Ellen Pasquinelli, Maria Pasquinelli, Ann Marie Pasquinelli and Joan Pasquinelli are individuals domiciled in the State of Illinois and are the beneficiaries of the Pasquinelli Homebuilding Trust.

26.     On information and belief, Defendant BAP 2003 Trust is a trust formed under the laws of the State of Illinois.

27.     On information and belief, Defendants Bruno H. Pasquinelli, Christine Pasquinelli, Elizabeth "Betsy" Pasquinelli and John Pasquinelli are individuals domiciled in the State of Illinois and are the beneficiaries of the BAP 2003 Trust.

28.     On information and belief, Defendant ARP 2003 Trust is a trust formed under the laws of the State of Illinois.

29.     On information and belief, Defendants Anthony J. Pasquinelli, David Pasquinelli, Joseph Pasquinelli, Ellen Pasquinelli, Maria Pasquinelli, Ann Marie Pasquinelli and Joan Pasquinelli are individuals domiciled in the State of Illinois and are trustees and beneficiaries of the ARP 2003 Trust.

30.     On information and belief, Defendant BAP 1989 Family Trust is a trust formed under the laws of the State of Illinois.

31.     On information and belief, Defendants Bruno H. Pasquinelli, Christine Pasquinelli, Betsy Pasquinelli and John Pasquinelli are individuals domiciled in the State of Illinois and are trustees and beneficiaries of the BAP 1989 Family Trust. On information and belief, defendant Sally Pasquinelli is an individual domiciled in the State of Illinois and is a trustee of the BAP 1989 Family Trust.

32.     On information and belief, Defendant ARP 1989 Family Trust is a trust formed under the laws of the State of Illinois.

33.     On information and belief, Defendants Anthony J. Pasquinelli, David Pasquinelli, Joseph Pasquinelli, Ellen Pasquinelli, Maria Pasquinelli, Ann Marie Pasquinelli and Joan Pasquinelli are trustees and beneficiaries of the ARP 1989 Family Trust. On information and belief, defendant Maryann Pasquinelli is an individual domiciled in the State of Illinois and is also a trustee of the ARP 1989 Family Trust.

34.     Anthony J. Pasquinelli, David Pasquinelli, Joseph Pasquinelli, Ellen Pasquinelli, Maria Pasquinelli, Ann Marie Pasquinelli, Joan Pasquinelli, Sally Pasquinelli, not individually but as Trustee, Bruno H. Pasquinelli, Christine Pasquinelli, Betsy Pasquinelli, John Pasquinelli and Maryann Pasquinelli, not individually but as Trustee, are referred to collectively herein as the *"Related Party Transferees."*

35.     Defendant Pasquinelli Family Foundation is an Illinois not-for-profit corporation located at 207 East Ohio Street, Box 355, Chicago, Illinois 60611.

36.     The Related Party Transferees, together with Pasquinelli Homebuilding LLC, Bruno A. Pasquinelli, Anthony R. Pasquinelli, the Pasquinelli Family Foundation, the ARP 1989

Family Trust, the BAP 1989 Family Trust, the ARP 2003 Trust, the BAP 2003 Trust, the Pasquinelli Homebuilding Trust, Pasquinelli Financial LLC, Pasquinelli Management, LLC, B&A Homes, LLC and Pasquinelli Homebuilding, L.P., are referred to collectively herein as the *"Pasquinelli Defendants."*

## JURISDICTION AND VENUE

37.    This Court had personal jurisdiction over the defendants under 735 ILCS 5/2-209.

38.    Venue is proper in that the occurrences giving rise to the actions set forth below took place in Cook County, Illinois.  Defendants Pasquinelli Family Foundation, Anthony R. Pasquinelli, Joan Pasquinelli, Bruno A. Pasquinelli, David C. Pasquinelli, Elizabeth Pasquinelli, Joan Pasquinelli, Joseph Pasquinelli, and Maria Pasquinelli, are also residents of Cook County, Illinois.

## FACTUAL BACKGROUND

### A.    THE CORPORATE STRUCTURE

39.    Over 35 years ago, Bruno and Anthony Pasquinelli formed a residential homebuilding company.

40.    By 2006, the enterprise had grown to achieve annual revenues of over $580 million, operated through a complex web of various family-owned subsidiaries, and had operations in at least seven states, including Illinois, Indiana, Georgia, North Carolina, South Carolina, Ohio and Texas.

41.    In or around 2003-2004, Bruno and Anthony undertook an extensive reorganization of their business interests purportedly to, *inter alia*, minimize estate tax burdens on their children and future generations.

42.     Such reorganization contemplated various grantor trusts established by Bruno and Anthony to sit atop a comprehensive pyramid structure of mainly wholly owned limited liability companies consisting of holding companies at the top (*i.e.,* Pasquinelli LP and Homebuilding), regional or state-level holding companies at the middle, and community or subdivision-level operating subsidiaries at the bottom, the latter of which (referred to as *"Operating Subsidiaries"*) being the entities that borrowed from Harris and developed and sold homes under names that included "Portrait Homes."

43.     The reorganized ownership structure is represented by the chart attached and incorporated herein as Exhibit A.

44.     At all relevant times, one or more of the individual Pasquinelli Defendants served as a director and/or officer of Homebuilding.

45.     Immediately beneath Bruno's and Anthony's trusts in the ownership chain is Pasquinelli LP, a limited partnership which, in turn, owns Homebuilding.

46.     As part of the estate plan and reorganization, Pasquinelli LP assumed certain obligations of defendant Pasquinelli Management LLC under various compensation agreements it had with Bruno and Anthony, thereby causing Pasquinelli LP to be obligated to make certain payments to Bruno and Anthony.  As will be discussed below, as Bruno and Anthony approached their mid to late 70s, they were paid tens of millions of dollars under these agreements.

47.     Homebuilding was neither a party to any such compensation agreements nor obligated under such agreements.

**B.**     **THE TRANSFERS AT ISSUE**

48.     As Homebuilding was treated as a pass-through entity for tax purposes, Homebuilding's operating agreement required it to make certain distributions of earnings attributable to the Operating Subsidiaries pursuant to a priority distribution waterfall to Pasquinelli LP, including amounts necessary to fund Bruno's and Anthony's personal income tax liability, on account of pass-through taxable earnings of the Operating Subsidiaries.

49.     Homebuilding was further required to make distributions of earnings that corresponded to Pasquinelli LP's obligations to Bruno and Anthony under the compensation agreements.

50.     Defendant Pasquinelli Family Foundation was also to receive certain priority distributions from Homebuilding.

51.     Homebuilding was further permitted to make additional "optional" distributions of earnings so that Bruno and Anthony or their trusts and beneficiaries (*i.e.*, one or more of the Related Party Transferees) could receive cash payments.

52.     Between 2005 and 2009, Harris and certain Operating Subsidiaries entered into various construction loan agreements (detailed in Section I below) to, *inter alia*, finance the construction of residential real estate developments in several states.

53.     Each of these Harris loans was unconditionally guaranteed by Homebuilding.

54.     During 2005-2009, and while Harris was a creditor of Homebuilding and the various Operating Subsidiary borrowers, Homebuilding disclosed that over $87 million in cash and property was transferred from Homebuilding to Pasquinelli L.P. and subsequently to the Pasquinelli family trusts and one or more of the Related Party Transferees as set forth on the following chart:

| Homebuilding Transfers to Pasquinelli LP 2005-2009 | | | | | |
|---|---|---|---|---|---|
| | 2005 | 2006 | 2007 | 2008 | 2009 |
| January | $5,675,877.00 | $8,496,360.00 | $2,134,800.00 | $(4.20) | |
| February | $1,861,048.00 | $1,120,000.00 | $3,398,890.94 | | |
| March | $1,639,000.00 | $2,158,760.00 | $1,517,174.00 | | |
| April | $3,498,984.00 | $4,801,099.00 | $3,225,033.00 | | |
| May | $604,000.00 | $855,000.00 | $967,000.00 | $431,000.00 | |
| June | $4,009,447.00 | $5,105,363.00 | $1,448,757.00 | $16,400.00 | $1,200,674.67[1] |
| July | $604,000.00 | $847,734.84 | $966,000.00 | $508,000.00 | |
| August | $619,000.00 | $855,000.00 | $965,832.35 | | |
| September | $8,444,589.00 | $8,231,922.00 | $2,661,719.00 | | |
| October | $604,000.00 | $1,376,888.00 | $966,000.00 | | |
| November | $604,000.00 | $918,457.68 | $966,000.00 | $100,000.00 | |
| December | $604,000.00 | $825,000.00 | $966,504.00 | | |
| TOTAL | $28,767,945.00 | $35,591,584.52 | $20,183,710.29 | $1,055,395.80 | $1,200,674.67 |
| GRAND TOTAL: $86,799,310.28 | | | | | |

55.    During 2006-2009, approximately $58 million was transferred out of Homebuilding to Pasquinelli LP, to Bruno's and Anthony's trusts, and to one or more of the Related Party Transferees.

56.    During 2006 and into 2007, Bruno and Anthony, now in their mid to late 70s, were, under their compensation agreements, being paid by Pasquinelli LP an aggregate amount of approximately $604,000 *per month*, and the approximate $12 million they received in 2007 caused Homebuilding, after it transferred such amounts to Pasquinelli LP, to go from having net income of $6 million prior to making the transfers to Pasquinelli LP to sustaining a loss of $6.8 million.

57.    Moreover, Bruno and Anthony, at their late ages, were purportedly rendering services to the entire Pasquinelli "family" of companies, but were being paid out of the transfers that Homebuilding made to Pasquinelli LP.

---

[1]    This amount represents the book value of three properties and a mortgage that were transferred.

58.     As such, any value, if any, received by Pasquinelli LP for the transfers it made to fund its obligations under the compensation agreements was, at best, inconsequential.

59.     Rather, it was likely that other entities within the Pasquinelli family of companies received most of the purported services of Bruno and Anthony under the compensation agreements.

60.     All told, from 2006-2009, Bruno and Anthony received approximately $23 million pursuant to their compensation agreements. Such payments were made from transfers from Homebuilding to Pasquinelli LP.

61.     Accordingly, Bruno and Anthony did not provide services to Homebuilding that in any way justified the exorbitant amounts paid to them.[2] Rather, these agreements were simply another way to extract money out of the Operating Subsidiaries and Homebuilding.

62.     Homebuilding, especially in light of the fact that it had guaranteed millions of dollars of loans, did not receive any reasonably equivalent value in exchange for the distributions it made to Pasquinelli LP.

63.     Likewise, Pasquinelli LP did not receive any reasonably equivalent value in exchange for the transfers it made (i) to Bruno and Anthony and (ii) to the family trusts.

64.     Additionally, the family trusts did not receive any reasonably equivalent value in exchange for the transfers it made (i) to Bruno and Anthony and (ii) to any other of the Related Party Transferees.

---

[2]     Even if Bruno and Anthony were providing services to the company, as discussed below, such "services" most likely included implementing a business strategy that ultimately ran the company into the ground, as the Pasquinellis in 2008 had to retain a third-party consultant and financial advisor, rather than Bruno and Anthony, to attempt to assist the company with restructuring its massive debt load. This restructuring was ultimately unsuccessful because the Pasquinelli Defendants failed and refused to provide any support for their enterprise.

65.     Bruno and Anthony, the family trusts and the Related Party Transferees either knew or should have known that the transfers in question here, when made, caused Homebuilding to be insolvent (or were made when Homebuilding was insolvent), inadequately capitalized or unable to satisfy its debts as they became due.

## C.     THE INSOLVENCY OF THE PASQUINELLI ENTERPRISE

66.     Beginning as early as the 2006-2007 time period, one or more of the defendants foresaw the downturn in the housing market.

67.     Indeed, given the over 35 years of experience of Bruno and Anthony in the residential homebuilding business, they, and one or more of the other defendants, foresaw or had to foresee that the dramatic decline in the value of the land held by the Pasquinelli enterprise would cause it to be in default of its obligations to Harris.

68.     As a result and while the above-described transfers were taken from Homebuilding, Homebuilding and the Operating Subsidiary borrowers during 2006-2007 were or became insolvent, inadequately capitalized and/or unable to pay their debts as they matured.

69.     For example, Homebuilding's vice-president, Mr. John Giampoli, recently testified in a deposition that in 2007 he saw "signals that the housing industry was slowing." He further testified that it was clear in September of 2007 that "we were going to be in trouble."

70.     Mr. Giampoli also testified that throughout 2007 and 2008, Homebuilding was aware that it was sliding towards default and stated, "I mean, the stock market was in turmoil. The whole economy was in turmoil. The election was happening. There was nothing but negative news. **And you know, it didn't take a brain scientist to figure out that housing was going to be greatly impacted by this.** So there was a major concern what's happening to the economy here. So we were on guard at that point in time." (Emphasis added.)

- 15 -

71.     Mr. Giampoli further testified that he received a call in November 2007 from a representative of Key Bank that if a required pay down was not made by November 30 of that year, a Pasquinelli entity would be in default of a loan in Ohio associated with a development called Villas of West Albany.

72.     The required pay down on the Ohio facility was only approximately $250,000 but the Pasquinelli entities were unable to satisfy such obligation and defaulted on it.

73.     Mr. Giampoli further testified that write downs in the value of land held by the Operating Subsidiaries caused them to be out of compliance with certain covenants in the Harris credit agreements as of December 31, 2007, thereby triggering defaults by such Operating Subsidiaries and Homebuilding.

74.     Armed with knowledge that the Pasquinelli enterprise was a sinking ship, Bruno and Anthony and one or more of the Related Party Transferees, some of whom were directors and officers of Homebuilding, chose to instead cause Homebuilding to distribute over $20 million in 2007 and transfer those funds to Pasquinelli L.P., which, in turn, transferred them to the Pasquinelli family trusts mentioned herein.

75.     Even as the Pasquinelli enterprise sank deeper into insolvency, Homebuilding continued to make distributions totaling in excess of $1 million in cash in 2008 and an estimated $300,000 in cash and property with a book value of approximately $1.2 million in 2009.

76.     In late May or early June 2008, the Pasquinellis retained the restructuring firm of Alvarez & Marsal to consult on a debt restructuring.

77.     In early June of 2008, many of the Operating Subsidiaries stopped making interest payments on certain of their loans.

78. In July of 2008, Homebuilding and/or one of the other Pasquinelli Defendants informed lenders to the Operating Subsidiaries that they would cease making payments on its obligations under its various loan facilities.

79. Despite this, the Operating Subsidiaries continued to receive and retain revenues generated by the projects, including but not limited to Homeowners Association fees.

80. On September 18, 2008, Harris received a letter from Pasquinelli-Portrait Homes (an entity wholly-owned by Homebuilding and its wholly-owned subsidiaries) notifying it that unless Harris entered into a forbearance agreement and committed to advancing additional funds, the Pasquinelli enterprise would be unable to continue to operate and would be forced to shut down as of September 30, 2008.

81. One or more of the Pasquinelli Defendants also attempted to extract further payments from Harris in exchange for continued operations of the Operating Subsidiaries. If Harris did not agree to make "protection" payments for its collateral, one or more of the Pasquinelli Defendants threatened to cause the Operating Subsidiary to abandon the development, leaving partially built homes exposed to the elements, mechanics liens and other legal and logistical problems for Harris to resolve on its own. These threats were carried out in many cases because Harris refused to give in to such demands.

82. Despite these events, distributions did not cease. In fact, over $2.5 million of cash and other property were distributed after May of 2008 after the engagement of Alvarez & Marsal, and approximately $2 million of cash and property was distributed after one or more of the Pasquinelli Defendants informed its lenders that it would cease making loan payments in July 2008.

83.     Subsequently, over 300 lawsuits were filed against Homebuilding and its subsidiaries arising out of these defaults and related matters.

84.     Yet, Homebuilding and its subsidiaries chose to simply walk away from most of these Harris-funded developments, pocketing millions of dollars and requiring Harris to expend significant sums for tax payments, insurance, weed control, HOA costs, building remediation, utility connection and other costs.

**D.     PROPERTY TRANSFERS MADE AFTER DEFAULTS ON HARRIS LOANS AND AFTER HARRIS OBTAINS A JUDGMENT AGAINST HOMEBUILDING**

85.     As the Pasquinelli enterprise ran out of cash and was losing many of its encumbered real estate assets to foreclosure, Bruno and Anthony transferred certain unencumbered real estate assets (described below) from Homebuilding to their trusts.

86.     By December 31, 2007, various Operating Subsidiaries and Homebuilding were in default on their obligations to Harris.

87.     On May 1, 2009, a judgment was rendered in the Circuit Court of Cook County, Illinois, in favor of Harris N.A. in and against Homebuilding for the sum of $4,034,491.90, plus further accruing interest, costs and fees arising out of Homebuilding's obligations under an interest rate swap agreement (the *"Swap Judgment"*).

88.     In addition, Harris had commenced multiple foreclosure proceedings against Operating Subsidiary borrowers and sought deficiency judgments against such entities as well as Homebuilding due to its guarantees of such obligations.

89.     After the occurrence of these events, including the entry of the Swap Judgment, properties located in Pasquinelli-related developments known as Beresford Commons, Creekside, and Horse Pen Creek were transferred from Homebuilding to the trusts, together with

a mortgage on real property referred to as the Shulz property (collectively, the *"Transferred Properties"*).

90.     The Transferred Properties purportedly had a book value of approximately $1.2 million.

## E.     THE PASQUINELLIS INTENTIONALLY KEPT THE OPERATING SUBSIDIARIES INADEQUATELY CAPITALIZED

91.     Bruno and Anthony structured the Pasquinelli enterprise so that the Operating Subsidiaries would never have sufficient capital to meet their obligations or, at a minimum, to facilitate their ability to frustrate creditor claims.

92.     Bruno and Anthony utilized defendant Pasquinelli Financial LLC (which is owned by Homebuilding) to hold the liquid assets of the Pasquinelli enterprise out of the reach of creditors of the Operating Subsidiaries and Homebuilding.

93.     Mr. Giampoli testified that "our strategy was always to keep the cash - keep the [Operating Subsidiaries] with very little cash. And so on a monthly - quarterly basis, cash would be distributed up to the parent [*i.e.*, Homebuilding], and then they would contribute it back to Pasquinelli Financial, who would then make loans to all the [Operating Subsidiaries] and provide any cash needs that they would have."

94.     Mr. Giampoli further testified that Pasquinelli Financial LLC functioned as a sort of "internal bank" for the Pasquinelli enterprise, and Bruno and Anthony caused most of the enterprise's liquid assets to be contributed to and distributed from this entity.

95.     This arrangement was never documented in a written agreement among the various Pasquinelli entities.

96.     Rather, all such transfers were made at the Pasquinellis' discretion, often on nothing more than an "oral agreement." On information and belief, cash from the Harris

Operating Subsidiary borrowers was most likely comingled at Pasquinelli Financial LLC with a hodge-podge of transfers from other affiliates.

97.     Through this practice (and also given that Homebuilding had no material assets outside of its ownership interests in its subsidiaries), the borrowers on Harris' loans and Homebuilding, as guarantor, would be rendered perpetually insolvent, inadequately capitalized, and/or unable to pay their debts as they matured in the event the real estate collateral securing such loans was insufficient. To the extent that an Operating Subsidiary defaulted on its loan, Pasquinelli Financial LLC could simply and conveniently decline to advance any "loans" to the Operating Subsidiary in need, and hence, place a creditor, such as Harris, in the position of essentially holding a non-recourse loan from the Operating Subsidiary with a worthless guaranty from Homebuilding – which was clearly not what Harris had bargained for.

98.     Indeed, the Operating Subsidiaries to which Harris had extended credit would have been able to meet their obligations absent the systematic transfers of cash into Pasquinelli Financial LLC because they (or Homebuilding) would have retained sufficient liquidity to meet their obligations as they came due and would otherwise have had sufficient assets to remain solvent.

99.     The Operating Subsidiaries would have been able to meet their obligations absent these systemic transfers in part because the loan documents provided that the Operating Subsidiaries would retain a percentage of the proceeds of each home sale. However, instead of retaining these proceeds in the Operating Subsidiaries to fund their operational needs and complete the project, the Pasquinelli Defendants instead transferred these proceeds to Pasquinelli Financial LLC in an attempt to prevent creditors from reaching these funds.

100. By virtue of this practice, it is likely that the Operating Subsidiaries that borrowed money from Harris and Homebuilding were insolvent or inadequately capitalized much earlier than the fall of 2007 and were dependent on "hope" loans from Pasquinelli Financial LLC to operate if they experienced a liquidity shortage.

101. Despite the defaults on the Harris indebtedness, none of the monies that were transferred out of the Operating Subsidiary borrowers into Pasquinelli Financial LLC appear to have ever been returned to such Operating Subsidiaries or Homebuilding to satisfy their indebtedness to Harris.

102. To the extent any funds obtained by Pasquinelli Financial LLC directly or indirectly from any Harris Operating Subsidiary borrowers were, in turn, transferred to Homebuilding and then up to Pasquinelli LP and subsequently the trusts, then such transfers were made in violation of law.

**F.    ANOTHER ACT OF DODGING CREDITORS: PASQUINELLI MANAGEMENT, LLC**

103. Bruno and Anthony further utilized their corporate structure during 2008 to hinder creditors, as evidenced by defendant Pasquinelli Management, LLC, an affiliate wholly-owned by Homebuilding which was the operating entity used to manage certain aspects of the Pasquinelli empire.

104. Out of a perceived "fear" that creditors could exercise remedies against Pasquinelli Management LLC since it was obtaining management fees under certain forbearance agreements with other lenders, one or more of the Pasquinelli Defendants caused Pasquinelli Management LLC to be transferred outside of the Homebuilding family of companies (and their creditors) on or about November 17, 2008.

105.    Specifically, Pasquinelli Management LLC was transferred to a limited liability company informally referred to as "Paradigm."

106.    Not surprisingly, Paradigm turned out to be owned by Bruno and Anthony, with each owning fifty percent of the company.

107.    Paradigm did not pay any cash for Pasquinelli Management LLC but apparently only executed a note on which no payments were ever made.

108.    Mr. Giampoli confirmed that Pasquinelli Management LLC was transferred to essentially frustrate creditors. For example, he testified that the transfer:

> [W]as to--in that we had these obligations under the forbearance agreements and with the wave of lawsuits, litigation, foreclosures, you know, lots -- quite a few banks, the discussions were not going very well.  It was thought that -- we felt that there could be a problem if [Pasquinelli] Management [LLC] was tied up in this whole thing that we wouldn't be able to operate. So we wanted to be able to operate the business potentially independent of any issues that might be raised on the Pasquinelli group of companies.

109.    Although the Pasquinellis subsequently transferred Pasquinelli Management LLC back into the Homebuilding family, it likely did so after there was little if any value (in the form of future management fees) left.

110.    As a result, Homebuilding most likely did not receive reasonably equivalent value for the transfer of its subsidiary Pasquinelli Management LLC to Paradigm.

111.    As recently as October 2008, Pasquinelli Management LLC had approximately $4 million on deposit. By late 2009, it had only approximately $50,000 in its bank accounts.

112.    As described below, much of this and earlier diminution in the collateral was due to payments, including but not limited to, Bruno's and Anthony's children and grandchildren,

none of whom provided services of reasonably equivalent value to Homebuilding or any of the Operating Subsidiaries.

## G. BENEFITS TO BRUNO'S AND ANTHONY'S CHILDREN AND GRANDCHILDREN

113. Like much of the Pasquinelli enterprise, Mr. Giampoli testified that Pasquinelli Management LLC was a family affair. Despite being insolvent or on the brink of insolvency and subsequently in default of its obligations to Harris, Bruno and Anthony kept numerous members of their family on the payroll, including Michael Pasquinelli, a brother, Maria Pasquinelli, a daughter, Betsy Pasquinelli, a daughter, Anthony J. Pasquinelli, a son, and even Kevin Pasquinelli, Ann Marie Pasquinelli and Johnny Pasquinelli, who are grandchildren.

114. These individuals continued to draw substantial salaries until very recently from Pasquinelli Management LLC, which, during the fall of 2009, totaled approximately $50,000 per month, despite the insolvency of the Pasquinelli enterprise.

115. According to Giampoli, the $50,000 monthly salaries paid to the children and grandchildren of Bruno and Anthony at that time were "very reduced salaries" relative to past sums. Therefore, distributions prior to November 2009 were likely significantly higher.

116. To the extent any such salaries were funded from transfers made by Homebuilding (or such individuals were subsequent transferees of such transfers), Homebuilding and any subsequent transferor did not receive any equivalent value in exchange for such transfers.

## H. BRUNO AND ANTHONY STAND TO BENEFIT FROM HOMEBUILDING'S NOLS

117. Homebuilding, being a "pass through" entity for income tax purposes, did not pay federal income tax.

118. Bruno and Anthony paid taxes on such pass-through earnings from transfers that Homebuilding made to Pasquinelli LP and then to one or more of the trusts.

119.    As a result, the net operating losses, or NOLs, generated by the Operating Subsidiaries for the years 2007-2009 and beyond may be passed through Homebuilding and ultimately to Bruno and Anthony, who, in turn, may be able to carry-back such NOLs and potentially obtain income tax refunds.

120.    As a result, Bruno and Anthony, and, on information and belief, one or more of the other Pasquinelli Defendants, potentially reaped (or stand to reap) the benefits of NOL carrybacks, which could include refunds of taxes that were originally paid from distributions and transfers from Homebuilding to Pasquinelli LP and then to the trusts.

121.    It would be unfair and inequitable to permit the Pasquinelli Defendants' to keep these benefits (or any future benefits) when Homebuilding's creditors, such as Harris, have been left substantially unpaid and injured by increasing losses due to Homebuilding's post-default conduct.

122.    Accordingly, one or more of the defendants have been (or stand to be) unjustly enriched and, as fiduciaries to insolvent Homebuilding and the Operating Subsidiary borrowers, should be ordered to utilize NOLs in a manner to maximize the amount of cash tax refunds receivable with such amount being further ordered to be turned over to Harris to be applied against Homebuilding's outstanding and unpaid debt to Harris.

I.      A DETAILED DESCRIPTION OF THE RELEVANT HARRIS INDEBTEDNESS

123.    As described below, Harris provided construction financing for the following ten of Homebuilding's developments, each of which subsequently went into default.  Currently, Harris has obtained deficiency judgments in the collective amount of approximately $19 million to date (not including the Swap Judgment) against Homebuilding and the Operating Subsidiary borrowers on account of such indebtedness.

## 1. BROOK MEADOW LLC

124.    On January 30, 2006, Harris and an affiliate of Pasquinelli, Portrait Homes –
Brook Meadow LLC (*"Brook Meadow"*), entered into that certain Construction Loan Agreement
(the *"Brook Meadow Construction Loan Agreement"*) to, *inter alia*, finance the construction of
certain residential real property located in Berkeley County, West Virginia.

125.    Also on January 30, 2006, Homebuilding executed that certain Brook Meadow
Guaranty in which it guaranteed, *inter alia*, any and all indebtedness, obligations and liabilities
of every kind and nature of Brook Meadow to Harris.

126.    Additionally, on January 30, 2006, Homebuilding executed that certain
Completion Guaranty in which it, *inter alia*, guaranteed the satisfactory completion of the project
and the payment by Brook Meadow of all amounts necessary to balance the budget of the
project.

127.    Subsequently, Brook Meadow defaulted on its obligations to Harris and on
June 23, 2008, Harris sent that certain Notice of Default/Reservation of Rights which notified
Brook Meadow that it was in default under Section 10.1(e) of the Brook Meadow Construction
Loan Agreement for failing to pay principal and interest when due thereon.

128.    By July 15, 2008, additional defaults had occurred and Harris sent that certain
Notice of Default/Reservation of Rights which notified Brook Meadow that it was in default
under Section 10.1(a) for failure to pay interest when due, and also notified Brook Meadow and
Homebuilding that it was in default for failure to deliver financial statements and compliance
certificates required by Section 12A of the Brook Meadow Guaranty and the guarantor's
repudiation of its obligations under the Brook Meadow Guaranty.

129.    On July 31, 2008, Harris sent another Notice of Default/Reservation of Rights in
which it notified Brook Meadow and Homebuilding that, in addition to the previously noticed
defaults, further defaults had occurred based on Brook Meadow's failure to pay principal and

interest when due when the loan matured on July 30, 2008. The July 31, 2008 Notice of Default/Reservation of Rights further demanded payment of principal and interest, as well as all other obligations due and owing under the Brook Meadow Construction Loan Agreement.

130.    On August 29, 2008, Harris sent to Brook Meadow that certain Notice of Interest Rate Increase and Commitment Termination/Reservation of Rights, in which it notified Brook Meadow that because of the failure to make payments within 7 days after receipt of the previous notices, a "Termination Date Default" had occurred.

131.    On November 10, 2008, Harris sent to Homebuilding that certain Demand to Guarantor renewing its prior demand under the Brook Meadow Guaranty and the Brook Meadow Completion Guaranty.

132.    Despite demand, Brook Meadow has failed to pay principal and interest when due on its indebtedness to Harris. By virtue of these defaults, Brook Meadow is indebted to Harris in the amount of $5,177,673 as of May 4, 2010, plus further accruing interest of $870.11 per day.

133.    Also, despite demand, Homebuilding has failed to pay principal, interest and expenses when due on the Brook Meadow Guaranty. By virtue of Brook Meadow's defaults, Homebuilding is indebted to Harris in the amount of $5,177,673 as of May 4, 2010, plus further accruing interest of $870.11 per day.

134.    Further, despite demand, Homebuilding has failed to satisfy its obligations under the Brook Meadow Completion Guaranty.

### 2. CITY SIDE TOWNHOMES, L.P.

135.    On February 15, 2008, BMO Capital Markets Financing, Inc., an affiliate of Harris (*"BMO"*), and an affiliate of Pasquinelli, Portrait Homes – City Side Townhomes LP (*"City Side"*) entered into that certain Construction Loan Agreement (the *"City Side*

*Construction Loan Agreement"*) to, *inter alia*, finance the construction of certain residential real property located in Williamson County, Texas.

136.   Also on February 15, 2008, Homebuilding executed that certain City Side Guaranty in which it guaranteed, *inter alia*, any and all indebtedness, obligations and liabilities of every kind and nature of City Side to BMO.

137.   Additionally, on February 15, 2008, Homebuilding executed that certain City Side Completion Guaranty in which it, *inter alia*, guaranteed the satisfactory completion of the project and the payment by City Side of all amounts necessary to balance the budget of the project.

138.   Subsequently, City Side defaulted on its obligations to BMO and on June 23, 2008, BMO sent that certain Notice of Default/Reservation of Rights which notified City Side that it was in default under Section 10.1(e) of the City Side Construction Loan Agreement for failing to pay principal and interest when due thereon.

139.   By July 15, 2008, additional defaults had occurred and BMO sent that certain Notice of Default/Reservation of Rights which notified City Side that it was in default under Section 10.1(a) for failure to pay interest when due, and also notified City Side and Homebuilding that it was in default for failure to deliver financial statements and compliance certificates required by Section 12A of the City Side Guaranty and the guarantor's repudiation of its obligations under the City Side Guaranty.

140.   On August 29, 2008, BMO sent to City Side that certain Notice of Acceleration, Demand, Interest Rate Increase and Commitment Termination/Reservation of Rights, in which it notified City Side that because of the failure to make interest payments when due within 7 days of receipt of the previous notices and City Side's failure to cure defaults in the performance of other provisions of the Loan Agreement within 30 days of written notice thereof, BMO was declaring the principal, interest and other amounts due BMO to be immediately due and payable.

141. On November 10, 2008, BMO sent to Homebuilding that certain Demand to Guarantor renewing its prior demand under the City Side Guaranty and the City Side Completion Guaranty. The November 10, 2008 letter, *inter alia*, demanded payment from Homebuilding for City Side's indebtedness under the City Side Guaranty as well as full performance under the City Side Completion Guaranty.

142. Despite demand, City Side has failed to pay principal and interest when due on its indebtedness to BMO.

143. Also, despite demand, Homebuilding has failed to pay principal, interest and expenses when due on the City Side Guaranty.

144. Further, despite demand, Homebuilding has failed to satisfy its obligations under the City Side Completion Guaranty.

145. Mr. Giampoli admitted at his deposition that Homebuilding management knew that it was in default of it obligations to its lenders as of December 31, 2007.

146. As such, Homebuilding knew that it was incurring debts beyond its ability to repay them.

147. Also, as Homebuilding was already in default when the transaction was executed, it and City Side had unreasonably small capital when it entered into the City Side transaction.

148. Each of the above-referenced transfers was made in bad faith by Homebuilding and its insiders in order to benefit Bruno A. Pasquinelli and Anthony R. Pasquinelli and their Related Party Transferees to the detriment of Harris.

### 3. MCALISTER PLACE LLC

149. On February 7, 2008, Harris and an affiliate of Pasquinelli, Portrait Homes-McAlister Place LLC (*"McAlister Place"*) entered into that certain Fourth Amended Construction Loan Agreement (the *"McAlister Place Construction Loan Agreement"*) to, *inter*

*alia*, finance the construction of certain residential real property located in Greensboro, North Carolina.

150.    Also, on February 7, 2008, Homebuilding executed that certain McAlister Place Guaranty in which it guaranteed, *inter alia*, any and all indebtedness, obligations and liabilities of every kind and nature of McAlister Place to Harris.

151.    Additionally, on February 7, 2008, Homebuilding executed that certain McAlister Place Completion Guaranty in which it, *inter alia*, guaranteed the satisfactory completion of the project and the payment by McAlister Place of all amounts necessary to balance the budget of the project.

152.    Subsequently, McAlister Place defaulted on its obligations to Harris and on June 23, 2008, Harris sent that certain Notice of Default/Reservation of Rights which notified McAlister Place that it was in default under Section 10.1(e) of the McAlister Place Construction Loan Agreement for failing to pay principal and interest when due thereon.

153.    By July 15, 2008, additional defaults had occurred and Harris sent that certain Notice of Default/Reservation of Rights, which notified McAlister Place that it was in default under Section 10.1(a) for failure to pay interest when due, and also notified McAlister Place and Homebuilding that they were in default for failure to deliver financial statements and compliance certificates required by Section 12A of the McAlister Place Guaranty and the guarantor's repudiation of its obligations under the McAlister Place Guaranty.

154.    On August 29, 2008, Harris sent to McAlister Place that certain Notice of Termination, Demand and Interest Rate Increase/Reservation of Rights, in which it notified McAlister Place that because of the failure to make payments within 7 days after receipt of the previous notices, a "Termination Date Default" had occurred.

155. Despite demand, McAlister Place has failed to pay principal and interest when due on its indebtedness to Harris.

156. Also, despite demand, Homebuilding has failed to pay principal, interest and expenses when due on the McAlister Place Guaranty.

157. Further, despite demand, Homebuilding has failed to satisfy its obligations under the McAlister Place Completion Guaranty.

158. On November 10, 2008, Harris N.A. filed a verified complaint in the General Court of Justice of Guilford County, North Carolina alleging, *inter alia,* breach of contract, breach of guarantee against Homebuilding, and appointment of a receiver.

159. On July 7, 2009, Homebuilding, together with its indirect subsidiary Portrait Homes – McAlister Place LLC entered into that certain Consent Judgment, which amended the caption to reflect Plaintiffs' REO subsidiary and entered judgment against Homebuilding and Portrait Homes – McAlister Place LLC, in the amount of $563,594.22, together with accrued interest of $14,835.60 and costs and reasonable attorneys fees of $14,338.43.

160. As of the filing of this Complaint, these amounts remain unpaid.

161. Mr. Giampoli admitted at his deposition that Homebuilding management knew that it was in default of its obligations to its lenders as of December 31, 2007.

162. As such, Homebuilding knew that it was incurring debts beyond its ability to repay them.

163. Also, as Homebuilding was already in default when the transaction was executed, Homebuilding and McAlister Place had unreasonably small capital when they entered into the City Side transaction.

164. Each of the above-referenced transfers was made in bad faith by Homebuilding and its insiders in order to benefit Bruno A. Pasquinelli and Anthony R. Pasquinelli and the Related Party Transferees to the detriment of Harris.

### 4. McDermott LP

165. On November 28, 2005, Harris and an affiliate of Pasquinelli, Portrait Homes – McDermott LP (*"McDermott"*) entered into that certain Construction Loan Agreement (the *"McDermott Construction Loan Agreement"*) to, *inter alia*, finance the construction of certain residential real property located in Collin County, Texas.

166. Also, on November 28, 2005, Homebuilding executed that certain McDermott Guaranty in which it guaranteed, *inter alia*, any and all indebtedness, obligations and liabilities of every kind and nature of McDermott to Harris.

167. Additionally, on November 28, 2005, Homebuilding executed that certain McDermott Completion Guaranty in which it, *inter alia*, guaranteed the satisfactory completion of the project and the payment by McDermott of all amounts necessary to balance the budget of the project.

168. Subsequently, McDermott defaulted on its obligations to Harris and on June 10, 2008, Harris sent that certain Notice of Default/Reservation of Rights which notified McDermott that it was in default under Section 10.1(a) of the McDermott Construction Loan Agreement for failing to pay principal and interest on the Termination Date.

169. On June 23, 2008, Harris sent that certain Notice of Default/Reservation of Rights which notified McDermott that it was in default under Section 10.1(e) of the McDermott Construction Loan Agreement for failing to pay principal and interest on the Termination Date.

170. By July 15, 2008, additional defaults had occurred and Harris sent that certain Notice of Default/Reservation of Rights which notified McDermott that it was in default under

- 31 -

Section 10.1(a) for failure to pay interest when due, and also notified McDermott and Homebuilding that it was in default for failure to deliver financial statements and compliance certificates required by Section 12A of the McDermott Guaranty and the guarantor's repudiation of its obligations under the McDermott Guaranty.

171. On August 29, 2008, Harris sent to McDermott that certain Notice of Termination, Demand and Interest Rate Increase/Reservation of Rights, in which it notified McDermott that because of the failure to make payments within 7 days after receipt of the June 10, 2008 notice, a "Termination Date Default" had occurred.

172. On November 10, 2008, Harris sent to Homebuilding that certain Demand to Guarantor renewing its prior demand under the McDermott Guaranty and the McDermott Completion Guaranty.

173. Despite demand, McDermott has failed to pay principal and interest when due on its indebtedness to Harris.

174. Also, despite demand, Homebuilding has failed to pay principal, interest and expenses when due on the McDermott Guaranty.

175. Further, despite demand, Homebuilding has failed to satisfy its obligations under the McDermott Completion Guaranty.

176. On November 19, 2008, Harris filed a complaint in the District Court of Dallas County, Texas, 162nd Judicial District, against McDermott and Homebuilding.

177. On February 17, 2010, Homebuilding, together with McDermott, entered into that certain Agreed Judgment, which entered judgment against Homebuilding and McDermott in the amount of $3,918,210.73, together with interest at the rate of 5% per annum from the date of this judgment until paid.

178. On May 4, 2010, Harris made a credit bid of $1.5 million for the McDermott

property.

179.    As of the filing of this Complaint, the outstanding balance remains unpaid.

### 5. NAAMAN ROAD TOWNHOMES, LP

180.    On January 19, 2006, Harris and an affiliate of Pasquinelli, Portrait Homes –
Naaman Road Townhomes LP (*"Naaman Road"*) entered into that certain Construction Loan
Agreement (the *"Naaman Road Construction Loan Agreement"*) to, *inter alia*, finance the
construction of certain residential real property located in Collin County, Texas.

181.    Also on January 19, 2006, Homebuilding executed that certain Naaman Road
Guaranty in which it guaranteed, *inter alia*, any and all indebtedness, obligations and liabilities
of every kind and nature of Naaman Road to Harris.

182.    Additionally, on January 19, 2006, Homebuilding executed that certain Naaman
Road Completion Guaranty in which it, *inter alia*, guaranteed the satisfactory completion of the
project and the payment by Naaman Road of all amounts necessary to balance the budget of the
project.

183.    On June 23, 2008, Harris sent that certain Notice of Default/Reservation of Rights
which notified Naaman Road that it was in default under Section 10.1(e) of the Naaman Road
Construction Loan Agreement for failing to pay principal and interest on the Termination Date.

184.    By July 15, 2008, additional defaults had occurred and Harris sent that certain
Notice of Default/Reservation of Rights which notified Naaman Road that it was in default under
Section 10.1(a) for failure to pay interest when due, and also notified Naaman Road and
Homebuilding that it was in default for failure to deliver financial statements and compliance
certificates required by Section 12A of the Naaman Road Guaranty and the guarantor's
repudiation of its obligations under the Naaman Road Guaranty.

185.     On July 31, 2008, Harris sent another Notice of Default/Reservation of Rights in which it notified Naaman Road and Homebuilding that in addition to the previously noticed defaults, further defaults had occurred based on Naaman Road's failure to pay principal and interest when due on the Termination Date of the Naaman Road Construction Loan Agreement on July 19, 2008. The July 31, 2008 Notice of Default/Reservation of Rights further gave notice that if Naaman Road did not make payment in full of all amounts due and owing within 7 days, a Termination Date Default would have occurred.

186.     On August 29, 2008, Harris sent to Naaman Road that certain Notice of Interest Rate Increase and Commitment Termination/Reservation of Rights in which it notified Naaman Road that because of the failure to make payments within 7 days after receipt of the June 23, 2008 notice, a "Termination Date Default" had occurred.

187.     On November 10, 2008, Harris sent to Homebuilding that certain Demand to Guarantor renewing its prior demand under the Naaman Road Guaranty and the Naaman Road Completion Guaranty.

188.     Despite demand, Naaman Road has failed to pay principal and interest when due on its indebtedness to Harris.

189.     Also, despite demand, Homebuilding has failed to pay principal, interest and expenses when due on the Naaman Road Guaranty.

190.     Further, despite demand, Homebuilding has failed to satisfy its obligations under the Naaman Road Completion Guaranty.

191.     On November 19, 2008, Harris filed a complaint in the District Court of Dallas County, Texas, 162nd Judicial District, against Naaman Road and Homebuilding.

192.     On February 17, 2010, Homebuilding, together with Naaman Road, entered into that certain Agreed Judgment, which entered judgment against Homebuilding and Naaman Road

in the amount of $3,090,752.46, together with interest at the rate of 5% per annum from the date of this judgment until paid.

193.    On June 1, 2010, Harris made a credit bid of $832,500 for the Naaman Road property.

194.    As of the filing of this Complaint, the outstanding balance remains unpaid.

### 6. PARKSIDE TRAILS LP

195.    On June 23, 2007, BMO and an affiliate of Pasquinelli, Portrait Homes – Parkside Trails LP (*"Parkside Trails"*) entered into that certain Construction Loan Agreement (the *"Parkside Trails Construction Loan Agreement"*) to, *inter alia*, finance the construction of certain residential real property located in Harris County, Texas.

196.    Also on June 23, 2007, Homebuilding executed that certain Parkside Trails Guaranty in which it guaranteed, *inter alia*, any and all indebtedness, obligations and liabilities of every kind and nature of Parkside Trails to BMO.

197.    Additionally, on June 23, 2007, Homebuilding executed that certain Parkside Trails Completion Guaranty in which it, *inter alia*, guaranteed the satisfactory completion of the project and the payment by Parkside Trails of all amounts necessary to balance the budget of the project.

198.    On June 23, 2008, BMO sent that certain Notice of Default/Reservation of Rights which notified Parkside Trails that it was in default under Section 10.1(e) of the Parkside Trails Construction Loan Agreement for failing to pay principal and interest on the Termination Date.

199.    By July 15, 2008, additional defaults had occurred and BMO sent that certain Notice of Default/Reservation of Rights which notified Parkside Trails that it was in default under Section 10.1(a) for failure to pay interest when due, and also notified Parkside Trails and Homebuilding that it was in default for failure to deliver financial statements and compliance

certificates required by Section 12A of the Parkside Trails Guaranty and the guarantor's repudiation of its obligations under the Parkside Trails Guaranty.

200. On August 29, 2008, BMO sent to Parkside Trails that certain Notice of Acceleration, Demand, Interest Rate Increase and Commitment Termination/Reservation of Rights, in which it notified Parkside Trails that because of the failure to make payments within 7 days after receipt of the June 23, 2008 notice, BMO was declaring that the principal, interest and other amounts due to be immediately due and payable.

201. On November 10, 2008, BMO sent to Homebuilding that certain Demand to Guarantor renewing its prior demand under the Parkside Trails Guaranty and the Parkside Trails Completion Guaranty.

202. Despite demand, Parkside Trails has failed to pay principal and interest when due on its indebtedness to BMO.

203. Also, despite demand, Homebuilding has failed to pay principal, interest and expenses when due on the Parkside Trails Guaranty.

204. Further, despite demand, Homebuilding has failed to satisfy its obligations under the Parkside Trails Completion Guaranty.

205. On June 24, 2009, Harris filed a complaint in the District Court of Dallas County, Texas, 162nd Judicial District, against Parkside Trails and Homebuilding.

206. On February 4, 2010, Homebuilding, together with Parkside Trails, entered into that certain Agreed Judgment, which entered judgment against Homebuilding and Parkside Trails in the amount of $2,607,766.47, together with interest at the rate of 5% per annum from the date of this judgment until paid.

207. As of the filing of this Complaint, these amounts remain unpaid.

### 7. PERSIMMON GROVE LLC

208. On August 28, 2007, Harris and an affiliate of Pasquinelli, Portrait Homes – Persimmon Grove LLC (*"Persimmon Grove"*) entered into that certain First Amended Construction Loan Agreement (the *"Persimmon Grove Construction Loan Agreement"*) to, *inter alia*, finance the construction of certain residential real property located in Avon, Indiana.

209. Also, on August 28, 2007, Homebuilding executed that certain Persimmon Grove Guaranty in which it guaranteed, *inter alia*, any and all indebtedness, obligations and liabilities of every kind and nature of Persimmon Grove to Harris.

210. Additionally, on December 6, 2007, Homebuilding executed that certain Persimmon Grove Completion Guaranty in which it, *inter alia*, guaranteed the satisfactory completion of the project and the payment by Persimmon Grove of all amounts necessary to balance the budget of the project.

211. On June 23, 2008, Harris sent that certain Notice of Default/Reservation of Rights which notified Persimmon Grove that it was in default under Section 10.1(e) of the Persimmon Grove Construction Loan Agreement for failing to pay principal and interest on the Termination Date.

212. By July 15, 2008, additional defaults had occurred and Harris sent that certain Notice of Default/Reservation of Rights which notified Persimmon Grove that it was in default under Section 10.1(a) for failure to pay interest when due, and also notified Persimmon Grove and Homebuilding that it was in default for failure to deliver financial statements and compliance certificates required by Section 12A of the Persimmon Grove Guaranty and the guarantor's repudiation of its obligations under the Persimmon Grove Guaranty.

213. On August 29, 2008, Harris sent to Persimmon Grove that certain Notice of Termination, Demand and Interest Rate Increase/Reservation of Rights, in which it notified Persimmon Grove that because of the failure to make payments when the loan matured on

August 28, 2008, Harris was declaring the principal, interest and other amounts due to be immediately due and payable.

214.    On November 10, 2008, Harris sent to Homebuilding that certain Demand to Guarantor renewing its prior demand under the Persimmon Grove Guaranty and the Persimmon Grove Completion Guaranty.

215.    Despite demand, Persimmon Grove has failed to pay principal and interest when due on its indebtedness to Harris. On June 8, 2009, Harris obtained judgment against Persimmon Grove.    As of January 4, 2010, the outstanding deficiency after applying all credits was $5,849,389.42, plus further accruing interest, costs and expenses.

216.    Also, despite demand, Homebuilding has failed to pay principal, interest and expenses when due on the Persimmon Grove Guaranty.    By virtue of Persimmon Grove's defaults, Homebuilding is indebted to Harris in the amount of $5,849,389.42 as of January 4, 2010, plus further accruing interest, costs and expenses.

217.    Further, despite demand, Homebuilding has failed to satisfy its obligations under the Persimmon Grove Completion Guaranty.

### 8. THE AVENUES LLC

218.    On December 6, 2007, BMO and an affiliate of Pasquinelli, Portrait Homes – The Avenues LLC (*"Avenues"*) entered into that certain Construction Loan Agreement (the *"Avenues Construction Loan Agreement"*) to, *inter alia*, finance the construction of certain residential real property located in Guilford County, North Carolina.

219.    Also, on December 6, 2007, Homebuilding executed that certain Avenues Guaranty in which it guaranteed, *inter alia*, any and all indebtedness, obligations and liabilities of every kind and nature of Avenues to BMO.

220.    Additionally, on December 6, 2007, Homebuilding executed that certain Avenues Completion Guaranty in which it, *inter alia*, guaranteed the satisfactory completion of the project and the payment by Avenues of all amounts necessary to balance the budget of the project.

221.    On June 23, 2008, BMO sent that certain Notice of Default/Reservation of Rights which notified Avenues that it was in default under Section 10.1(e) of the Avenues Construction Loan Agreement for failing to pay principal and interest on the Termination Date.

222.    By July 15, 2008, additional defaults had occurred and BMO sent that certain Notice of Default/Reservation of Rights which notified Avenues that it was in default under Section 10.1(a) for failure to pay interest when due, and also notified Avenues and Homebuilding that it was in default for failure to deliver financial statements and compliance certificates required by Section 12A of the Avenues Guaranty and the guarantor's repudiation of its obligations under the Avenues Guaranty.

223.    On August 29, 2008, BMO sent to Avenues that certain Notice of Acceleration, Demand, Interest Rate Increase and Commitment Termination/Reservation of Rights, in which it notified Avenues that because of the failure to make interest payments when due 7 days after written notice, and the default in the performance of other provisions of the loan agreement, BMO was declaring that the principal, interest and other amounts due to be immediately due and payable.

224.    Despite demand, Avenues has failed to pay principal and interest when due on its indebtedness to BMO.

225.    Also, despite demand, Homebuilding has failed to pay principal, interest and expenses when due on the Avenues Guaranty.

226.    Further, despite demand, Homebuilding has failed to satisfy its obligations under the Avenues Completion Guaranty.

227. On November 10, 2008, BMO filed a verified complaint in the General Court of Justice of Guilford County, North Carolina alleging, *inter alia,* breach of contract, breach of guarantee and Homebuilding, and appointment of a receiver.

228. On July 7, 2009, Homebuilding, together with its indirect subsidiary Portrait Homes – the Avenues LLC, entered into that certain Consent Judgment, which amended the caption to reflect Plaintiffs' REO subsidiary and entered judgment against Homebuilding and Portrait Homes – the Avenues LLC in the amount of $653,134.75, together with accrued interest of $33,356.70 and costs and reasonable attorneys fees of $3,877.90.

229. As of the filing of this Complaint, these amounts remain unpaid.

### 9. TUSCANY LLC

230. On March 20, 2006, Harris and an affiliate of Pasquinelli, Portrait Homes – Tuscany LLC (*"Tuscany"*) entered into that certain Construction Loan Agreement (the *"Tuscany Construction Loan Agreement"*) to, *inter alia,* finance the construction of certain residential real property located in Guilford County, North Carolina.

231. Also on March 20, 2006, Homebuilding executed that certain Tuscany Guaranty in which it guaranteed, *inter alia,* any and all indebtedness, obligations and liabilities of every kind and nature of Tuscany to Harris.

232. Additionally, on March 20, 2006, Homebuilding executed that certain Tuscany Completion Guaranty in which it, *inter alia,* guaranteed the satisfactory completion of the project and the payment by Tuscany of all amounts necessary to balance the budget of the project.

233. On June 23, 2008, Harris sent that certain Notice of Default/Reservation of Rights which notified Tuscany that it was in default under Section 10.1(e) of the Tuscany Construction Loan Agreement for failing to pay principal and interest on the Termination Date.

234. By July 15, 2008, additional defaults had occurred and Harris sent that certain Notice of Default/Reservation of Rights which notified Tuscany that it was in default under Section 10.1(a) for failure to pay interest when due, and also notified Tuscany and Homebuilding that it was in default for failure to deliver financial statements and compliance certificates required by Section 12A of the Tuscany Guaranty and the guarantor's repudiation of its obligations under the Tuscany Guaranty.

235. On August 29, 2008, Harris sent to Tuscany that certain Notice of Acceleration, Demand, Interest Rate Increase and Commitment Termination/Reservation of Rights, in which it notified Tuscany that because of the failure to make interest payments when due 7 days after written notice, and the default in the performance of other provisions of the loan agreement, Harris was declaring the principal, interest and other amounts due to be immediately due and payable.

236. Despite demand, Tuscany has failed to pay principal and interest when due on its indebtedness to Harris.

237. Also, despite demand, Homebuilding has failed to pay principal, interest and expenses when due on the Tuscany Guaranty.

238. Further, despite demand, Homebuilding has failed to satisfy its obligations under the Tuscany Completion Guaranty.

239. On November 10, 2008, Harris N.A. filed a verified complaint in the General Court of Justice of Guilford County, North Carolina alleging, *inter alia,* breach of contract, breach of guarantee and Homebuilding, and appointment of a receiver.

240. On July 7, 2009, Homebuilding, together with its indirect subsidiary Portrait Homes – Tuscany LLC, entered into that certain Consent Judgment, which amended the caption to reflect Plaintiffs' REO subsidiary and entered judgment against Homebuilding and Portrait

- 41 -

Homes – Tuscany LLC in the amount of $64,402.12, together with accrued interest of $8,019.70 and costs and reasonable attorneys fees of $4,628.51.

241.    As of the filing of this Complaint, these amounts remain unpaid.

### 10. WOODBURN CROSSING LLC

242.    On March 20, 2006, Harris and an affiliate of Pasquinelli, Portrait Homes – Woodburn Crossing LLC (*"Woodburn Crossing"*) entered into that certain Construction Loan Agreement (the *"Woodburn Crossing Construction Loan Agreement"*) to, *inter alia*, finance the construction of certain residential real property located in Irdell County, North Carolina.

243.    Also, on March 20, 2006, Homebuilding executed that certain Woodburn Crossing Guaranty in which it guaranteed, *inter alia*, any and all indebtedness, obligations and liabilities of every kind and nature of Woodburn Crossing to Harris.

244.    Additionally, on March 20, 2006, Homebuilding executed that certain Woodburn Crossing Completion Guaranty in which it, *inter alia*, guaranteed the satisfactory completion of the project and the payment by Woodburn Crossing of all amounts necessary to balance the budget of the project.

245.    On June 23, 2008, Harris sent that certain Notice of Default/Reservation of Rights which notified Woodburn Crossing that it was in default under Section 10.1(e) of the Woodburn Crossing Construction Loan Agreement for failing to pay principal and interest on the Termination Date.

246.    By July 15, 2008, additional defaults had occurred and Harris sent that certain Notice of Default/Reservation of Rights which notified Woodburn Crossing that it was in default under Section 10.1(a) for failure to pay interest when due, and also notified Woodburn Crossing and Homebuilding that it was in default for failure to deliver financial statements and compliance

certificates required by Section 12A of the Woodburn Crossing Guaranty and the guarantor's repudiation of its obligations under the Woodburn Crossing Guaranty.

247. On August 29, 2008, Harris sent to Woodburn Crossing that certain Notice of Acceleration, Demand, Interest Rate Increase and Commitment Termination/Reservation of Rights, in which it notified Woodburn Crossing that because of the failure to make interest payments when due 7 days after written notice, and the default in the performance of other provisions of the loan agreement, Harris was declaring that the principal, interest and other amounts due to be immediately due and payable.

248. Despite demand, Woodburn Crossing has failed to pay principal and interest when due on its indebtedness to Harris.

249. Also, despite demand, Homebuilding has failed to pay principal, interest and expenses when due on the Woodburn Crossing Guaranty.

250. Further, despite demand, Homebuilding has failed to satisfy its obligations under the Woodburn Crossing Completion Guaranty.

251. Subsequently, Harris N.A. filed a verified complaint in the General Court of Justice of Iredell County, North Carolina, alleging, *inter alia,* breach of contract, breach of guarantee and Homebuilding, and appointment of a receiver.

252. On July 7, 2009, Homebuilding, together with its indirect subsidiary Portrait Homes — Woodburn Crossing LLC, entered into that certain Consent Judgment which amended the caption to reflect Plaintiffs' REO subsidiary and entered judgment against Homebuilding and Portrait Homes – Woodburn Crossing LLC in the amount of $2,083,415.75, together with accrued interest of $68,612.70 and costs and reasonable attorneys' fees of $18,013.39.

253. As of the filing of this Complaint, these amounts remain unpaid.

## CAUSES OF ACTION

### COUNT I – FRAUDULENT TRANSFER BASED ON ACTUAL FRAUD PURSUANT TO 740 ILCS 160/5(a)(1): CERTAIN 2007, 2008 AND 2009 TRANSFERS

254.    Harris incorporates paragraphs 1 through 253 above as if fully set forth herein.

255.    After the entry of the Swap Judgment, the transmittal of notices of defaults on the Harris indebtedness and commencement of foreclosure proceedings, Homebuilding transferred the Transferred Properties to one or more of the Pasquinelli Defendants as initial and/or subsequent transferees (collectively, the *"2009 Transfers"*).

256.    Homebuilding's transfers to one or more of the Pasquinelli Defendants of (i) 4th Quarter 2007 cash transfers in excess of $2.8 million (the *"4Q07 Transfers"*)[3] and/or (ii) the 2008 cash transfers of in excess of $1.055 million (the *"2008 Transfers"*) were made when one or more of the defendants knew that Homebuilding and various Operating Subsidiaries were in default or about to be in imminent default on one or more of the Harris loans or one or more lenders had exercised, or indicated an intent to exercise, rights and remedies, including, without limitation, commencing foreclosure proceedings.

257.    The 4Q07 Transfers, 2008 Transfers and 2009 Transfers (collectively, the (*"2007-09 Transfers"*) were fraudulent transfers under 740 ILCS 160/5(a)(1) because they were made with actual intent to hinder, delay or defraud Harris, a creditor of Homebuilding based on, among other things, the following:

---

[3]      Harris reserves the right, after discovery, to include additional 2007 transfers and earlier transfers in this Count.

A.   The 2007-09 Transfers were made to insiders of Homebuilding, including the trusts, Bruno and Anthony and/or the Related Party Transferees who are members of the immediate family of Bruno or Anthony.

B.   The 2007-09 Transfers, particularly the transfers of the Transferred Properties, were made in secret and/or not in the ordinary course of Homebuilding's business.

C.   Before some or all of the 4Q07 Transfers and 2008 Transfers were made and before all of the 2009 Transfers were made, Homebuilding and the relevant Operating Subsidiaries had been sued or threatened with suit.

D.   Prior to the 2007-09 Transfers, Homebuilding and other Operating Subsidiaries concealed the identity and transfer of the Transferred Properties from Harris.

E.   The value of the consideration received by Homebuilding was not reasonably equivalent to the value of the 2007-09 Transfers.

F.   Homebuilding was insolvent or became insolvent shortly after the 2007-09 Transfers were made and Homebuilding was left with no money or property out of which the Swap Judgment can be satisfied in whole or in part.

G.   The 2007-09 Transfers were made in contemplation of Homebuilding's default in payment of its guaranty obligations to Harris, on which the above-referenced judgments were subsequently rendered and were made with a view of protecting the property of Homebuilding and other Pasquinelli entities against enforcement of such judgments.

H.   The transfers were made for the purpose of preventing the judgments from becoming a lien on the Transferred Properties or the cash consisting of the 4Q07 Transfers and/or the 2008 Transfers.

I.    The Swap Judgment and deficiency judgments remain wholly unpaid, unsatisfied and in full force, and Homebuilding has failed and refused to satisfy such judgments.

J.    Plaintiffs have been unable to reach any of the above real, personal or mixed property by enforcement of the judgment mentioned above.

K.    The 2007-09 Transfers, when viewed along with the above-described conduct with respect to the transfer and utilization of Pasquinelli Financial LLC and Pasquinelli Management LLC, indicates a general course of conduct or pattern on the part of one or more of the defendants to hinder, delay and frustrate creditors.

258.    No Pasquinelli Defendants who is a subsequent transferee took such transfers in good faith and/or for a reasonably equivalent value.

WHEREFORE, Plaintiffs request that the Court enter judgment against defendants and in favor of plaintiffs and award plaintiffs the following relief, including, but not limited to, a Judgment Order:

1.    Avoiding the 2007-09 Transfers to the extent necessary to satisfy plaintiffs' claims against Homebuilding;

2.    Attaching the Transferred Properties or other property owned by the defendants up to an amount equal to satisfy all amounts due and owing to plaintiffs;

3.    Enjoining the current owner(s) of record of the Transferred Properties from transferring, assigning or disposing of the Transferred Properties and enjoining defendants from disposing, transferring or withdrawing any cash proceeds out of any account in their possession, custody or control to the extent it would result in such defendants collectively possessing less than the amounts due Harris;

4.    Permitting plaintiffs to levy execution on the Transferred Properties and other assets owned by defendants and compelling the owner of record to convey title to the Transferred Properties to plaintiffs or their designee(s);

5.    Awarding plaintiffs money damages in an amount to be proved at trial; and

- 46 -

6.      Granting plaintiffs such other and further, or different, relief, including, without limitation, pre-judgment and post-judgment interest, in the matter as the court may deem just and proper.

### COUNT II – FRAUDULENT TRANSFER BASED ON CONSTRUCTIVE FRAUD
### PURSUANT TO 740 ILCS 160/5(a)(2) AND 160/6(a): 2006 - 2009 TRANSFERS

259.    Harris repeats and realleges paragraphs 1 through 258 above as if fully set forth herein.

260.    In addition to the 2007-09 Transfers, Homebuilding made voluntary cash transfers to one or more of the Pasquinelli Defendants as initial and/or subsequent transferees in excess of $55 million during the time period 2006 through September 30, 2007 (collectively, the *"2006/07 Transfers,* and, together with the 2007-09 Transfers, the *"Transfers"*).

261.    At all relevant times, Harris was a creditor of Homebuilding and the various Operating Subsidiary borrowers.

262.    Homebuilding made one or more of the Transfers without receiving a reasonably equivalent value in exchange for such Transfer(s).

263.    Homebuilding and the Operating Subsidiary borrowers were engaged or were about to engage in a business or a transaction for which the remaining assets of such entities were unreasonably small in relation to the business or transaction.

264.    Homebuilding and the Operating Subsidiary borrowers intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due.

265.    Homebuilding and/or the Operating Subsidiary Debtors were insolvent at the time one or more of the Transfers were made and/or became insolvent as a result of one or more of the Transfers.

266.     No Pasquinelli Defendant who is a subsequent transferee took such Transfers in good faith and/or for a reasonably equivalent value.

WHEREFORE, Plaintiffs request that the Court enter judgment against defendants and in favor of plaintiffs and award plaintiffs the following relief, including, but not limited to a Judgment Order:

1.     Avoiding the Transfers to the extent necessary to satisfy plaintiffs' claims against Homebuilding;

2.     Attaching the Transferred Properties or other property owned by defendants up to an amount equal to satisfy all amounts due and owing to plaintiffs;

3.     Enjoining the current owner(s) of record of the Transferred Properties from transferring, assigning or disposing of the Transferred Properties and enjoining the defendants from disposing, transferring or withdrawing any cash proceeds out of any account in their possession, custody or control to the extent it would result in such defendants collectively possessing less than the amounts due Harris;

4.     Permitting plaintiffs to levy execution on the Transferred Properties and other assets owned by defendants or their proceeds and compelling the owner of record to convey title to the Transferred Properties to plaintiffs or their designee(s);

5.     Awarding plaintiffs money damages in an amount to be proved at trial; and

6.     Granting plaintiffs such other and further, or different, relief, including, without limitation pre-judgment and post-judgment interest, in the matter as the court may deem just and proper.

### COUNT III – FRAUDULENT TRANSFER BASED ON INSIDER PREFERENCES PURSUANT TO 740 ILCS 160/6(b): 2009 TRANSFERS

267.     Harris repeats and realleges paragraphs 1 through 266 above as if fully set forth herein.

268.     At all relevant times Harris was a creditor of Homebuilding and the Operating Subsidiary borrowers.

269.     Pleading in the alternative, the 2009 Transfers were made to insiders for an antecedent debt.

270. Homebuilding and the Operating Subsidiary borrowers were insolvent at the time the 2009 Transfers were made.

271. One or more of the Pasquinelli Defendants had reasonable cause to believe that Homebuilding and the Operating Subsidiary borrowers were insolvent at the time the 2009 Transfers were made.

272. No insider gave new value to or for the benefit of Homebuilding or any of the Operating Subsidiary borrowers after the 2009 Transfers were made.

273. The 2009 Transfers were not made in the ordinary course of business or financial affairs of Homebuilding, any of the Operating Subsidiary borrowers, or any of the Pasquinelli Defendants.

274. The 2009 Transfers were not made pursuant to a good faith effort to rehabilitate Homebuilding or any of the Operating Subsidiary borrowers.

275. No Pasquinelli Defendant who is a subsequent transferee took such 2009 Transfers in good faith and/or for a reasonably equivalent value.

WHEREFORE, Plaintiffs request that the Court enter judgment against defendants and in favor of plaintiffs and award plaintiffs the following relief, including, but not limited to a Judgment Order:

1. Avoiding the 2009 Transfers to the extent necessary to satisfy plaintiffs' claims against Homebuilding;

2. Attaching the Transferred Properties or other property owned by defendants up to an amount equal to satisfy all amounts due and owing to plaintiffs;

3. Enjoining the current owner(s) of record of the Transferred Properties from transferring, assigning or disposing of the Transferred Properties and enjoining the defendants from disposing, transferring or withdrawing any cash proceeds out of any account in their possession, custody or control to the extent it would result in such defendants collectively possessing less than the amounts due Harris;

4.   Permitting plaintiffs to levy execution on the Transferred Properties and other assets owned by defendants or their proceeds and compelling the owner of record to convey title to the Transferred Properties to plaintiffs or their designee(s);

5.   Awarding plaintiffs money damages in an amount to be proved at trial; and

6.   Granting plaintiffs such other and further, or different, relief, including, without limitation pre-judgment and post-judgment interest, in the matter as the court may deem just and proper.

### COUNT IV – BREACH OF FIDUCIARY DUTIES

276.   Harris repeats and realleges paragraphs 1 through 275 above as if fully set forth herein.

277.   Any effort by Harris to cause the member, manager, directors or officers of Homebuilding to bring an action herein described in this Count, especially given the Pasquinellis' complete ownership of Homebuilding and denial of wrongdoing, would be futile and not likely to succeed, and, as a result, Harris brings this Count in its capacity as a creditor of Homebuilding and derivatively on behalf of Homebuilding.

278.   At all relevant times, Homebuilding was insolvent.

279.   As a result, the directors and officers of Homebuilding owed fiduciary duties to the company's creditors, including Harris, including without limitation a duty of care and a duty of loyalty.

280.   Upon information and belief, the Pasquinelli Defendants further breached their fiduciary duty to creditors by (i) failing to cease work by contractors to minimize the attachment of mechanic's liens and (ii) failing to cause loan funds advanced to pay contractors, thereby causing Harris to incur substantial costs in defending against mechanics lien claims, as well as significant additional costs for tax payments, insurance, homeowners association costs, building remediation, and other maintenance costs.

- 50 -

281.    At all relevant times, one or more of the individual Pasquinelli Defendants served as an officer and/or director of Homebuilding.

282.    Such defendants' breached their fiduciary duties by, *inter alia:*

A.    Acting in and out of their own self interests rather than in the best interests of Homebuilding and its creditors by permitting Homebuilding, while insolvent, to make distributions that were known to be directly and indirectly benefiting such directors and officers personally, including Bruno and Anthony and members of their families.

B.    Causing Homebuilding to make transfers to the family trusts, such as the 2009 Transfers, after Harris had obtained a judgment against Homebuilding.

C.    Wasting corporate assets of Homebuilding because no benefits were received by Homebuilding in exchange for the transfers it made and the economics of the transfers were so flawed that no disinterested person of right mind and ordinary business judgment could think the transfers beneficial to Homebuilding.

D.    Failing to properly assess and disclose the risks and probable impacts of the housing market downturn on Homebuilding's business operations and ability to remain solvent, adequately capitalized and able to meet its guaranty obligations and other debts.

283.    Defendants' actions caused significant damages to Homebuilding, including depriving it of assets, causing it to make excessive distributions, and rendering it insolvent, inadequately capitalized and unable to satisfy its guaranty obligations and other debts, leading ultimately to the wind-down of the Operating Subsidiaries, the loss of real estate to foreclosure and Homebuilding left as an empty box with no assets.

284.    As a direct and proximate cause of the foregoing breaches, Homebuilding and its creditors, including Harris, have suffered damages in an amount to be proved at trial.

WHEREFORE, Plaintiffs request that the Court enter judgment against defendants and in favor of plaintiffs, derivatively on behalf of Homebuilding and award plaintiffs the following relief, including, but not limited to a Judgment Order:

      1.    Awarding plaintiffs money damages in an amount to be proved at trial, which damages shall be turned over to Homebuilding to satisfy claims of Homebuilding's creditors including Harris; and

      2.    Granting plaintiffs such other and further, or different, relief, including, without limitation pre-judgment and post-judgment interest, in the matter as the court may deem just and proper.

## COUNT V – UNJUST ENRICHMENT

285.    Harris repeats and realleges paragraphs 1 through 284 above as if fully set forth herein.

286.    One or more of the Pasquinelli Defendants were unjustly enriched at the expense of Harris by obtaining and retaining excess assets (or the equivalent value of same), that were transferred from Homebuilding leaving Homebuilding unable to satisfy its obligations to creditors, including Harris.

287.    One or more of the Pasquinelli Defendants may have been further unjustly enriched in that they have received (or stand to receive) certain tax refunds associated, *inter alia*, with NOL carrybacks for the years 2007-2009, which taxes were originally paid from distributions and transfers made by Homebuilding to Pasquinelli LP and to the trusts.

288.    The value of these excess assets, and the Pasquinelli Defendants' windfall, will have to be determined at or before trial.

289.    Accordingly, one or more of the defendants have been (or stand to be) unjustly enriched and should, as fiduciaries of insolvent entities, be ordered to utilize NOLs in a manner to maximize the amount of cash tax refunds that are able to be recovered with such amount being

further ordered to be turned over to Harris to be applied against Homebuilding's outstanding and unpaid debt to Harris.

290.     To allow the Pasquinelli Defendants to retain any tax refunds or utilize NOLs in a manner to benefit themselves is unjust and inequitable when Homebuilding's creditors, such as Harris, have been left substantially unpaid.

WHEREFORE, Plaintiffs request that the Court enter judgment against defendants and in favor of plaintiffs and award plaintiffs the following relief, including, but not limited to, a Judgment Order:

> 1.     Imposing a constructive trust on any amounts by which the Pasquinelli Defendants were unjustly enriched, including any tax refunds received which result from utilizing NOLs from Homebuilding and its subsidiaries, and requiring them to make full restitution to Harris;

> 2.     Fashioning an appropriate equitable remedy to compel the defendants to utilize the NOLs in a manner to maximize the amount of cash tax refunds that may be recovered and ordering any such refunds received to be turned over to Harris to satisfy Homebuilding's indebtedness to Harris; and

> 3.     Granting plaintiffs such other and further, or different, relief, including, without limitation pre-judgment and post-judgment interest, in the matter as the court may deem just and proper.

## COUNT VI – VEIL PIERCING AND ALTER EGO LIABILITY

291.     Harris repeats and realleges paragraphs 1 through 290 above as if fully set forth herein.

292.     At all relevant times, the Pasquinelli Defendants were able to exercise control over Homebuilding by virtue of their total and complete ownership of Homebuilding.

293.     Homebuilding (as well as many of the other entities in the pyramid) were merely shell entities with no independent office or employees of its own.

294.    Additionally, the Pasquinelli Defendants disregarded the separateness of these entities and disregarded other corporate formalities on numerous occasions regarding their complex web of limited liability companies.

295.    Further, the Pasquinellis engaged in a corporate "shell game," which involved shuffling entities, such as Pasquinelli Management, within the Pasquinelli empire in an attempt to frustrate creditors.

296.    Specifically, the purpose of the transfer of Pasquinelli Management LLC to Paradigm was to prevent Pasquinelli Management LLC from being entangled in litigation with creditors who were seeking to enforce claims against the Pasquinelli family of companies.

297.    The Pasquinellis wanted to operate Pasquinelli Management LLC free from these claims because Pasquinelli Management LLC had entered into certain forbearance agreements with lenders other than Harris that benefitted the Pasquinellis personally.

298.    This transfer to "Paradigm" was not disclosed to creditors when it was made.

299.    Later, after the Pasquinellis believed that they had evaded scrutiny, they transferred Pasquinelli Management LLC back into the Pasquinelli family of companies in an apparent attempt to conceal the prior transfer to elude creditors.

300.    The Pasquinellis additionally used Pasquinelli Financial LLC to haphazardly move funds from entity to entity to meet a particular entity's cash needs pursuant to an informal oral arrangement, without properly documenting the transfers.

301.    There were no written agreements among any of the Pasquinelli entities and Pasquinelli Financial LLC regarding cash management.

302.    Homebuilding is a mere instrumentality or the alter ego of the Pasquinelli Defendants, specifically Bruno and Anthony and the individual Pasquinelli family members who received distributions in their respective trusts.

303.    One or more of the Pasquinelli Defendants, specifically Bruno and Anthony or their trusts and the individual Pasquinelli family members who received distributions from their respective trusts, conducted, managed and controlled the affairs of Homebuilding and its subsidiaries as though they were their own individual businesses for the purpose of fraudulently transferring the assets of Homebuilding and its subsidiaries to themselves as described herein.

304.    The Pasquinelli Defendants, specifically Bruno and Anthony, used Homebuilding as vehicles to accomplish the unjust and inequitable scheme identified herein and through which funds flowed to distribute to one or more of the Pasquinelli Defendants for such Pasquinelli Defendants' benefit.

305.    Homebuilding, at the direction of one or more of the Pasquinelli Defendants, made consistent distributions, which ultimately went to one or more of the Pasquinelli Defendants, even as Homebuilding was unable to perform its obligations to Harris, preferring and enriching one or more of the Pasquinelli Defendants as the ultimate controlling membership interest holder to the detriment of Harris.

306.    One or more of the Pasquinelli Defendants appear to have been more than willing to take distributions at any time but unwilling to ensure Homebuilding and the other Pasquinelli entities satisfied its debt obligations.  For example, despite Homebuilding's defaults, one or more of the Pasquinelli Defendants declined to provide a cash infusion.

307.    Bruno and Anthony further exercised control over Homebuilding in order to use it as their instrumentality, leaving the financial affairs of Homebuilding and its subsidiaries hopelessly commingled.

308.    One or more of the Pasquinelli Defendants caused Homebuilding to abandon its recordkeeping and accounting functions, as well as other corporate formalities, leaving it unable to issue audited financial statements for 2008.

309.   Leaving intact the veil among Homebuilding and the Pasquinelli Defendants would yield inequitable results.   One or more of the Pasquinelli Defendants' abuse of Homebuilding's limited liability company form for the sole benefit of the Pasquinelli Defendants to the detriment of creditors who acted in good faith and provided substantial financing should not be sanctioned.

310.   As a result, principals of equity dictate that the limited liability company form of Homebuilding (and to the extent necessary, the form of Pasquinelli Homebuilding, L.P. and any intervening trust) be disregarded rendering Bruno and Anthony and one or more of the Related Party Transferees directly liable for all damages suffered by Harris as a result of the misconduct alleged herein.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, Plaintiffs request that the Court enter judgment against defendants and in favor of plaintiffs and award plaintiffs the following relief, including, but not limited to a Judgment Order:

1.    Piercing the corporate veil and holding one or more of the defendants personally liable on all amounts due and owing by Homebuilding and its various subsidiaries to Harris; and

2.    Granting plaintiffs such other and further, or different, relief, including, without limitation pre-judgment and post-judgment interest, in the matter as the court may deem just and proper.

Dated:  June 14, 2010

Respectfully submitted,

HARRIS N.A. and
BMO CAPITAL MARKETS FINANCING, INC.

By _____
One of Their Attorneys

Firm No. 90170
Mark D. Rasmussen
James M. Heiser
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois  60603
312-845-3000

# ORGANIZATIONAL CHART FOR THE PASQUINELLI FAMILY COMPANIES



## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| HARRIS N.A., and<br>BMO CAPITAL MARKETS FINANCING, INC., | ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | Case No. 2010 L 006909 |
| PASQUINELLI HOMEBUILDING LLC, BRUNO A.<br>PASQUINELLI, ANTHONY R. PASQUINELLI,<br>PASQUINELLI MANAGEMENT, LLC, PASQUINELLI<br>FINANCIAL LLC, PASQUINELLI HOMEBUILDING, L.P.,<br>PASQUINELLI HOMEBUILDING TRUST, PASQUINELLI<br>FAMILY FOUNDATION, B&A HOMES, LLC, ARP 2003<br>TRUST, ARP 1989 FAMILY TRUST, BAP 2003 TRUST,<br>BAP 1989 FAMILY TRUST, ANTHONY J. PASQUINELLI,<br>BRUNO H. PASQUINELLI, CHRISTINE PASQUINELLI,<br>BETSY PASQUINELLI, JOHN PASQUINELLI, DAVID<br>PASQUINELLI, JOSEPH PASQUINELLI, ELLEN<br>PASQUINELLI, MARIA PASQUINELLI, ANN MARIE<br>PASQUINELLI, JOAN PASQUINELLI, SALLY<br>PASQUINELLI, as Trustee and MARY ANN PASQUINELLI,<br>as Trustee | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Honorable Bill Taylor<br><br>Calendar/Room Q |
| Defendants. | ) <br> ) <br> ) | |

### *EX PARTE* ROUTINE MOTION TO APPOINT SPECIAL PROCESS SERVER

NOW COME Plaintiffs, Harris N.A. and BMO Capital Markets Financing, Inc. (together, the *"Plaintiffs"*), by and through their attorneys, Chapman and Cutler LLP, to respectfully move this Court to enter an Order permitting service to be made upon the defendants in this matter who are located in Cook County by special process server. In support of its Motion, Plaintiffs state as follows:

1. On June 14, 2010, Harris filed its Complaint at Law, seeking, *inter alia,* relief pursuant to the provisions of the Illinois Fraudulent Transfer Act (740 ILCS 160/1 *et seq*.).

2831391.01.02.doc

2.     Due to the large number of defendants, their similar names and the potential difficulty in locating each defendant, Plaintiffs respectfully request that the Court appoint J. Brown, Private License No. 117001405, as special process server, to serve the Complaint and Summons in this matter.

3.     Mr. Brown is over 18 years of age, a citizen of Cook County, Illinois and not a party to this action.

WHEREFORE, Plaintiffs respectfully request that the Court enter an Order in substantially the form attached hereto as Exhibit 1, appointing Mr. Brown of Cook County, Illinois, as Special Process Server for the purpose of serving process in this matter.

Dated: June 18, 2010.

Respectfully submitted,

HARRIS, N.A. AND BMO CAPITAL
  MARKETS FINANCING, INC.

By _____
         One of Its Attorneys

Firm No. 90170
Mark D. Rasmussen
James M. Heiser
CHAPMAN AND CUTLER LLP
111 W. Monroe Street
Chicago, Illinois 60603
(312) 845-3000

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| HARRIS N.A., and<br>BMO CAPITAL MARKETS FINANCING, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 2010 L 006909 |
| PASQUINELLI HOMEBUILDING LLC, BRUNO A.<br>PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI<br>MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC,<br>PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI<br>HOMEBUILDING TRUST, PASQUINELLI FAMILY<br>FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST,<br>ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989<br>FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H.<br>PASQUINELLI, CHRISTINE PASQUINELLI, BETSY<br>PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI,<br>JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA<br>PASQUINELLI, ANN MARIE PASQUINELLI, JOAN<br>PASQUINELLI, SALLY PASQUINELLI, as Trustee and<br>MARYANN PASQUINELLI, as Trustee | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Hon. Bill Taylor<br><br>Calendar/Room Q |
| Defendants. | ) | |

CC LAB

## ORDER
## APPOINTING SPECIAL PROCESS SERVER

This matter coming to be heard on Plaintiffs' *Ex Parte* Routine Motion for Special

Process Server, it appearing to the Court that the interests of justice and judicial economy will be

served without jeopardy to defendant's rights to proper service and due process,

IT IS HEREBY ORDERED:

*Private License No 117001405*

J. Brown of Cook County, Illinois, a citizen over 18 years of age is hereby appointed

Special Process Server to serve process in this matter.

ENTERED:

SO ORDERED:

_____
                          Judge

Firm No. 90170
Mark D. Rasmussen
James M. Heiser
CHAPMAN AND CUTLER LLP
111 W. Monroe Street
Chicago, Illinois  60603
(312) 845-3000

ENTERED
JUDGE BILL TAYLOR-1448
JUN 21 2010
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

- 2 -

(Rev. 4/12/01)  CCL 0530

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

HARRIS, N.A. and BMO CAPITAL MARKETS
<b>Plaintiff</b>

v.

PASQUINELLI HOMEBUILDING LLC, et al.
<b>Defendant</b>

No. 2010 L 006909

Calendar: Q - Judge Bill Taylor

## APPEARANCE

☑ **GENERAL APPEARANCE** 0900 - APPEARANCE - FEE PAID; 0909 - APPEARANCE - NO FEE;
0904 - APPEARANCE FILED - FEE WAIVED

☐ **SPECIAL AND LIMITED APPEARANCE** 0905 - SPECIAL APPEARANCE - FEE PAID
0906 - SPECIAL APPEARANCE - NO FEE

☑ **JURY DEMAND** 1900 - APPEARANCE & JURY DEMAND FEE PAID; 1909 APPEARANCE & JURY DEMAND NO FEE

The undersigned enters the appearance of: ☐ **Plaintiff** ☑ **Defendant**

Pasquinelli Management LLC; Pasquinelli Financial LLC; Pasquinelli Homebuilding L.P.; Pasquinelli Homebuilding Trust; Pasquinelli Family Foundation; ARP 1989 Family Trust; ARP 2003 Trust; BAP 1989 Family Trust; BAP 2003 Trust; Anthony J. Pasquinelli; David Pasquinelli; Joseph Pasquinelli; Ellen Pasquinelli; Ann Marie Pasquinelli; Joan Pasquinelli; Sally Pasquinelli, Trustee; Betsy Pasquinelli; John Pasquinelli; Maryann Pasquinelli, Trustee; B & A Homes LLC.

(INSERT LITIGANT'S NAME)

<b>SIGNATURE</b>

☑ **INITIAL COUNSEL OF RECORD**     ☐ **PRO SE**

☐ **ADDITIONAL APPEARANCE**     ☐ **SUBSTITUTE APPEARANCE**

A copy of this appearance shall be given to all parties who have appeared and have not been found by the Court to be in default.

| ATTORNEY | PRO SE |
|---|---|
| NAME: Michael R. Grimm, Sr. | NAME: |
| ATTORNEY FOR: Defendants | ADDRESS: |
| ADDRESS: Clausen Miller P.C., 10 So. LaSalle | CITY/STATE/ZIP: |
| CITY/STATE/ZIP: Chicago, Illinois 60603 | TELEPHONE: |
| TELEPHONE: 312-855-1010 | INSURANCE COMPANY: |
| INSURANCE COMPANY: | ATTORNEY NUMBER 99500 |
| ATTORNEY NUMBER: 90181 | |

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

(Rev. 4/12/01)  CCL 0530

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

HARRIS N.A., et al.,
$\overline{\hspace{3cm}}$
**Plaintiffs**

v.

PASQUINELLI HOMEBUILDING, LLC, et al.,
$\overline{\hspace{3cm}}$
**Defendants**

No. 2010 L 006909

Calendar: Q

## APPEARANCE

☑ **GENERAL APPEARANCE** 0900 - APPEARANCE - FEE PAID; 0909 - APPEARANCE - NO FEE;
0904 - APPEARANCE FILED - FEE WAIVED

☐ **SPECIAL AND LIMITED APPEARANCE** 0905 - SPECIAL APPEARANCE - FEE PAID
0906 - SPECIAL APPEARANCE - NO FEE

☐ **JURY DEMAND** 1900 - APPEARANCE & JURY DEMAND FEE PAID; 1909 APPEARANCE & JURY DEMAND NO FEE

The undersigned enters the appearance of: ☐ Plaintiff ☑ Defendants

Pasquinelli Homebuilding, LLC, Bruno A. Pasquinelli, Anthony R. Pasquinelli,
$\overline{\hspace{8cm}}$
**(INSERT LITIGANT'S NAME)**

Bruno H. Pasquinelli, Christine Pasquinelli and Maria Pasquinelli

$\overline{\hspace{6cm}}$
**SIGNATURE**

☑ **INITIAL COUNSEL OF RECORD** ☐ **PRO SE**

☐ **ADDITIONAL APPEARANCE** ☐ **SUBSTITUTE APPEARANCE**

A copy of this appearance shall be given to all parties who have appeared and have not been found by the Court to be in default.

**ATTORNEY**                                      **PRO SE**
Bruce Sperling and Mitchell Macknin
NAME: Sperling & Slater, P.C.                    NAME: _____

ATTORNEY FOR: Certain defendants                 ADDRESS: _____

ADDRESS: 55 W. Monroe Street, Suite 3200         CITY/STATE/ZIP: _____

CITY/STATE/ZIP: Chicago, IL 60603                TELEPHONE: _____

TELEPHONE: 312-641-3200                          INSURANCE COMPANY: _____

INSURANCE COMPANY: _____                  ATTORNEY NUMBER 99500

ATTORNEY NUMBER: 22288

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

## CERTIFICATE OF SERVICE

I, Mitchell H. Macknin, an attorney, hereby certify that on July 16, 2010, I caused a true and correct copy of the attached **Appearance** to be served on the persons listed below by U.S. Mail:

James Heiser, Esq.
Chapman and Cutler, LLP
111 West Monroe Street
Chicago, IL 60603

Michael R. Grimm, Sr., Esq.
Clausen Miller, P.C.
10 S. LaSalle Street, 16th Floor
Chicago, IL 60603

Mitchell H. Macknin

**(Rev. 4/12/01) CCL 0530**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

HARRIS, N.A. and BMO CAPITAL MARKETS
**Plaintiff**

v.

PASQUINELLI HOMEBUILDING LLC, et al.
**Defendant**

No. 2010 L 006909

Calendar: Q - Judge Bill Taylor

### ADDITIONAL APPEARANCE

☑ **GENERAL APPEARANCE** 0900 - APPEARANCE - FEE PAID; 0909 - APPEARANCE - NO FEE;
　　　　　　　　　　　　　　　　0904 - APPEARANCE FILED - FEE WAIVED

☐ **SPECIAL AND LIMITED APPEARANCE** 0905 - SPECIAL APPEARANCE - FEE PAID
　　　　　　　　　　　　　　　　　　　　　　　0906 - SPECIAL APPEARANCE - NO FEE

☑ **JURY DEMAND** 1900 - APPEARANCE & JURY DEMAND FEE PAID; 1909 APPEARANCE & JURY DEMAND NO FEE

The undersigned enters the appearance of: ☐ Plaintiff ☑ Defendant

Pasquinelli Management LLC; Pasquinelli Financial LLC; Pasquinelli Homebuilding L.P.; Pasquinelli Homebuilding Trust; Pasquinelli Family Foundation; ARP 1989 Family Trust; ARP 2003 Trust; BAP 1989 Family Trust; BAP 2003 Trust; Anthony J. Pasquinelli; David Pasquinelli; Joseph Pasquinelli; Ellen Pasquinelli; Ann Marie Pasquinelli; Joan Pasquinelli; Sally Pasquinelli, Trustee; Betsy Pasquinelli; John Pasquinelli; Maryann Pasquinelli, Trustee; B & A Homes LLC.

(INSERT LITIGANT'S NAME)

SIGNATURE

☐ **INITIAL COUNSEL OF RECORD** ☐ **PRO SE**

☑ **ADDITIONAL APPEARANCE** ☐ **SUBSTITUTE APPEARANCE**

A copy of this appearance shall be given to all parties who have appeared and have not been found by the Court to be in default.

| ATTORNEY | PRO SE |
|---|---|
| NAME: Harvey R. Herman | NAME: |
| ATTORNEY FOR: Defendants | ADDRESS: |
| ADDRESS: Clausen Miller PC, 10 So. LaSalle Street | CITY/STATE/ZIP: |
| CITY/STATE/ZIP: Chicago, Illinois 60603 | TELEPHONE: |
| TELEPHONE: 312-855-1010 | INSURANCE COMPANY: |
| INSURANCE COMPANY: | ATTORNEY NUMBER 99500 |
| ATTORNEY NUMBER: 90181 | |

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

STATE OF ILLINOIS    )
                      )   SS

COUNTY OF COOK    )

## AFFIDAVIT OF SERVICE

The undersigned, after being duly sworn, deposes and says that she served a copy of the

above and foregoing Notice of Filing, together with a copy of the documents therein referred, to

each party to whom this notice is directed, by First Class mail, postage prepaid, at 10 South

LaSalle Street, Chicago, Illinois at 5:00 P.M. on the 19th day of July, 2010.

Subscribed and sworn to before me

this 19th day of July, 2010.

Notary Public

OFFICIAL SEAL
JOSEPHINE RUGGIRELLO
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 06/24/2013

2

1314030.1

Affidavit of Special Process Server                 CCG N060-10M-2/24/05 (         )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

County _____ DEPARTMENT, Law Division _____
(County)           (Municipal)         (Division)         (District)

No. 2010L006909

### AFFIDAVIT OF SPECIAL PROCESS SERVER

_____ Jeff Brown _____ being first

duly sworn on oath deposes and says that s/he was appointed by the Court on June 14, 2010 _____, _____
to serve process in the above mentioned cause.

I.    That s/he served the within summons and a copy of the complaint on the within named Defendant, _____

     by leaving a copy of each with the said Defendant personally on _____, _____.

II.    That s/he served the within summons and a copy of the complaint on the within named Defendant, Anthony J. Pasquinelli _____ by leaving a copy of each at his/her usual place of abode with Roxane Pasquinelli-wife _____ a person of the family of the age of 13 years or upwards and informed that person of the content thereof on June 20, 2010 _____, _____, and that further s/he mailed a copy of each in a sealed envelope with postage prepaid addressed to the Defendant, Anthony J. Pasquinelli at his/her usual place of abode on June 21, 2010 _____, _____.

III. (a) That the sex, race and approximate age of the Defendant or other person with whom s/he left the summons are as follows: Sex F _____ Race W _____ Approximate Age 35

     (b) That the place where (if possible in terms of an exact street address) and the date and time of the day when the summons was left with the Defendant or other person were as follows:

Place 78 Breakenridge Farm Street, Oak Brook, Il. 60523

Date June 20, 2010 _____, _____ Time of day 10:45a.m. _____. m.

CC VMW

IV. That s/he was unable to serve the within named Defendant.

_Jeff Brown_
Special Process Server Signature

Signed and sworn before me on this ___21st___ day of ___June___, 2010

"OFFICIAL SEAL"
LINDA M. STEMPLE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12/2/2010

_Linda M. Stemple_ Notary public

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ORIGINAL COURT FILE

| 2120 - Served | 2121 - Served | |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| **SUMMONS** | **ALIAS - SUMMONS** | (8/01/08) CCG N001 |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____ Law _____ DIVISION

No. _____

HARRIS N.A., and BMO CAPITAL MARKETS FINANCING, INC.
_____
**(Name all parties)**

v.

PASQUINELLI HOMEBUILDING LLC, BRUNO A. PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC, PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI HOMEBUILDING TRUST, PASQUINELLI FAMILY FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST, ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989 FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO B. PASQUINELLI, CHRISTINE PASQUINELLI, ELIZABETH PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI, JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA PASQUINELLI, ANN MARIE PASQUINELLI, JOAN PASQUINELLI, SALLY PASQUINELLI, as Trustee and MARYANN PASQUINELLI, as Trustee

**SUMMONS**

To:  Anthony J. Pasquinelli
78 Breakenridge Farm Street
Oak Brook, IL  60523

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room _____ 801 _____, Chicago, Illinois 60602

| ☐ | **District 2 - Skokie**<br>5600 Old Orchard Rd.<br>Skokie, IL  60077 | ☐ | **District 3 - Rolling Meadows**<br>2121 Euclid<br>Rolling Meadows, IL  60008 | ☐ | **District 4 - Maywood**<br>1500 Maybrook Ave.<br>Maywood, IL  60153 |
|---|---|---|---|---|---|
| ☐ | **District 5 - Bridgeview**<br>10220 S. 76th Ave.<br>Bridgeview, IL  60455 | ☐ | **District 6 - Markham**<br>16501 S. Kedzie Pkwy.<br>Markham, IL  60426 | ☐ | **Child Support**<br>28 North Clark St., Room 200<br>Chicago, Illinois  60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 90170

Name: James Heiser/Chapman and Cutler LLP

Atty. for: Harris N.A. and BMO Capital Markets Financing, Inc.

Address: 111 W. Monroe Street

City/State/Zip: Chicago, IL  60603-4080

Telephone: (312) 845-3000

WITNESS, _____, ____

_____
**Clerk of Court**

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____

(Area Code)    (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Affidavit of Special Process Server                                    CCG N060-10M-2/24/05 (            )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

County _____ DEPARTMENT, Law Division _____
  (County)                           (Municipal)                     (Division)                (District)

No. 2010L006909

### AFFIDAVIT OF SPECIAL PROCESS SERVER

_____ Jerry Brown _____ being first

duly sworn on oath deposes and says that s/he was appointed by the Court on June 14, 2010 _____,
to serve process in the above mentioned cause.

I.    That s/he served the within summons and a copy of the complaint on the within named Defendant, _____

      _____

      by leaving a copy of each with the said Defendant personally on _____, _____.

II.   That s/he served the within summons and a copy of the complaint on the within named Defendant, _____

      _____ by leaving a copy of each at his/her usual place of abode with

      _____ a person of the family of the age of 13 years or upwards and informed

      that person of the content thereof on _____, _____, and that further s/he mailed a

      copy of each in a sealed envelope with postage prepaid addressed to the Defendant, _____

      at his/her usual place of abode on _____, _____ .

III. (a) That the sex, race and approximate age of the Defendant or other person with whom s/he left the summons

      are as follows: Sex _____ Race _____ Approximate Age _____

   (b) That the place where (if possible in terms of an exact street address) and the date and time of the day when the
      summons was left with the Defendant or other person were as follows:

      Place _____

      Date _____, _____ Time of day _____ . m.

IV.  That s/he was unable to serve the within named Defendant, Bruno A. Pasquinelli. No contact was
made with Bruno A. Pasquinelli at 50 East Bellevue Place,
Chicago, Il. Attempts were made on July 10 and 14, 2010 _____
                                               Special Process Server Signature

Signed and sworn before me on this _____15th_____ day of ____July____, 2010.

"OFFICIAL SEAL"
ELAINE J. JOZEFOWICZ
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 2/22/2011

                                                Notary public

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **SUMMONS** | **ALIAS - SUMMONS** |

(8/01/08) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____Law_____ DIVISION

No. _____

HARRIS N.A., and BMO CAPITAL MARKETS FINANCING, INC.
**(Name all parties)**

v.

PASQUINELLI HOMEBUILDING LLC, BRUNO A. PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC, PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI HOMEBUILDING TRUST, PASQUINELLI FAMILY FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST, ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989 FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H. PASQUINELLI, CHRISTINE PASQUINELLI, ELIZABETH PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI, JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA PASQUINELLI, ANN MARIE PASQUINELLI, JOAN PASQUINELLI, SALLY PASQUINELLI, as Trustee and MARYANN PASQUINELLI, as Trustee

**SUMMONS**

To: Bruno A. Pasquinelli
50 East Bellevue Place
Apt. 2705
Chicago, Illinois 60611

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room __801__, Chicago, Illinois 60602

☐ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

☐ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

☐ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

☐ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

**You must file within 30 days after service of this Summons, not counting the day of service.**
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: __90170__

Name: __James Heiser/Chapman and Cutler LLP__

Atty. for: __Harris N.A. and BMO Capital Markets Financing, Inc.__

Address: __111 W. Monroe Street__

City/State/Zip: __Chicago, IL 60603-4080__

Telephone: __(312) 845-3000__

WITNESS, _____

_____
**Clerk of Court**

Date of service: _____,
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Affidavit of Special Process Server                                    CCG N060-10M-2/24/05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

County _____ _____ DEPARTMENT, Law Division
   **(County)**            **(Municipal)**                   **(Division)**           **(District)**

No. 2010L006909

### AFFIDAVIT OF SPECIAL PROCESS SERVER

Jeff Brown _____ being first

duly sworn on oath deposes and says that s/he was appointed by the Court on June 14, 2010 _____ , _____
to serve process in the above mentioned cause.

I.   That s/he served the within summons and a copy of the complaint on the within named Defendant, Pasquinelli
    Financial LLC c/o Bruno A. Pasquinelli, as Registered Agent-service was made on Peggy Kesserlis, Executive
    by leaving a copy of each with the said Defendant personally on Assistant         on June 21 , 2010   .

II.   That s/he served the within summons and a copy of the complaint on the within named Defendant, _____
    _____ by leaving a copy of each at his/her usual place of abode with
    _____ a person of the family of the age of 13 years or upwards and informed
    that person of the content thereof on _____, _____, and that further s/he mailed a
    copy of each in a sealed envelope with postage prepaid addressed to the Defendant, _____
    at his/her usual place of abode on _____, _____.

III. (a) That the sex, race and approximate age of the Defendant or other person with whom s/he left the summons
      are as follows:  Sex F _____    Race W _____    Approximate Age 25
    (b) That the place where (if possible in terms of an exact street address) and the date and time of the day when the
      summons was left with the Defendant or other person were as follows:

    Place 535 Plainfield Rd., Willowbrook, Il. 60527

    Date June 21, 2010 _____, _____    Time of day 11:30a.m. _____ . m.

IV.   That s/he was unable to serve the within named Defendant.

_____
Special Process Server Signature

Signed and sworn before me on this ____22ND____ day of ____June____ , 2010

"OFFICIAL SEAL"
LINDA M. STEMPLE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12/2/2010

_Linda M Stemple_   Notary public

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ORIGINAL COURT FILE

| 2120 - Served | 2121 - Served |
|---|---|
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **SUMMONS** | **ALIAS - SUMMONS** |

(8/01/08) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____Law_____ DIVISION

No. _____

HARRIS N.A., and BMO CAPITAL MARKETS FINANCING, INC.
_____
(Name all parties)

v.

PASQUINELLI HOMEBUILDING LLC, BRUNO A. PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC, PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI HOMEBUILDING TRUST, PASQUINELLI FAMILY FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST, ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989 FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H. PASQUINELLI, CHRISTINE PASQUINELLI, ELIZABETH PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI, JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA PASQUINELLI, ANN MARIE PASQUINELLI, JOAN PASQUINELLI, SALLY PASQUINELLI, as Trustee and MARYANN PASQUINELLI, as Trustee

To: Pasquinelli Financial LLC
c/o Bruno A. Pasquinelli,
 as Registered Agent
535 Plainfield Road, Unit B
Willowbrook, Illinois 60527

**SUMMONS**

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ **Richard J. Daley Center, 50 W. Washington, Room** __801__ **, Chicago, Illinois 60602**

☐ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

☐ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

☐ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

☐ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

**You must file within 30 days after service of this Summons, not counting the day of service.**
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: __90170__

Name: __James Heiser/Chapman and Cutler LLP__

Atty. for: __Harris N.A. and BMO Capital Markets Financing, Inc.__

Address: __111 W. Monroe Street__

City/State/Zip: __Chicago, IL 60603-4080__

Telephone: __(312) 845-3000__

Service by Facsimile Transmission will be accepted at: _____

WITNESS, _____, _____

_____
Clerk of Court

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

_____
(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Affidavit of Special Process Server                    CCG N060-10M-2/24/05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

County _____ DEPARTMENT, Law Division _____

(County)              (Municipal)              (Division)              (District)

No. 2010L006909

## AFFIDAVIT OF SPECIAL PROCESS SERVER

Jeff Brown _____ being first

duly sworn on oath deposes and says that s/he was appointed by the Court on June 14, 2010 _____ , _____
to serve process in the above mentioned cause.

I.  That s/he served the within summons and a copy of the complaint on the within named Defendant, _____

    _____

    by leaving a copy of each with the said Defendant personally on _____ , _____ .

II. That s/he served the within summons and a copy of the complaint on the within named Defendant, Ellen
    Pasquinelli _____ by leaving a copy of each at his/her usual place of abode with
    Mary Ann Pasquinelli-mother _____ a person of the family of the age of 13 years or upwards and informed
    that person of the content thereof on June 21, 2010 _____ , _____ , and that further s/he mailed a
    copy of each in a sealed envelope with postage prepaid addressed to the Defendant, Ellen Pasquinelli
    at his/her usual place of abode on June 22, 2010 _____ , _____ .

III. (a) That the sex, race and approximate age of the Defendant or other person with whom s/he left the summons
     are as follows:  Sex F _____    Race W _____    Approximate Age 70

     (b) That the place where (if possible in terms of an exact street address) and the date and time of the day when the
     summons was left with the Defendant or other person were as follows:

     Place 411 N. Monroe Street, Hinsdale, Il. 60521

     Date June 21, 2010 _____ , _____    Time of day 11:50a.m. _____ . m.

IV.  That s/he was unable to serve the within named Defendant.

_____
Special Process Server Signature

Signed and sworn before me on this 22ND day of _____ JUNE , 2010

_____ Notary public

"OFFICIAL SEAL"
LINDA M. STEMPLE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ORIGINAL COURT FILE

| 2120 - Served | 2121 - Served | |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| **SUMMONS** | **ALIAS - SUMMONS** | (8/01/08) CCG N001 |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____Law_____ DIVISION

No. _____

HARRIS N.A., and BMO CAPITAL MARKETS FINANCING, INC.
_____
(Name all parties)

v.

PASQUINELLI HOMEBUILDING LLC, BRUNO A. PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC, PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI HOMEBUILDING TRUST, PASQUINELLI FAMILY FOUNDATION, E&A HOMES, LLC, ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989 FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H. PASQUINELLI, CHRISTINE PASQUINELLI, ELIZABETH PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI, JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA PASQUINELLI, ANN MARIE PASQUINELLI, JOAN PASQUINELLI, SALLY PASQUINELLI, as Trustee and MARYANN PASQUINELLI, as Trustee

To: Ellen Pasquinelli
411 S. Monroe Street
Hinsdale, Illinois 60521

**SUMMONS**

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room ____801____, Chicago, Illinois 60602

☐ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

☐ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

☐ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

☐ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: _90170_

Name: _James Heiser/Chapman and Cutler LLP_

Atty. for: _Harris N.A. and BMO Capital Markets Financing, Inc._

Address: _111 W. Monroe Street_

City/State/Zip: _Chicago, IL 60603-4080_

Telephone: _(312) 845-3000_

WITNESS, _____, _____

_____
Clerk of Court

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Affidavit of Special Process Server                    CCG N060-10M-2/24/05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

County _____ DEPARTMENT, Law Division

(County)      (Municipal)      (Division)      (District)

No. 2010L006909

### AFFIDAVIT OF SPECIAL PROCESS SERVER

Jeff Brown _____ being first

duly sworn on oath deposes and says that s/he was appointed by the Court on June 14, 2010 _____, _____
to serve process in the above mentioned cause.

I. That s/he served the within summons and a copy of the complaint on the within named Defendant, David C. Pasquinelli

by leaving a copy of each with the said Defendant personally on June 24, 2010 _____, _____.

II. That s/he served the within summons and a copy of the complaint on the within named Defendant, _____

_____ by leaving a copy of each at his/her usual place of abode with

_____ a person of the family of the age of 13 years or upwards and informed

that person of the content thereof on _____, _____, and that further s/he mailed a

copy of each in a sealed envelope with postage prepaid addressed to the Defendant, _____

at his/her usual place of abode on _____, _____.

III. (a) That the sex, race and approximate age of the Defendant or other person with whom s/he left the summons
are as follows: Sex M     Race W     Approximate Age 46

(b) That the place where (if possible in terms of an exact street address) and the date and time of the day when the
summons was left with the Defendant or other person were as follows:

Place 4345 Hampton Avenue, Western Springs, Il. 60558

Date June 24, 2010 _____, _____ Time of day 7:55p.m. _____. m.

IV. That s/he was unable to serve the within named Defendant.

_____
Special Process Server Signature

Signed and sworn before me on this ___28___ day of ____June____, 2010

_____ Notary public

"OFFICIAL SEAL"
LINDA M. STEMPLE
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXPIRES ...........

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ORIGINAL COURT FILE

| 2120 - Served | 2121 - Served | |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| **SUMMONS** | **ALIAS - SUMMONS** | (8/01/08) CCG N001 |

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

COUNTY DEPARTMENT, _____Law_____ DIVISION

No. _____

HARRIS N.A., and BMO CAPITAL MARKETS FINANCING, INC.
_____
**(Name all parties)**

v.

PASQUINELLI HOMEBUILDING LLC, BRUNO A. PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC, PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI HOMEBUILDING TRUST, PASQUINELLI FAMILY FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST, ARP 1989 FAMILY TRUST, BAF 2003 TRUST, BAP 1989 FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H. PASQUINELLI, CHRISTINE PASQUINELLI, ELIZABETH PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI, JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA PASQUINELLI, ANN MARIE PASQUINELLI, JOAN PASQUINELLI, SALLY PASQUINELLI, as Trustee and MARYANN PASQUINELLI, as Trustee

To: David C. Pasquinelli
4345 Hampton Avenue #261
Western Springs, IL 60558-1378

**SUMMONS**

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room ____801____, Chicago, Illinois 60602

| ☐ **District 2 - Skokie** | ☐ **District 3 - Rolling Meadows** | ☐ **District 4 - Maywood** |
|---|---|---|
| 5600 Old Orchard Rd. | 2121 Euclid | 1500 Maybrook Ave. |
| Skokie, IL 60077 | Rolling Meadows, IL 60008 | Maywood, IL 60153 |
| ☐ **District 5 - Bridgeview** | ☐ **District 6 - Markham** | ☐ **Child Support** |
| 10220 S. 76th Ave. | 16501 S. Kedzie Pkwy. | 28 North Clark St., Room 200 |
| Bridgeview, IL 60455 | Markham, IL 60426 | Chicago, Illinois 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: __90170__

Name: __James Heiser/Chapman and Cutler LLP__

Atty. for: __Harris N.A. and BMO Capital Markets Financing, Inc.__

Address: __111 W. Monroe Street__

City/State/Zip: __Chicago, IL 60603-4080__

Telephone: __(312) 845-3000__

Service by Facsimile Transmission will be accepted at: _____

WITNESS, _____, _____

_____
**Clerk of Court**

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Affidavit of Special Process Server                    CCG N060-10M-2/24/05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

County _____ DEPARTMENT, Law Division _____

(County)                    (Municipal)                    (Division)                    (District)

No. 2010L006909

## AFFIDAVIT OF SPECIAL PROCESS SERVER

Jeff Brown _____ being first

duly sworn on oath deposes and says that s/he was appointed by the Court on June 14, 2010 _____, _____
to serve process in the above mentioned cause.

I.     That s/he served the within summons and a copy of the complaint on the within named Defendant, Ann Marie Pasquinelli

by leaving a copy of each with the said Defendant personally on June 26, 2010 _____, _____.

II.    That s/he served the within summons and a copy of the complaint on the within named Defendant, _____
_____ by leaving a copy of each at his/her usual place of abode with
_____ a person of the family of the age of 13 years or upwards and informed
that person of the content thereof on _____, _____, and that further s/he mailed a
copy of each in a sealed envelope with postage prepaid addressed to the Defendant,
at his/her usual place of abode on _____, _____.

III.   (a) That the sex, race and approximate age of the Defendant or other person with whom s/he left the summons
       are as follows: Sex F     Race W _____ Approximate Age 43
       (b) That the place where (if possible in terms of an exact street address) and the date and time of the day when the
       summons was left with the Defendant or other person were as follows:

       Place 3139 Kingbird Lane, Naperville, Il. 60564

       Date June 26, 2010 _____, _____ Time of day 9:55a.m. _____. m.

IV.    That s/he was unable to serve the within named Defendant.

_____
Special Process Server Signature

Signed and sworn before me on this _____29th_____ day of _____June_____, _____2010_____

_____ Notary public

"OFFICIAL SEAL"
ELAINE J. JOZEFOWICZ
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 2/24/2012

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ORIGINAL COURT FILE

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | |
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| **SUMMONS** | **ALIAS - SUMMONS** | **(8/01/08) CCG N001** |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____Law_____ DIVISION

No. _____

HARRIS N.A., and BMO CAPITAL MARKETS FINANCING, INC.
_____
(Name all parties)

v.

PASQUINELLI HOMEBUILDING LLC, BRUNO A. PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC, PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI HOMEBUILDING TRUST, PASQUINELLI FAMILY FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST, ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989 FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO B. PASQUINELLI, CHRISTINE PASQUINELLI, ELIZABETH PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI, JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA PASQUINELLI, ANN MARIE PASQUINELLI, JOAN PASQUINELLI, SALLY PASQUINELLI, as Trustee and MARYANN PASQUINELLI, as Trustee

**SUMMONS**

To: Ann Marie Pasquinelli
3139 Kingbird Lane
Naperville, IL 60564-4918

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

[✓] Richard J. Daley Center, 50 W. Washington, Room ___801___, Chicago, Illinois 60602

[ ] **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

[ ] **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

[ ] **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

[ ] **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

[ ] **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60426

[ ] **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: _90170_

Name: _James Heiser/Chapman and Cutler LLP_

Atty. for: _Harris N.A. and BMO Capital Markets Financing, Inc._

Address: _111 W. Monroe Street_

City/State/Zip: _Chicago, IL 60603-4080_

Telephone: _(312) 845-3000_

WITNESS, _____ JUN 14 2010

_____
Clerk of Court

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____

_____
(Area Code)    (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

**Affidavit of Special Process Server**                    CCG N060-10M-2/24/05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

County _____ DEPARTMENT, Law Division _____
(County)                    (Municipal)                    (Division)                    (District)

No. 201L006909 _____

### AFFIDAVIT OF SPECIAL PROCESS SERVER

Jeff Brown _____ being first

duly sworn on oath deposes and says that s/he was appointed by the Court on June 14, 2010 _____, _____
to serve process in the above mentioned cause.

I.   That s/he served the within summons and a copy of the complaint on the within named Defendant, Anthony R.
     Pasquinelli-service was made on Peggy Kesserlis

     by leaving a copy of each with the said Defendant personally on July 6, 2010 _____, _____.

II.  That s/he served the within summons and a copy of the complaint on the within named Defendant, _____
     _____ by leaving a copy of each at his/her usual place of abode with
     _____ a person of the family of the age of 13 years or upwards and informed
     that person of the content thereof on _____, _____, and that further s/he mailed a
     copy of each in a sealed envelope with postage prepaid addressed to the Defendant, _____
     at his/her usual place of abode on _____, _____.

III. (a) That the sex, race and approximate age of the Defendant or other person with whom s/he left the summons
     are as follows:  Sex F _____    Race W _____    Approximate Age 25 _____
     (b) That the place where (if possible in terms of an exact street address) and the date and time of the day when the
     summons was left with the Defendant or other person were as follows:

     Place 535 Plainfield Rd., Willowbrook, Il.

     Date July 6, 2010 _____, _____    Time of day 10:00a.m. _____. m.

IV.  That s/he was unable to serve the within named Defendant.

_____
Special Process Server Signature

Signed and sworn before me on this 7th _____ day of July _____, 2010

_____ Notary public

OFFICIAL SEAL
NORMA HAAS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/21/13

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ORIGINAL COURT FILE

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **SUMMONS** | **ALIAS - SUMMONS** |

(8/01/08) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____Law_____ DIVISION

No. _____

HARRIS N.A., and BMO CAPITAL MARKETS FINANCING, INC.
_____
**(Name all parties)**

v.

PASQUINELLI HOMEBUILDING LLC, BRUNO A. PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC, PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI HOMEBUILDING TRUST, PASQUINELLI FAMILY FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST, ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989 FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H. PASQUINELLI, CHRISTINE PASQUINELLI, ELIZABETH PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI, JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA PASQUINELLI, ANN MARIE PASQUINELLI, JOAN PASQUINELLI, SALLY PASQUINELLI, as Trustee and MARYANN PASQUINELLI, as Trustee

**SUMMONS**

To: Anthony R. Pasquinelli
1205 Fletcher Street, #G
Chicago, IL 60657-3210

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room ____801____, Chicago, Illinois 60602

| | | | | | |
|---|---|---|---|---|---|
| ☐ | **District 2 - Skokie**<br>5600 Old Orchard Rd.<br>Skokie, IL 60077 | ☐ | **District 3 - Rolling Meadows**<br>2121 Euclid<br>Rolling Meadows, IL 60008 | ☐ | **District 4 - Maywood**<br>1500 Maybrook Ave.<br>Maywood, IL 60153 |
| ☐ | **District 5 - Bridgeview**<br>10220 S. 76th Ave.<br>Bridgeview, IL 60455 | ☐ | **District 6 - Markham**<br>16501 S. Kedzie Pkwy.<br>Markham, IL 60426 | ☐ | **Child Support**<br>28 North Clark St., Room 200<br>Chicago, Illinois 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 90170

Name: James Heiser/Chapman and Cutler LLP

Atty. for: Harris N.A. and BMO Capital Markets Financing, Inc.

Address: 111 W. Monroe Street

City/State/Zip: Chicago, IL 60603-4080

Telephone: (312) 845-3000

Service by Facsimile Transmission will be accepted at: _____

WITNESS, _____, _____

_____
**Clerk of Court**

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

_____
(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Affidavit of Special Process Server                    CCG N060-10M-2/24/05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

County _____          DEPARTMENT, Law Division _____
  (County)                    (Municipal)                    (Division)                    (District)

No. 2010L006909 _____

### AFFIDAVIT OF SPECIAL PROCESS SERVER

Jeff Brown _____ being first

duly sworn on oath deposes and says that s/he was appointed by the Court on June 14, 2010 _____, _____
to serve process in the above mentioned cause.

I.   That s/he served the within summons and a copy of the complaint on the within named Defendant, _____

_____

by leaving a copy of each with the said Defendant personally on _____, _____.

II.  That s/he served the within summons and a copy of the complaint on the within named Defendant, Joan T.
Pasquinelli _____ by leaving a copy of each at his/her usual place of abode with
a white male, name not obtained-husband _____ a person of the family of the age of 13 years or upwards and informed
that person of the content thereof on June 27, 2010 _____, _____, and that further s/he mailed a
copy of each in a sealed envelope with postage prepaid addressed to the Defendant, Joan T. Pasquinelli
at his/her usual place of abode on June 28, 2010 _____, _____.

III. (a) That the sex, race and approximate age of the Defendant or other person with whom s/he left the summons
     are as follows:  Sex M _____    Race W _____    Approximate Age 43 _____

    (b) That the place where (if possible in terms of an exact street address) and the date and time of the day when the
    summons was left with the Defendant or other person were as follows:

    Place 2646 1st Private Drive, Flossmoor, Il.

    Date June 27, 2010 _____, _____    Time of day 7:35p.m. _____. m.

IV. That s/he was unable to serve the within named Defendant.

_____
Special Process Server Signature

Signed and sworn before me on this ____29th____ day of _____June_____, 2010

_____ Notary public

"OFFICIAL SEAL"
ELAINE J. JOZEFOWICZ
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 2/22/2011

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ORIGINAL COURT FILE

| | | | |
|---|---|---|---|
| 2120 - Served | 2121 - Served | |
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| **SUMMONS** | **ALIAS - SUMMONS** | **(8/01/08) CCG N001** |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____Law_____ DIVISION

No. _____

HARRIS N.A., and BMO CAPITAL MARKETS FINANCING, INC.

(Name all parties)

v.

PASQUINELLI HOMEBUILDING LLC, BRUNO A. PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC, PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI HOMEBUILDING TRUST, PASQUINELLI FAMILY FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST, ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989 FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H. PASQUINELLI, CHRISTINE PASQUINELLI, ELIZABETH PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI, JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA PASQUINELLI, ANN MARIE PASQUINELLI, JOAN PASQUINELLI, SALLY PASQUINELLI, as Trustee and MARYANN PASQUINELLI, as Trustee

To: Joan T. Pasquinelli
852 Bruce Avenue
Flossmoor, Illinois 60422

**SUMMONS**

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room ____801____, Chicago, Illinois 60602

| ☐ | **District 2 - Skokie**<br>5600 Old Orchard Rd.<br>Skokie, IL 60077 | ☐ | **District 3 - Rolling Meadows**<br>2121 Euclid<br>Rolling Meadows, IL 60008 | ☐ | **District 4 - Maywood**<br>1500 Maybrook Ave.<br>Maywood, IL 60153 |
|---|---|---|---|---|---|
| ☐ | **District 5 - Bridgeview**<br>10220 S. 76th Ave.<br>Bridgeview, IL 60455 | ☐ | **District 6 - Markham**<br>16501 S. Kedzie Pkwy.<br>Markham, IL 60426 | ☐ | **Child Support**<br>28 North Clark St., Room 200<br>Chicago, Illinois 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

JUN 14 2010

Atty. No.: _90170_

WITNESS, _____, ____

Name: James Heiser/Chapman and Cutler LLP

Atty. for: Harris N.A. and BMO Capital Markets Financing, Inc.

_____
**Clerk of Court**

Address: 111 W. Monroe Street

City/State/Zip: Chicago, IL 60603-4080

Date of service: _____, ____

Telephone: (312) 845-3000

(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____

(Area Code) (Facsimile Telephone Number)

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Affidavit of Special Process Server        CCG N060-10M-2/24/05 (        )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

County _____ DEPARTMENT, Law Division _____

(County)                (Municipal)            (Division)            (District)

No. 2010L006909

### AFFIDAVIT OF SPECIAL PROCESS SERVER

_____ Jeff Brown _____ being first

duly sworn on oath deposes and says that s/he was appointed by the Court on June 14, 2010 _____, _____
to serve process in the above mentioned cause.

I.    That s/he served the within summons and a copy of the complaint on the within named Defendant, Pasquinelli
Homebuilding, LLC c/o Bruno A. Pasquinelli as Registered Agent-service was made on Peggy Kesserlis,
by leaving a copy of each with the said Defendant personally on Executive Assistant    on June 21 , 2010 .

II.    That s/he served the within summons and a copy of the complaint on the within named Defendant, _____
_____ by leaving a copy of each at his/her usual place of abode with
_____ a person of the family of the age of 13 years or upwards and informed
that person of the content thereof on _____, _____, and that further s/he mailed a
copy of each in a sealed envelope with postage prepaid addressed to the Defendant, _____
at his/her usual place of abode on _____, _____.

III. (a) That the sex, race and approximate age of the Defendant or other person with whom s/he left the summons
are as follows:   Sex F _____    Race W _____     Approximate Age 25 _____
(b) That the place where (if possible in terms of an exact street address) and the date and time of the day when the
summons was left with the Defendant or other person were as follows:

Place 535 Plainfield Rd., Willowbrook, Il. 60527 _____

Date June 21, 2010 _____, _____    Time of day 11:30a.m. _____, . m.

IV.    That s/he was unable to serve the within named Defendant.

_____
Special Process Server Signature

Signed and sworn before me on this   22nd   day of   June  , 2010

_____ Notary public

"OFFICIAL SEAL"
LINDA M STEMPLE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ORIGINAL COURT FILE

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **SUMMONS** | **ALIAS - SUMMONS** |

(8/01/08) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____Law_____ DIVISION

No. _____

HARRIS N.A., and BMO CAPITAL MARKETS FINANCING, INC.

**(Name all parties)**

v.

PASQUINELLI HOMEBUILDING LLC, BRUNO A. PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC, PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI HOMEBUILDING TRUST, PASQUINELLI FAMILY FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST, ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989 FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H. PASQUINELLI, CHRISTINE PASQUINELLI, ELIZABETH PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI, JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA PASQUINELLI, ANN MARIE PASQUINELLI, JOAN PASQUINELLI, SALLY PASQUINELLI, as Trustee and MARYANN PASQUINELLI, as Trustee

To: Pasquinelli Homebuilding LLC
c/o Bruno A. Pasquinelli,
as Registered Agent
535 Plainfield Road, Unit B
Willowbrook, Illinois 60527

**SUMMONS**

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room ___801___, Chicago, Illinois 60602

☐ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

☐ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

☐ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

☐ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 90170

Name: James Heiser/Chapman and Cutler LLP

Atty. for: Harris N.A. and BMO Capital Markets Financing, Inc.

Address: 111 W. Monroe Street

City/State/Zip: Chicago, IL 60603-4080

Telephone: (312) 845-3000

WITNESS, _____ JUN 14 2010

_____
Clerk of Court

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Affidavit of Special Process Server          CCG N060-10M-2/24/05 (          )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

County                 DEPARTMENT, Law Division
| (County) | (Municipal) | (Division) | (District) |

No. 2010L006909

## AFFIDAVIT OF SPECIAL PROCESS SERVER

Jeff Brown                being first

duly sworn on oath deposes and says that s/he was appointed by the Court on June 14, 2010 , _____
to serve process in the above mentioned cause.

I.   That s/he served the within summons and a copy of the complaint on the within named Defendant, ARP 2003
Trust Joan Pasquinelli, as Trustee-service was made on Peggy Kesserlis

by leaving a copy of each with the said Defendant personally on June 28, 2010 , _____.

II.   That s/he served the within summons and a copy of the complaint on the within named Defendant, _____

_____ by leaving a copy of each at his/her usual place of abode with

_____ a person of the family of the age of 13 years or upwards and informed

that person of the content thereof on _____, _____, and that further s/he mailed a

copy of each in a sealed envelope with postage prepaid addressed to the Defendant, _____

at his/her usual place of abode on _____, _____.

III.  (a) That the sex, race and approximate age of the Defendant or other person with whom s/he left the summons
are as follows:   Sex F      Race W      Approximate Age 25

  (b) That the place where (if possible in terms of an exact street address) and the date and time of the day when the
summons was left with the Defendant or other person were as follows:

Place 535 Plainfield Road, Willowbrook, Il.

Date June 28, 2010 ,      Time of day 11:55a.m. / .m.

IV.   That s/he was unable to serve the within named Defendant.

_____
Special Process Server Signature

Signed and sworn before me on this 29th day of June , 2010

"OFFICIAL SEAL"
ELAINE J. JOZEFOWICZ
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 2/22/2011

Elaine J. Jozefowicz   Notary public

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ORIGINAL COURT FILE

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **SUMMONS** | **ALIAS - SUMMONS** |

(8/01/08) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____Law_____ DIVISION

No. _____

HARRIS N.A., and BMO CAPITAL MARKETS FINANCING, INC.
<u>(Name all parties)</u>

v.

PASQUINELLI HOMEBUILDING LLC, BRUNO A. PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC, PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI HOMEBUILDING TRUST, PASQUINELLI FAMILY FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST, ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989 FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO B. PASQUINELLI, CHRISTINE PASQUINELLI, ELIZABETH PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI, JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA PASQUINELLI, ANN MARIE PASQUINELLI, JOAN PASQUINELLI, SALLY PASQUINELLI, as Trustee and MARYANN PASQUINELLI, as Trustee

**SUMMONS**

To: ARP 2003 Trust
Joan Pasquinelli, as Trustee
1205 Fletcher Street, #G
Chicago, IL 60657-3210

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room ____801____, Chicago, Illinois 60602

| | | |
|---|---|---|
| ☐ **District 2 - Skokie**<br>5600 Old Orchard Rd.<br>Skokie, IL 60077 | ☐ **District 3 - Rolling Meadows**<br>2121 Euclid<br>Rolling Meadows, IL 60008 | ☐ **District 4 - Maywood**<br>1500 Maybrook Ave.<br>Maywood, IL 60153 |
| ☐ **District 5 - Bridgeview**<br>10220 S. 76th Ave.<br>Bridgeview, IL 60455 | ☐ **District 6 - Markham**<br>16501 S. Kedzie Pkwy.<br>Markham, IL 60426 | ☐ **Child Support**<br>28 North Clark St., Room 200<br>Chicago, Illinois 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: __90170__

Name: _James Heiser/Chapman and Cutler LLP_

Atty. for: _Harris N.A. and BMO Capital Markets Financing, Inc._

Address: __111 W. Monroe Street__

City/State/Zip: _Chicago, IL 60603-4080_

Telephone: _(312) 845-3000_

WITNESS, _____, _____

_____
Clerk of Court

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Affidavit of Special Process Server          CCG N060-10M-2/24/05 (          )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

County _____ DEPARTMENT, Law Division
(County)        (Municipal)        (Division)        (District)

No. 2010L006909

### AFFIDAVIT OF SPECIAL PROCESS SERVER

Jeff Brown _____, being first

duly sworn on oath deposes and says that s/he was appointed by the Court on June 14, 2010 _____, _____
to serve process in the above mentioned cause.

I. That s/he served the within summons and a copy of the complaint on the within named Defendant, BAP 1989 Family Trust c/o Sally A. Pasquinelli, as Trustee-service was made on Peggy Kesserlis

     by leaving a copy of each with the said Defendant personally on June 30, 2010 _____, _____.

II. That s/he served the within summons and a copy of the complaint on the within named Defendant, _____
_____ by leaving a copy of each at his/her usual place of abode with
_____ a person of the family of the age of 13 years or upwards and informed
that person of the content thereof on _____, _____, and that further s/he mailed a
copy of each in a sealed envelope with postage prepaid addressed to the Defendant, _____
at his/her usual place of abode on _____, _____.

III. (a) That the sex, race and approximate age of the Defendant or other person with whom s/he left the summons
are as follows: Sex F _____ Race W _____ Approximate Age 25

     (b) That the place where (if possible in terms of an exact street address) and the date and time of the day when the summons was left with the Defendant or other person were as follows:

Place 535 Plainfield Rd., Willowbrook, Il.

Date June 30, 2010 _____, Time of day 10:40a.m. _____. m.

IV. That s/he was unable to serve the within named Defendant.

_____
Special Process Server Signature

Signed and sworn before me on this ____ day of _____, 2010

OFFICIAL SEAL
NORMA HAAS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/21/13

_____ Notary public

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

ORIGINAL COURT FILE

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **SUMMONS** | **ALIAS - SUMMONS** |

(8/01/08) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____Law_____ DIVISION

No. _____

HARRIS N.A., and BMO CAPITAL MARKETS FINANCING, INC.
_____
(Name all parties)

v.

PASQUINELLI HOMEBUILDING LLC, BRUNO A. PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC, PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI HOMEBUILDING TRUST, PASQUINELLI FAMILY FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST, ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989 FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H. PASQUINELLI, CHRISTINE PASQUINELLI, ELIZABETH PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI, JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA PASQUINELLI, ANN MARIE PASQUINELLI, JOAN PASQUINELLI, SALLY PASQUINELLI, as Trustee and MARYANN PASQUINELLI, as Trustee

**SUMMONS**

To: BAP 1989 Family Trust
c/o Sally A. Pasquinelli, as Trustee
50 East Bellevue Place
Apt. 2705
Chicago, Illinois 60611

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ **Richard J. Daley Center, 50 W. Washington, Room** ___801___, **Chicago, Illinois 60602**

☐ **District 2 - Skokie**          ☐ **District 3 - Rolling Meadows**          ☐ **District 4 - Maywood**
5600 Old Orchard Rd.              2121 Euclid                              1500 Maybrook Ave.
Skokie, IL 60077                   Rolling Meadows, IL 60008                 Maywood, IL 60153

☐ **District 5 - Bridgeview**     ☐ **District 6 - Markham**                  ☐ **Child Support**
10220 S. 76th Ave.                16501 S. Kedzie Pkwy.                      28 North Clark St., Room 200
Bridgeview, IL 60455               Markham, IL 60426                         Chicago, Illinois 60602

**You must file within 30 days after service of this Summons, not counting the day of service.**
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: _90170_

Name: _James Heiser/Chapman and Cutler LLP_

Atty. for: _Harris N.A. and BMO Capital Markets Financing, Inc._

Address: _111 W. Monroe Street_

City/State/Zip: _Chicago, IL 60603-4080_

Telephone: _(312) 845-3000_

WITNESS, _____

_____
Clerk of Court

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
(Area Code)    (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Affidavit of Special Process Server        CCG N060-10M-2/24/05 (          )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

County
_____ DEPARTMENT, Law Division _____
(County)            (Municipal)          (Division)         (District)

No. 201L006909

## AFFIDAVIT OF SPECIAL PROCESS SERVER

Jeff Brown         being first

duly sworn on oath deposes and says that s/he was appointed by the Court on June 14, 2010 _____ , _____
to serve process in the above mentioned cause.

I.   That s/he served the within summons and a copy of the complaint on the within named Defendant, Maria Pasquinelli

by leaving a copy of each with the said Defendant personally on July 5, 2010 _____ , _____ .

II.   That s/he served the within summons and a copy of the complaint on the within named Defendant, _____
_____ by leaving a copy of each at his/her usual place of abode with
_____ a person of the family of the age of 13 years or upwards and informed
that person of the content thereof on _____ , _____ , and that further s/he mailed a
copy of each in a sealed envelope with postage prepaid addressed to the Defendant, _____
at his/her usual place of abode on _____ , _____ .

III.   (a) That the sex, race and approximate age of the Defendant or other person with whom s/he left the summons
      are as follows: Sex F          Race W          Approximate Age 45
      (b) That the place where (if possible in terms of an exact street address) and the date and time of the day when the
      summons was left with the Defendant or other person were as follows:

      Place   852 Bruce Avenue, Flossmoor, Il.

      Date July 5, 2010 _____ , _____    Time of day 8:05p.m. _____ . m.

IV.   That s/he was unable to serve the within named Defendant.

_____
Special Process Server Signature

Signed and sworn before me on this 7 _____ day of July _____ , 2010

OFFICIAL SEAL
NORMA HAAS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/21/13

_____ Notary public

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

ORIGINAL COURT FILE

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **SUMMONS** | **ALIAS - SUMMONS** |

(8/01/08) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____Law_____ DIVISION

No. _____

HARRIS N.A., and BMO CAPITAL MARKETS FINANCING, INC.

**(Name all parties)**

v.

PASQUINELLI HOMEBUILDING LLC, BRUNO A. PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC, PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI HOMEBUILDING TRUST, PASQUINELLI FAMILY FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST, ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989 FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H. PASQUINELLI, CHRISTINE PASQUINELLI, ELIZABETH PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI, JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA PASQUINELLI, ANN MARIE PASQUINELLI, JOAN PASQUINELLI, SALLY PASQUINELLI, as Trustee and MARYANN PASQUINELLI, as Trustee

**SUMMONS**

To: Maria Pasquinelli
3008 Kathleen Court
Homewood, Illinois 60430

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room ____801____, Chicago, Illinois 60602

☐ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

☐ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

☐ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

☐ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: _90170_

Name: _James Heiser/Chapman and Cutler LLP_

Atty. for: _Harris N.A. and BMO Capital Markets Financing, Inc._

Address: _111 W. Monroe Street_

City/State/Zip: _Chicago, IL 60603-4080_

Telephone: _(312) 845-3000_

WITNESS, _____, _____

_____
**Clerk of Court**

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____

(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Affidavit of Special Process Server                    CCG N060-10M-2/24/05 (                    )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

County _____ DEPARTMENT, Law Division
(County)                    (Municipal)                    (Division)                    (District)

No. 2010L006909

AFFIDAVIT OF SPECIAL PROCESS SERVER

Jeff Brown                                                           being first

duly sworn on oath deposes and says that s/he was appointed by the Court on June 14, 2010 _____, _____
to serve process in the above mentioned cause.

I.   That s/he served the within summons and a copy of the complaint on the within named Defendant, _____

     _____

     by leaving a copy of each with the said Defendant personally on _____, _____.

II.  That s/he served the within summons and a copy of the complaint on the within named Defendant, Joseph
     Pasquinelli _____ by leaving a copy of each at his/her usual place of abode with
     Marco Pasquinelli-son _____ a person of the family of the age of 13 years or upwards and informed
     that person of the content thereof on July 14, 2010 _____, _____, and that further s/he mailed a
     copy of each in a sealed envelope with postage prepaid addressed to the Defendant, Joseph Pasquinelli
     at his/her usual place of abode on July 15, 2010 _____, _____.

III. (a) That the sex, race and approximate age of the Defendant or other person with whom s/he left the summons
         are as follows:   Sex M _____   Race W _____   Approximate Age 19
     (b) That the place where (if possible in terms of an exact street address) and the date and time of the day when the
         summons was left with the Defendant or other person were as follows:

         Place 3825 Central, Western Springs, Il. _____

         Date July 14, 2010 _____, _____   Time of day 8:20p.m. _____. m.

IV.  That s/he was unable to serve the within named Defendant.

                                                   _____
                                                   Special Process Server Signature

Signed and sworn before me on this ___16th___ day of _____July_____, 2010

"OFFICIAL SEAL"
LINDA M. STEMPLE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES

_____ Notary public

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ORIGINAL COURT FILE

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | |
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| **SUMMONS** | **ALIAS - SUMMONS** | (8/01/08) CCG N001 |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____Law_____ DIVISION

No. _____

HARRIS N.A., and BMO CAPITAL MARKETS FINANCING, INC.
_____
(Name all parties)

v.

PASQUINELLI HOMEBUILDING LLC, BRUNO A. PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC, PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI HOMEBUILDING TRUST, PASQUINELLI FAMILY FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST, ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989 FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H. PASQUINELLI, CHRISTINE PASQUINELLI, ELIZABETH PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI, JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA PASQUINELLI, ANN MARIE PASQUINELLI, JOAN PASQUINELLI, SALLY PASQUINELLI, as Trustee and MARYANN PASQUINELLI, as Trustee

To: Joseph Pasquinelli
2016 W. Giddings Street
Chicago, Illinois 60625-1417

**SUMMONS**

### To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room ____801____, Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

### To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 90170
Name: James Heiser/Chapman and Cutler LLP
Atty. for: Harris N.A. and BMO Capital Markets Financing, Inc.
Address: 111 W. Monroe Street
City/State/Zip: Chicago, IL 60603-4080
Telephone: (312) 845-3000

WITNESS, _____, _____

_____
Clerk of Court

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
(Area Code)    (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Affidavit of Special Process Server                    CCG N060-10M-2/24/05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

County _____ DEPARTMENT, Law Division _____

(County)          (Municipal)          (Division)          (District)

No. 2010L006909

### AFFIDAVIT OF SPECIAL PROCESS SERVER

Jeff Brown _____ being first

duly sworn on oath deposes and says that s/he was appointed by the Court on June 14, 2010 _____, _____
to serve process in the above mentioned cause.

I.  That s/he served the within summons and a copy of the complaint on the within named Defendant, Pasquinelli
    Homebuilding, L.P. c/o Bruno A. Pasquinelli as Registered Agent-service was made on Peggy Kesserlis,
    by leaving a copy of each with the said Defendant personally on Executive Assistant on June 21, 2010.

II. That s/he served the within summons and a copy of the complaint on the within named Defendant, _____
    _____ by leaving a copy of each at his/her usual place of abode with
    _____ a person of the family of the age of 13 years or upwards and informed
    that person of the content thereof on _____, _____, and that further s/he mailed a
    copy of each in a sealed envelope with postage prepaid addressed to the Defendant, _____
    at his/her usual place of abode on _____, _____.

III. (a) That the sex, race and approximate age of the Defendant or other person with whom s/he left the summons
        are as follows:  Sex F _____   Race W _____   Approximate Age 25
     (b) That the place where (if possible in terms of an exact street address) and the date and time of the day when the
        summons was left with the Defendant or other person were as follows:

        Place 535 Plainfield Rd., Willowbrook, Il. 60527

        Date June 21, 2010 _____, _____   Time of day 11:30a.m. _____. m.

IV. That s/he was unable to serve the within named Defendant.

_____
Special Process Server Signature

Signed and sworn before me on this 22nd day of June , 2010

_____ Notary public

"OFFICIAL SEAL"
LINDA M. STEMPLE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12/11/2013

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ORIGINAL COURT FILE

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

(8/01/08) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, _____ Law _____ DIVISION

No. _____

HARRIS N.A., and BMO CAPITAL MARKETS FINANCING, INC.

(Name all parties)

v.

PASQUINELLI HOMEBUILDING LLC, BRUNO A. PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC, PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI HOMEBUILDING TRUST, PASQUINELLI FAMILY FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST, ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989 FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H. PASQUINELLI, CHRISTINE PASQUINELLI, ELIZABETH PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI, JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA PASQUINELLI, ANN MARIE PASQUINELLI, JOAN PASQUINELLI, SALLY PASQUINELLI, as Trustee and MARYANN PASQUINELLI, as Trustee

SUMMONS

To: Pasquinelli Homebuilding, L.P.
c/o Bruno A. Pasquinelli,
as Registered Agent
535 Plainfield Road, Unit B
Willowbrook, Illinois 60527

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room _____ 801 _____, Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

JUN 14 2010

Atty. No.: 90170

Name: James Heiser/Chapman and Cutler LLP

Atty. for: Harris N.A. and BMO Capital Markets Financing, Inc.

Address: 111 W. Monroe Street

City/State/Zip: Chicago, IL 60603-4080

Telephone: (312) 845-3000

WITNESS, _____, _____

_____
Clerk of Court

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____

_____
(Area Code)   (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Affidavit of Special Process Server

CCG N060-10M-2/24/05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

County _____ DEPARTMENT, Law Division _____
  (County)          (Municipal)                       (Division)          (District)

No. 2010L006909

### AFFIDAVIT OF SPECIAL PROCESS SERVER

Jeff Brown _____ being first

duly sworn on oath deposes and says that s/he was appointed by the Court on June 14, 2010 _____, _____
to serve process in the above mentioned cause.

I.    That s/he served the within summons and a copy of the complaint on the within named Defendant, BAP 2003
Trust c/o Elizabeth pasquinelli, as Trustee

by leaving a copy of each with the said Defendant personally on June 24, 2010 _____, _____.

II.   That s/he served the within summons and a copy of the complaint on the within named Defendant, _____
_____ by leaving a copy of each at his/her usual place of abode with
_____ a person of the family of the age of 13 years or upwards and informed
that person of the content thereof on _____, _____, and that further s/he mailed a
copy of each in a sealed envelope with postage prepaid addressed to the Defendant, _____
at his/her usual place of abode on _____, _____.

III.  (a) That the sex, race and approximate age of the Defendant or other person with whom s/he left the summons
are as follows: Sex F _____ Race W _____ Approximate Age 39 _____
     (b) That the place where (if possible in terms of an exact street address) and the date and time of the day when the
summons was left with the Defendant or other person were as follows:

Place 4125 Forest Avenue, Western Springs, Il. 60558 _____

Date June 24, 2010 _____, _____ Time of day 7:45p.m. _____. m.

IV.  That s/he was unable to serve the within named Defendant.

_____
Special Process Server Signature

Signed and sworn before me on this ____28____ day of _____June_____, 2010

_____ Notary public

"OFFICIAL SEAL"
LINDA M. STEMPLE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 3/8/2010

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ORIGINAL COURT FILE

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **SUMMONS** | **ALIAS - SUMMONS** |

(8/01/08) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____Law_____ DIVISION

No. _____

HARRIS N.A., and BMO CAPITAL MARKETS FINANCING, INC.

**(Name all parties)**

v.

PASQUINELLI HOMEBUILDING LLC, BRUNO A. PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC, PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI HOMEBUILDING TRUST, FASQUINELLI FAMILY FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST, BAP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989 FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H. PASQUINELLI, CHRISTINE PASQUINELLI, ELIZABETH PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI, JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA PASQUINELLI, ANN MARIE PASQUINELLI, JOAN PASQUINELLI, SALLY PASQUINELLI, as Trustee and MARYANN PASQUINELLI, as Trustee

**SUMMONS**

To: BAP 2003 Trust
c/o Elizabeth Pasquinelli, as Trustee
4125 Forest Avenue
Western Springs, IL 60558-1341

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room ___801___, Chicago, Illinois 60602

☐ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

☐ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

☐ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

☐ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: _90170_

WITNESS, _____, _____

**Name:** James Heiser/Chapman and Cutler LLP

**Atty. for:** Harris N.A. and BMO Capital Markets Financing, Inc.

**Address:** 111 W. Monroe Street

_____
Clerk of Court

**City/State/Zip:** Chicago, IL 60603-4080

**Telephone:** (312) 845-3000

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
(Area Code)  (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Affidavit of Special Process Server                    CCG N060-10M-2/24/05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

County _____ DEPARTMENT, Law Division _____
(County)                    (Municipal)                    (Division)                    (District)

No. 2010L006909 _____

## AFFIDAVIT OF SPECIAL PROCESS SERVER

Jeff Brown _____ being first

duly sworn on oath deposes and says that s/he was appointed by the Court on June 14, 2010 _____, _____
to serve process in the above mentioned cause.

I. That s/he served the within summons and a copy of the complaint on the within named Defendant, Pasquinelli
Homebuilding Trust c/o Bruno A. Pasquinelli as Trustee-service was made on Peggy Kesserlis, Executive

by leaving a copy of each with the said Defendant personally on Assistant _____ on June 21 , 2010 .

II. That s/he served the within summons and a copy of the complaint on the within named Defendant, _____
_____ by leaving a copy of each at his/her usual place of abode with
_____ a person of the family of the age of 13 years or upwards and informed
that person of the content thereof on _____, _____, and that further s/he mailed a
copy of each in a sealed envelope with postage prepaid addressed to the Defendant, _____
at his/her usual place of abode on _____, _____.

III. (a) That the sex, race and approximate age of the Defendant or other person with whom s/he left the summons
are as follows:   Sex F _____   Race W _____   Approximate Age 25 _____

(b) That the place where (if possible in terms of an exact street address) and the date and time of the day when the
summons was left with the Defendant or other person were as follows:

Place 535 Plainfield Rd., Willowbrook, Il. 60527 _____

Date June 21, 2010 _____, _____   Time of day 11:30a.m. _____. m.

IV. That s/he was unable to serve the within named Defendant.

_____
Special Process Server Signature

Signed and sworn before me on this ___22nd___ day of _____June_____ , 2010

_____ Notary public

"OFFICIAL SEAL"
LINDA M. STEMPLE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12/2/2011

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ORIGINAL COURT FILE

| 2120 - Served | 2121 - Served |
|---|---|
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **SUMMONS** | **ALIAS - SUMMONS** |

(8/01/08) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____ Law _____ DIVISION

No. _____

HARRIS N.A., and BMO CAPITAL MARKETS FINANCING, INC.

(Name all parties)

v.

PASQUINELLI HOMEBUILDING LLC, BRUNO A. PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC, PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI HOMEBUILDING TRUST, PASQUINELLI FAMILY FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST, ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989 FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H. PASQUINELLI, CHRISTINE PASQUINELLI, ELIZABETH PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI, JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA PASQUINELLI, ANN MARIE PASQUINELLI, JOAN PASQUINELLI, SALLY PASQUINELLI, as Trustee and MARYANN PASQUINELLI, as Trustee

To: Pasquinelli Homebuilding Trust
c/o Bruno A. Pasquinelli, as Trustee
535 Plainfield Road, Unit B
Willowbrook, Illinois 60527

### SUMMONS

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room ___ 801 ___, Chicago, Illinois 60602

☐ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

☐ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

☐ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

☐ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 90170

Name: James Heiser/Chapman and Cutler LLP

Atty. for: Harris N.A. and BMO Capital Markets Financing, Inc.

Address: 111 W. Monroe Street

City/State/Zip: Chicago, IL 60603-4080

Telephone: (312) 845-3000

Service by Facsimile Transmission will be accepted at: _____

WITNESS, _____, _____

_____
**Clerk of Court**

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

_____
(Area Code) (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

| Affidavit of Special Process Server | CCG N060-10M-2/24/05 ( ) |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

County _____ DEPARTMENT, Law Division _____
(County)                    (Municipal)            (Division)            (District)

No. 2010L000049

10L 6905

### AFFIDAVIT OF SPECIAL PROCESS SERVER

_____ Jeff Brown _____ being first

duly sworn on oath deposes and says that s/he was appointed by the Court on June 14, 2010 _____,  _____
to serve process in the above mentioned cause.

I.   That s/he served the within summons and a copy of the complaint on the within named Defendant, B&A Homes,
     -service was made on Peggy Kesserlis

     by leaving a copy of each with the said Defendant personally on June 23, 2010 _____,  _____.

II.  That s/he served the within summons and a copy of the complaint on the within named Defendant, _____
     _____ by leaving a copy of each at his/her usual place of abode with
     _____ a person of the family of the age of 13 years or upwards and informed
     that person of the content thereof on _____,  _____, and that further s/he mailed a
     copy of each in a sealed envelope with postage prepaid addressed to the Defendant, _____
     at his/her usual place of abode on _____,  _____.

III. (a) That the sex, race and approximate age of the Defendant or other person with whom s/he left the summons
     are as follows:  Sex F_____  Race W_____  Approximate Age 25 _____
     (b) That the place where (if possible in terms of an exact street address) and the date and time of the day when the
     summons was left with the Defendant or other person were as follows:

     Place 535 Plainfield Rd., Willowbrook, Il.

     Date June 23, 2010 _____,  _____   Time of day 10:30a.m. _____. m.

IV.  That s/he was unable to serve the within named Defendant.

_____
Special Process Server Signature

Signed and sworn before me on this _____24th_____ day of _____June_____, 2010.

_____ Notary public

"OFFICIAL SEAL"
ELAINE J. JOZEFOWICZ
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 2/22/2011

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ORIGINAL COURT FILE

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **SUMMONS** | **ALIAS - SUMMONS** |

(8/01/08) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____Law_____ DIVISION

No. _____

HARRIS N.A., and BMO CAPITAL MARKETS FINANCING, INC.

**(Name all parties)**

v.

PASQUINELLI HOMEBUILDING LLC, BRUNO A. PASQUINELLI, ANTHONY R. PASQUINELLI,
PASQUINELLI MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC, PASQUINELLI
HOMEBUILDING, L.P., PASQUINELLI HOMEBUILDING TRUST, PASQUINELLI FAMILY
FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST, ARP 1989 FAMILY TRUST, BAP 2003
TRUST, BAP 1989 FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO B. PASQUINELLI,
CHRISTINE PASQUINELLI, ELIZABETH PASQUINELLI, JOHN PASQUINELLI, DAVID
PASQUINELLI, JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA PASQUINELLI, ANN
MARIE PASQUINELLI, JOAN PASQUINELLI, SALLY PASQUINELLI, as Trustee and MARYANN
PASQUINELLI, as Trustee

**SUMMONS**

To: B&A Homes, LLC
6880 North Frontage Road
Suite 100
Burr Ridge, Illinois 60527

### To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is
hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the
following location:

☑ Richard J. Daley Center, 50 W. Washington, Room ____801____, Chicago, Illinois 60602

| | | |
|---|---|---|
| ☐ **District 2 - Skokie**<br>5600 Old Orchard Rd.<br>Skokie, IL 60077 | ☐ **District 3 - Rolling Meadows**<br>2121 Euclid<br>Rolling Meadows, IL 60008 | ☐ **District 4 - Maywood**<br>1500 Maybrook Ave.<br>Maywood, IL 60153 |
| ☐ **District 5 - Bridgeview**<br>10220 S. 76th Ave.<br>Bridgeview, IL 60455 | ☐ **District 6 - Markham**<br>16501 S. Kedzie Pkwy.<br>Markham, IL 60426 | ☐ **Child Support**<br>28 North Clark St., Room 200<br>Chicago, Illinois 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF
REQUESTED IN THE COMPLAINT.**

### To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement
of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed.
This Summons may not be served later than 30 days after its date.

Atty. No.: 90170

**Name:** James Heiser/Chapman and Cutler LLP

**Atty. for:** Harris N.A. and BMO Capital Markets Financing, Inc.

**Address:** 111 W. Monroe Street

**City/State/Zip:** Chicago, IL 60603-4080

**Telephone:** (312) 845-3000

WITNESS, _____, 2019

_____
Clerk of Court

Date of service: _____, _____
(To be inserted by officer on copy left with defendant
or other person)

Service by Facsimile Transmission will be accepted at: _____

(Area Code)   (Facsimile Telephone Number)

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

**Affidavit of Special Process Server**                    CCG N060-10M-2/24/05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

County _____ **DEPARTMENT,** Law Division _____
   **(County)**             **(Municipal)**           **(Division)**        **(District)**

No. ~~2010L006049~~

*10L6909*

### AFFIDAVIT OF SPECIAL PROCESS SERVER

_____ Jeff Brown _____ **being first**

**duly sworn on oath deposes and says that s/he was appointed by the Court on** June 14, 2010 _____, _____
**to serve process in the above mentioned cause.**

I.    That s/he served the within summons and a copy of the complaint on the within named Defendant, Pasquinelli
Management, LLC c/o Bruno A. Pasquinelli as Registered Agent-service was made on Peggy Kesserlis
by leaving a copy of each with the said Defendant personally on June 23, 2010 _____, _____.

II.   That s/he served the within summons and a copy of the complaint on the within named Defendant, _____
_____ by leaving a copy of each at his/her usual place of abode with
_____ a person of the family of the age of 13 years or upwards and informed
that person of the content thereof on _____, _____, and that further s/he mailed a
copy of each in a sealed envelope with postage prepaid addressed to the Defendant, _____
at his/her usual place of abode on _____, _____.

III. (a) That the sex, race and approximate age of the Defendant or other person with whom s/he left the summons
     are as follows:   Sex F _____   Race W _____   Approximate Age 25 _____
    (b) That the place where (if possible in terms of an exact street address) and the date and time of the day when the
     summons was left with the Defendant or other person were as follows:

     Place 535 Plainfield Rd., Willowbrook, Il.

     Date June 23, 2010 _____, _____    Time of day 10:30a.m. _____. m.

     (CC VMW)

IV.   That s/he was unable to serve the within named Defendant.

_____
Special Process Server Signature

**Signed and sworn before me on this** _24th_ **day of** _June_, _2010._

_Elaine J. Jozefowicz_ **Notary public**

"OFFICIAL SEAL"
ELAINE J. JOZEFOWICZ
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 2/22/2011

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

ORIGINAL COURT FILE

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **SUMMONS** | **ALIAS - SUMMONS** |

(8/01/08) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____Law_____ DIVISION

No. _____

HARRIS N.A., and BMO CAPITAL MARKETS FINANCING, INC.
_____
(Name all parties)

v.

PASQUINELLI HOMEBUILDING LLC, BRUNO A. PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC, PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI HOMEBUILDING TRUST, PASQUINELLI FAMILY FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST, ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989 FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H. PASQUINELLI, CHRISTINE PASQUINELLI, ELIZABETH PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI, JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA PASQUINELLI, ANN MARIE PASQUINELLI, JOAN PASQUINELLI, SALLY PASQUINELLI, as Trustees and MARYANN PASQUINELLI, as Trustee

To: Pasquinelli Management, LLC
c/o Bruno A. Pasquinelli,
as Registered Agent
6880 North Frontage Road
Suite 100
Burr Ridge, Illinois 60527

**SUMMONS**

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room ____801____, Chicago, Illinois 60602

☐ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

☐ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

☐ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

☐ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: ___90170___

Name: James Heiser/Chapman and Cutler LLP

Atty. for: Harris N.A. and BMO Capital Markets Financing, Inc.

Address: 111 W. Monroe Street

City/State/Zip: Chicago, IL 60603-4080

Telephone: (312) 845-3000

WITNESS, _____ JUN 14 2010

_____
Clerk of Court

Date of service: _____,
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| HARRIS N.A., and<br>BMO CAPITAL MARKETS FINANCING, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 10 L 6909 |
| PASQUINELLI HOMEBUILDING LLC, BRUNO A.<br>PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI<br>MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC,<br>PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI<br>HOMEBUILDING TRUST, PASQUINELLI FAMILY<br>FOUNDATION, BNA HOMES, LLC, ARP 2003 TRUST,<br>ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989<br>FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H.<br>PASQUINELLI, CHRISTINE PASQUINELLI, BETSY<br>PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI,<br>JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA<br>PASQUINELLI, ANN MARIE PASQUINELLI, JOAN<br>PASQUINELLI, SALLY PASQUINELLI, as Trustee and<br>MARYANN PASQUINELLI, as Trustee | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

FILED
Law Div. 2007
JUL 2 9 2010
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

## STIPULATION

Plaintiffs, Harris N.A. and BMO Capital Markets Financing, Inc., and defendants,

Pasquinelli Homebuilding LLC, Bruno A. Pasquinelli, Anthony R. Pasquinelli, Pasquinelli

Management, LLC, Pasquinelli Financial LLC, Pasquinelli Homebuilding, L.P., Pasquinelli

Homebuilding Trust, Pasquinelli Family Foundation, BNA Homes, LLC, ARP 2003 Trust, ARP

1989 Family Trust, BAP 2003 Trust, BAP 1989 Family Trust, Anthony J. Pasquinelli, Bruno H.

Pasquinelli, Christine Pasquinelli, Betsy Pasquinelli, John Pasquinelli, David Pasquinelli, Joseph

Pasquinelli, Ellen Pasquinelli, Maria Pasquinelli, Ann Marie Pasquinelli, Joan Pasquinelli, Sally

Pasquinelli, as Trustee and Maryann Pasquinelli, as Trustee (collectively, the "*Pasquinelli Defendants*"), by and through their undersigned counsel, hereby agree and stipulate as follows:

WHEREAS, plaintiffs filed the Complaint on June 14, 2010, and some of the Pasquinelli Defendants have been served with the summons and Complaint and some have not been served;

WHEREAS, plaintiffs have requested that the undersigned counsel accept service of the summons and Complaint on behalf of, and as agent of, each of the Pasquinelli Defendants;

WHEREAS, the Pasquinelli Defendants have requested that their time to answer or otherwise plead be the same for each of them;

NOW THEREFORE, it is hereby agreed and stipulated among the parties:

1.      The undersigned counsel hereby agrees to accept service of the summons and Complaint on behalf of, and as the agent of, the Pasquinelli Defendants.

2.      The Pasquinelli Defendants shall have until September 1, 2010 to answer or otherwise plead to the Complaint.

3.      The Pasquinelli Defendants stipulate and agree that an attorney will appear on their behalf by July 16, 2010 and that nothing shall impair the effectiveness of the acceptance of service pursuant to this Stipulation.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

4.     The undersigned counsel represents and warrants that they have the authority to accept service of the summons and Complaint and enter into this Stipulation on behalf of the Pasquinelli Defendants.

Dated as of this 14th day of July, 2010.

STIPULATED AND AGREED:

| Harris N.A., and<br>BMO Capital Markets Financing, Inc.<br><br>*James Heiser*<br>Mark D. Rasmussen<br>James Heiser<br>CHAPMAN AND CUTLER LLP<br>111 West Monroe Street<br>Chicago, Illinois 60603<br>(312) 845-3000<br>Firm ID: 90170 | Pasquinelli Defendants<br><br>*signature*<br>Bruce S. Sperling<br>Mitchell H. Macknin<br>SPERLING & SLATER<br>55 West Monroe Street<br>Suite 3200<br>Chicago, Illinois 60603<br>312-641-3200 |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| HARRIS N.A., and<br>BMO CAPITAL MARKETS FINANCING, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>PASQUINELLI HOMEBUILDING LLC, BRUNO A.<br>PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI<br>MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC,<br>PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI<br>HOMEBUILDING TRUST, PASQUINELLI FAMILY<br>FOUNDATION, BNA HOMES, LLC, ARP 2003 TRUST,<br>ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989<br>FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H.<br>PASQUINELLI, CHRISTINE PASQUINELLI, BETSY<br>PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI,<br>JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA<br>PASQUINELLI, ANN MARIE PASQUINELLI, JOAN<br>PASQUINELLI, SALLY PASQUINELLI, as Trustee and<br>MARYANN PASQUINELLI, as Trustee<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 10 L 6909<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER**

Pursuant to the Stipulation dated as of July 14, 2010 among plaintiffs, Harris N.A. and

BMO Capital Markets Financing, Inc., and the Pasquinelli Defendants (the "*Stipulation*"), the

Court hereby finds and orders:[1]

1.      The Stipulation is approved in all respects.

2.      As provided for in the Stipulation, the law firm of Sperling & Slater has agreed to

accept service of the summons and Complaint on behalf of, and as the agent of, each Pasquinelli

Defendant.

*4251*

---

[1]      Capitalized terms not defined herein shall have the meaning ascribed to them in the Stipulation.

3.      The Pasquinelli Defendants shall have until September 1, 2010 to answer or otherwise plead to the Complaint. *4234*

Dated: _____, 2010.

ENTER:

JUDGE BILL TAYLOR

JUL 2 9 2010

CIRCUIT COURT-1648

_____
Judge Bill Taylor

50-5937-00-3

**FILED-5**
2010 AUG 19 AM 11:50

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| HARRIS, N.A. and BMO CAPITAL | ) | |
| MARKETS FINANCING, INC. | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| vs. | ) | No. 2010 L 006909 |
| | ) | |
| PASQUINELLI HOMEBUILDING LLC, | ) | |
| et al., | ) | |
| Defendants | ) | |

## NOTICE OF MOTION

To:    Richard A. Wohlleber
       James M. Heiser
       CHAPMAN & CUTLER, LLP
       111 West Monroe Street
       Chicago, Illinois 60603
       T: (312) 845-3877
       F: (312) 516-1477

PLEASE TAKE NOTICE that on the _____ of _____, 2010 at _____ a.m., or as

soon thereafter as counsel may be heard, I shall appear before the Honorable Bill Taylor or any

Judge sitting in that Judge's stead, in the courtroom usually occupied by him at Room 2007 at

the Richard J. Daley Center, Chicago Illinois, and present **Defendants' Motion For Leave To**

**File A Memorandum Of Law In Excess Of 15 Pages And For Extension Of Time**, a copy of

which is attached hereto and served upon you.

1318641.1

_____

HARVEY R. HERMAN
CLAUSEN MILLER P.C.

_____

MITCHELL H. MACKNIN
SPERLING AND SLATER

Michael R. Grimm, Sr.
Harvey R. Herman
CLAUSEN MILLER P.C.
Firm I.D. No. 90181
10 South LaSalle Street
Chicago, Illinois 60603-1098
312/855-1010
**Attorneys for Defendants Pasquinelli Management, LLC, Pasquinelli Financial LLC,
Pasquinelli Homebuilding, L.P., Pasquinelli Homebuilding Trust, Pasquinelli Family
Foundation, B&A Homes, LLC, ARP 2003 Trust, ARP 1989 Family Trust, BAP 2003
Trust, BAP 1989 Family Trust, Anthony J. Pasquinelli, Betsy Pasquinelli, John Pasquinelli,
David Pasquinelli, Ellen Pasquinelli, Ann Marie Pasquinelli, Joan Pasquinelli, Sally
Pasquinelli, as Trustee and Maryann Pasquinelli, as Trustee, and Joseph Pasquinelli**

Mitchell H. Macknin
SPERLING AND SLATER
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
**Attorneys for Defendants Pasquinelli Homebuilding, LLC, Bruno A. Pasquinelli, Anthony
R. Pasquinelli, Bruno H. Pasquinelli, Christine Pasquinelli, and Maria L. Pasquinelli**

2

1318641.1

STATE OF ILLINOIS    )
                          )  SS
COUNTY OF COOK     )

### AFFIDAVIT OF SERVICE

The undersigned, after being duly sworn, deposes and says that she served a copy of the above and foregoing Notice of Motion, together with a copy of the documents therein referred, to each party to whom this Notice is directed, *via* **Hand-Delivery** on the 19th day of August, 2010.

Subscribed and sworn to before me

this _19th_ day of August, 2010.

_____
Notary Public

OFFICIAL SEAL
**AUDREY MONTVILLE**
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 05/14/2012

3

1318641.1

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| HARRIS, N.A. and BMO CAPITAL MARKETS FINANCING, INC., | ) | |
| Plaintiffs | ) | |
| | ) | |
| vs. | ) | No. 2010 L 006909 |
| | ) | |
| PASQUINELLI HOMEBUILDING LLC, et al., | ) | |
| | ) | |
| Defendants | ) | |

<u>**DEFENDANTS' MOTION FOR LEAVE TO FILE A MEMORANDUM
OF LAW IN EXCESS OF 15 PAGES AND FOR EXTENSION OF TIME**</u>

NOW COME Defendants, by and through their attorneys, Michael R. Grimm, Harvey R. Herman, Clausen Miller P.C., and Bruce S. Sperling, Mitchell H. Macknin, Sperling & Slater, P.C, and move this Honorable Court for (a) leave to file a Memorandum of Law in excess of 15 pages, and (b) a fourteen day extension of time to answer or otherwise plead to Plaintiffs' Complaint, to and including September 15, 2010, and in support thereof, state as follows:

1.      Plaintiffs, Harris N.A. and BMO Capital Markets Financing, Inc., have filed an extremely lengthy Complaint that purports to inter-connect many parties, allegations, claims, and time periods. The Complaint names twenty-six different defendants (both entities and individuals), is fifty-seven pages in length, and contains 310 numbered allegations in six different Counts, concerning events that span a seven-year time period. (See Complaint, attached as Ex. A).

2.      The six causes of action alleged are: (1) fraudulent transfer based on actual fraud pursuant to 740 ILCS 160/5(a)(1); (2) fraudulent transfer based on  constructive fraud pursuant to 740 ILCS 160/5(a)(2) and 160/6(a)(2); (3) fraudulent transfer based on insider preferences

1319079.1

pursuant to 740 ILCS 160/6(b); (4) breach of fiduciary duties; (5) unjust enrichment; and (6) veil piercing and alter ego liability.

3.     Since the outset of this case, Defendants have diligently undertaken and continue to undertake extensive factual and legal research necessary to analyze the above causes of action and their varying elements; have explored the potential impact of the first 253 paragraphs of the complaint that are incorporated into each cause of action, have conferred with the various represented defendants regarding same and have examined the many years of complex transactions that purport to be targeted within the Complaint's allegations. This has required significant time expenditure and has resulted in a need for adequate time and briefing space to fairly and properly respond.

4.     Six of the Defendants (Pasquinelli Homebuilding, LLC, Bruno A. Pasquinelli, Anthony R. Pasquinelli, Bruno H. Pasquinelli, Christine Pasquinelli, and Maria L. Pasquinelli) are represented by Sperling & Slater, P.C.

5.     The remaining twenty Defendants (Pasquinelli Management, LLC, Pasquinelli Financial LLC, Pasquinelli Homebuilding, L.P., Pasquinelli Homebuilding Trust, Pasquinelli Family Foundation, B&A Homes, LLC, ARP 2003 Trust, ARP 1989 Family Trust, BAP 2003 Trust, BAP 1989 Family Trust, Anthony J. Pasquinelli, Betsy Pasquinelli, John Pasquinelli, David Pasquinelli, Ellen Pasquinelli, Ann Marie Pasquinelli, Joan Pasquinelli, Sally Pasquinelli, as Trustee and Maryann Pasquinelli, as Trustee, and Joseph Pasquinelli) are represented by Clausen Miller P.C.

6.     Defendants' responsive pleading is presently due September 1, 2010. This date was the result of the parties' Stipulation at the outset of the case (and approved by the Court), by which Defendants' counsel agreed to accept service of the Complaint for all Defendants and a

2

1319079.1

uniform pleading date was set (to avoid the need for multiple responses at differing times, depending on the date of service).

7. Defendants each anticipate filing as their responsive pleading a Motion to Dismiss and supporting Memorandum of Law. In the interests of judicial economy and to avoid duplicative arguments, Defendants anticipate filing one joint Motion and Memorandum to cover the arguments of all 26 Defendants as to all the six Counts.

8. This Honorable Court's Standing Order C(a) provides that any brief filed in excess of 15 pages requires special leave of court.

9. Were Defendants to file motions separately, rather than jointly, the number of pages rightfully utilized would be, pursuant to Standing Order C(a), well in excess of 30 pages.

10. However, the additional pages sought by Defendants (up to 40) equate to less than one additional page per party.

11. Defendants' Motion and Memorandum in Support of the Motion to Dismiss Plaintiffs' Complaint will set forth multiple grounds for dismissal.

12. The nature of the allegations against the various Defendants and the number of parties makes it necessary to set forth the facts and arguments in a brief in excess of 15 pages.

13. Defendants are working diligently to condense, consolidate and summarize the arguments into a manageable and concise presentation. Due to the number of Defendants, paragraphs, Counts and years covered by the Complaint, Defendants respectfully submit that a consolidated brief in excess of 15 pages (and not to exceed 40 pages) is necessary to adequately inform this Court of the alleged facts, issues, and legal arguments that demonstrate the Complaint's legal deficiencies.

1319079.1

14. For the same reasons, Defendants further submit that more time is necessary than the previously established September 1, 2010 due date for responding to plaintiffs' Complaint, and respectfully request an additional 14 days, to September 15, 2010, to do so.

15. This Motion is not made for purposes of delay or inconvenience to any of the parties involved.

WHEREFORE, Defendants respectfully request that this Honorable Court enter an order granting them leave to file a Memorandum in Support of Their Motion to Dismiss Plaintiffs' Complaint in excess of 15 pages and not to exceed 40 pages and grant them to September 15, 2010 to file same.

_____
HARVEY R. HERMAN
CLAUSEN MILLER P.C.

_____
MITCHELL H. MACKNIN
SPERLING & SLATER

Michael R. Grimm, Sr.
Harvey R. Herman
CLAUSEN MILLER P.C.
Firm I.D. No. 90181
10 South LaSalle Street
Chicago, Illinois 60603-1098
(312) 855-1010
**Attorneys for Defendants Pasquinelli Management, LLC, Pasquinelli Financial LLC, Pasquinelli Homebuilding, L.P., Pasquinelli Homebuilding Trust, Pasquinelli Family Foundation, B&A Homes, LLC, ARP 2003 Trust, ARP 1989 Family Trust, BAP 2003 Trust, BAP 1989 Family Trust, Anthony J. Pasquinelli, Betsy Pasquinelli, John Pasquinelli, David Pasquinelli, Ellen Pasquinelli, Ann Marie Pasquinelli, Joan Pasquinelli, Sally Pasquinelli, as Trustee and Maryann Pasquinelli, as Trustee, and Joseph Pasquinelli**

Bruce S. Sperling
Mitchell H. Macknin
SPERLING & SLATER P.C.
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
**Attorneys for Defendants Pasquinelli Homebuilding, LLC, Bruno A. Pasquinelli, Anthony R. Pasquinelli, Bruno H. Pasquinelli, Christine Pasquinelli, and Maria L. Pasquinelli**

4

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

|  |  |  |
|---|---|---|
| HARRIS N.A., and<br>BMO CAPITAL MARKETS FINANCING, INC., | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | Case No. 10 L_____ |
| | ) | |
| PASQUINELLI HOMEBUILDING LLC, BRUNO A.<br>PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI<br>MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC,<br>PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI<br>HOMEBUILDING TRUST, PASQUINELLI FAMILY<br>FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST,<br>ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989<br>FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H.<br>PASQUINELLI, CHRISTINE PASQUINELLI, BETSY<br>PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI,<br>JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA<br>PASQUINELLI, ANN MARIE PASQUINELLI, JOAN<br>PASQUINELLI, SALLY PASQUINELLI, as Trustee and<br>MARYANN PASQUINELLI, as Trustee | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

### COMPLAINT AT LAW

NOW COMES Plaintiff, Harris N.A., together with its affiliate, BMO Capital Markets

Financing, Inc. (*"BMO"*) (BMO and Harris N.A. are jointly referred to herein as *"Harris"*), by

and through its attorneys, and pursuant to the provisions of the Uniform Fraudulent Transfer Act

(740 ILCS 160/1 *et seq.*) complains of the Defendants Pasquinelli Homebuilding LLC, Bruno A.

Pasquinelli, Anthony R. Pasquinelli, Pasquinelli Management, LLC, Pasquinelli Financial LLC,

Pasquinelli Homebuilding, L.P., Pasquinelli Homebuilding Trust, Pasquinelli Family

Foundation, B&A Homes, LLC, ARP 2003 Trust, ARP 1989 Family Trust, BAP 2003 Trust,

BAP 1989 Family Trust, Anthony J. Pasquinelli, Bruno H. Pasquinelli, Christine Pasquinelli,

Betsy Pasquinelli, John Pasquinelli, David Pasquinelli, Joseph Pasquinelli, Ellen Pasquinelli,

**EXHIBIT**

*A*

Maria Pasquinelli, Ann Marie Pasquinelli, Joan Pasquinelli, Sally Pasquinelli, as Trustee, and Maryann Pasquinelli, as Trustee, and respectfully alleges as follows:

## NATURE OF THE ACTION

1.     Defendants and brothers Bruno A. Pasquinelli and Anthony R. Pasquinelli (jointly referred to herein as *"Bruno and Anthony"*) founded an Illinois-based residential homebuilding enterprise spanning many states which they grew and operated through a complex web of wholly owned affiliates. Bruno and Anthony currently own and control such entities through several grantor trusts they established over the last decade. A chart illustrating the Pasquinelli "family" of companies is attached hereto as Exhibit A. The other individuals named as defendants herein are trustees and beneficiaries of the trusts and/or, on information and belief, are subsequent transferees as discussed more fully below. Many, if not most, of these individuals are also members of Bruno's and Anthony's family.

2.     Defendant Pasquinelli Homebuilding LLC (*"Homebuilding"*) sits atop the Pasquinelli corporate hierarchy and was utilized as the primary vehicle through which earnings of multiple operating subsidiaries (which sat at the bottom of the Pasquinelli pyramid) were upstreamed to Pasquinelli Homebuilding L.P. (*"Pasquinelli LP"*) and then to Bruno's and Anthony's respective trusts.

3.     To fund certain Pasquinelli residential real estate developments, various Pasquinelli operating subsidiaries borrowed significant sums from plaintiffs, all of which obligations were secured by certain real estate (which was owned by the respective operating subsidiaries) and unconditionally guaranteed by Homebuilding.

4.     As the residential real estate market began to decline, Bruno and Anthony caused Homebuilding to transfer and upstream, while Harris was a creditor, nearly $88 million dollars in

cash and property out of Homebuilding during 2005-2009 (in addition to substantial sums received during prior periods) to their trusts and, on information and belief, further transferred portions of such funds to various children and grandchildren who were employees of Pasquinelli companies and/or beneficiaries of the trusts.

5.      Such transfers ultimately resulted in the operating subsidiary borrowers and Homebuilding being unable to satisfy their respective loan and guaranty obligations to their creditors, including Harris, and left them inadequately capitalized and/or insolvent.

6.      By late 2007, many of the Pasquinelli operating subsidiaries began to default on their loans to Harris (which were secured at the operating subsidiary level by real estate), and, in the Spring of 2008 and thereafter, Harris began to make demands on Homebuilding's guarantees and subsequently commenced foreclosure proceedings against various real properties held at the operating subsidiary level.

7.      Through foreclosures, Harris obtained title to certain real property worth substantially less than the amount Harris was owed. As a result, Harris has approximately $19 million in deficiency judgments to date against various Pasquinelli operating subsidiaries as well as Homebuilding on account of its guarantee of such obligations. In addition, Harris obtained a judgment in excess of $4 million against Homebuilding arising out of the termination of an interest rate swap agreement. Additional proceedings remain outstanding in Texas. Furthermore, there is currently over $5 million in deficiencies against Homebuilding in connection with other developments.

8.      To date, Harris is owed in excess of $28 million by Homebuilding by virtue of its guarantees and Harris's judgments and other accrued and unpaid fees and expenses.

9.     In this Complaint, Harris, a creditor of Homebuilding, seeks recovery of in excess of $20 million of the transfers Homebuilding made upstream through Pasquinelli LP to Bruno's and Anthony's trusts and, subsequently, to various Pasquinelli family members under several theories.

10.     First, it has been discovered that approximately $1.8 million in cash and property were transferred by Homebuilding to one or more of the defendants *after* Harris gave notice of default on loans that had been guaranteed by Homebuilding. Worse, Homebuilding transferred approximately $1.2 million in property after Harris had obtained a *judgment* in excess of $4 million against Homebuilding. In addition, one or more of the Pasquinelli Defendants knew that Homebuilding was insolvent when certain loan transactions with Harris were executed and funds advanced while, at the same time, transfers upstream from Homebuilding to Bruno and Anthony continued. Therefore, Harris seeks recovery of certain transfers made during the 4th quarter of 2007 through 2009 under an "actual" fraudulent conveyance theory.

11.     Second, Homebuilding was insolvent, inadequately capitalized or unable to satisfy its debts from potentially as early as the 2006 time period. As such, Harris seeks recovery of certain transfers Homebuilding made upstream during the 2006-2009 time period under a "constructive" fraudulent conveyance theory, as these transfers were made by Homebuilding for no exchange of reasonably equivalent value.

12.     As directors and officers of Homebuilding, one or more of the Pasquinelli Defendants owed fiduciary duties to Harris as a creditor of Homebuilding once Homebuilding became insolvent. Such duties were breached when, *inter alia,* such directors and officers caused Homebuilding to make distributions that were known to directly benefit those directors and officers or their family members and failed to properly assess the impact of the housing

- 4 -

market downturn on Homebuilding's ability to remain solvent, adequately capitalized and able to pay its debts as they came due.

13.     The Pasquinelli Defendants engaged in further breaches of fiduciary duty and deepened the insolvency of Homebuilding and its respective operating subsidiaries when the Pasquinelli Defendants (i) failed to cease work by contractors to minimize the attachment of mechanic's liens and (ii) failed to cause loan funds advanced to pay contractors, thereby exposing Harris' collateral to mechanic's liens. Specifically, the operating subsidiaries incurred further liabilities to mechanics lien claimants after they became insolvent and/or informed Harris that they were walking away from these developments.   The effect of the Pasquinelli Defendants' conduct was not only to force Harris into litigation with these lien claimants and force Harris to incur significant additional expense to maintain these partially completed projects, but also to leave exposed and partially completed houses in these communities that became havens for squatters and dangers to children and others in the community. As a result, despite the significant expense incurred, many of these houses had to be torn down for safety reasons.  Further, despite these significant mechanics lien claims, Harris has been unable to adequately trace the draw requests advanced under Harris' construction loans to the actual payments to contractors on these projects, calling into question whether the draw requests advanced were actually used to fund developments.

14.     In addition, on information and belief, Bruno and Anthony reaped (or stand to reap) the benefits of potential tax refunds on account of carrying back net operating losses, or NOLs, incurred by operating subsidiaries that are passed through to Bruno and Anthony, which could include refunds of taxes that were originally paid from distributions and transfers from Homebuilding to Pasquinelli LP and then to the trusts. Accordingly, the defendants have been

(or will be) unjustly enriched and should be ordered, out of equity and fairness, to (i) utilize NOLs attributable to Homebuilding or any of its subsidiaries in a manner that would maximize the amount of tax refunds received or able to be received (or related benefits) and (ii) turn over any such refunds received to Harris for application against Homebuilding's outstanding and unpaid debt to Harris.

15.    Finally, given the use and exploitation of the various Pasquinelli entities described herein to avert creditors' claims, the corporate veils of such entities should be pierced, resulting in Bruno and Anthony being personally liable to Harris for the debts and obligations of Homebuilding and its various operating subsidiaries.

16.    In sum, the reason for these staggering distributions was simple. Homebuilding had guaranteed tens of millions of dollars of indebtedness to Harris and possibly hundreds of millions of additional debt to other banks. By rendering Homebuilding an insolvent, empty box, Bruno and Anthony (as well as their family members) were attempting to avoid liability on Homebuilding's guarantees and appropriate money which should have been reserved to satisfy Homebuilding's guaranty obligations (as well as the various operating subsidiaries' obligations) to Harris. In short, this conduct rendered the Homebuilding guarantees essentially worthless to Harris.

17.    Indeed, if Bruno and Anthony had reserved less than one-third of the nearly $87 million they caused Homebuilding to transfer to themselves and members of their immediate family during 2005-2009, Homebuilding would have been able to satisfy its obligations to Harris in full.

THE PARTIES

18.    Plaintiff Harris N.A. is a national banking association with its principal place of business at 111 West Monroe Street, Chicago, Illinois.  Harris N.A. is the successor by merger with Harris Trust and Saving Bank.  Plaintiff BMO Capital Markets Financing, Inc. is an Illinois corporation with its principal place of business at 111 West Monroe Street, Chicago, Illinois.

19.    Defendant Homebuilding is a limited liability company formed under the laws of the State of Illinois with its principal place of business at 6880 North Frontage Road, Suite 100, Burr Ridge, Illinois.  Upon information and belief, Pasquinelli Homebuilding, LLC's offices have been transferred to 535B Plainfield Road, Willowbrook, Illinois.  Homebuilding is wholly owned by Pasquinelli LP.

20.    On information and belief, Defendant Bruno A. Pasquinelli is an individual domiciled in the State of Illinois.

21.    On information and belief, Defendant Anthony R. Pasquinelli is an individual domiciled in the State of Illinois.

22.    Defendant Pasquinelli Management, LLC is a limited liability company formed under the laws of the State of Illinois with its principal place of business at 6880 North Frontage Road, Suite 100, Burr Ridge, Illinois.  Upon information and belief, Pasquinelli Management, LLC's offices have been transferred to 535B Plainfield Road, Willowbrook, Illinois.

23.    Defendant Pasquinelli Financial LLC is a limited liability company formed under the laws of the State of Illinois with its principal place of business at 6880 North Frontage Road, Suite 100, Burr Ridge, Illinois.  Upon information and belief, Pasquinelli Financial LLC's offices have been transferred to 535B Plainfield Road, Willowbrook, Illinois.

24.     Defendant Pasquinelli L.P. is a limited partnership formed under the laws of the State of Illinois with its principal place of business at 6880 North Frontage Road, Suite 100, Burr Ridge, Illinois. Upon information and belief, Pasquinelli Homebuilding, L.P.'s offices have been transferred to 535B Plainfield Road, Willowbrook, Illinois. Pasquinelli LP owns 100% of Homebuilding.

25.     On information and belief, Defendant Pasquinelli Homebuilding Trust is a trust formed under the laws of the State of Illinois. On information and belief, Defendants Bruno H. Pasquinelli, Christine Pasquinelli, Betsy Pasquinelli, John Pasquinelli, Anthony J. Pasquinelli, David Pasquinelli, Joseph Pasquinelli, Ellen Pasquinelli, Maria Pasquinelli, Ann Marie Pasquinelli and Joan Pasquinelli are individuals domiciled in the State of Illinois and are the beneficiaries of the Pasquinelli Homebuilding Trust.

26.     On information and belief, Defendant BAP 2003 Trust is a trust formed under the laws of the State of Illinois.

27.     On information and belief, Defendants Bruno H. Pasquinelli, Christine Pasquinelli, Elizabeth "Betsy" Pasquinelli and John Pasquinelli are individuals domiciled in the State of Illinois and are the beneficiaries of the BAP 2003 Trust.

28.     On information and belief, Defendant ARP 2003 Trust is a trust formed under the laws of the State of Illinois.

29.     On information and belief, Defendants Anthony J. Pasquinelli, David Pasquinelli, Joseph Pasquinelli, Ellen Pasquinelli, Maria Pasquinelli, Ann Marie Pasquinelli and Joan Pasquinelli are individuals domiciled in the State of Illinois and are trustees and beneficiaries of the ARP 2003 Trust.

30.     On information and belief, Defendant BAP 1989 Family Trust is a trust formed under the laws of the State of Illinois.

31.     On information and belief, Defendants Bruno H. Pasquinelli, Christine Pasquinelli, Betsy Pasquinelli and John Pasquinelli are individuals domiciled in the State of Illinois and are trustees and beneficiaries of the BAP 1989 Family Trust. On information and belief, defendant Sally Pasquinelli is an individual domiciled in the State of Illinois and is a trustee of the BAP 1989 Family Trust.

32.     On information and belief, Defendant ARP 1989 Family Trust is a trust formed under the laws of the State of Illinois.

33.     On information and belief, Defendants Anthony J. Pasquinelli, David Pasquinelli, Joseph Pasquinelli, Ellen Pasquinelli, Maria Pasquinelli, Ann Marie Pasquinelli and Joan Pasquinelli are trustees and beneficiaries of the ARP 1989 Family Trust. On information and belief, defendant Maryann Pasquinelli is an individual domiciled in the State of Illinois and is also a trustee of the ARP 1989 Family Trust.

34.     Anthony J. Pasquinelli, David Pasquinelli, Joseph Pasquinelli, Ellen Pasquinelli, Maria Pasquinelli, Ann Marie Pasquinelli, Joan Pasquinelli, Sally Pasquinelli, not individually but as Trustee, Bruno H. Pasquinelli, Christine Pasquinelli, Betsy Pasquinelli, John Pasquinelli and Maryann Pasquinelli, not individually but as Trustee, are referred to collectively herein as the *"Related Party Transferees."*

35.     Defendant Pasquinelli Family Foundation is an Illinois not-for-profit corporation located at 207 East Ohio Street, Box 355, Chicago, Illinois 60611.

36.     The Related Party Transferees, together with Pasquinelli Homebuilding LLC, Bruno A. Pasquinelli, Anthony R. Pasquinelli, the Pasquinelli Family Foundation, the ARP 1989

Family Trust, the BAP 1989 Family Trust, the ARP 2003 Trust, the BAP 2003 Trust, the Pasquinelli Homebuilding Trust, Pasquinelli Financial LLC, Pasquinelli Management, LLC, B&A Homes, LLC and Pasquinelli Homebuilding, L.P., are referred to collectively herein as the *"Pasquinelli Defendants."*

## JURISDICTION AND VENUE

37.     This Court had personal jurisdiction over the defendants under 735 ILCS 5/2-209.

38.     Venue is proper in that the occurrences giving rise to the actions set forth below took place in Cook County, Illinois. Defendants Pasquinelli Family Foundation, Anthony R. Pasquinelli, Joan Pasquinelli, Bruno A. Pasquinelli, David C. Pasquinelli, Elizabeth Pasquinelli, Joan Pasquinelli, Joseph Pasquinelli, and Maria Pasquinelli, are also residents of Cook County, Illinois.

## FACTUAL BACKGROUND

### A.     THE CORPORATE STRUCTURE

39.     Over 35 years ago, Bruno and Anthony Pasquinelli formed a residential homebuilding company.

40.     By 2006, the enterprise had grown to achieve annual revenues of over $580 million, operated through a complex web of various family-owned subsidiaries, and had operations in at least seven states, including Illinois, Indiana, Georgia, North Carolina, South Carolina, Ohio and Texas.

41.     In or around 2003-2004, Bruno and Anthony undertook an extensive reorganization of their business interests purportedly to, *inter alia,* minimize estate tax burdens on their children and future generations.

42.     Such reorganization contemplated various grantor trusts established by Bruno and Anthony to sit atop a comprehensive pyramid structure of mainly wholly owned limited liability companies consisting of holding companies at the top (*i.e.*, Pasquinelli LP and Homebuilding), regional or state-level holding companies at the middle, and community or subdivision-level operating subsidiaries at the bottom, the latter of which (referred to as *"Operating Subsidiaries"*) being the entities that borrowed from Harris and developed and sold homes under names that included "Portrait Homes."

43.     The reorganized ownership structure is represented by the chart attached and incorporated herein as Exhibit A.

44.     At all relevant times, one or more of the individual Pasquinelli Defendants served as a director and/or officer of Homebuilding.

45.     Immediately beneath Bruno's and Anthony's trusts in the ownership chain is Pasquinelli LP, a limited partnership which, in turn, owns Homebuilding.

46.     As part of the estate plan and reorganization, Pasquinelli LP assumed certain obligations of defendant Pasquinelli Management LLC under various compensation agreements it had with Bruno and Anthony, thereby causing Pasquinelli LP to be obligated to make certain payments to Bruno and Anthony.  As will be discussed below, as Bruno and Anthony approached their mid to late 70s, they were paid tens of millions of dollars under these agreements.

47.     Homebuilding was neither a party to any such compensation agreements nor obligated under such agreements.

## B. THE TRANSFERS AT ISSUE

48. As Homebuilding was treated as a pass-through entity for tax purposes, Homebuilding's operating agreement required it to make certain distributions of earnings attributable to the Operating Subsidiaries pursuant to a priority distribution waterfall to Pasquinelli LP, including amounts necessary to fund Bruno's and Anthony's personal income tax liability, on account of pass-through taxable earnings of the Operating Subsidiaries.

49. Homebuilding was further required to make distributions of earnings that corresponded to Pasquinelli LP's obligations to Bruno and Anthony under the compensation agreements.

50. Defendant Pasquinelli Family Foundation was also to receive certain priority distributions from Homebuilding.

51. Homebuilding was further permitted to make additional "optional" distributions of earnings so that Bruno and Anthony or their trusts and beneficiaries (*i.e.*, one or more of the Related Party Transferees) could receive cash payments.

52. Between 2005 and 2009, Harris and certain Operating Subsidiaries entered into various construction loan agreements (detailed in Section I below) to, *inter alia*, finance the construction of residential real estate developments in several states.

53. Each of these Harris loans was unconditionally guaranteed by Homebuilding.

54. During 2005-2009, and while Harris was a creditor of Homebuilding and the various Operating Subsidiary borrowers, Homebuilding disclosed that over $87 million in cash and property was transferred from Homebuilding to Pasquinelli L.P. and subsequently to the Pasquinelli family trusts and one or more of the Related Party Transferees as set forth on the following chart:

- 12 -

| Homebuilding Transfers to Pasquinelli LP 2005-2009 | | | | |
|---|---|---|---|---|
| | 2005 | 2006 | 2007 | 2008 | 2009 |
| January | $5,675,877.00 | $8,496,360.00 | $2,134,800.00 | $(4.20) | |
| February | $1,861,048.00 | $1,120,000.00 | $3,398,890.94 | | |
| March | $1,639,000.00 | $2,158,760.00 | $1,517,174.00 | | |
| April | $3,498,984.00 | $4,801,099.00 | $3,225,033.00 | | |
| May | $604,000.00 | $855,000.00 | $967,000.00 | $431,000.00 | |
| June | $4,009,447.00 | $5,105,363.00 | $1,448,757.00 | $16,400.00 | $1,200,674.67 [1] |
| July | $604,000.00 | $847,734.84 | $966,000.00 | $508,000.00 | |
| August | $619,000.00 | $855,000.00 | $965,832.35 | | |
| September | $8,444,589.00 | $8,231,922.00 | $2,661,719.00 | | |
| October | $604,000.00 | $1,376,888.00 | $966,000.00 | | |
| November | $604,000.00 | $918,457.68 | $966,000.00 | $100,000.00 | |
| December | $604,000.00 | $825,000.00 | $966,504.00 | | |
| TOTAL | $28,767,945.00 | $35,591,584.52 | $20,183,710.29 | $1,055,395.80 | $1,200,674.67 |
| GRAND TOTAL: $86,799,310.28 | | | | | |

55.     During 2006-2009, approximately $58 million was transferred out of Homebuilding to Pasquinelli LP, to Bruno's and Anthony's trusts, and to one or more of the Related Party Transferees.

56.     During 2006 and into 2007, Bruno and Anthony, now in their mid to late 70s, were, under their compensation agreements, being paid by Pasquinelli LP an aggregate amount of approximately $604,000 *per month*, and the approximate $12 million they received in 2007 caused Homebuilding, after it transferred such amounts to Pasquinelli LP, to go from having net income of $6 million prior to making the transfers to Pasquinelli LP to sustaining a loss of $6.8 million.

57.     Moreover, Bruno and Anthony, at their late ages, were purportedly rendering services to the entire Pasquinelli "family" of companies, but were being paid out of the transfers that Homebuilding made to Pasquinelli LP.

---

[1]     This amount represents the book value of three properties and a mortgage that were transferred.

58.     As such, any value, if any, received by Pasquinelli LP for the transfers it made to fund its obligations under the compensation agreements was, at best, inconsequential.

59.     Rather, it was likely that other entities within the Pasquinelli family of companies received most of the purported services of Bruno and Anthony under the compensation agreements.

60.     All told, from 2006-2009, Bruno and Anthony received approximately $23 million pursuant to their compensation agreements.     Such payments were made from transfers from Homebuilding to Pasquinelli LP.

61.     Accordingly, Bruno and Anthony did not provide services to Homebuilding that in any way justified the exorbitant amounts paid to them.[2]     Rather, these agreements were simply another way to extract money out of the Operating Subsidiaries and Homebuilding.

62.     Homebuilding, especially in light of the fact that it had guaranteed millions of dollars of loans, did not receive any reasonably equivalent value in exchange for the distributions it made to Pasquinelli LP.

63.     Likewise, Pasquinelli LP did not receive any reasonably equivalent value in exchange for the transfers it made (i) to Bruno and Anthony and (ii) to the family trusts.

64.     Additionally, the family trusts did not receive any reasonably equivalent value in exchange for the transfers it made (i) to Bruno and Anthony and (ii) to any other of the Related Party Transferees.

---

[2]     Even if Bruno and Anthony were providing services to the company, as discussed below, such "services" most likely included implementing a business strategy that ultimately ran the company into the ground, as the Pasquinellis in 2008 had to retain a third-party consultant and financial advisor, rather than Bruno and Anthony, to attempt to assist the company with restructuring its massive debt load. This restructuring was ultimately unsuccessful because the Pasquinelli Defendants failed and refused to provide any support for their enterprise.

65. Bruno and Anthony, the family trusts and the Related Party Transferees either knew or should have known that the transfers in question here, when made, caused Homebuilding to be insolvent (or were made when Homebuilding was insolvent), inadequately capitalized or unable to satisfy its debts as they became due.

C. THE INSOLVENCY OF THE PASQUINELLI ENTERPRISE

66. Beginning as early as the 2006-2007 time period, one or more of the defendants foresaw the downturn in the housing market.

67. Indeed, given the over 35 years of experience of Bruno and Anthony in the residential homebuilding business, they, and one or more of the other defendants, foresaw or had to foresee that the dramatic decline in the value of the land held by the Pasquinelli enterprise would cause it to be in default of its obligations to Harris.

68. As a result and while the above-described transfers were taken from Homebuilding, Homebuilding and the Operating Subsidiary borrowers during 2006-2007 were or became insolvent, inadequately capitalized and/or unable to pay their debts as they matured.

69. For example, Homebuilding's vice-president, Mr. John Giampoli, recently testified in a deposition that in 2007 he saw "signals that the housing industry was slowing." He further testified that it was clear in September of 2007 that "we were going to be in trouble."

70. Mr. Giampoli also testified that throughout 2007 and 2008, Homebuilding was aware that it was sliding towards default and stated, "I mean, the stock market was in turmoil. The whole economy was in turmoil. The election was happening. There was nothing but negative news. **And you know, it didn't take a brain scientist to figure out that housing was going to be greatly impacted by this.** So there was a major concern what's happening to the economy here. So we were on guard at that point in time." (Emphasis added.)

- 15 -

71.     Mr. Giampoli further testified that he received a call in November 2007 from a representative of Key Bank that if a required pay down was not made by November 30 of that year, a Pasquinelli entity would be in default of a loan in Ohio associated with a development called Villas of West Albany.

72.     The required pay down on the Ohio facility was only approximately $250,000 but the Pasquinelli entities were unable to satisfy such obligation and defaulted on it.

73.     Mr. Giampoli further testified that write downs in the value of land held by the Operating Subsidiaries caused them to be out of compliance with certain covenants in the Harris credit agreements as of December 31, 2007, thereby triggering defaults by such Operating Subsidiaries and Homebuilding.

74.     Armed with knowledge that the Pasquinelli enterprise was a sinking ship, Bruno and Anthony and one or more of the Related Party Transferees, some of whom were directors and officers of Homebuilding, chose to instead cause Homebuilding to distribute over $20 million in 2007 and transfer those funds to Pasquinelli L.P., which, in turn, transferred them to the Pasquinelli family trusts mentioned herein.

75.     Even as the Pasquinelli enterprise sank deeper into insolvency, Homebuilding continued to make distributions totaling in excess of $1 million in cash in 2008 and an estimated $300,000 in cash and property with a book value of approximately $1.2 million in 2009.

76.     In late May or early June 2008, the Pasquinellis retained the restructuring firm of Alvarez & Marsal to consult on a debt restructuring.

77.     In early June of 2008, many of the Operating Subsidiaries stopped making interest payments on certain of their loans.

- 16 -

78.     In July of 2008, Homebuilding and/or one of the other Pasquinelli Defendants informed lenders to the Operating Subsidiaries that they would cease making payments on its obligations under its various loan facilities.

79.     Despite this, the Operating Subsidiaries continued to receive and retain revenues generated by the projects, including but not limited to Homeowners Association fees.

80.     On September 18, 2008, Harris received a letter from Pasquinelli-Portrait Homes (an entity wholly-owned by Homebuilding and its wholly-owned subsidiaries) notifying it that unless Harris entered into a forbearance agreement and committed to advancing additional funds, the Pasquinelli enterprise would be unable to continue to operate and would be forced to shut down as of September 30, 2008.

81.     One or more of the Pasquinelli Defendants also attempted to extract further payments from Harris in exchange for continued operations of the Operating Subsidiaries. If Harris did not agree to make "protection" payments for its collateral, one or more of the Pasquinelli Defendants threatened to cause the Operating Subsidiary to abandon the development, leaving partially built homes exposed to the elements, mechanics liens and other legal and logistical problems for Harris to resolve on its own. These threats were carried out in many cases because Harris refused to give in to such demands.

82.     Despite these events, distributions did not cease. In fact, over $2.5 million of cash and other property were distributed after May of 2008 after the engagement of Alvarez & Marsal, and approximately $2 million of cash and property was distributed after one or more of the Pasquinelli Defendants informed its lenders that it would cease making loan payments in July 2008.

83.     Subsequently, over 300 lawsuits were filed against Homebuilding and its subsidiaries arising out of these defaults and related matters.

84.     Yet, Homebuilding and its subsidiaries chose to simply walk away from most of these Harris-funded developments, pocketing millions of dollars and requiring Harris to expend significant sums for tax payments, insurance, weed control, HOA costs, building remediation, utility connection and other costs.

**D.    PROPERTY TRANSFERS MADE AFTER DEFAULTS ON HARRIS LOANS AND AFTER HARRIS OBTAINS A JUDGMENT AGAINST HOMEBUILDING**

85.     As the Pasquinelli enterprise ran out of cash and was losing many of its encumbered real estate assets to foreclosure, Bruno and Anthony transferred certain unencumbered real estate assets (described below) from Homebuilding to their trusts.

86.     By December 31, 2007, various Operating Subsidiaries and Homebuilding were in default on their obligations to Harris.

87.     On May 1, 2009, a judgment was rendered in the Circuit Court of Cook County, Illinois, in favor of Harris N.A. in and against Homebuilding for the sum of $4,034,491.90, plus further accruing interest, costs and fees arising out of Homebuilding's obligations under an interest rate swap agreement (the *"Swap Judgment"*).

88.     In addition, Harris had commenced multiple foreclosure proceedings against Operating Subsidiary borrowers and sought deficiency judgments against such entities as well as Homebuilding due to its guarantees of such obligations.

89.     After the occurrence of these events, including the entry of the Swap Judgment, properties located in Pasquinelli-related developments known as Beresford Commons, Creekside, and Horse Pen Creek were transferred from Homebuilding to the trusts, together with

a mortgage on real property referred to as the Shulz property (collectively, the *"Transferred Properties"*).

90.     The Transferred Properties purportedly had a book value of approximately $1.2 million.

## E.     THE PASQUINELLIS INTENTIONALLY KEPT THE OPERATING SUBSIDIARIES INADEQUATELY CAPITALIZED

91.     Bruno and Anthony structured the Pasquinelli enterprise so that the Operating Subsidiaries would never have sufficient capital to meet their obligations or, at a minimum, to facilitate their ability to frustrate creditor claims.

92.     Bruno and Anthony utilized defendant Pasquinelli Financial LLC (which is owned by Homebuilding) to hold the liquid assets of the Pasquinelli enterprise out of the reach of creditors of the Operating Subsidiaries and Homebuilding.

93.     Mr. Giampoli testified that "our strategy was always to keep the cash - keep the [Operating Subsidiaries] with very little cash. And so on a monthly - quarterly basis, cash would be distributed up to the parent [*i.e.*, Homebuilding], and then they would contribute it back to Pasquinelli Financial, who would then make loans to all the [Operating Subsidiaries] and provide any cash needs that they would have."

94.     Mr. Giampoli further testified that Pasquinelli Financial LLC functioned as a sort of "internal bank" for the Pasquinelli enterprise, and Bruno and Anthony caused most of the enterprise's liquid assets to be contributed to and distributed from this entity.

95.     This arrangement was never documented in a written agreement among the various Pasquinelli entities.

96.     Rather, all such transfers were made at the Pasquinellis' discretion, often on nothing more than an "oral agreement." On information and belief, cash from the Harris

Operating Subsidiary borrowers was most likely comingled at Pasquinelli Financial LLC with a hodge-podge of transfers from other affiliates.

97.     Through this practice (and also given that Homebuilding had no material assets outside of its ownership interests in its subsidiaries), the borrowers on Harris' loans and Homebuilding, as guarantor, would be rendered perpetually insolvent, inadequately capitalized, and/or unable to pay their debts as they matured in the event the real estate collateral securing such loans was insufficient.  To the extent that an Operating Subsidiary defaulted on its loan, Pasquinelli Financial LLC could simply and conveniently decline to advance any "loans" to the Operating Subsidiary in need, and hence, place a creditor, such as Harris, in the position of essentially holding a non-recourse loan from the Operating Subsidiary with a worthless guaranty from Homebuilding – which was clearly not what Harris had bargained for.

98.     Indeed, the Operating Subsidiaries to which Harris had extended credit would have been able to meet their obligations absent the systematic transfers of cash into Pasquinelli Financial LLC because they (or Homebuilding) would have retained sufficient liquidity to meet their obligations as they came due and would otherwise have had sufficient assets to remain solvent.

99.     The Operating Subsidiaries would have been able to meet their obligations absent these systemic transfers in part because the loan documents provided that the Operating Subsidiaries would retain a percentage of the proceeds of each home sale.  However, instead of retaining these proceeds in the Operating Subsidiaries to fund their operational needs and complete the project, the Pasquinelli Defendants instead transferred these proceeds to Pasquinelli Financial LLC in an attempt to prevent creditors from reaching these funds.

100.    By virtue of this practice, it is likely that the Operating Subsidiaries that borrowed money from Harris and Homebuilding were insolvent or inadequately capitalized much earlier than the fall of 2007 and were dependent on "hope" loans from Pasquinelli Financial LLC to operate if they experienced a liquidity shortage.

101.    Despite the defaults on the Harris indebtedness, none of the monies that were transferred out of the Operating Subsidiary borrowers into Pasquinelli Financial LLC appear to have ever been returned to such Operating Subsidiaries or Homebuilding to satisfy their indebtedness to Harris.

102.    To the extent any funds obtained by Pasquinelli Financial LLC directly or indirectly from any Harris Operating Subsidiary borrowers were, in turn, transferred to Homebuilding and then up to Pasquinelli LP and subsequently the trusts, then such transfers were made in violation of law.

F.    ANOTHER ACT OF DODGING CREDITORS: PASQUINELLI MANAGEMENT, LLC

103.    Bruno and Anthony further utilized their corporate structure during 2008 to hinder creditors, as evidenced by defendant Pasquinelli Management, LLC, an affiliate wholly-owned by Homebuilding which was the operating entity used to manage certain aspects of the Pasquinelli empire.

104.    Out of a perceived "fear" that creditors could exercise remedies against Pasquinelli Management LLC since it was obtaining management fees under certain forbearance agreements with other lenders, one or more of the Pasquinelli Defendants caused Pasquinelli Management LLC to be transferred outside of the Homebuilding family of companies (and their creditors) on or about November 17, 2008.

105.    Specifically, Pasquinelli Management LLC was transferred to a limited liability company informally referred to as "Paradigm."

106.    Not surprisingly, Paradigm turned out to be owned by Bruno and Anthony, with each owning fifty percent of the company.

107.    Paradigm did not pay any cash for Pasquinelli Management LLC but apparently only executed a note on which no payments were ever made.

108.    Mr. Giampoli confirmed that Pasquinelli Management LLC was transferred to essentially frustrate creditors. For example, he testified that the transfer:

> [W]as to--in that we had these obligations under the forbearance agreements and with the wave of lawsuits, litigation, foreclosures, you know, lots -- quite a few banks, the discussions were not going very well. It was thought that -- we felt that there could be a problem if [Pasquinelli] Management [LLC] was tied up in this whole thing that we wouldn't be able to operate. So we wanted to be able to operate the business potentially independent of any issues that might be raised on the Pasquinelli group of companies.

109.    Although the Pasquinellis subsequently transferred Pasquinelli Management LLC back into the Homebuilding family, it likely did so after there was little if any value (in the form of future management fees) left.

110.    As a result, Homebuilding most likely did not receive reasonably equivalent value for the transfer of its subsidiary Pasquinelli Management LLC to Paradigm.

111.    As recently as October 2008, Pasquinelli Management LLC had approximately $4 million on deposit. By late 2009, it had only approximately $50,000 in its bank accounts.

112.    As described below, much of this and earlier diminution in the collateral was due to payments, including but not limited to, Bruno's and Anthony's children and grandchildren,

none of whom provided services of reasonably equivalent value to Homebuilding or any of the Operating Subsidiaries.

**G.    BENEFITS TO BRUNO'S AND ANTHONY'S CHILDREN AND GRANDCHILDREN**

113.    Like much of the Pasquinelli enterprise, Mr. Giampoli testified that Pasquinelli Management LLC was a family affair. Despite being insolvent or on the brink of insolvency and subsequently in default of its obligations to Harris, Bruno and Anthony kept numerous members of their family on the payroll, including Michael Pasquinelli, a brother, Maria Pasquinelli, a daughter, Betsy Pasquinelli, a daughter, Anthony J. Pasquinelli, a son, and even Kevin Pasquinelli, Ann Marie Pasquinelli and Johnny Pasquinelli, who are grandchildren.

114.    These individuals continued to draw substantial salaries until very recently from Pasquinelli Management LLC, which, during the fall of 2009, totaled approximately $50,000 per month, despite the insolvency of the Pasquinelli enterprise.

115.    According to Giampoli, the $50,000 monthly salaries paid to the children and grandchildren of Bruno and Anthony at that time were "very reduced salaries" relative to past sums. Therefore, distributions prior to November 2009 were likely significantly higher.

116.    To the extent any such salaries were funded from transfers made by Homebuilding (or such individuals were subsequent transferees of such transfers), Homebuilding and any subsequent transferor did not receive any equivalent value in exchange for such transfers.

**H.    BRUNO AND ANTHONY STAND TO BENEFIT FROM HOMEBUILDING'S NOLS**

117.    Homebuilding, being a "pass through" entity for income tax purposes, did not pay federal income tax.

118.    Bruno and Anthony paid taxes on such pass-through earnings from transfers that Homebuilding made to Pasquinelli LP and then to one or more of the trusts.

119.  As a result, the net operating losses, or NOLs, generated by the Operating Subsidiaries for the years 2007-2009 and beyond may be passed through Homebuilding and ultimately to Bruno and Anthony, who, in turn, may be able to carry-back such NOLs and potentially obtain income tax refunds.

120.  As a result, Bruno and Anthony, and, on information and belief, one or more of the other Pasquinelli Defendants, potentially reaped (or stand to reap) the benefits of NOL carrybacks, which could include refunds of taxes that were originally paid from distributions and transfers from Homebuilding to Pasquinelli LP and then to the trusts.

121.  It would be unfair and inequitable to permit the Pasquinelli Defendants' to keep these benefits (or any future benefits) when Homebuilding's creditors, such as Harris, have been left substantially unpaid and injured by increasing losses due to Homebuilding's post-default conduct.

122.  Accordingly, one or more of the defendants have been (or stand to be) unjustly enriched and, as fiduciaries to insolvent Homebuilding and the Operating Subsidiary borrowers, should be ordered to utilize NOLs in a manner to maximize the amount of cash tax refunds receivable with such amount being further ordered to be turned over to Harris to be applied against Homebuilding's outstanding and unpaid debt to Harris.

I.      A DETAILED DESCRIPTION OF THE RELEVANT HARRIS INDEBTEDNESS

123.  As described below, Harris provided construction financing for the following ten of Homebuilding's developments, each of which subsequently went into default.  Currently, Harris has obtained deficiency judgments in the collective amount of approximately $19 million to date (not including the Swap Judgment) against Homebuilding and the Operating Subsidiary borrowers on account of such indebtedness.

- 24 -

### 1. BROOK MEADOW LLC

124.    On January 30, 2006, Harris and an affiliate of Pasquinelli, Portrait Homes –
Brook Meadow LLC (*"Brook Meadow"*), entered into that certain Construction Loan Agreement
(the *"Brook Meadow Construction Loan Agreement"*) to, *inter alia*, finance the construction of
certain residential real property located in Berkeley County, West Virginia.

125.    Also on January 30, 2006, Homebuilding executed that certain Brook Meadow
Guaranty in which it guaranteed, *inter alia*, any and all indebtedness, obligations and liabilities
of every kind and nature of Brook Meadow to Harris.

126.    Additionally, on January 30, 2006, Homebuilding executed that certain
Completion Guaranty in which it, *inter alia*, guaranteed the satisfactory completion of the project
and the payment by Brook Meadow of all amounts necessary to balance the budget of the
project.

127.    Subsequently, Brook Meadow defaulted on its obligations to Harris and on
June 23, 2008, Harris sent that certain Notice of Default/Reservation of Rights which notified
Brook Meadow that it was in default under Section 10.1(e) of the Brook Meadow Construction
Loan Agreement for failing to pay principal and interest when due thereon.

128.    By July 15, 2008, additional defaults had occurred and Harris sent that certain
Notice of Default/Reservation of Rights which notified Brook Meadow that it was in default
under Section 10.1(a) for failure to pay interest when due, and also notified Brook Meadow and
Homebuilding that it was in default for failure to deliver financial statements and compliance
certificates required by Section 12A of the Brook Meadow Guaranty and the guarantor's
repudiation of its obligations under the Brook Meadow Guaranty.

129.    On July 31, 2008, Harris sent another Notice of Default/Reservation of Rights in
which it notified Brook Meadow and Homebuilding that, in addition to the previously noticed
defaults, further defaults had occurred based on Brook Meadow's failure to pay principal and

- 25 -

interest when due when the loan matured on July 30, 2008. The July 31, 2008 Notice of Default/Reservation of Rights further demanded payment of principal and interest, as well as all other obligations due and owing under the Brook Meadow Construction Loan Agreement.

130. On August 29, 2008, Harris sent to Brook Meadow that certain Notice of Interest Rate Increase and Commitment Termination/Reservation of Rights, in which it notified Brook Meadow that because of the failure to make payments within 7 days after receipt of the previous notices, a "Termination Date Default" had occurred.

131. On November 10, 2008, Harris sent to Homebuilding that certain Demand to Guarantor renewing its prior demand under the Brook Meadow Guaranty and the Brook Meadow Completion Guaranty.

132. Despite demand, Brook Meadow has failed to pay principal and interest when due on its indebtedness to Harris. By virtue of these defaults, Brook Meadow is indebted to Harris in the amount of $5,177,673 as of May 4, 2010, plus further accruing interest of $870.11 per day.

133. Also, despite demand, Homebuilding has failed to pay principal, interest and expenses when due on the Brook Meadow Guaranty. By virtue of Brook Meadow's defaults, Homebuilding is indebted to Harris in the amount of $5,177,673 as of May 4, 2010, plus further accruing interest of $870.11 per day.

134. Further, despite demand, Homebuilding has failed to satisfy its obligations under the Brook Meadow Completion Guaranty.

## 2. CITY SIDE TOWNHOMES, L.P.

135. On February 15, 2008, BMO Capital Markets Financing, Inc., an affiliate of Harris ("*BMO*"), and an affiliate of Pasquinelli, Portrait Homes -- City Side Townhomes LP ("*City Side*") entered into that certain Construction Loan Agreement (the "*City Side*

*Construction Loan Agreement"*) to, *inter alia*, finance the construction of certain residential real property located in Williamson County, Texas.

136.    Also on February 15, 2008, Homebuilding executed that certain City Side Guaranty in which it guaranteed, *inter alia*, any and all indebtedness, obligations and liabilities of every kind and nature of City Side to BMO.

137.    Additionally, on February 15, 2008, Homebuilding executed that certain City Side Completion Guaranty in which it, *inter alia*, guaranteed the satisfactory completion of the project and the payment by City Side of all amounts necessary to balance the budget of the project.

138.    Subsequently, City Side defaulted on its obligations to BMO and on June 23, 2008, BMO sent that certain Notice of Default/Reservation of Rights which notified City Side that it was in default under Section 10.1(e) of the City Side Construction Loan Agreement for failing to pay principal and interest when due thereon.

139.    By July 15, 2008, additional defaults had occurred and BMO sent that certain Notice of Default/Reservation of Rights which notified City Side that it was in default under Section 10.1(a) for failure to pay interest when due, and also notified City Side and Homebuilding that it was in default for failure to deliver financial statements and compliance certificates required by Section 12A of the City Side Guaranty and the guarantor's repudiation of its obligations under the City Side Guaranty.

140.    On August 29, 2008, BMO sent to City Side that certain Notice of Acceleration, Demand, Interest Rate Increase and Commitment Termination/Reservation of Rights, in which it notified City Side that because of the failure to make interest payments when due within 7 days of receipt of the previous notices and City Side's failure to cure defaults in the performance of other provisions of the Loan Agreement within 30 days of written notice thereof, BMO was declaring the principal, interest and other amounts due BMO to be immediately due and payable.

141.    On November 10, 2008, BMO sent to Homebuilding that certain Demand to Guarantor renewing its prior demand under the City Side Guaranty and the City Side Completion Guaranty. The November 10, 2008 letter, *inter alia*, demanded payment from Homebuilding for City Side's indebtedness under the City Side Guaranty as well as full performance under the City Side Completion Guaranty.

142.    Despite demand, City Side has failed to pay principal and interest when due on its indebtedness to BMO.

143.    Also, despite demand, Homebuilding has failed to pay principal, interest and expenses when due on the City Side Guaranty.

144.    Further, despite demand, Homebuilding has failed to satisfy its obligations under the City Side Completion Guaranty.

145.    Mr. Giampoli admitted at his deposition that Homebuilding management knew that it was in default of it obligations to its lenders as of December 31, 2007.

146.    As such, Homebuilding knew that it was incurring debts beyond its ability to repay them.

147.    Also, as Homebuilding was already in default when the transaction was executed, it and City Side had unreasonably small capital when it entered into the City Side transaction.

148.    Each of the above-referenced transfers was made in bad faith by Homebuilding and its insiders in order to benefit Bruno A. Pasquinelli and Anthony R. Pasquinelli and their Related Party Transferees to the detriment of Harris.

### 3. McAlister Place LLC

149.    On February 7, 2008, Harris and an affiliate of Pasquinelli, Portrait Homes-McAlister Place LLC (*"McAlister Place"*) entered into that certain Fourth Amended Construction Loan Agreement (the *"McAlister Place Construction Loan Agreement"*) to, *inter*

- 28 -

finance the construction of certain residential real property located in Greensboro, North Carolina.

150. Also, on February 7, 2008, Homebuilding executed that certain McAlister Place Guaranty in which it guaranteed, *inter alia*, any and all indebtedness, obligations and liabilities of every kind and nature of McAlister Place to Harris.

151. Additionally, on February 7, 2008, Homebuilding executed that certain McAlister Place Completion Guaranty in which it, *inter alia*, guaranteed the satisfactory completion of the project and the payment by McAlister Place of all amounts necessary to balance the budget of the project.

152. Subsequently, McAlister Place defaulted on its obligations to Harris and on June 23, 2008, Harris sent that certain Notice of Default/Reservation of Rights which notified McAlister Place that it was in default under Section 10.1(e) of the McAlister Place Construction Loan Agreement for failing to pay principal and interest when due thereon.

153. By July 15, 2008, additional defaults had occurred and Harris sent that certain Notice of Default/Reservation of Rights, which notified McAlister Place that it was in default under Section 10.1(a) for failure to pay interest when due, and also notified McAlister Place and Homebuilding that they were in default for failure to deliver financial statements and compliance certificates required by Section 12A of the McAlister Place Guaranty and the guarantor's repudiation of its obligations under the McAlister Place Guaranty.

154. On August 29, 2008, Harris sent to McAlister Place that certain Notice of Termination, Demand and Interest Rate Increase/Reservation of Rights, in which it notified McAlister Place that because of the failure to make payments within 7 days after receipt of the previous notices, a "Termination Date Default" had occurred.

155.   Despite demand, McAlister Place has failed to pay principal and interest when due on its indebtedness to Harris.

156.   Also, despite demand, Homebuilding has failed to pay principal, interest and expenses when due on the McAlister Place Guaranty.

157.   Further, despite demand, Homebuilding has failed to satisfy its obligations under the McAlister Place Completion Guaranty.

158.   On November 10, 2008, Harris N.A. filed a verified complaint in the General Court of Justice of Guilford County, North Carolina alleging, *inter alia,* breach of contract, breach of guarantee against Homebuilding, and appointment of a receiver.

159.   On July 7, 2009, Homebuilding, together with its indirect subsidiary Portrait Homes – McAlister Place LLC entered into that certain Consent Judgment, which amended the caption to reflect Plaintiffs' REO subsidiary and entered judgment against Homebuilding and Portrait Homes – McAlister Place LLC, in the amount of $563,594.22, together with accrued interest of $14,835.60 and costs and reasonable attorneys fees of $14,338.43.

160.   As of the filing of this Complaint, these amounts remain unpaid.

161.   Mr. Giampoli admitted at his deposition that Homebuilding management knew that it was in default of its obligations to its lenders as of December 31, 2007.

162.   As such, Homebuilding knew that it was incurring debts beyond its ability to repay them.

163.   Also, as Homebuilding was already in default when the transaction was executed, Homebuilding and McAlister Place had unreasonably small capital when they entered into the City Side transaction.

164. Each of the above-referenced transfers was made in bad faith by Homebuilding and its insiders in order to benefit Bruno A. Pasquinelli and Anthony R. Pasquinelli and the Related Party Transferees to the detriment of Harris.

## 4. McDermott LP

165. On November 28, 2005, Harris and an affiliate of Pasquinelli, Portrait Homes – McDermott LP ("McDermott") entered into that certain Construction Loan Agreement (the "McDermott Construction Loan Agreement") to, *inter alia*, finance the construction of certain residential real property located in Collin County, Texas.

166. Also, on November 28, 2005, Homebuilding executed that certain McDermott Guaranty in which it guaranteed, *inter alia*, any and all indebtedness, obligations and liabilities of every kind and nature of McDermott to Harris.

167. Additionally, on November 28, 2005, Homebuilding executed that certain McDermott Completion Guaranty in which it, *inter alia*, guaranteed the satisfactory completion of the project and the payment by McDermott of all amounts necessary to balance the budget of the project.

168. Subsequently, McDermott defaulted on its obligations to Harris and on June 10, 2008, Harris sent that certain Notice of Default/Reservation of Rights which notified McDermott that it was in default under Section 10.1(a) of the McDermott Construction Loan Agreement for failing to pay principal and interest on the Termination Date.

169. On June 23, 2008, Harris sent that certain Notice of Default/Reservation of Rights which notified McDermott that it was in default under Section 10.1(e) of the McDermott Construction Loan Agreement for failing to pay principal and interest on the Termination Date.

170. By July 15, 2008, additional defaults had occurred and Harris sent that certain Notice of Default/Reservation of Rights which notified McDermott that it was in default under

Section 10.1(a) for failure to pay interest when due, and also notified McDermott and Homebuilding that it was in default for failure to deliver financial statements and compliance certificates required by Section 12A of the McDermott Guaranty and the guarantor's repudiation of its obligations under the McDermott Guaranty.

171.    On August 29, 2008, Harris sent to McDermott that certain Notice of Termination, Demand and Interest Rate Increase/Reservation of Rights, in which it notified McDermott that because of the failure to make payments within 7 days after receipt of the June 10, 2008 notice, a "Termination Date Default" had occurred.

172.    On November 10, 2008, Harris sent to Homebuilding that certain Demand to Guarantor renewing its prior demand under the McDermott Guaranty and the McDermott Completion Guaranty.

173.    Despite demand, McDermott has failed to pay principal and interest when due on its indebtedness to Harris.

174.    Also, despite demand, Homebuilding has failed to pay principal, interest and expenses when due on the McDermott Guaranty.

175.    Further, despite demand, Homebuilding has failed to satisfy its obligations under the McDermott Completion Guaranty.

176.    On November 19, 2008, Harris filed a complaint in the District Court of Dallas County, Texas, 162nd Judicial District, against McDermott and Homebuilding.

177.    On February 17, 2010, Homebuilding, together with McDermott, entered into that certain Agreed Judgment, which entered judgment against Homebuilding and McDermott in the amount of $3,918,210.73, together with interest at the rate of 5% per annum from the date of this judgment until paid.

178.    On May 4, 2010, Harris made a credit bid of $1.5 million for the McDermott

- 32 -

property.

179.　As of the filing of this Complaint, the outstanding balance remains unpaid.

## 5. NAAMAN ROAD TOWNHOMES, LP

180.　On January 19, 2006, Harris and an affiliate of Pasquinelli, Portrait Homes – Naaman Road Townhomes LP (*"Naaman Road"*) entered into that certain Construction Loan Agreement (the *"Naaman Road Construction Loan Agreement"*) to, *inter alia*, finance the construction of certain residential real property located in Collin County, Texas.

181.　Also on January 19, 2006, Homebuilding executed that certain Naaman Road Guaranty in which it guaranteed, *inter alia*, any and all indebtedness, obligations and liabilities of every kind and nature of Naaman Road to Harris.

182.　Additionally, on January 19, 2006, Homebuilding executed that certain Naaman Road Completion Guaranty in which it, *inter alia*, guaranteed the satisfactory completion of the project and the payment by Naaman Road of all amounts necessary to balance the budget of the project.

183.　On June 23, 2008, Harris sent that certain Notice of Default/Reservation of Rights which notified Naaman Road that it was in default under Section 10.1(e) of the Naaman Road Construction Loan Agreement for failing to pay principal and interest on the Termination Date.

184.　By July 15, 2008, additional defaults had occurred and Harris sent that certain Notice of Default/Reservation of Rights which notified Naaman Road that it was in default under Section 10.1(a) for failure to pay interest when due, and also notified Naaman Road and Homebuilding that it was in default for failure to deliver financial statements and compliance certificates required by Section 12A of the Naaman Road Guaranty and the guarantor's repudiation of its obligations under the Naaman Road Guaranty.

185. On July 31, 2008, Harris sent another Notice of Default/Reservation of Rights in which it notified Naaman Road and Homebuilding that in addition to the previously noticed defaults, further defaults had occurred based on Naaman Road's failure to pay principal and interest when due on the Termination Date of the Naaman Road Construction Loan Agreement on July 19, 2008. The July 31, 2008 Notice of Default/Reservation of Rights further gave notice that if Naaman Road did not make payment in full of all amounts due and owing within 7 days, a Termination Date Default would have occurred.

186. On August 29, 2008, Harris sent to Naaman Road that certain Notice of Interest Rate Increase and Commitment Termination/Reservation of Rights in which it notified Naaman Road that because of the failure to make payments within 7 days after receipt of the June 23, 2008 notice, a "Termination Date Default" had occurred.

187. On November 10, 2008, Harris sent to Homebuilding that certain Demand to Guarantor renewing its prior demand under the Naaman Road Guaranty and the Naaman Road Completion Guaranty.

188. Despite demand, Naaman Road has failed to pay principal and interest when due on its indebtedness to Harris.

189. Also, despite demand, Homebuilding has failed to pay principal, interest and expenses when due on the Naaman Road Guaranty.

190. Further, despite demand, Homebuilding has failed to satisfy its obligations under the Naaman Road Completion Guaranty.

191. On November 19, 2008, Harris filed a complaint in the District Court of Dallas County, Texas, 162nd Judicial District, against Naaman Road and Homebuilding.

192. On February 17, 2010, Homebuilding, together with Naaman Road, entered into that certain Agreed Judgment, which entered judgment against Homebuilding and Naaman Road

- 34 -

in the amount of $3,090,752.46, together with interest at the rate of 5% per annum from the date of this judgment until paid.

193.    On June 1, 2010, Harris made a credit bid of $832,500 for the Naaman Road property.

194.    As of the filing of this Complaint, the outstanding balance remains unpaid.

### 6. PARKSIDE TRAILS LP

195.    On June 23, 2007, BMO and an affiliate of Pasquinelli, Portrait Homes – Parkside Trails LP (*"Parkside Trails"*) entered into that certain Construction Loan Agreement (the *"Parkside Trails Construction Loan Agreement"*) to, *inter alia*, finance the construction of certain residential real property located in Harris County, Texas.

196.    Also on June 23, 2007, Homebuilding executed that certain Parkside Trails Guaranty in which it guaranteed, *inter alia*, any and all indebtedness, obligations and liabilities of every kind and nature of Parkside Trails to BMO.

197.    Additionally, on June 23, 2007, Homebuilding executed that certain Parkside Trails Completion Guaranty in which it, *inter alia*, guaranteed the satisfactory completion of the project and the payment by Parkside Trails of all amounts necessary to balance the budget of the project.

198.    On June 23, 2008, BMO sent that certain Notice of Default/Reservation of Rights which notified Parkside Trails that it was in default under Section 10.1(e) of the Parkside Trails Construction Loan Agreement for failing to pay principal and interest on the Termination Date.

199.    By July 15, 2008, additional defaults had occurred and BMO sent that certain Notice of Default/Reservation of Rights which notified Parkside Trails that it was in default under Section 10.1(a) for failure to pay interest when due, and also notified Parkside Trails and Homebuilding that it was in default for failure to deliver financial statements and compliance

- 35 -

certificates required by Section 12A of the Parkside Trails Guaranty and the guarantor's repudiation of its obligations under the Parkside Trails Guaranty.

200. On August 29, 2008, BMO sent to Parkside Trails that certain Notice of Acceleration, Demand, Interest Rate Increase and Commitment Termination/Reservation of Rights, in which it notified Parkside Trails that because of the failure to make payments within 7 days after receipt of the June 23, 2008 notice, BMO was declaring that the principal, interest and other amounts due to be immediately due and payable.

201. On November 10, 2008, BMO sent to Homebuilding that certain Demand to Guarantor renewing its prior demand under the Parkside Trails Guaranty and the Parkside Trails Completion Guaranty.

202. Despite demand, Parkside Trails has failed to pay principal and interest when due on its indebtedness to BMO.

203. Also, despite demand, Homebuilding has failed to pay principal, interest and expenses when due on the Parkside Trails Guaranty.

204. Further, despite demand, Homebuilding has failed to satisfy its obligations under the Parkside Trails Completion Guaranty.

205. On June 24, 2009, Harris filed a complaint in the District Court of Dallas County, Texas, 162nd Judicial District, against Parkside Trails and Homebuilding.

206. On February 4, 2010, Homebuilding, together with Parkside Trails, entered into that certain Agreed Judgment, which entered judgment against Homebuilding and Parkside Trails in the amount of $2,607,766.47, together with interest at the rate of 5% per annum from the date of this judgment until paid.

207. As of the filing of this Complaint, these amounts remain unpaid.

## 7. PERSIMMON GROVE LLC

208.    On August 28, 2007, Harris and an affiliate of Pasquinelli, Portrait Homes –
Persimmon Grove LLC (*"Persimmon Grove"*) entered into that certain First Amended
Construction Loan Agreement (the *"Persimmon Grove Construction Loan Agreement"*) to,
*inter alia*, finance the construction of certain residential real property located in Avon, Indiana.

209.    Also, on August 28, 2007, Homebuilding executed that certain Persimmon Grove
Guaranty in which it guaranteed, *inter alia*, any and all indebtedness, obligations and liabilities
of every kind and nature of Persimmon Grove to Harris.

210.    Additionally, on December 6, 2007, Homebuilding executed that certain
Persimmon Grove Completion Guaranty in which it, *inter alia*, guaranteed the satisfactory
completion of the project and the payment by Persimmon Grove of all amounts necessary to
balance the budget of the project.

211.    On June 23, 2008, Harris sent that certain Notice of Default/Reservation of Rights
which notified Persimmon Grove that it was in default under Section 10.1(e) of the Persimmon
Grove Construction Loan Agreement for failing to pay principal and interest on the Termination
Date.

212.    By July 15, 2008, additional defaults had occurred and Harris sent that certain
Notice of Default/Reservation of Rights which notified Persimmon Grove that it was in default
under Section 10.1(a) for failure to pay interest when due, and also notified Persimmon Grove
and Homebuilding that it was in default for failure to deliver financial statements and compliance
certificates required by Section 12A of the Persimmon Grove Guaranty and the guarantor's
repudiation of its obligations under the Persimmon Grove Guaranty.

213.    On August 29, 2008, Harris sent to Persimmon Grove that certain Notice of
Termination, Demand and Interest Rate Increase/Reservation of Rights, in which it notified
Persimmon Grove that because of the failure to make payments when the loan matured on

August 28, 2008, Harris was declaring the principal, interest and other amounts due to be immediately due and payable.

214.    On November 10, 2008, Harris sent to Homebuilding that certain Demand to Guarantor renewing its prior demand under the Persimmon Grove Guaranty and the Persimmon Grove Completion Guaranty.

215.    Despite demand, Persimmon Grove has failed to pay principal and interest when due on its indebtedness to Harris. On June 8, 2009, Harris obtained judgment against Persimmon Grove. As of January 4, 2010, the outstanding deficiency after applying all credits was $5,849,389.42, plus further accruing interest, costs and expenses.

216.    Also, despite demand, Homebuilding has failed to pay principal, interest and expenses when due on the Persimmon Grove Guaranty. By virtue of Persimmon Grove's defaults, Homebuilding is indebted to Harris in the amount of $5,849,389.42 as of January 4, 2010, plus further accruing interest, costs and expenses.

217.    Further, despite demand, Homebuilding has failed to satisfy its obligations under the Persimmon Grove Completion Guaranty.

## 8. THE AVENUES LLC

218.    On December 6, 2007, BMO and an affiliate of Pasquinelli, Portrait Homes – The Avenues LLC ("*Avenues*") entered into that certain Construction Loan Agreement (the "*Avenues Construction Loan Agreement*") to, *inter alia*, finance the construction of certain residential real property located in Guilford County, North Carolina.

219.    Also, on December 6, 2007, Homebuilding executed that certain Avenues Guaranty in which it guaranteed, *inter alia*, any and all indebtedness, obligations and liabilities of every kind and nature of Avenues to BMO.

220. Additionally, on December 6, 2007, Homebuilding executed that certain Avenues Completion Guaranty in which it, *inter alia*, guaranteed the satisfactory completion of the project and the payment by Avenues of all amounts necessary to balance the budget of the project.

221. On June 23, 2008, BMO sent that certain Notice of Default/Reservation of Rights which notified Avenues that it was in default under Section 10.1(e) of the Avenues Construction Loan Agreement for failing to pay principal and interest on the Termination Date.

222. By July 15, 2008, additional defaults had occurred and BMO sent that certain Notice of Default/Reservation of Rights which notified Avenues that it was in default under Section 10.1(a) for failure to pay interest when due, and also notified Avenues and Homebuilding that it was in default for failure to deliver financial statements and compliance certificates required by Section 12A of the Avenues Guaranty and the guarantor's repudiation of its obligations under the Avenues Guaranty.

223. On August 29, 2008, BMO sent to Avenues that certain Notice of Acceleration, Demand, Interest Rate Increase and Commitment Termination/Reservation of Rights, in which it notified Avenues that because of the failure to make interest payments when due 7 days after written notice, and the default in the performance of other provisions of the loan agreement, BMO was declaring that the principal, interest and other amounts due to be immediately due and payable.

224. Despite demand, Avenues has failed to pay principal and interest when due on its indebtedness to BMO.

225. Also, despite demand, Homebuilding has failed to pay principal, interest and expenses when due on the Avenues Guaranty.

226. Further, despite demand, Homebuilding has failed to satisfy its obligations under the Avenues Completion Guaranty.

227. On November 10, 2008, BMO filed a verified complaint in the General Court of Justice of Guilford County, North Carolina alleging, *inter alia*, breach of contract, breach of guarantee and Homebuilding, and appointment of a receiver.

228. On July 7, 2009, Homebuilding, together with its indirect subsidiary Portrait Homes – the Avenues LLC, entered into that certain Consent Judgment, which amended the caption to reflect Plaintiffs' REO subsidiary and entered judgment against Homebuilding and Portrait Homes – the Avenues LLC in the amount of $653,134.75, together with accrued interest of $33,356.70 and costs and reasonable attorneys fees of $3,877.90.

229. As of the filing of this Complaint, these amounts remain unpaid.

### 9. TUSCANY LLC

230. On March 20, 2006, Harris and an affiliate of Pasquinelli, Portrait Homes – Tuscany LLC (*"Tuscany"*) entered into that certain Construction Loan Agreement (the *"Tuscany Construction Loan Agreement"*) to, *inter alia*, finance the construction of certain residential real property located in Guilford County, North Carolina.

231. Also on March 20, 2006, Homebuilding executed that certain Tuscany Guaranty in which it guaranteed, *inter alia*, any and all indebtedness, obligations and liabilities of every kind and nature of Tuscany to Harris.

232. Additionally, on March 20, 2006, Homebuilding executed that certain Tuscany Completion Guaranty in which it, *inter alia*, guaranteed the satisfactory completion of the project and the payment by Tuscany of all amounts necessary to balance the budget of the project.

233. On June 23, 2008, Harris sent that certain Notice of Default/Reservation of Rights which notified Tuscany that it was in default under Section 10.1(e) of the Tuscany Construction Loan Agreement for failing to pay principal and interest on the Termination Date.

234. By July 15, 2008, additional defaults had occurred and Harris sent that certain Notice of Default/Reservation of Rights which notified Tuscany that it was in default under Section 10.1(a) for failure to pay interest when due, and also notified Tuscany and Homebuilding that it was in default for failure to deliver financial statements and compliance certificates required by Section 12A of the Tuscany Guaranty and the guarantor's repudiation of its obligations under the Tuscany Guaranty.

235. On August 29, 2008, Harris sent to Tuscany that certain Notice of Acceleration, Demand, Interest Rate Increase and Commitment Termination/Reservation of Rights, in which it notified Tuscany that because of the failure to make interest payments when due 7 days after written notice, and the default in the performance of other provisions of the loan agreement, Harris was declaring the principal, interest and other amounts due to be immediately due and payable.

236. Despite demand, Tuscany has failed to pay principal and interest when due on its indebtedness to Harris.

237. Also, despite demand, Homebuilding has failed to pay principal, interest and expenses when due on the Tuscany Guaranty.

238. Further, despite demand, Homebuilding has failed to satisfy its obligations under the Tuscany Completion Guaranty.

239. On November 10, 2008, Harris N.A. filed a verified complaint in the General Court of Justice of Guilford County, North Carolina alleging, *inter alia,* breach of contract, breach of guarantee and Homebuilding, and appointment of a receiver.

240. On July 7, 2009, Homebuilding, together with its indirect subsidiary Portrait Homes – Tuscany LLC, entered into that certain Consent Judgment, which amended the caption to reflect Plaintiffs' REO subsidiary and entered judgment against Homebuilding and Portrait

- 41 -

Homes – Tuscany LLC in the amount of $64,402.12, together with accrued interest of $8,019.70 and costs and reasonable attorneys fees of $4,628.51.

241.     As of the filing of this Complaint, these amounts remain unpaid.

### 10. WOODBURN CROSSING LLC

242.     On March 20, 2006, Harris and an affiliate of Pasquinelli, Portrait Homes – Woodburn Crossing LLC (*"Woodburn Crossing"*) entered into that certain Construction Loan Agreement (the *"Woodburn Crossing Construction Loan Agreement"*) to, *inter alia*, finance the construction of certain residential real property located in Irdell County, North Carolina.

243.     Also, on March 20, 2006, Homebuilding executed that certain Woodburn Crossing Guaranty in which it guaranteed, *inter alia*, any and all indebtedness, obligations and liabilities of every kind and nature of Woodburn Crossing to Harris.

244.     Additionally, on March 20, 2006, Homebuilding executed that certain Woodburn Crossing Completion Guaranty in which it, *inter alia*, guaranteed the satisfactory completion of the project and the payment by Woodburn Crossing of all amounts necessary to balance the budget of the project.

245.     On June 23, 2008, Harris sent that certain Notice of Default/Reservation of Rights which notified Woodburn Crossing that it was in default under Section 10.1(e) of the Woodburn Crossing Construction Loan Agreement for failing to pay principal and interest on the Termination Date.

246.     By July 15, 2008, additional defaults had occurred and Harris sent that certain Notice of Default/Reservation of Rights which notified Woodburn Crossing that it was in default under Section 10.1(a) for failure to pay interest when due, and also notified Woodburn Crossing and Homebuilding that it was in default for failure to deliver financial statements and compliance

certificates required by Section 12A of the Woodburn Crossing Guaranty and the guarantor's repudiation of its obligations under the Woodburn Crossing Guaranty.

247. On August 29, 2008, Harris sent to Woodburn Crossing that certain Notice of Acceleration, Demand, Interest Rate Increase and Commitment Termination/Reservation of Rights, in which it notified Woodburn Crossing that because of the failure to make interest payments when due 7 days after written notice, and the default in the performance of other provisions of the loan agreement, Harris was declaring that the principal, interest and other amounts due to be immediately due and payable.

248. Despite demand, Woodburn Crossing has failed to pay principal and interest when due on its indebtedness to Harris.

249. Also, despite demand, Homebuilding has failed to pay principal, interest and expenses when due on the Woodburn Crossing Guaranty.

250. Further, despite demand, Homebuilding has failed to satisfy its obligations under the Woodburn Crossing Completion Guaranty.

251. Subsequently, Harris N.A. filed a verified complaint in the General Court of Justice of Iredell County, North Carolina, alleging, *inter alia*, breach of contract, breach of guarantee and Homebuilding, and appointment of a receiver.

252. On July 7, 2009, Homebuilding, together with its indirect subsidiary Portrait Homes — Woodburn Crossing LLC, entered into that certain Consent Judgment which amended the caption to reflect Plaintiffs' REO subsidiary and entered judgment against Homebuilding and Portrait Homes — Woodburn Crossing LLC in the amount of $2,083,415.75, together with accrued interest of $68,612.70 and costs and reasonable attorneys' fees of $18,013.39.

253. As of the filing of this Complaint, these amounts remain unpaid.

## CAUSES OF ACTION

### COUNT I – FRAUDULENT TRANSFER BASED ON ACTUAL FRAUD
### PURSUANT TO 740 ILCS 160/5(a)(1): CERTAIN 2007, 2008 AND 2009 TRANSFERS

254.    Harris incorporates paragraphs 1 through 253 above as if fully set forth herein.

255.    After the entry of the Swap Judgment, the transmittal of notices of defaults on the Harris indebtedness and commencement of foreclosure proceedings, Homebuilding transferred the Transferred Properties to one or more of the Pasquinelli Defendants as initial and/or subsequent transferees (collectively, the *"2009 Transfers"*).

256.    Homebuilding's transfers to one or more of the Pasquinelli Defendants of (i) 4th Quarter 2007 cash transfers in excess of $2.8 million (the *"4Q07 Transfers"*)[3] and/or (ii) the 2008 cash transfers of in excess of $1.055 million (the *"2008 Transfers"*) were made when one or more of the defendants knew that Homebuilding and various Operating Subsidiaries were in default or about to be in imminent default on one or more of the Harris loans or one or more lenders had exercised, or indicated an intent to exercise, rights and remedies, including, without limitation, commencing foreclosure proceedings.

257.    The 4Q07 Transfers, 2008 Transfers and 2009 Transfers (collectively, the (*"2007-09 Transfers"*) were fraudulent transfers under 740 ILCS 160/5(a)(1) because they were made with actual intent to hinder, delay or defraud Harris, a creditor of Homebuilding based on, among other things, the following:

---

[3]    Harris reserves the right, after discovery, to include additional 2007 transfers and earlier transfers in this Count.

A. The 2007-09 Transfers were made to insiders of Homebuilding, including the trusts, Bruno and Anthony and/or the Related Party Transferees who are members of the immediate family of Bruno or Anthony.

B. The 2007-09 Transfers, particularly the transfers of the Transferred Properties, were made in secret and/or not in the ordinary course of Homebuilding's business.

C. Before some or all of the 4Q07 Transfers and 2008 Transfers were made and before all of the 2009 Transfers were made, Homebuilding and the relevant Operating Subsidiaries had been sued or threatened with suit.

D. Prior to the 2007-09 Transfers, Homebuilding and other Operating Subsidiaries concealed the identity and transfer of the Transferred Properties from Harris.

E. The value of the consideration received by Homebuilding was not reasonably equivalent to the value of the 2007-09 Transfers.

F. Homebuilding was insolvent or became insolvent shortly after the 2007-09 Transfers were made and Homebuilding was left with no money or property out of which the Swap Judgment can be satisfied in whole or in part.

G. The 2007-09 Transfers were made in contemplation of Homebuilding's default in payment of its guaranty obligations to Harris, on which the above-referenced judgments were subsequently rendered and were made with a view of protecting the property of Homebuilding and other Pasquinelli entities against enforcement of such judgments.

H. The transfers were made for the purpose of preventing the judgments from becoming a lien on the Transferred Properties or the cash consisting of the 4Q07 Transfers and/or the 2008 Transfers.

- 45 -

I.   The Swap Judgment and deficiency judgments remain wholly unpaid, unsatisfied and in full force, and Homebuilding has failed and refused to satisfy such judgments.

J.   Plaintiffs have been unable to reach any of the above real, personal or mixed property by enforcement of the judgment mentioned above.

K.   The 2007-09 Transfers, when viewed along with the above-described conduct with respect to the transfer and utilization of Pasquinelli Financial LLC and Pasquinelli Management LLC, indicates a general course of conduct or pattern on the part of one or more of the defendants to hinder, delay and frustrate creditors.

258.   No Pasquinelli Defendants who is a subsequent transferee took such transfers in good faith and/or for a reasonably equivalent value.

WHEREFORE, Plaintiffs request that the Court enter judgment against defendants and in favor of plaintiffs and award plaintiffs the following relief, including, but not limited to, a Judgment Order:

1.   Avoiding the 2007-09 Transfers to the extent necessary to satisfy plaintiffs' claims against Homebuilding;

2.   Attaching the Transferred Properties or other property owned by the defendants up to an amount equal to satisfy all amounts due and owing to plaintiffs;

3.   Enjoining the current owner(s) of record of the Transferred Properties from transferring, assigning or disposing of the Transferred Properties and enjoining defendants from disposing, transferring or withdrawing any cash proceeds out of any account in their possession, custody or control to the extent it would result in such defendants collectively possessing less than the amounts due Harris;

4.   Permitting plaintiffs to levy execution on the Transferred Properties and other assets owned by defendants and compelling the owner of record to convey title to the Transferred Properties to plaintiffs or their designee(s);

5.   Awarding plaintiffs money damages in an amount to be proved at trial; and

6.    Granting plaintiffs such other and further, or different, relief, including, without limitation, pre-judgment and post-judgment interest, in the matter as the court may deem just and proper.

### COUNT II – FRAUDULENT TRANSFER BASED ON CONSTRUCTIVE FRAUD PURSUANT TO 740 ILCS 160/5(a)(2) AND 160/6(a): 2006 - 2009 TRANSFERS

259.    Harris repeats and realleges paragraphs 1 through 258 above as if fully set forth herein.

260.    In addition to the 2007-09 Transfers, Homebuilding made voluntary cash transfers to one or more of the Pasquinelli Defendants as initial and/or subsequent transferees in excess of $55 million during the time period 2006 through September 30, 2007 (collectively, the *"2006/07 Transfers,* and, together with the 2007-09 Transfers, the *"Transfers"*).

261.    At all relevant times, Harris was a creditor of Homebuilding and the various Operating Subsidiary borrowers.

262.    Homebuilding made one or more of the Transfers without receiving a reasonably equivalent value in exchange for such Transfer(s).

263.    Homebuilding and the Operating Subsidiary borrowers were engaged or were about to engage in a business or a transaction for which the remaining assets of such entities were unreasonably small in relation to the business or transaction.

264.    Homebuilding and the Operating Subsidiary borrowers intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due.

265.    Homebuilding and/or the Operating Subsidiary Debtors were insolvent at the time one or more of the Transfers were made and/or became insolvent as a result of one or more of the Transfers.

266. No Pasquinelli Defendant who is a subsequent transferee took such Transfers in good faith and/or for a reasonably equivalent value.

WHEREFORE, Plaintiffs request that the Court enter judgment against defendants and in favor of plaintiffs and award plaintiffs the following relief, including, but not limited to a Judgment Order:

1. Avoiding the Transfers to the extent necessary to satisfy plaintiffs' claims against Homebuilding;

2. Attaching the Transferred Properties or other property owned by defendants up to an amount equal to satisfy all amounts due and owing to plaintiffs;

3. Enjoining the current owner(s) of record of the Transferred Properties from transferring, assigning or disposing of the Transferred Properties and enjoining the defendants from disposing, transferring or withdrawing any cash proceeds out of any account in their possession, custody or control to the extent it would result in such defendants collectively possessing less than the amounts due Harris;

4. Permitting plaintiffs to levy execution on the Transferred Properties and other assets owned by defendants or their proceeds and compelling the owner of record to convey title to the Transferred Properties to plaintiffs or their designee(s);

5. Awarding plaintiffs money damages in an amount to be proved at trial; and

6. Granting plaintiffs such other and further, or different, relief, including, without limitation pre-judgment and post-judgment interest, in the matter as the court may deem just and proper.

### COUNT III – FRAUDULENT TRANSFER BASED ON INSIDER PREFERENCES PURSUANT TO 740 ILCS 160/6(b): 2009 TRANSFERS

267. Harris repeats and realleges paragraphs 1 through 266 above as if fully set forth herein.

268. At all relevant times Harris was a creditor of Homebuilding and the Operating Subsidiary borrowers.

269. Pleading in the alternative, the 2009 Transfers were made to insiders for an antecedent debt.

- 48 -

270.    Homebuilding and the Operating Subsidiary borrowers were insolvent at the time the 2009 Transfers were made.

271.    One or more of the Pasquinelli Defendants had reasonable cause to believe that Homebuilding and the Operating Subsidiary borrowers were insolvent at the time the 2009 Transfers were made.

272.    No insider gave new value to or for the benefit of Homebuilding or any of the Operating Subsidiary borrowers after the 2009 Transfers were made.

273.    The 2009 Transfers were not made in the ordinary course of business or financial affairs of Homebuilding, any of the Operating Subsidiary borrowers, or any of the Pasquinelli Defendants.

274.    The 2009 Transfers were not made pursuant to a good faith effort to rehabilitate Homebuilding or any of the Operating Subsidiary borrowers.

275.    No Pasquinelli Defendant who is a subsequent transferee took such 2009 Transfers in good faith and/or for a reasonably equivalent value.

WHEREFORE, Plaintiffs request that the Court enter judgment against defendants and in favor of plaintiffs and award plaintiffs the following relief, including, but not limited to a Judgment Order:

1.    Avoiding the 2009 Transfers to the extent necessary to satisfy plaintiffs' claims against Homebuilding;

2.    Attaching the Transferred Properties or other property owned by defendants up to an amount equal to satisfy all amounts due and owing to plaintiffs;

3.    Enjoining the current owner(s) of record of the Transferred Properties from transferring, assigning or disposing of the Transferred Properties and enjoining the defendants from disposing, transferring or withdrawing any cash proceeds out of any account in their possession, custody or control to the extent it would result in such defendants collectively possessing less than the amounts due Harris;

4.    Permitting plaintiffs to levy execution on the Transferred Properties and other assets owned by defendants or their proceeds and compelling the owner of record to convey title to the Transferred Properties to plaintiffs or their designee(s);

5.    Awarding plaintiffs money damages in an amount to be proved at trial; and

6.    Granting plaintiffs such other and further, or different, relief, including, without limitation pre-judgment and post-judgment interest, in the matter as the court may deem just and proper.

## COUNT IV – BREACH OF FIDUCIARY DUTIES

276.    Harris repeats and realleges paragraphs 1 through 275 above as if fully set forth herein.

277.    Any effort by Harris to cause the member, manager, directors or officers of Homebuilding to bring an action herein described in this Count, especially given the Pasquinellis' complete ownership of Homebuilding and denial of wrongdoing, would be futile and not likely to succeed, and, as a result, Harris brings this Count in its capacity as a creditor of Homebuilding and derivatively on behalf of Homebuilding.

278.    At all relevant times, Homebuilding was insolvent.

279.    As a result, the directors and officers of Homebuilding owed fiduciary duties to the company's creditors, including Harris, including without limitation a duty of care and a duty of loyalty.

280.    Upon information and belief, the Pasquinelli Defendants further breached their fiduciary duty to creditors by (i) failing to cease work by contractors to minimize the attachment of mechanic's liens and (ii) failing to cause loan funds advanced to pay contractors, thereby causing Harris to incur substantial costs in defending against mechanics lien claims, as well as significant additional costs for tax payments, insurance, homeowners association costs, building remediation, and other maintenance costs.

281. At all relevant times, one or more of the individual Pasquinelli Defendants served as an officer and/or director of Homebuilding.

282. Such defendants' breached their fiduciary duties by, *inter alia:*

A. Acting in and out of their own self interests rather than in the best interests of Homebuilding and its creditors by permitting Homebuilding, while insolvent, to make distributions that were known to be directly and indirectly benefiting such directors and officers personally, including Bruno and Anthony and members of their families.

B. Causing Homebuilding to make transfers to the family trusts, such as the 2009 Transfers, after Harris had obtained a judgment against Homebuilding.

C. Wasting corporate assets of Homebuilding because no benefits were received by Homebuilding in exchange for the transfers it made and the economics of the transfers were so flawed that no disinterested person of right mind and ordinary business judgment could think the transfers beneficial to Homebuilding.

D. Failing to properly assess and disclose the risks and probable impacts of the housing market downturn on Homebuilding's business operations and ability to remain solvent, adequately capitalized and able to meet its guaranty obligations and other debts.

283. Defendants' actions caused significant damages to Homebuilding, including depriving it of assets, causing it to make excessive distributions, and rendering it insolvent, inadequately capitalized and unable to satisfy its guaranty obligations and other debts, leading ultimately to the wind-down of the Operating Subsidiaries, the loss of real estate to foreclosure and Homebuilding left as an empty box with no assets.

284. As a direct and proximate cause of the foregoing breaches, Homebuilding and its creditors, including Harris, have suffered damages in an amount to be proved at trial.

WHEREFORE, Plaintiffs request that the Court enter judgment against defendants and in favor of plaintiffs, derivatively on behalf of Homebuilding and award plaintiffs the following relief, including, but not limited to a Judgment Order:

      1.   Awarding plaintiffs money damages in an amount to be proved at trial, which damages shall be turned over to Homebuilding to satisfy claims of Homebuilding's creditors including Harris; and

      2.   Granting plaintiffs such other and further, or different, relief, including, without limitation pre-judgment and post-judgment interest, in the matter as the court may deem just and proper.

## COUNT V – UNJUST ENRICHMENT

285.   Harris repeats and realleges paragraphs 1 through 284 above as if fully set forth herein.

286.   One or more of the Pasquinelli Defendants were unjustly enriched at the expense of Harris by obtaining and retaining excess assets (or the equivalent value of same), that were transferred from Homebuilding leaving Homebuilding unable to satisfy its obligations to creditors, including Harris.

287.   One or more of the Pasquinelli Defendants may have been further unjustly enriched in that they have received (or stand to receive) certain tax refunds associated, *inter alia*, with NOL carrybacks for the years 2007-2009, which taxes were originally paid from distributions and transfers made by Homebuilding to Pasquinelli LP and to the trusts.

288.   The value of these excess assets, and the Pasquinelli Defendants' windfall, will have to be determined at or before trial.

289.   Accordingly, one or more of the defendants have been (or stand to be) unjustly enriched and should, as fiduciaries of insolvent entities, be ordered to utilize NOLs in a manner to maximize the amount of cash tax refunds that are able to be recovered with such amount being

further ordered to be turned over to Harris to be applied against Homebuilding's outstanding and unpaid debt to Harris.

290.    To allow the Pasquinelli Defendants to retain any tax refunds or utilize NOLs in a manner to benefit themselves is unjust and inequitable when Homebuilding's creditors, such as Harris, have been left substantially unpaid.

WHEREFORE, Plaintiffs request that the Court enter judgment against defendants and in favor of plaintiffs and award plaintiffs the following relief, including, but not limited to, a Judgment Order:

       1.    Imposing a constructive trust on any amounts by which the Pasquinelli Defendants were unjustly enriched, including any tax refunds received which result from utilizing NOLs from Homebuilding and its subsidiaries, and requiring them to make full restitution to Harris;

       2.    Fashioning an appropriate equitable remedy to compel the defendants to utilize the NOLs in a manner to maximize the amount of cash tax refunds that may be recovered and ordering any such refunds received to be turned over to Harris to satisfy Homebuilding's indebtedness to Harris; and

       3.    Granting plaintiffs such other and further, or different, relief, including, without limitation pre-judgment and post-judgment interest, in the matter as the court may deem just and proper.

### COUNT VI – VEIL PIERCING AND ALTER EGO LIABILITY

291.    Harris repeats and realleges paragraphs 1 through 290 above as if fully set forth herein.

292.    At all relevant times, the Pasquinelli Defendants were able to exercise control over Homebuilding by virtue of their total and complete ownership of Homebuilding.

293.    Homebuilding (as well as many of the other entities in the pyramid) were merely shell entities with no independent office or employees of its own.

294.    Additionally, the Pasquinelli Defendants disregarded the separateness of these entities and disregarded other corporate formalities on numerous occasions regarding their complex web of limited liability companies.

295.    Further, the Pasquinellis engaged in a corporate "shell game," which involved shuffling entities, such as Pasquinelli Management, within the Pasquinelli empire in an attempt to frustrate creditors.

296.    Specifically, the purpose of the transfer of Pasquinelli Management LLC to Paradigm was to prevent Pasquinelli Management LLC from being entangled in litigation with creditors who were seeking to enforce claims against the Pasquinelli family of companies.

297.    The Pasquinellis wanted to operate Pasquinelli Management LLC free from these claims because Pasquinelli Management LLC had entered into certain forbearance agreements with lenders other than Harris that benefitted the Pasquinellis personally.

298.    This transfer to "Paradigm" was not disclosed to creditors when it was made.

299.    Later, after the Pasquinellis believed that they had evaded scrutiny, they transferred Pasquinelli Management LLC back into the Pasquinelli family of companies in an apparent attempt to conceal the prior transfer to elude creditors.

300.    The Pasquinellis additionally used Pasquinelli Financial LLC to haphazardly move funds from entity to entity to meet a particular entity's cash needs pursuant to an informal oral arrangement, without properly documenting the transfers.

301.    There were no written agreements among any of the Pasquinelli entities and Pasquinelli Financial LLC regarding cash management.

302.    Homebuilding is a mere instrumentality or the alter ego of the Pasquinelli Defendants, specifically Bruno and Anthony and the individual Pasquinelli family members who received distributions in their respective trusts.

303. One or more of the Pasquinelli Defendants, specifically Bruno and Anthony or their trusts and the individual Pasquinelli family members who received distributions from their respective trusts, conducted, managed and controlled the affairs of Homebuilding and its subsidiaries as though they were their own individual businesses for the purpose of fraudulently transferring the assets of Homebuilding and its subsidiaries to themselves as described herein.

304. The Pasquinelli Defendants, specifically Bruno and Anthony, used Homebuilding as vehicles to accomplish the unjust and inequitable scheme identified herein and through which funds flowed to distribute to one or more of the Pasquinelli Defendants for such Pasquinelli Defendants' benefit.

305. Homebuilding, at the direction of one or more of the Pasquinelli Defendants, made consistent distributions, which ultimately went to one or more of the Pasquinelli Defendants, even as Homebuilding was unable to perform its obligations to Harris, preferring and enriching one or more of the Pasquinelli Defendants as the ultimate controlling membership interest holder to the detriment of Harris.

306. One or more of the Pasquinelli Defendants appear to have been more than willing to take distributions at any time but unwilling to ensure Homebuilding and the other Pasquinelli entities satisfied its debt obligations. For example, despite Homebuilding's defaults, one or more of the Pasquinelli Defendants declined to provide a cash infusion.

307. Bruno and Anthony further exercised control over Homebuilding in order to use it as their instrumentality, leaving the financial affairs of Homebuilding and its subsidiaries hopelessly commingled.

308. One or more of the Pasquinelli Defendants caused Homebuilding to abandon its recordkeeping and accounting functions, as well as other corporate formalities, leaving it unable to issue audited financial statements for 2008.

- 55 -

309. Leaving intact the veil among Homebuilding and the Pasquinelli Defendants would yield inequitable results. One or more of the Pasquinelli Defendants' abuse of Homebuilding's limited liability company form for the sole benefit of the Pasquinelli Defendants to the detriment of creditors who acted in good faith and provided substantial financing should not be sanctioned.

310. As a result, principals of equity dictate that the limited liability company form of Homebuilding (and to the extent necessary, the form of Pasquinelli Homebuilding, L.P. and any intervening trust) be disregarded rendering Bruno and Anthony and one or more of the Related Party Transferees directly liable for all damages suffered by Harris as a result of the misconduct alleged herein.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, Plaintiffs request that the Court enter judgment against defendants and in favor of plaintiffs and award plaintiffs the following relief, including, but not limited to a Judgment Order:

1.     Piercing the corporate veil and holding one or more of the defendants personally liable on all amounts due and owing by Homebuilding and its various subsidiaries to Harris; and

2.     Granting plaintiffs such other and further, or different, relief, including, without limitation pre-judgment and post-judgment interest, in the matter as the court may deem just and proper.

Dated: June 14, 2010

Respectfully submitted,

HARRIS N.A. and
BMO CAPITAL MARKETS FINANCING, INC.

By _____
One of Their Attorneys

Firm No. 90170
Mark D. Rasmussen
James M. Heiser
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois  60603
312-845-3000

## ORGANIZATIONAL CHART FOR THE PASQUINELLI FAMILY COMPANIES



Order                                                          (2/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Harris, N.A., et al.,
                    Plaintiffs,

v.

Pasquinelli Homebuilding, LLC,
                    et al.,
                    Defendants.

No. 2010 L 006909

Judge Taylor

**CC LAB**

### ORDER

This cause coming to be heard on Defendants' Motion for Leave To File Memorandum of Law in excess of 15 pages and for extension of time, due notice given, there being no objection from Plaintiffs and the Court being fully advised, IT IS HEREBY ORDERED:

1. Defendants to answer or plead on or before September 22, 2010.

2. Defendants granted leave to file Memorandum of Law in Support of Motion to Dismiss, in excess of 15 pages (up to 40 pages).

3. Plaintiffs granted leave to file response Memorandum to Motion to Dismiss, in excess of 15 pages (up to 40 pages).

4. Status set for September 30, 2010 at 10:30 a.m.

Atty. No.: 22288

Name: Mackin / Sperling + Slater

Atty. for: Certain Defendants

Address: 55 W. Monroe Chi 60603

City/State/Zip: Chi, Ill 60603

Telephone: 312-641-3200

ENTERED:

**ENTERED**
JUDGE BILL TAYLOR - 1648
AUG 2 0 2010
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Dated: _____

W. Taylor                      1648
Judge                    Judge's No.

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### ORIGINAL–COURT FILE

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| HARRIS N.A., and BMO CAPITAL MARKETS FINANCING, INC., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 10 L 6909 |
| | ) | |
| PASQUINELLI HOMEBUILDING LLC, BRUNO A. PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI MANAGEMENT, LLC, PASQUINELLI FINANCIAL, LLC, PASQUINELLI HOMEBUILDING L.P., PASQUINELLI HOMEBUILDING TRUST, PASQUINELLI FAMILY FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST, ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989 FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H. PASQUINELLI, CHRISTINE PASQUINELLI, BETSY PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI, JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA PASQUINELLI, ANN MARIE PASQUINELLI, JOAN PASQUINELLI, SALLY PASQUINELLI, as Trustee, and MARYANN PASQUINELLI, as Trustee, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge Bill Taylor |
| Defendants. | ) ) | |

### DEFENDANTS' JOINT §2-615 MOTION TO DISMISS

The twenty-six defendants, by their respective attorneys and pursuant to 735 ILCS 5/2-615, jointly move the Court to dismiss or strike Plaintiffs' Complaint in its entirety because it is substantially insufficient in law. In support thereof, defendants contemporaneously submit a supporting legal Memorandum.

Respectfully submitted,

PASQUINELLI HOMEBUILDING, LLC, BRUNO A. PASQUINELLI, ANTHONY R. PASQUINELLI, BRUNO H. PASQUINELLI, CHRISTINE PASQUINELLI, and MARIA A. PASQUINELLI

By: _____

One of their attorneys

Bruce S. Sperling
Mitchell H. Macknin
SPERLING & SLATER, P.C. (#22288)
55 West Monroe Street, Suite 3200
Chicago, IL 60603

PASQUINELLI MANAGEMENT, LLC, PASQUINELLI
FINANCIAL, LLC, PASQUINELLI HOMEBUILDING,
L.P., PASQUINELLI HOMEBUILDING TRUST,
PASQUINELLI FAMILY FOUNDATION, B&A
HOMES, LLC, ARP 2003 TRUST, ARP 1989 FAMILY
TRUST, BAP 2003 TRUST, BAP 1989 FAMILY TRUST,
ANTHONY J. PASQUINELLI, BETSY PASQUINELLI,
JOHN PASQUINELLI, DAVID PASQUINELLI, ELLEN
PASQUINELLI, ANN MARIE PASQUINELLI, JOAN
PASQUINELLI, SALLY PASQUINELLI, AS TRUSTEE,
MARYANN PASQUINELLI, AS TRUSTEE, AND
JOSEPH PASQUINELLI

By: _____
One of their attorneys

Michael R. Grimm, Sr.
Harvey R. Herman
CLAUSEN MILLER, P.C. (#90181)
10 South LaSalle Street
Chicago, IL 60603
(312) 855-1010

2

## CERTIFICATE OF SERVICE

I, Mitchell H. Macknin, an attorney, hereby certify that a true and correct copy of

**DEFENDANTS' JOINT §2-615 MOTION TO DISMISS** was served upon the following

persons by hand delivery this 22nd of September 2010:

> Joseph Lombardo
> Chapman and Cutler
> 111 W. Monroe Street, 15th Floor
> Chicago, IL 60603

Mitchell H. Macknin

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

HARRIS N.A., and BMO CAPITAL     )
MARKETS FINANCING, INC.,     )
    Plaintiffs,     )
     )
    v.     )   No. 10 L 6909
     )
PASQUINELLI HOMEBUILDING LLC, BRUNO A.  )   Judge Bill Taylor
PASQUINELLI, ANTHONY R. PASQUINELLI,  )
PASQUINELLI MANAGEMENT, LLC, PASQUINELLI  )
FINANCIAL, LLC, PASQUINELLI HOMEBUILDING  )
L.P., PASQUINELLI HOMEBUILDING TRUST,  )
PASQUINELLI FAMILY FOUNDATION, B&A HOMES,)
LLC, ARP 2003 TRUST, ARP 1989 FAMILY TRUST,  )
BAP 2003 TRUST, BAP 1989 FAMILY TRUST,  )
ANTHONY J. PASQUINELLI, BRUNO H.  )
PASQUINELLI, CHRISTINE PASQUINELLI, BETSY  )
PASQUINELLI, JOHN PASQUINELLI, DAVID  )
PASQUINELLI, JOSEPH PASQUINELLI, ELLEN  )
PASQUINELLI, MARIA PASQUINELLI, ANN MARIE  )
PASQUINELLI, JOAN PASQUINELLI, SALLY  )
PASQUINELLI, as Trustee, and MARYANN  )
PASQUINELLI, as Trustee,  )
     )
    Defendants.     )

## DEFENDANTS' MEMORANDUM IN SUPPORT OF §2-615 MOTION TO DISMISS

Bruce S. Sperling
Mitchell H. Macknin
SPERLING & SLATER, P.C. (#22288)
55 West Monroe Street, Suite 3200
Chicago, IL 60603
(312) 641-3200
*Attorneys for Defendants*
*Pasquinelli Homebuilding, LLC, Bruno A.*
*Pasquinelli, Anthony R. Pasquinelli, Bruno*
*H. Pasquinelli, Christine Pasquinelli, and*
*Maria L. Pasquinelli*

Michael R. Grimm, Sr.
Harvey R. Herman
CLAUSEN MILLER, P.C. (#90181)
10 South LaSalle Street
Chicago, IL 60603
(312) 855-1010
*Attorneys for Defendants*
*Pasquinelli Management, LLC, Pasquinelli Financial,*
*LLC, Pasquinelli Homebuilding, L.P., Pasquinelli*
*Homebuilding Trust, Pasquinelli Family Foundation,*
*B&A Homes, LLC, ARP 2003 Trust, ARP 1989 Family*
*Trust, BAP 2003 Trust, BAP 1989 Family Trust,*
*Anthony J. Pasquinelli, Betsy Pasquinelli, John*
*Pasquinelli, David Pasquinelli, Ellen Pasquinelli, Ann*
*Marie Pasquinelli, Joan Pasquinelli, Sally Pasquinelli,*
*as Trustee, Maryann Pasquinelli, as Trustee, and Joseph*
*Pasquinelli*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

I.    THE COMPLAINT IS LEGALLY DEFICIENT BECAUSE OF ITS LACK OF
SPECIFICITY ..........................................................................................................6

    A.  Each Of The Six Counts Of The Complaint Is Predicated On The Same
(Deficient) Allegations Concerning Purported Fraudulent Transfers .....................6

    B.  The Complaint Lacks The Specificity Required By Basic Pleading Standards ......7

    C.  The Complaint Falls Even Shorter Of Meeting The More Stringent Pleading
Standards Applicable To Allegations Of Fraud .......................................................12

II.    EACH COUNT OF THE COMPLAINT IS OTHERWISE LEGALLY DEFICIENT
BECAUSE IT FAILS TO ADEQUATELY ALLEGE ESSENTIAL ELEMENTS
OF THE CLAIM ......................................................................................................16

    A.  Count I Otherwise Fails To State A Claim For "Actual Fraud" ..........................16

    B.  Count II Otherwise Fails To State A Claim For "Constructive Fraud" ..............19

        1.  Harris fails to allege lack of reasonably equivalent value as to each
transfer ..............................................................................................................20

        2.  Harris fails to adequately allege insolvency at the time of each
transfer .............................................................................................................22

    C.  Count III Otherwise Fails To State A Claim For "Insider Preference" ..............26

    D.  Count IV Otherwise Fails to State a Claim for Breach of Fiduciary Duty ..........27

    E.  Count V Otherwise Fails To State A Claim For Unjust Enrichment ...................31

    F.  Count VI Otherwise Fails To State A Claim For "Veil Piercing And Alter Ego
Liability" ................................................................................................................34

CONCLUSION ................................................................................................................38

i

## INTRODUCTION

The Complaint arises out of several loans that plaintiffs ("Harris") made over the course of many years to various single-purpose entities related to the long-established Pasquinelli homebuilding business that had been built from scratch decades ago (Complaint ¶39). Each of the loans was for a particular homebuilding project and, for each loan, the bank and the borrower memorialized their respective rights and obligations, and the risks each assumed, in comprehensive loan documents. (¶¶ 124-26, 135-37, 149-51, 165-67, 180-82, 195-97, 208-210, 218-20, 230-32, 242-44). Like any bank's loan documents, Harris's were honed over many years and thousands of prior loan transactions, for the very purpose of ensuring that they accurately expressed the bank's commercial expectations as to each particular loan. And there is no mistaking that the terms of those loan documents reflected Harris's assessment of the risk it assumed when it made those loans.

Notwithstanding the extensive loan documents, Harris does not assert a single contract claim against any of the twenty-six separate individuals and entities it chose to sue. This is because the deal that Harris struck with its borrowers included no personal guarantees and did not prohibit the transfers about which Harris is now complaining. Indeed, the transfers were disclosed to Harris in real time (¶54), without complaint.

Now that the borrowers have failed due to the meltdown in the housing market – a risk that Harris clearly assumed when it made loans to a homebuilding business – Harris seeks to retroactively reallocate the risk to the defendants and treat them all as if they had personally guaranteed the loans. Thus, Harris discards its carefully-crafted loan documents and seeks to travel back in time to "recover" $87 million in alleged transfers by its borrowers over the course

of many years *before* the housing meltdown.[1]    Harris's purported claims are all *extra-*contractual and feature most prominently claims for "fraudulent transfer."  But the law does not permit Harris to (mis)use extra-contractual theories of relief to change the contractually-bargained-for allocation of risk only after-the-fact, when the residential real estate market precipitously crashed and the loans went bad in 2008.[2]

Harris's fraudulent transfer claims fail because Harris does not and cannot in good faith plead facts showing that the alleged transfers were made at a time when the borrowers were insolvent or were otherwise inappropriate.  It is not enough to allege by mere conclusion, as Harris does, that because the debtors ultimately failed and could no longer pay their loans (in mid-to-late 2008), they "must" have been insolvent in the months and years before such failure. "The failure of a business, even a monumental failure, does not alone prove the insolvency of the business in the months and years prior to its demise." *In re Iridium Operating LLC*, 373 B.R. 283, 346 (Bankr.S.D.N.Y. 2007).[3]

Naked allegations of "insolvency" do not state a claim for fraudulent transfer.  Rather, Harris must plead "facts supporting the debtors' insolvency at the time of the transfer." *In re*

---

[1] For frame of reference on when the market crashed, it was in September 2008 that Lehman Brothers collapsed from its exposure to housing-related assets, leading to passage on October 3, 2008 of the Troubled Asset Relief Program (TARP) under the Emergency Economic Stabilization Act of 2008 (Pub. L. No. 110-343, 122 Stat. 3765 (Oct. 3, 2008), codified at 12 U.S.C. §§5201 *et seq.*). *See generally, In re Washington Mutual, Inc.,* 408 B.R. 45, 47 (Bankr.D.Del. 2009) ("global credit crisis of unprecedented proportions" occurred in September 2008, including the Lehman Bros. bankruptcy filing on September 15, 2008).

[2]  The debtors' homebuilding businesses also suffered the consequences of the entrepreneurial risk they assumed.  What had been a $580 million business (Complaint ¶40) was wiped out by the end of 2008 as a result of the housing collapse.

[3] The analysis of Illinois fraudulent transfer claims is the same as the analysis of transfer claims under § 548 of the Bankruptcy Code, so as to make Bankruptcy court cases particularly pertinent to the analysis here. *See In re Knippen*, 355 B.R. 710, 735 (Bankr.N.D.Ill. 2006).

2

*Caremerica, Inc.*, 409 B.R. 737, 756 (Bankr.E.D.N.C. 2009) (dismissing claim for fraudulent transfer under 11 U.S.C. §548(a)(1)(B)). Absent specific allegations establishing that "at the time" of *each* transfer, "the sum of debtor's debts [were] greater than all of debtor's assets at a fair valuation," Harris has no claim under the Illinois Uniform Fraudulent Transfer Act ("IUFTA"). 740 ILCS 160/6(a) and 160/3. Put simply, Harris's sweeping fraudulent transfer claims should be dismissed because Harris does not plead facts showing which, if any, of the $87 million in transfers sensationalized in the Complaint even arguably fall within the scope of the IUFTA.

Even as to its conclusory allegations of insolvency, Harris tries to alter history by blurring the dates it contends that its debtors became "insolvent." Despite the requirement to plead the facts showing insolvency at the time of each transfer, Harris conflates together, as one time period, a sixty-month period (2005-2009) (Complaint ¶¶ 4, 54), when in reality the debtors' businesses did not fail until the end of that period. Harris admits that it was not until mid-2008 at the earliest that the borrowers had trouble making payment on their loans. (¶¶ 127-131, 138-141, 152-54, 169-72, 183-87, 198-201, 211-14, 221-23, 233-35, 245-47). And it was not until late 2008 that the "perfect storm" hit the residential real estate markets and took debtors' homebuilding businesses down with it. As acknowledged in the Complaint, the debtors' businesses were flourishing in 2005, 2006 and well into 2007, and were unquestionably solvent into 2008. According to Harris, "[b]y 2006, the enterprise had grown to achieve annual revenues of over $580 million." (¶40) Even into 2008, Harris itself continued making loans to the debtors (¶¶ 135, 149), reflecting their own view of the soundness of their homebuilding businesses as

3

late as 2008.[4]

The few kernels of truth that Harris bothered to plead show that Harris knows full well that its debtors were solvent well into 2008. Thus, Harris's attempt to roll back the clock on insolvency by being deliberately imprecise is contradicted by Harris's own allegations about the debtors' true financial condition through 2008. Harris knowingly assumed the business risk associated with the homebuilding market when it made its loans, and Harris cannot use the IUFTA to cover its loan losses by improperly trying to claw back transfers made when the debtors were admittedly solvent. *In re Joy Recovery Tech. Corp.*, 286 B.R. 54, 76 (Bankr.N.D.Ill. 2002) ("The goal of fraudulent conveyance law is not to provide an insurance policy against business risk for creditors.").

Likewise, Harris cannot take advantage of other extra-contractual theories (*e.g.*, unjust enrichment, alter ego liability) to alter the parties' agreed allocation of risk. As the Court of Appeals has held:

> When parties enter into a contract they assume certain risks with an expectation of a return. Sometimes, their expectations are not realized, but they discover that under the contract they have assumed the risk of having those expectations defeated. As a result, they have no remedy under the contract for restoring their expectations. In desperation, they turn to quasi-contract for recovery. This the law will not allow. Quasi-contract is not a means for shifting a risk one has assumed under contract.

*Indus. Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.*, 104 Ill. App. 3d 357, 361, 432 N.E.2d 999, 1002 (1st Dist. 1982); *see also First Commodity Traders, Inc. v. Heinold Commodities, Inc.*,

---

[4] Of the $87 million in "transfers" that Harris headlines in the Complaint (¶¶ 4, 54), the only assets that Harris actually claims were transferred after 2008 were an alleged $1.2 million in real property interests (¶¶ 54, 89, 90).

766 F.2d 1007, 1011 (7th Cir. 1985) ("FCT could have, but did not, provide for the allocation of this risk under the terms of the contract. FCT may not unilaterally alter the terms of the contract by now claiming unjust enrichment."); *Old Orchard Urban Ltd. Partnership v. Harry Rosen, Inc.*, 389 Ill. App. 3d 58, 71-72, 904 N.E.2d 1050, 1062-63 (1st Dist. 2009) (no piercing corporate veil: plaintiff "knew that it would have no recourse against [the parent] in the event that [the subsidiary] defaulted on its obligations under the lease").

In addition to the overarching road blocks barring Harris's extra-contractual claims, the Complaint suffers from many basic pleading defects. The Complaint does not even meet the most fundamental fact-pleading threshold of alleging who did what, when. Harris improperly combines – without any differentiation or specificity – allegations of wrongful conduct by "one or more defendants" (of which there are 26, including fifteen individuals); Harris lumps together all "transfers" (despite that they occurred at various times over five years, at distinctly different financial periods, to various transferees, from various transferors, pursuant to different contractual obligations); Harris likewise aggregates all the "loan documents" (even though there were loans by Harris on at least ten different projects, each of which had its own documentation); and Harris asserts a collective breach of fiduciary duty by all 26 "Pasquinelli defendants" and the unjust enrichment of "one or more of the defendants." (*See, e.g.,* Complaint ¶¶ 4-5, 54, 65, 99, 280-82, 286.)

Just one example of these pleading deficiencies is Harris's allegation that: "[The debtors were] insolvent or became insolvent shortly after the 2007-2009 Transfers were made . . . ." (Complaint ¶257(F)). Harris fails to allege, as it must, which – if any – transfer during this extended period was made when the debtors were insolvent according to Harris. Harris fails to allege when the debtors purportedly became insolvent. Harris fails to allege whether and how

5

the debtors were purportedly insolvent at the time of transfer or whether they became insolvent at some future point "shortly after" – and if it was at some future point, Harris fails to allege when the debtors allegedly became insolvent. Harris fails to plead any of these necessary facts, which leaves empty fundamental elements of its claims.[5]

These legally deficient undifferentiated allegations are made throughout the *253* allegations that Harris incorporates as the supposed factual predicate for each and every one of the Complaint's six Counts, and continue into each Count itself. As a result, it is impossible to determine what each of the defendants supposedly did wrong or how any of the transfers supposedly were improper. The Complaint should be dismissed for this reason alone. *See Brainerd v. First Lake County Nat. Bank of Libertyville*, 109 Ill.App.2d 251, 257, 248 N.E.2d 542, 546 (2d Dist. 1969) (affirming dismissal of various tort claims where the complaint contained undifferentiated allegations against at least four defendants).

Harris has utterly failed to plead facts sufficient to establish the elements of its purported extra-contractual claims, let alone with sufficient specificity as to each defendant and each supposedly improper transfer.

I.    **THE COMPLAINT IS LEGALLY DEFICIENT BECAUSE OF ITS LACK OF SPECIFICITY**

   A.    **Each Of The Six Counts Of The Complaint Is Predicated On The Same (Deficient) Allegations Concerning Purported Fraudulent Transfers**

---

[5] In Paragraph 265, Harris makes the even more vague allegation that the debtors "were insolvent at the time one or more of the Transfers were made . . . ," and here Harris defines "Transfers" to include those over a full four year period from 2006 through 2009 (Complaint ¶260). Harris is deliberately vague because it cannot allege in good faith that the transfers were made when the debtors were insolvent. This is not simply a matter of Harris not having the necessary financial information to make such a determination. Pursuant to the loan documentation (which Harris tellingly fails to attach to the Complaint), Harris regularly was provided with financial information concerning the debtors.

The Complaint contains six Counts (Count I: "Fraudulent Transfer Based On Actual Fraud Pursuant To 740 ILCS 160/5(a)(1)"; Count II: "Fraudulent Transfer Based On Constructive Fraud Pursuant To  740 ILCS 160/5(a)(2) and 160/6(a)"; Count III: "Fraudulent Transfer Based On Insider Preferences Pursuant To 740 ILCS 160/6(b)"; Count IV: "Breach Of Fiduciary Duties"; Count V: "Unjust Enrichment"; and Count VI: "Veil Piercing And Alter Ego Liability").  Preceding even their first Count, Harris sets out 253 numbered paragraphs of allegations relating to purported fraudulent transfers.  Harris then incorporates those 253 paragraphs into Count I.  Each succeeding Count then incorporates all of the allegations that came before it, so that Count II incorporates the same 253 allegations concerning purported fraudulent transfers, plus the additional allegations of Count I (¶¶ 254-258); Count III incorporates the 253 allegations plus the additional allegations of Count II (¶¶ 259-266); and so on through Count VI.  Because each of the Counts are built on the same predicate allegations concerning purported fraudulent transfers, and as demonstrated below those allegations lack the requisite specificity as to purported facts that go to the very heart of the claims, the Complaint falls like a house of cards.

### B. The Complaint Lacks The Specificity Required By Basic Pleading Standards

The standards applicable to a motion to dismiss under 735 ILCS 5/2-615 are well-settled. Illinois is a fact pleading jurisdiction, *Winfrey v. Chi. Park Dist.*, 274 Ill.App.3d 939, 942, 654 N.E.2d 508, 512 (1st Dist. 1995) (complaint dismissed), requiring the plaintiff to present both a legally and factually sufficient complaint, *Jackson v. South Holland Dodge, Inc.*, 197 Ill.2d 39, 52, 755 N.E.2d 462, 471 (2001) (plaintiff failed to allege facts sufficient to bring claim within the cause of action asserted).  Factual deficiencies may not be cured by liberal construction, *Lake*

*County Grading Co. of Libertyville, Inc. v. Advance Mech. Contractors, Inc.*, 275 Ill.App.3d 452,

456-57, 654 N.E.2d 1109, 1114 (2d Dist. 1995), which does not authorize notice pleading,

*Edelman, Combs and Latturner v. Hinshaw and Culbertson*, 338 Ill.App.3d 156, 167, 788

N.E.2d 740, 750 (1st Dist. 2003). As a result, in assessing the Complaint's legal sufficiency, the

Court should disregard any legal or factual conclusions not supported by specific factual

allegations. *See LaSalle Nat. Bank v. City Suites, Inc.*, 325 Ill.App.3d 780, 790, 758 N.E.2d 382,

390 (1st Dist. 2001) ("legal conclusions and factual conclusions which are unsupported by

allegations of specific facts will be disregarded in ruling on a motion to dismiss") (affirming

dismissal of claims); *Oravek v. Cmty. Sch. Dist.*, 264 Ill.App.3d 895, 898, 637 N.E.2d 554, 557

(1st Dist. 1994) ("Although we must take all well-pleaded facts as true, we must also disregard

mere conclusions of law or fact unsupported by the facts alleged.") (affirming dismissal of

claim).

     In short, a 2-615 Motion does not admit conclusory allegations unsupported by specific

facts and the court should dismiss a Complaint that fails to meet the particular pleading

requirements of Illinois law. *See, e.g., Akinyemi v. JP Morgan Chase Bank, N.A.*, 391 Ill.App.3d

334, 338, 908 N.E.2d 163, 169 (1st Dist. 2009) (affirming dismissal of breach of contract claim);

*Shaper v. Bryan*, 371 Ill.App.3d 1079, 1086, 864 N.E.2d 876, 883 (1st Dist. 2007) (affirming

dismissal of breach of fiduciary duty claim); *Jackson v. Michael Reese Hosp. and Med. Ctr.*, 294

Ill.App.3d 1, 13, 689 N.E.2d 205, 213 (1st Dist. 1997) (affirming dismissal of negligent

spoliation claim).

     The Complaint does not clear even this fundamental pleading threshold due to, for

example, Harris's repeated failure to differentiate among the 26 defendants when alleging who

did what and when, or its failure to plead insolvency of the debtor as to each particular transfer.

More particularly, the Complaint defines the "Pasquinelli Defendants" to include each and every one of the 26 defendants, which include fifteen people and another eleven trusts or corporate entities (*see* ¶¶ 34, 36). Allegations against the undifferentiated Pasquinelli Defendants (or "one or more of the Pasquinelli Defendants," "the Pasquinellis," "Related Party Transferees," "defendants," or similar allegations against undifferentiated groups) permeate the Complaint. (*e.g.*, ¶¶ 10, 12, 13, 34, 44, 78, 81-82, 99, 104, 109, 120-22, 255-56, 260, 280-83, 286-89, 290, 292, 294-95, 297, 299-300, 302-306, 308-309).

As presently pled, neither defendants nor the Court can possibly know which particular defendant or defendants is alleged to have done what, as to assertions that go to the core of the claims. Harris fails to identify whether it is complaining about the conduct of all 26 defendants, just some of them, or just one in particular; or which of the 26 was the transferor of each transfer, and which the transferee. Absent that basic identification, Harris fails to allege the fundamental element of their claim that the transfer was not exchanged for reasonably equivalent value. Harris also fails to identify which of the 26 "Pasquinelli Defendants" allegedly breached (let alone owed) fiduciary duties (¶280); or which of the "one or more of the Pasquinelli Defendants" was allegedly unjustly enriched (¶287); or which of the alleged "many of the other entities" were allegedly "shell entities" (¶293).

These undifferentiated allegations against various defendants are legally insufficient to state a claim. *See e.g., Brainerd*, 109 Ill.App.2d at 257, 248 N.E.2d at 546 (affirming dismissal where the complaint contained undifferentiated allegations against at least four defendants); *Exch. Nat. Bank v. Farm Bureau Life Ins. Co. of Michigan*, 108 Ill.App.3d 212, 215, 438 N.E.2d 1247, 1249 (3d Dist. 1982) (affirming dismissal of complaint alleging tortious interference with contract where it did not identify which prospective lenders were allegedly induced to not have

9

business dealings with the plaintiffs); *cf. Hartshorn v. State Farm Ins. Co.*, 361 Ill.App.3d 731,

734-35, 838 N.E.2d 211, 215-16 (2d Dist. 2005) (affirming dismissal where complaint lumped

together allegations regarding two (let alone 26) separate defendants).

Likewise, the Complaint is woefully lacking in sufficient specificity with respect to the

alleged insolvency of the debtors at the time of each alleged transfer — still another essential

(but missing) element underlying all of Harris's claims.[6]  The alleged date of insolvency is

hopelessly vague, conflicted, and inconsistent (as it necessarily must be, given the historical

revision that is necessary).

For example, initially in the Complaint Harris alleges that the debtors became insolvent

as far back as 2005.  To that end, Harris first identifies the "Transfers At Issue" as the alleged

$87 million in transfers from 2005 through 2009.  (Complaint Heading "B" at p. 12, and ¶54).

Harris then alleges that each of these transfers, from 2005-onward, was made when the guarantor

debtor ("Homebuilding") was insolvent.  (¶65).  Harris thus purports to be alleging that the debtor

became insolvent in 2005. *See also* ¶278 (alleging that "[a]t all relevant times, [debtor] was

insolvent.").  In direct conflict with this alleged date of insolvency, Harris alleges in paragraph

257(F) that the debtor did not become insolvent until "shortly after" 2007-2009. *See also, e.g.,*

¶¶ 5, 11, 68, 70, 86, 145, and 265 (alleging insolvency at various conflicting times).  Exactly

when were the debtors allegedly insolvent:  beginning in 2005, or beginning "shortly after"

2007-2009?  And what is "shortly after" some undefined date within an extended period

supposed to be alleging?  And in paragraph 265, Harris alleges that the debtors were insolvent at

---

[6] As shown further below, an essential element of a fraudulent transfer is that Plaintiff must allege and prove the debtor was insolvent at the time the alleged transfer was made.  Allegations of the debtor's financial condition at the time of each alleged transfer are, therefore, critical to each of the six Counts of the Complaint.

the time "one or more of the Transfers were made," and this time defines "Transfers" to include all those in the four years from 2006 through 2009 (¶260). Which insolvency date – *if any* – is Harris alleging?

Harris's conflicted allegations concerning the debtors' alleged insolvency don't end there. Harris also alleges that "[b]y 2006, the enterprise had grown to achieve annual revenues of over $580 million" (*see* ¶40), which is at odds with the allegation that the debtors were insolvent in 2005. Similarly, Harris alleges in paragraph 68 that "[the debtors] during 2006-2007 were or became insolvent, inadequately capitalized and/or unable to pay their debts as they matured." Just nine paragraphs later, Harris alleges that it was not until "early June of 2008" that the debtors stopped making payments on certain of their loans. (¶77).

Harris's failure to allege when the debtors became insolvent renders the Complaint deficient in a fundamental respect. Harris must allege that the debtors were insolvent "at the time" of a transfer (740 ILCS 160/6(a)), and not – as they purport to allege – over some vague, ever-changing, multi-year period. *See In re Iridium Operating*, 373 B.R. at 346 ("[T]here is no case law that supports extending that finding [of insolvency] over a four-year prepetition period."). The absence of sufficient factual assertions of the debtor's insolvency renders the Complaint legally deficient:

> Because a debtor must be insolvent on the date of the transfer . . . it follows that the trustee must allege facts sufficient to show that such insolvency is plausible. In this case, the trustee asserts that "[e]ach preferential transfer was made while the [t]ransferor was insolvent." Without factual assertions in support of the debtor's insolvency, however, the trustee's conclusory statement fails . . . to assert a claim supporting entitlement to relief.

*In re Caremerica*, 409 B.R. at 752.

And in considering whether it could make such allegations in good faith, Harris would

11

have to be mindful of the high legal threshold of insolvency, as distinct from the kind of financial deterioration that may or may not be only temporary. Many businesses suffer financial setbacks from time to time; that's a far cry from being insolvent. "The failure of a business, even a monumental failure, does not alone prove the insolvency of the business in the months and years prior to its demise." *In re Iridium Operating*, 373 B.R. at 346 (collecting cases). Along the same lines, the reasonable contemporaneous financial evaluations and projections of the debtor's management cannot be overturned in hindsight, or because the debtor became insolvent at some point in the future, just to serve some "post-hoc litigation interests." *See Kipperman v. Onex Corp.*, 411 B.R. 805, 836 (N.D. Ga. 2009). As such, it is wholly deficient for Harris to allege that certain transfers "ultimately resulted" in the debtors' insolvency. (¶5). Harris must properly plead specific facts that the debtors were insolvent at a given time.

As is apparent from the Complaint, it is easy to sensationalize transfer amounts over a period of years. It is quite another thing to set forth allegations that meet basic pleading standards so as to allow defendants to fairly defend themselves. *See Filliung v. Adams*, 387 Ill.App.3d 40, 51, 899 N.E.2d 485, 496 (1st Dist. 2008) ("The purpose of a complaint is to crystallize the issues in controversy, so that a defendant will know what claims it has to meet.").

### C. The Complaint Falls Even Shorter Of Meeting The More Stringent Pleading Standards Applicable To Allegations Of Fraud

As described above, the Complaint cannot meet the most basic pleading standards. Here, though, the pleading standard is even more stringent because all six Counts of the Complaint are predicated on the same allegations concerning purported fraudulent transfers. Fraud allegations are judged against heightened standards of specificity and particularity. *See, e.g., Miner v. Fashion Enterprises, Inc.*, 342 Ill.App.3d 405, 419-20, 794 N.E.2d 902, 916 (1st Dist. 2003)

12

(complaint deficient because it failed to identify which of the two defendants made alleged fraudulent statements and thus failed to meet the "high standard of specificity [ ] imposed on pleadings asserting fraud"); *Hirsch v. Feuer*, 299 Ill.App.3d 1076, 1085, 702 N.E.2d 265, 272 (1st Dist. 1998) ("There is a high standard of specificity required for pleading claims of fraud. The facts must be pleaded with sufficient specificity, particularity, and certainty to apprise the opposing party of what he is called upon to answer."); *Talbert v. Home Sav. of Am., F.A.*, 265 Ill.App.3d 376, 382, 638 N.E.2d 354, 359 (1st Dist. 1994) (affirming dismissal).

The Illinois Supreme Court has made clear that the level of particularity required of fraud allegations is at least that required under Rule 9(b) of the Federal Rules of Civil Procedure. A complaint must plead with particularity exactly who did what, when and to whom. Among other things, this pleading standard helps ferret out disingenuous claims and preserve the reputations of those who would inappropriately suffer serious and potentially irreparable damage to their good names. As stated in *Bd. of Educ. of City of Chicago v. A, C and S, Inc.*, 131 Ill.2d 428, 457, 546 N.E.2d 580, 593-94 (1989) (citations omitted):

> The facts which constitute an alleged fraud must be pleaded with sufficient specificity, particularity and certainty to apprise the opposing party of what he is called upon to answer. The pleadings must contain specific allegations of facts from which fraud is the necessary or probable inference. Even under the more lenient Federal Rules, a claim of fraud must be stated with particularity. (Fed.R.Civ.P. 9(b).) The reason for this higher standard is "to protect against baseless complaints. This not only weeds out unmeritorious strike suits, but also protects defendants from the harm to their reputations that follows charges of serious wrongdoing." Thus, a plaintiff must at least plead with sufficient particularity facts establishing the elements of fraud, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made.

13

Accord *Green v. Rogers*, 234 Ill.2d 478, 494-95, 917 N.E.2d 450, 460-61 (2009). [7]

These heightened pleading standards apply to Harris's fraudulent transfer allegations. In *Garrett v. Garrett*, the Illinois Supreme Court held that allegations of fraudulent conveyance must specify the particular facts underlying the claims and reversed a lower-court decision setting aside a conveyance:

> A general allegation of fraud is not sufficient. The bill should point out and state the particular facts and circumstances relied on as constituting the fraud. Fraud is never presumed but must be proved by such clear and convincing evidence as leaves the mind well satisfied that the allegations are true.

343 Ill. 577, 580, 175 N.E. 772, 773 (1931) (citations omitted) (claim that husband fraudulently transferred to sister his portion of marital property). *See also, Seidel v. Byron*, No. 05 C 6698, 2008 U.S. Dist. LEXIS 76306, at *14 (N.D. Ill. Sept. 26, 2008) (Rule 9(b) applies to actual and constructive fraudulent transfer claims under the Illinois Uniform Fraudulent Transfer Act); *In re Oakwood Homes Corp.*, 325 B.R. 696, 698 (Bankr. D. Del. 2005) (actual and constructive fraudulent transfer claims).

It follows then that the heightened particularity requirement applies not just to the three fraudulent transfer Counts here, but also to the three other claims (breach of fiduciary duty, unjust enrichment, and veil piercing), because they rest on the same alleged course of fraudulent transfers. *See Borsellino*, 477 F.3d at 507 ("A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened

---

[7] The Harris Complaint is the perfect example of the reputational harm triggered by a deficient pleading of fraud. Chicago Tribune, June 23, 2010 (Headline: "*Lender says brothers Bruno and Anthony Pasquinelli improperly transferred millions from their company to themselves*") and Crain's Chicago, June 23, 2010 (Headline: "*Pasquinellis improperly took money out of firm: bank*") both reported on the case within days of the filing of the Complaint. The lead in both articles was Harris's sensationalized allegation – deficient as it is – that $87 million was improperly transferred from 2005 to 2009.

pleading requirements."); *Apace Commc'ns*, 522 F. Supp. 2d at 519 (Rule 9(b) applies to breach of fiduciary claims premised on defendant's fraudulent conduct) (collecting cases); *Sofi Classic S.A. de C.V.*, 444 F. Supp. 2d at 240-41 (Rule 9(b) applies to veil-piercing claim based on the same fraud allegations).

Due to the Complaint's extraordinary lack of specificity demonstrated above, Harris's allegations could not clear the basic pleading threshold. The heightened particularity requirements compel dismissal that much more strongly. For example, in *Bd. of Educ. of City of Chicago*, 131 Ill.2d at 458, 546 N.E.2d at 594, the Illinois Supreme Court held that fraud claims were properly dismissed because the allegations involved "especially vague" time periods and failed to specify actions attributable to any specific defendant or group of defendants. *See also, Prime Leasing, Inc. v. Kendig*, 332 Ill.App.3d 300, 310, 773 N.E.2d 84, 93 (1st Dist. 2002) (fraud claim dismissed for failure to specify who among multiple defendants misrepresented what, when and to whom); *Miner*, 342 Ill.App.3d at 421, 794 N.E.2d at 917 (affirming dismissal of fraud claims) ("The most glaring defect in these allegations is that it is unclear to which of the two Needelmans the trust is referring."); *Exchange Nat. Bank*, 108 Ill.App.3d at 215, 438 N.E.2d at 1250 (dismissing fraud claim where complaint failed to delineate which of the eight defendants was responsible for what conduct).[8]

---

[8] Such undifferentiated group allegations are also legally deficient under federal pleading Rule 9(b); and, as shown above, Illinois pleading requirements for fraud claims are *at least as* stringent as those under Rule 9(b). *See, e.g. In re Am. Int'l Refinery*, 402 B.R. 728, 738 (Bankr.W.D.La. 2008) ("[A] complaint cannot, consistent with Rule 9(b), group all defendants into 'one wrongdoing monolith.'"); *Apace Commc'ns Ltd. v. Burke*, 522 F. Supp. 2d at 517-18 (dismissing fraud claim under Rule 9(b) for failure to specify which defendant did what purportedly fraudulent conduct); *Sofi Classic S.A. de C.V.*, 444 F. Supp. 2d at 248-49 (dismissing fraud claims for failing to differentiate among multiple defendants).

## II.     EACH COUNT OF THE COMPLAINT IS OTHERWISE LEGALLY DEFICIENT BECAUSE IT FAILS TO ADEQUATELY ALLEGE ESSENTIAL ELEMENTS OF THE CLAIM

### A.  Count I Otherwise Fails To State A Claim For "Actual Fraud"

Count I purports to allege a claim for "Fraudulent Transfer Based on Actual Fraud" under the Illinois Uniform Fraudulent Transfer Act ("IUFTA"). Such a claim requires, among other things, an "actual intent to hinder, delay, or defraud . . . ." 740 ILCS 160/5(a)(1). Harris fails to sufficiently allege an actual intent to defraud under the applicable pleading standards. *See In re Zeigler*, 320 B.R. 362, 372 (Bankr.N.D.Ill. 2005) (creditor has high burden of showing actual intent to defraud under IUFTA, such that it must prove actual intent by clear and convincing evidence).

To adequately allege an actual intent to defraud under Illinois law, the plaintiff must plead specific factual allegations such that "fraud is the necessary or probable inference." *See Bd. of Educ. of City of Chicago*, 131 Ill. 2d at 457, 546 N.E.2d at 593; *Hirsch*, 299 Ill.App.3d at 1085, 702 N.E.2d at 272 ("[t]he pleadings must contain specific allegations of facts from which fraud is the necessary or probable inference"); *Time Savers, Inc. v. LaSalle Bank, N.A.*, 371 Ill.App.3d 759, 771, 863 N.E.2d 1156, 1167 (2d Dist. 2007) (same).[9]

Here, Harris's own allegations negate any such inference and establish on the face of the Complaint the inference, at minimum, that the transfers were *not* made with an actual intent to defraud. As Harris must (and does) acknowledge (Complaint ¶41), the cash transfers were in actuality part of an estate plan and associated corporate reorganization that was implemented at the end of 2003 with Harris's full knowledge. The intent to effectuate estate planning cannot

---

[9] Similarly, to be actionable under Rule 9(b) the alleged facts must give rise to a "strong inference" of fraud. *See, e.g.*, *S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996).

constitute the requisite fraudulent intent as a matter of law, *see In re Zeigler*, 320 B.R. at 378-80, let alone where the transfers were disclosed in real time to Harris (¶54) and contractually required by that estate plan and reorganization, which was put in place years prior to the allegations here.

Harris itself alleges that "[i]n or around 2003-2004, Bruno and Anthony [who are in their mid-to-late 70s (Complaint ¶56)] undertook an extensive reorganization of their business interests purportedly to, *inter alia*, minimize estate tax burdens on their children and future generations." (¶41). Harris also acknowledges that the agreements pursuant to which the transfers were made were indeed part and parcel of the reorganization and estate plan. [*See* ¶46 ("As part of the estate plan and reorganization, Pasquinelli LP assumed certain obligations of defendant Pasquinelli Management LLC under various compensation agreements it had with Bruno and Anthony, thereby causing Pasquinelli LP to be obligated to make certain payments to Bruno and Anthony."); ¶48 ("[The debtor's] operating agreement required it to make certain distributions ... including amounts necessary to fund Bruno's and Anthony's personal income tax liability, on account of pass-through taxable earnings of the Operating Subsidiaries."); and ¶49 ("[The debtor] was further required to make distributions ... that corresponded to Pasquinelli LP's obligations to Bruno and Anthony under the compensation agreements.")]. Indeed, the corporate structure resulting from the estate plan reorganization was fully disclosed to Harris (as were the transfers pursuant thereto), as reflected by the Organizational Chart provided by the debtors, which Harris itself alleges and attaches to the Complaint (¶¶ 43, 54, Ex. A).

Thus, Count I is legally insufficient because Harris has not alleged that actual intent to defraud is "the necessary or probable inference" of its allegations. If anything, the far more reasonable inference from the foregoing allegations is that there was no intent to defraud. *See In*

17

*re Edgewater Med. Ctr.*, 373 B.R. 845, 856 (Bankr.N.D.Ill. 2007) (finding no actual fraud under 160/5(a)(1) because there was a plausible non-fraudulent explanation for the transfers); *cf. Bergfeld v. Stork*, 7 Ill.App.3d 486, 490-91, 288 N.E.2d 15, 17-18 (5th Dist. 1972) (affirming dismissal of complaint for failure to sufficiently plead malice and intent where defendant's actions were "not inconsistent with a good faith purpose").[10]

Second, Harris cannot side-step by mere conclusion the non-fraudulent inferences that arise from its own allegations. Harris's conclusory allegation concerning the debtors' intent does no more than mirror the statutory factors that a Court "may" consider in determining actual intent. (*Compare* Complaint ¶257, *with* 740 ILCS 160/5(b)). This mechanical allegation does not begin to allege facts sufficient to compel the "necessary or probable" inference that the transfers were made with actual intent to defraud, especially where the Complaint lacks the requisite specificity and particularity. In any event, the factors are not dispositive of an actual intent to defraud, and courts have not hesitated to find the absence of such intent even where a significant number of such factors are present. *See In re Edgewater Med. Ctr.*, 373 B.R. at 855-56 (finding no actual fraud under 160/5(a)(1), "[d]espite the presence of several of the badges of fraud"); *In re Zeigler*, 320 B.R.at 378-80 (finding no sufficient inference of fraudulent intent despite presence of six of the eleven badges). Rather, the issue for the Court for present purposes is whether Harris has set forth allegations sufficiently specific and particular to

---

[10] Still another allegation at odds with an allegation that the transfers were made with an actual intent to defraud is Harris's allegation that defendants "failed to properly assess the impact of the housing market downturn on Homebuilding's ability to remain solvent." (Complaint ¶12). If "defendants" allegedly believed that the debtors would remain solvent and continue as a going concern, and were therefore caught off guard by the massive collapse in the housing market in 2008, how could they have intended to defraud Harris by transfers pursuant to contractual obligations put in place years before?

18

overcome its own allegations that negate an actual intent to defraud.[11]

Finally, Harris's own allegations also demonstrate that its real complaint is that the transfers favored some creditors over Harris. Indeed, as noted, Harris repeatedly alleges that payments were made by the debtor to persons other than Harris pursuant to various contractual obligations. But as a matter of law, preferring one creditor over another, pursuant to such antecedent contractual obligations, does not constitute actual intent to defraud creditors, and Count I is deficient for this reason as well. In *In the Matter of Liquidation of MedCare HMO, Inc.*, the court affirmed dismissal of a complaint alleging actual fraudulent conveyance under the IUFTA:

> In fraud in fact cases, since actual consideration has been given for the transfer, a specific intent to defraud must be alleged and proved. ... Here, the [liquidator] has alleged an intent to hinder and delay payment to one class of unsecured creditors. In effect, the [liquidator] has alleged a preference. Under Illinois law, however, the mere preference of one or more creditors over others does not constitute a fraudulent transfer. . . . A debtor may prefer one creditor to another provided such preference is made in good faith with the intent to pay or secure the payment of a just indebtedness against him.

294 Ill.App.3d 42, 52, 689 N.E.2d 374, 381 (1st Dist. 1997).

## B. Count II Otherwise Fails To State A Claim For "Constructive Fraud"

Harris fails to adequately allege two necessary elements of its claim for "constructive

---

[11] Here, too, the Court must keep in mind Harris's failure to specify exactly who or which of the twenty-six defendants misrepresented what, to whom, and when. Harris's failure to do so is no accident, because it cannot in good faith allege any actual fraud; and it knows it. For example, Harris could not allege anything but that the corporate reorganization and estate planning was fully disclosed to it (and was done with Harris's approval and for its benefit as well), along with the associated agreements that required the transfers, and that the transfers themselves were disclosed in real time to Harris (¶54). Harris filed its sensationalized Complaint, legally deficient as it is, solely in the misguided belief that the publicity surrounding the filing would result in some leverage on defendants.

fraud" under the IUFTA: 1) a lack of reasonably equivalent value in exchange for each transfer, and 2) at the time of each transfer, the debtors were insolvent. *See* 740 ILCS 160/5(a)(2); 740 ILCS 160/6(a).[12]  Conclusory allegations on these key elements are not enough. In the absence of factual assertions supporting each, Count II is legally insufficient:

> The Amended Complaint alleges that, with respect to transfers alleged to be fraudulent, the transferors "received less than reasonably equivalent value in exchange from the defendant for such fraudulent transfer."  The Amended Complaint also alleges that these transferors were "insolvent on the date of each fraudulent transfer."  . . . However, the trustee fails to support such allegations with factual assertions other than dates, amounts, and names of transferees included in Exhibit B.  Missing from the Amended Complaint is an identification of the consideration received by each transferor, information as to why the value of such consideration was less than the amount transferred, and facts supporting the debtors' insolvency at the time of the transfer.

*In re Caremerica,* 409 B.R. at 756 (dismissing claim for fraudulent transfer under 11 U.S.C. §548(a)(1)(B)).

### 1.  Harris fails to allege lack of reasonably equivalent value as to each transfer

Count II rests its assertion of no reasonably equivalent value for each transfer on an allegation entirely lacking in the requisite specificity.  Count II, which purports to assert a claim on multiple transfers, over a period of four years, alleges verbatim: "[The debtor] made *one or more of the Transfers* without receiving a reasonably equivalent value in exchange for such

---

[12] More particularly, Harris's "constructive fraud" claim requires: 1) A transfer made or obligation incurred by a debtor, 2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, where 3) the debtor either (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, (b) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due, or (c) with respect only to claims arising before the transfer, the debtor was insolvent at the time of transfer or obligation, or the debtor became insolvent as a result of the transfer or obligation. *See* 740 ILCS 160/5(a)(2); 740 ILCS 160/6(a).

Transfer(s)." (¶262; emphasis added). The allegation wholly fails to identify which one, or more, of the transfers Harris is alleging was made for no reasonably equivalent value. Harris defines "Transfers" here to include the transfers that allegedly occurred in the four full years from the beginning of 2006 through 2009 (¶260) – which includes multiple transfers, occurring in many different months (¶54) – and yet fails to allege which, if any, was not for reasonably equivalent value. As noted earlier, this lack of specificity (while no accident because specific allegations as to when the debtors became insolvent would reveal the absence of fraudulent transfers) renders Count II legally defective.

Beyond that, Harris's own allegations also defeat their claim; this time with the acknowledgment that the transfers were indeed for reasonably equivalent value. Under the IUFTA, a transfer is made for reasonably equivalent value if it is made in satisfaction of a valid antecedent debt. (*See* 740 ILCS 160/4(a): "Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied... ."). And, where a valid claim against the debtor exists, that claim is considered a debt. (*See* 740 ILCS 160/2(c): defining "claim" as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured"). *See also*, 740 ILCS 160/2(e) (defining "Debt" as "liability on a claim").

Here, Harris itself asserts that the alleged transfers were made in satisfaction of the guarantor debtor's ("Homebuilding's") valid antecedent debt, as specified in Homebuilding's Operating Agreement, including payment obligations for the employment services and tax obligations of Bruno A. and Anthony R. Pasquinelli. [*See* Complaint, ¶48 ("Homebuilding's Operating Agreement required it to make certain distributions ... to Pasquinelli LP ... on account

21

of pass-through taxable earnings of the Operating Subsidiaries"); and ¶49 ("Homebuilding was further required to make distributions of earnings that corresponded to Pasquinelli LP's obligations to Bruno and Anthony under the compensation agreements.")]. Harris itself alleges that it knew about these transfers at the time. (¶54) It is not surprising, then, that Harris at one point actually alleges that transfers were made for an antecedent debt. (Complaint ¶269). For these reasons, Harris falls woefully short of alleging a lack of reasonably value for each transfer.

### 2. Harris fails to adequately allege insolvency at the time of each transfer

Exemplary of Harris's failure to allege with any specificity that the debtors were insolvent at the time of transfer is paragraph 265 (the allegation of insolvency within the Count for constructive fraud), quoted again verbatim: "[The debtors] were insolvent at the time *one or more of the Transfers* were made *and/or* became insolvent as a result of *one or more of the Transfers* [Transfers defined in paragraph 260 to include all the transfers during 2006 through 2009]." (emphasis added) Harris could not more completely obfuscate when exactly the debtors were insolvent, even though an element of its constructive fraud claim is that the debtors had to be insolvent at the time of the transfer. Demonstrated more fully below are the legal deficiencies in Harris's allegations of insolvency and in its associated allegations of "unreasonably small assets" in relation to the business in which the debtor was engaged or about to engage, or "intent to incur debts beyond ability to pay as they become due."[13]

A legally viable claim of constructive fraud as to any transfer required Harris to allege insolvency "at the time" of such transfer, with insolvency meaning that "the sum of debtor's

---

[13] Harris knows how to be specific when it wants to be, as exemplified by its chart of the amounts of transfers by months. (¶54). This stands in stark contrast to Harris's lack of specificity as to the date of the debtors' alleged insolvency and whether there was reasonably equivalent value exchanged for the transfers.

debts were greater than all of debtor's assets at a fair valuation." 740 ILCS 160/6(a) and 160/3(a). Allegations of insolvency at some amorphous time, let alone some undefined time after the transfer, are legally insufficient, *In re Iridium Operating*, 373 B.R. at 346-48 ("[T]here is no case law that supports extending that finding [of insolvency] over a four-year pre-petition period."), particularly where there are no factual assertions supporting a naked allegation of "insolvency" to begin with, *In re Caremerica*, 409 B.R. at 756.

Harris's allegations of when the debtors were purportedly insolvent are all over the map, and do not properly inform "one or more defendants" of which transfer(s) over the alleged five-year period they must defend. At one point, Harris alleges that it was not until "shortly after" the over-two-year period beginning in the fourth quarter of 2007 through the fourth quarter of 2009 that the debtor "was or became" insolvent. (*See* ¶257(F), combined with Harris's definition in ¶257 of "the 2007-2009 Transfers"). At another point, Harris alleges that the debtors were insolvent as early as 2006. (¶¶ 68, 265). At another, Harris alleges that the businesses were flourishing, with annual revenues in excess of $580 million as late as the beginning of 2007 (¶40), and that Harris was even making loans to the business in 2008 (¶¶ 135-36, 149-50), which allegation is clearly at odds with any allegation of insolvency prior to then. At yet other points in the Complaint, Harris complains about transfers as far back as 2005 (¶¶ 4, 17, 54), but then does not appear to include them as part of any actual claim. Such allegations were the only way Harris could come up with its sensationalized $87 million number, and must be stricken in all events as superfluous.

Still more of Harris's own allegations torpedo any allegation of insolvency prior to the middle of 2008. Harris alleges that it was not until June, 2008 that "many of the Operating Subsidiaries stopped making interest payments on certain of their loans," and not until July, 2008

23

that the debtors informed lenders that they would cease making payments under their "various loan facilities." (¶¶ 77-78). Harris did not send default notices on the loans until June through November of 2008. (*See* Complaint ¶¶ 127-131, 138-141, 152-54, 169-72, 183-87, 198-201, 211-14, 221-23, 233-35, 245-47.) And significantly, Harris itself must acknowledge that of the $87 million in transfers it headlines, only $1.3 million were made after July, 2008, of which $1.2 million were real property assets. (See, ¶54 (chart and footnote 1 thereto)).

Thus, Harris pleads massively inconsistent and vague allegations regarding insolvency in its efforts to revise history, reallocate the risk it contractually assumed and manufacture a claim in the absence of supporting facts. In actuality, it was not until the "perfect storm" finally hit the residential markets in which the Pasquinelli businesses operated in late 2008 that the businesses were finally taken down.[14] It is exactly this kind of historical revisionism that courts reject, where a creditor tries to manufacture insolvency at the time of the transfer by relying on later events. *See, e.g., Moody*, 971 F.2d at 1073-75 (debtor was not insolvent at time of transfer where management's contemporaneous projections of solvency were reasonable when made and where debtor's failure was caused by a dramatic and unforeseeable decline in sales due to foreign and domestic competition during a recession); *In re Ohio Corrugating*, 91 B.R. at 440 (holding that creditors committee failed to satisfy its burden of proving insolvency at the time of allegedly fraudulent transfer where debtor's financial problems were caused in part by "industry-wide

---

[14] Harris grudgingly acknowledges this harsh economic reality (which required emergency legislation at the national level (TARP) in the fall of 2008), calling it a "downturn in the housing market" (¶66). According to Harris, though, "one or more" defendants somehow "foresaw" the crash (¶66) but "failed to properly assess the impact of the housing downturn" on the debtors ability to remain solvent (¶12). Harris fails to allege how defendants were somehow more prescient than Harris to predict this global economic crisis of unprecedented proportions, especially when Harris has resident economists and other experts on housing markets and often publishes on the subject.

price reductions").

Harris's rote allegation that the debtors were left with unreasonably small remaining assets (¶263) as a result of a transfer requires even more than allegations of insolvency. A company is left with the requisite "unreasonably small remaining assets" only where the transfer essentially put the company "on the road to ruin," which under the law requires more than insolvency:

> The test under 740 ILCS 160/5(a)(2) for whether a company had adequate capital after a contested transfer to fund its operations is not the same as that for insolvency. Rather, unreasonably small capital means something more than insolvency or inability to pay debts as they come due. Being left without adequate capital would mean that the transaction in issue put Joy on the road to ruin. To sustain his burden, the Trustee must show something more than a deteriorated balance sheet after the LBO or that Joy had difficulty paying its trade creditors. (internal citations omitted)

*In re Joy Recovery Tech.*, 286 B.R. at 76 (chapter 11 trustee failed to show unreasonably small capital, despite having shown insolvency). The pertinent factors to consider in determining whether there are "unreasonably small remaining assets" include "'the . . . company's debt to equity ratio, its historical capital cushion, and the need for working capital in the specific industry at issue.'" *In re Iridium Operating*, 373 B.R. at 345 (citation omitted). Harris alleges none of these factors to support its conclusory allegation that the debtors were left with unreasonably small assets.

In any event, a debtor is not required to have assets sufficient to meet each and every possible economic contingency, particularly where reasonable management cash-flow projections showed sufficient capital to meet expected needs. *See In re Iridium Operating*, 373 B.R. at 345. Here, as already noted, Harris itself alleges that the debtors did not stop being able to meet their payment obligations under the loans until June of 2008 at the earliest, which was

25

*after* virtually all of the allegedly fraudulent transfers. Moreover, it is legally insufficient for Harris to allege that the debtors had unreasonably small assets earlier than this by alleging that the debtors' assets later proved insufficient to withstand the massive housing market collapse of 2008. *See In re Iridium Operating*, 373 B.R. at 345 ("While a company must be adequately capitalized, it does not need resources sufficient to withstand any and all setbacks."); *In re WCC Holding Corp.*, 171 B.R. 972, 985-986 (Bankr.N.D.Tex. 1994) ("The Court must 'take[ ] into account that businesses fail for all sorts of reasons, and that fraudulent conveyance laws are not a panacea for all such failures.'") (citations omitted).

Harris's final shot at alleging the insolvency element of its constructive fraudulent transfer claim is likewise lacking in factual allegations and legally deficient. Here, Harris makes the conclusory allegation that the debtors "intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due." (¶264) To no surprise (given the good faith boundaries by which Harris's allegations are bound), Harris's conclusory allegation is no more legally sufficient than its other defective allegations. Yet again, Harris does no more than mechanically copy the language of the statute (740 ILCS 160/5(a)(2)), with no supporting facts.

## C. **Count III Otherwise Fails To State A Claim For "Insider Preference"**

In Count III, Harris gets further intertwined in its web of inconsistent allegations that renders the Complaint legally deficient. An element of its claim for "insider preference" is that the transfers in 2009 were made for an antecedent debt. *See* 740 ILCS 160/6(b). Yet Harris spends most of its 253 allegations with conclusory allegations that the transfers were without reasonably equivalent value. For example, it alleges in paragraph 262 that the debtors "made one or more of the Transfers [which Harris defines to *include* those made in 2009 (Complaint

26

¶260)] without receiving a reasonably equivalent value." Maybe it was with an eye to having to plead inconsistently in this Count III insider preference claim that the transfers were made for value that Harris chose not to specify in the earlier allegations exactly which transfers allegedly were or were not made for reasonably equivalent value. Even within Count III itself Harris concludes on the one hand that the 2009 transfers were made for an antecedent debt (¶269), but on the other concludes that subsequent transferees gave no reasonably equivalent value (¶275). These allegations (which appear to be driven by the legal convenience of the moment, not any underlying facts) are hopelessly conflicted, do not fairly apprise defendants of the claims, and are thus legally insufficient.

In addition, Harris does not plead the requisite specificity as to other essential elements of the "insider preference" claim. Harris fails to allege any facts supporting the conclusory allegations that (i) the transfer was made to an insider (here again, Harris groups together all the defendants), (ii) the debtors were insolvent, and (iii) the insider had reason to believe the debtors were insolvent.

### D. Count IV Otherwise Fails to State a Claim for Breach of Fiduciary Duty

Harris's claim for breach of fiduciary duty is legally deficient because, for one reason, directors and officers of a debtor owe fiduciary duties to creditors only when the debtor is insolvent. *See Technic Eng'g, Ltd. v. Basic Envirotech, Inc.*, 53 F.Supp.2d 1007, 1010-11 (N.D. Ill. 1999) (applying Illinois law). Harris deficiently alleges that "[a]t all relevant times," the debtors were insolvent (¶278), without any further specificity of the date of alleged insolvency or on what factual basis the debtor was allegedly insolvent at the unidentified time. As previously shown, such vague allegations are legally insufficient to allege insolvency.

Second, those portions of Harris's breach of fiduciary duty claim that allege mere

negligence (*e.g.*, ¶282(D)) are legally deficient under the business judgment rule. As to such allegations -- which are without any alleged fraud, illegality or conflict of interest – officers and directors are entitled to a presumption that they exercised their judgment in good faith and with due care. *See Ferris Elevator Co., Inc. v. Neffco, Inc.*, 285 Ill.App.3d 350, 354, 674 N.E.2d 449, 452 (3d Dist. 1996); *Fields v. Sax*, 123 Ill.App.3d 460, 463-464, 462 N.E.2d 983, 986 (1st Dist. 1984). Thus, a plaintiff alleging a breach of fiduciary duty through mere negligence (without any allegation of fraud, illegality or conflict of interest) must allege how the officers and directors did not exercise due care in making their decision; allegations of poor decision-making are not enough. *See Stamp v. Touche Ross & Co.*, 263 Ill.App.3d 1010, 1018, 636 N.E.2d 616, 623 (1st Dist. 1993) (affirming dismissal of breach of fiduciary duty claim).

Third, Harris's attempt to allege a breach of fiduciary duty by a theory of deepening insolvency (¶¶ 13, 280) also fails. Those paragraphs allege a confusing mess of facts that boil down to allegations that: 1) Harris was somehow harmed by *improvements* made to the instant construction projects by contractors who asserted mechanic's liens (a condition of which is some *improvement* to the property), and 2) unspecified draw requests on unspecified loans *may* not have been used to pay those contractors. With respect to the latter allegation, Harris alleges neither any basis for a duty to use funds advanced at unspecified times under unspecified loans to pay contractors (as noted, Harris declined to attach the loan documents to its pleading) nor even that these unspecified advances were not so used. Instead, Harris admits that it "has been unable to adequately trace the draw requests" and hence has no knowledge of what the funds may have been used for. (¶13). Harris fails to allege that any defendant *did* fail to use funds in some purportedly required way and its allegations are otherwise insufficiently vague and indeterminate.

28

In all events, the theory of "deepening insolvency" has been widely discredited. *See In re Gluth Bros. Const., Inc.*, 424 B.R. 379, 389 (Bankr.N.D.Ill.2009) ("It is unclear whether deepening insolvency is recognized as a claim of action in Illinois.") (collecting cases); *see also In re SI Restructuring, Inc.*, 532 F.3d 355, 363 (5th Cir. 2008) ("A deepening insolvency theory of damages has been criticized and rejected by many courts. We agree with the Third Circuit Court of Appeals, which recently concluded that deepening insolvency is not a valid theory . . . ."); *In re Propex, Inc.*, 415 B.R. 321, 327 (Bankr.E.D.Tenn. 2009) ("Many courts and commentators, in a rising concert, question the soundness of the theory").

Harris in particular cannot rely on this theory because it does not allege that the improvements resulting to the properties somehow do not offset the liability of the resulting mechanic's liens. *Compare In re Propex*, 415 B.R. at 327 ("There is a growing realization that loans do not of themselves deepen insolvency: they are balance sheet neutral because the incoming loan proceeds balance the new repayment obligation. '*In short, a new loan, however onerous or ill-advised, can never 'deepen' balance-sheet insolvency.*'") (emphasis in original). In any event, the decisions to incur the debt of mechanic's liens would be protected by the business judgment rule, and Harris fails to allege any lack of due care in any such decisions. A recent Delaware Court of Chancery opinion is instructive:

> If the board of an insolvent corporation, acting with due diligence and good faith, pursues a business strategy that it believes will increase the corporation's value, but that also involves the incurrence of additional debt, it does not become a guarantor of that strategy's success. That the strategy results in continued insolvency and an even more insolvent entity does not in itself give rise to a cause of action. Rather, in such a scenario the directors are protected by the business judgment rule.

*Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 205 (Del.Ch. 2006) *aff'd sub*

*nom. Trenwick Am. Litig. Trust v. Billett*, 931 A.2d 438 (Del. 2007) (applying Delaware law).

Fourth, all portions of Harris's breach of fiduciary duty claim that rest on the same factual allegations and alleged injuries as its fraudulent transfer claims (*see, e.g.*, Complaint ¶282(A)-(C)) should be dismissed as duplicative. *See Fabricare Equip. Credit Corp. v. Bell, Boyd & Lloyd*, 328 Ill.App.3d 784, 791, 767 N.E.2d 470, 476 (1st Dist. 2002) ("When a breach of fiduciary duty claim is based on the same operative facts as a legal malpractice claim, and results in the same injury, the later claim should be dismissed as duplicative."); *Nagy v. Beckley*, 218 Ill. App. 3d 875, 879, 578 N.E.2d 1134, 1136 (1st Dist. 1991) ("A duplicative count may be properly dismissed."); *DeGeer v. Gillis*, No. 09 C 6974, 2010 U.S. Dist. LEXIS 39321, at *24 (N.D. Ill. Apr. 21, 2010) ("Defendants argue that Count IV must be dismissed because DeGeer's breach of fiduciary duty claim is duplicative of DeGeer's breach of contract claim. I agree. It is well-settled that duplicative counts in a complaint may be properly dismissed.").

Fifth, Harris fails to sufficiently allege corporate waste in paragraph 282(C) because it fails to adequately allege which particular "transfers" were purportedly wasteful, how the "economics" of those transfers were "flawed," and on what basis those unspecified transfers brought no benefit to the debtors. As such, defendants cannot know what wasteful acts are alleged against whom, or even when and why they were allegedly wasteful; and as such, this portion of the claim must also be dismissed.

Sixth and last, a fiduciary duty owed to creditors of an insolvent corporation is owed to creditors as a group, not directly to individual creditors. *See Prime Leasing*, 332 Ill.App.3d at 314, 773 N.E.2d at 97 ("The ... fiduciary duty runs to all creditors as a group, and not to any individual creditor.") (applying Delaware law). Because Harris is utilizing this claim as a basis to recover damages purportedly particular to it, the claim is legally deficient. (*See, e.g.*, ¶13) For

all six reasons, Count III is legally insufficient.

### E. Count V Otherwise Fails To State A Claim For Unjust Enrichment

Harris's claim for unjust enrichment alleges that "one or more" of the defendants were unjustly enriched when he/she/it/they allegedly received tax refunds by reason of net operating losses ("NOLs") for the years 2007-2009, to Harris's alleged detriment. The claim fails for the fundamental reason that the debtors never had tax obligations to begin with (they were "pass through" entities for income tax purposes), as Harris itself alleges. (¶117). Thus, any tax losses never were property of the debtors, never could have been utilized in any respect by the debtors, and never were the collateral of Harris. The only ones who ever could have utilized the tax losses were the ones who ultimately had the tax obligations – Bruno A. Pasquinelli and Anthony R. Pasquinelli – as Harris likewise acknowledges. (¶¶ 118-19).

In short, the recognition of losses by Bruno and Anthony does not diminish in any respect the assets available to Harris as a creditor of the debtors. Harris's theory of unjust enrichment is illogical and for that reason was squarely rejected in *In re Forman Enterprises, Inc.*, 281 B.R. 600, 608-10 (Bankr.W.D.Pa. 2002), a case on all fours here. Like here, the debtor was not a tax-paying entity. The income tax obligations flowed through to the individual shareholders and the debtor made payments to the individual shareholders to cover the cost of such taxes, pursuant to an agreement mandating such payments. Subsequently, net operating losses were carried back to years in which the shareholders had paid taxes, which resulted in tax refunds to the shareholders. The debtor filed bankruptcy and the bankruptcy trustee (standing in the shoes of creditors) filed an unjust enrichment claim against the shareholders, seeking a turnover of the tax refunds. The court found the claim illogical because the NOLs were never the debtor's to begin with and there was nothing inequitable about the actual taxpayers receiving the refund:

31

> We reject the chapter 7 trustee's 'spin' concerning who paid defendants' income taxes in the first place. As we see it, defendants, not debtor, paid the income taxes defendants owed as shareholders of an S corporation.
>
> * * *
>
> It is a *non* sequitur to conclude that a S corporation paid the tax owed by its shareholder on the corporation's income merely because the S corporation paid a dividend to the shareholder to enable the shareholder to pay the tax owed by the shareholder on the S corporation's income and the shareholder utilized the dividend to pay the tax owed. As a matter of logic this conclusion does not follow. 281 B.R. at 609 (also rejecting breach of fiduciary duty and constructive trust claims premised on the same core allegations).

*See also, In re White Metal Rolling and Stamping Corp.*, 222 B.R. 417, 425-26 (Bankr.S.D.N.Y. 1998) (unjust enrichment claim dismissed for failure to allege that NOLs had any value to the debtor).[15]

The transfers made by the debtors to shareholders for payment of taxes were either appropriate when made, or not; unjust enrichment plays no part in the analysis. And the analysis here remains that there is nothing actionable about the transfers. They were not fraudulent transfers for the many reasons previously demonstrated, and the result does not change by dressing up the claim as an alleged unjust enrichment.

In addition, per well-settled Illinois law, Harris's quasi-contractual claim for unjust enrichment claim is also not available because the parties' relationship is governed by express

---

[15] Similarly, Illinois courts reject claims for unjust enrichment in which there is no connection between the enrichment of the defendant and the impoverishment of the plaintiff. *See Dietz v. Illinois Bell Telephone Co.*, 154 Ill.App.3d 554, 561, 507 N.E.2d 24, 28 (1st Dist. 1987) ("improper windfall to the plaintiff" absent such a connection); *Paolino v. Hussain Egan Bendersky & Franczyk, L.L.C.*, No. 06 C 611, 2006 U.S. Dist. LEXIS 97001, at *5-7 (N.D. Ill. July 11, 2006) (dismissing unjust enrichment claim). Here, the tax refunds generated by use of the NOLs bear no connection to the losses suffered by Harris. The tax refunds are not the property of and cannot be used by the debtors, and thus the debtors have not lost any assets that might be used to pay Harris, regardless of how the NOLs are used.

contracts (that is, the loan documents and guaranty agreements that Harris itself alleges throughout – but fails to attach to – the Complaint). (¶¶ 124-26, 135-37, 149-51, 165-67, 180-82, 195-97, 208-10, 218-20, 230-32, 242-44). *See F.H. Prince & Co., Inc. v. Towers Fin. Corp.*, 275 Ill.App.3d 792, 797, 804-05, 656 N.E.2d 142, 146, 151 (1st Dist. 1995) (unjust enrichment claim dismissed where parties' relationship governed by contract); *Prodromos v. Poulos*, 202 Ill.App.3d 1024, 1032-33, 560 N.E.2d 942, 948-49 (1st Dist. 1990); *Indus. Lift Truck Serv. Corp.*, 104 Ill.App.3d at 360, 432 N.E.2d at 1002 ("[t]he general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests").

The rationale for this rule is that the parties should not be able to alter the risks they contractually assumed. Harris fully understood the lack of personal guarantees as well as the fact that the guarantor debtor (Homebuilding) was a pass-through entity for tax purposes, required by its operating agreement to make payments to the actual taxpayers to cover the cost of the taxes (*see* ¶¶ 117, 48, 43). Harris knowingly assumed the risk of a housing market collapse that would render it unable to fully collect on its loans through either foreclosure on the property of the borrower debtors or the guaranty by the guarantor debtor. The law does not permit Harris to now re-allocate its assumed risk and add personal liability where it negotiated none to begin with:

> When parties enter into a contract they assume certain risks with an expectation of a return. Sometimes, their expectations are not realized, but they discover that under the contract they have assumed the risk of having those expectations defeated. As a result, they have no remedy under the contract for restoring their expectations. In desperation, they turn to quasi-contract for recovery. This the law will not allow. Quasi-contract is not a means for shifting a risk one has assumed under contract.

33

*Indus. Lift Truck Serv.*, 104 Ill.App.3d at 361, 432 N.E.2d at 1002.[16]

**F. Count VI Otherwise Fails To State A Claim For "Veil Piercing And Alter Ego Liability"**

Count VI is legally deficient because alter-ego liability and piercing the corporate veil are not independent causes of action. They are simply remedies once liability on an actual cause of action is established. *See Pedersen & Houpt, P.C. v. Summit Real Estate Group, LLC*, No. 06 L 8078, 2008 WL 2880658 (Ill. Cir. June 21, 2008) (dismissing count for piercing the corporate veil) (Bill Taylor, J.); *Peetoom v. Swanson*, 334 Ill.App.3d 523, 527, 778 N.E.2d 291, 295 (2d Dist. 2002) ("The doctrine of piercing the corporate veil is an equitable remedy; it is not itself a cause of action but rather is a means of imposing liability on an underlying cause of action, such as a tort or breach of contract.").

In any event, Harris's allegations fall short of those necessary to support piercing the corporate veil or imposing alter-ego liability as a remedy. To begin with, Harris's allegations in Count VI are over-the-top vague as to which person or entity is the subject of the assertions. Harris does not specify which of the "Pasquinelli Defendants" (defined to include *all 26 defendants*, ¶¶ 36, 34) allegedly controlled the guarantor debtor (¶292: "[T]he Pasquinelli Defendants were able to exercise control over Homebuilding")[17]; which of the eleven defendant

---

[16] Finally, Count V is no less than the other Counts composed of undifferentiated allegations against "one or more" of all twenty-six defendants. Harris fails to even allege which defendant(s) was/were allegedly unjustly enriched. *See* ¶289.

[17] Then, in paragraph 303, Harris alleges that "[o]ne or more of the [twenty-six defendants], specifically Bruno and Anthony or their trusts and the individual Pasquinelli family members who received distributions from their respective trusts, conducted, managed and controlled the affairs of Homebuilding and its subsidiaries as though they were their own individual businesses"). Read literally, Harris alleges that the trust fund recipients so controlled Homebuilding's affairs that Homebuilding should be considered the alter-ego of each of them, without any factual support for such an outlandish conclusion. In any event, it is impossible to discern which of the 26 defendants must defend which allegation.

34

entities were allegedly shell entities (¶293: "Homebuilding (as well as many of the other entities in the pyramid) were merely shell entities"); or which of the 26 defendants allegedly disregarded the separateness of which entities (¶294: "[T]he Pasquinelli Defendants disregarded the separateness of these entities"). In many other allegations, Harris refers to the alleged wrongdoers as "the Pasquinellis" (¶¶ 295, 297, 299, 300; *see also* ¶¶ 76, 96, 109, 277), which is nowhere defined. Such vague, undifferentiated allegations as to an essential element of Harris's claim (the degree to which the guarantor debtor was controlled by each defendant) is wholly deficient as a matter of law, and requires dismissal.[18]

There are many other legal insufficiencies in the "claim" as well. As a matter of law, Harris's effort to pierce the veil of the debtor – in order to impose liability on its upstream parent, trusts and individuals – cannot rely on the debtor's alleged relationships with or among its downstream subsidiaries. *See, Amsted Industries, Inc. v. Pollak Industries, Inc.*, 65 Ill.App.3d 545, 550, 382 N.E.2d 393, 397 (1st Dist. 1978) (allegations of interrelatedness between two entities owned by the same shareholder are irrelevant to the theory that the shareholder was the alter ego of one of the entities). Yet, Harris's Count VI piercing "claim" rests on just such allegations. *See* ¶¶ 295-301, 307; Ex. A to Complaint.[19]

---

[18] In order to pierce the corporate veil under Illinois law (or to disregard a corporate entity's separate identity via an alter ego theory), a party must show, *inter alia*, "such a unity of interest and ownership that the separate personalities of the corporation and the parties who compose it no longer exist." *Tower Investors, LLC. v. 111 E. Chestnut Consultants, Inc.*, 371 Ill.App.3d 1019, 1033-34, 864 N.E.2d 927, 941 (1st Dist. 2007).

[19] The corporate structure here was not atypical for a regional homebuilder. At the base level, each townhouse development was owned by a single purpose limited liability company ("LLC"). The lenders (*e.g.*, Harris) contracted with this LLC as the sole borrower (with that LLC's property as collateral), and these are the entities Harris calls the "Operating Subsidiaries." All such LLCs in a particular geographic region were wholly owned by that region's LLC. All such regional LLCs were wholly owned by Pasquinelli Homebuilding, LLC ("Homebuilding"), with whom the lenders (*e.g.*, Harris) contracted as the (footnote continued)

Moreover, courts are particularly unwilling to pierce the corporate veil where the parties'
relationship was defined by specific contracts, as here. Harris knowingly entered the loan
agreements with particular entities, fully aware of how those entities fit into the organizational
structure of the Pasquinelli business. Indeed, Harris itself attaches the organizational chart to the
Complaint and does not allege any misrepresentation of that structure by the debtors. To the
contrary and as previously described, Harris was fully aware of the late-2003 estate plan that
implemented that organizational structure. As such, Harris does not (and cannot) sufficiently
allege injustice or iniquity flowing from recognition of that corporate form:

> Particularly, in breach of contract cases, courts should apply even
> more stringent standards to determine when to pierce the corporate
> veil than they would in tort cases. 'This is because the party
> seeking relief in a contract case is presumed to have voluntarily
> and knowingly entered into an agreement with a corporate entity,
> and is expected to suffer the consequences of the limited liability
> associated with the corporate business form. ... Where there is no
> evidence of any misrepresentation, no attempt to conceal any facts,
> and the parties possess a total understanding of all of the
> transactions involved, Illinois courts will not pierce the corporate
> veil in a breach of contract situation. (citation omitted)

*Tower Investors, LLC v. 111 E. Chestnut Consultants, Inc.*, 371 Ill.App.3d 1019, 1033-34, 864

N.E.2d 927, 941-42 (1st Dist. 2007); *Bankers Trust Co. v. Chicago Title & Trust Co.*, 89 Ill. App.

3d 1014, 1021, 412 N.E.2d 660, 665 (1st Dist. 1980) (no alter ego or veil-piercing remedy where

intervenor was fully cognizant of separate existences of corporation and shareholders). Harris

---

(footnote continued from previous page)
sole guarantor. Thus, the only contractual debtors to Harris (and the other lenders) are the borrowers (the
Operating Subsidiaries) and the guarantor (Homebuilding), and no other person or entity. In turn,
Homebuilding was wholly owned by a limited partnership, the partners of which included trusts, of which
Bruno and Anthony Pasquinelli were the grantors and various other individual defendants were
beneficiaries. (*See* ¶¶ 42, 43, Ex. A to Complaint). The upshot is that to pierce the corporate veil of
guarantor debtor Homebuilding (to get at its upstream parent, trusts and individuals) Harris impermissibly
relies on Homebuilding's alleged relationship with or among its downstream subsidiaries.

cannot now claim personal liability upstream from the guarantor debtor when it failed to negotiate for the additional upstream guarantees. *See*, *Old Orchard*, 389 Ill.App.3d at 71-72, 904 N.E.2d at 1062-63 (no piercing the corporate veil where plaintiff failed to negotiate a lease guaranty from the parent: plaintiff "knew that it would have no recourse against [the parent] in the event that [the subsidiary] defaulted on its obligations under the lease").

Finally, Harris's attempt to pierce Homebuilding's corporate veil "at all relevant times" is belied by its own assertion that it was not until 2008 that "one or more" of the 26 defendants "caused Homebuilding to abandon its recordkeeping and accounting functions, as well as other corporate formalities . . . ." (¶308). In addition to Harris's inappropriate effort at time travel (again) and the lack of requisite specifics in the allegation, such alleged isolated instances cannot show failure to observe corporate formalities and thus cannot justify piercing the corporate veil. *See Jacobson v. Buffalo Rock Shooters Supply Inc.*, 278 Ill.App.3d 1084, 1089, 664 N.E.2d 328, 331 (3d Dist. 1996) ("We hold that merely missing one annual meeting is not a sufficient showing of failure to observe corporate formalities."); *Amsted Industries*, 65 Ill.App.3d at 551-52, 382 N.E.2d at 398-99 (refusing to pierce the corporate veil where there were at best only minor failures to adhere to proper corporate formalities).

## **CONCLUSION**

Harris's Complaint should be dismissed because it is substantially insufficient in law.

Harris's effort to manufacture a claim where none exists is evident from the Complaint's

numerous pleading deficiencies.

Respectfully submitted,

PASQUINELLI HOMEBUILDING, LLC, BRUNO
A. PASQUINELLI, ANTHONY R. PASQUINELLI,
BRUNO H. PASQUINELLI, CHRISTINE
PASQUINELLI, and MARIA L. PASQUINELLI

By: _____
One of their attorneys

Bruce S. Sperling
Mitchell H. Macknin
SPERLING & SLATER, P.C. (#22288)
55 West Monroe Street, Suite 3200
Chicago, IL 60603

PASQUINELLI MANAGEMENT, LLC, PASQUINELLI
FINANCIAL, LLC, PASQUINELLI HOMEBUILDING,
L.P., PASQUINELLI HOMEBUILDING TRUST,
PASQUINELLI FAMILY FOUNDATION, B&A
HOMES, LLC, ARP 2003 TRUST, ARP 1989 FAMILY
TRUST, BAP 2003 TRUST, BAP 1989 FAMILY TRUST,
ANTHONY J. PASQUINELLI, BETSY PASQUINELLI,
JOHN PASQUINELLI, DAVID PASQUINELLI, ELLEN
PASQUINELLI, ANN MARIE PASQUINELLI, JOAN
PASQUINELLI, SALLY PASQUINELLI, AS TRUSTEE,
MARYANN PASQUINELLI, AS TRUSTEE, AND
JOSEPH PASQUINELLI

By: _____
One of their attorneys

Michael R. Grimm, Sr.
Harvey R. Herman
CLAUSEN MILLER, P.C. (#90181)
10 South LaSalle Street
Chicago, IL 60603
(312) 855-1010

38

## <u>CERTIFICATE OF SERVICE</u>

I, Mitchell H. Macknin, an attorney, hereby certify that a true and correct copy of

**DEFENDANTS' MEMORANDUM IN SUPPORT OF §2-615 MOTION TO DISMISS**

was served upon the following persons by hand delivery this 22nd of September 2010:

Joseph Lombardo
Chapman and Cutler
111 W. Monroe Street, 15th Floor
Chicago, IL 60603

Mitchell H. Macknin

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| HARRIS N.A., and | ) | |
| BMO CAPITAL MARKETS FINANCING, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 10 L 6909 |
| | ) | |
| PASQUINELLI HOMEBUILDING LLC, BRUNO A. | ) | |
| PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI | ) | Judge Taylor |
| MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC, | ) | |
| PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI | ) | |
| HOMEBUILDING TRUST, PASQUINELLI FAMILY | ) | |
| FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST, | ) | |
| ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989 | ) | |
| FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H. | ) | |
| PASQUINELLI, CHRISTINE PASQUINELLI, BETSY | ) | |
| PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI, | ) | |
| JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA | ) | |
| PASQUINELLI, ANN MARIE PASQUINELLI, JOAN | ) | |
| PASQUINELLI, SALLY PASQUINELLI, as Trustee and | ) | |
| MARYANN PASQUINELLI, as Trustee | ) | |
| | ) | |
| Defendants. | ) | |

**AGREED ORDER AND BRIEFING SCHEDULE**

This cause coming to be heard on Defendants' §2-615 Motion to Dismiss, notice given,

the parties in agreement, and the Court being duly advised in the premises, IT IS HEREBY

ORDERED:

(1)     Plaintiffs shall file their Response to Defendants' Motion to Dismiss on or before

November 10, 2010; 4/23/

(2)     Defendants shall file their Reply on or before December 14, 2010; 4/23/

(3)     By Order dated August 25, 2010, this Court granted leave to Defendants to file a Memorandum of Law up to 40 pages in length, and to Plaintiffs to file a Response up to 40 pages in length.  Defendants are hereby granted leave to file a Reply up to 25 pages in length;

(4)     Defendants shall deliver to the Court courtesy copies of all documents, identified in the Court's standing order, on or before December 14, 2010; 4374

(5)     Hearing and argument on the Motion to Dismiss is set for January 11, 2011 at 10:35 a.m.; 6271

(6)     The status hearing of September 30, 2010 is hereby stricken;  and 4330

(7)     The October 12, 2010 calendar call is hereby stricken. 4330

W. Day 16412

_____
Judge Bill Taylor

Richard A. Wohlleber
David T.B. Audley
Joseph P. Lombardo
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
(312) 845-3000
Firm No. 90170
Attorneys for Plaintiffs





FILED 2 - 13

LAW DIVISION '23 PM 4: 10

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| HARRIS N.A., and BMO CAPITAL | ) | |
| MARKETS FINANCING, INC , | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v | ) | No 10 L 6909 |
| | ) | |
| PASQUINELLI HOMEBUILDING LLC, BRUNO A | ) | Judge Bill Taylor |
| PASQUINELLI, ANTHONY R PASQUINELLI, | ) | |
| PASQUINELLI MANAGEMENT, LLC, PASQUINELLI | ) | |
| FINANCIAL, LLC, PASQUINELLI HOMEBUILDING | ) | |
| L P., PASQUINELLI HOMEBUILDING TRUST, | ) | |
| PASQUINELLI FAMILY FOUNDATION, B&A HOMES,) | | |
| LLC, ARP 2003 TRUST, ARP 1989 FAMILY TRUST, | ) | |
| BAP 2003 TRUST, BAP 1989 FAMILY TRUST, | ) | |
| ANTHONY J PASQUINELLI, BRUNO H | ) | |
| PASQUINELLI, CHRISTINE PASQUINELLI, BETSY | ) | |
| PASQUINELLI, JOHN PASQUINELLI, DAVID | ) | |
| PASQUINELLI, JOSEPH PASQUINELLI, ELLEN | ) | |
| PASQUINELLI, MARIA PASQUINELLI, ANN MARIE | ) | |
| PASQUINELLI, JOAN PASQUINELLI, SALLY | ) | |
| PASQUINELLI, as Trustee, and MARYANN | ) | |
| PASQUINELLI, as Trustee, | ) | |
| | ) | |
| Defendants. | ) | |

*32.98*
*2871.*

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF §2-615 MOTION TO DISMISS

Defendants, by their attorneys, submit this Reply Brief in further support of their §2-615

Motion to Dismiss the Complaint filed by plaintiffs, Harris N.A. and BMO Capital Markets

Financing, Inc. ("Harris").

## INTRODUCTION TO REPLY

Harris's Response is most noteworthy for what it ignores — the defects in the core

elements of the Complaint. Defendants' opening Brief demonstrated the many deficiencies in

Harris's claims, by identifying the offending allegations and applicable case law Harris's

Response turns a blind eye to both the deficient allegations and the cases cited by defendants, and argues irrelevancies.

The crux of Harris's Complaint is that transfers by "defendants" were allegedly "fraudulent" because they were made 1) for no reasonably equivalent value and 2) while the guarantor (defendant Pasquinelli Homebuilding, LLC ("Homebuilding")) was insolvent. Defendants demonstrated that Harris failed to adequately plead either of these two requisite elements. Harris's own allegations showed that the transfers were made pursuant to contractual obligations (and thus for reasonable value), which obligations (along with the transfers) were disclosed in real time to Harris. In response, Harris does not even mention this dispositive legal inadequacy in its claim – lack of reasonably equivalent value – much less refute it.

Equally dispositive, defendants demonstrated that the Complaint also fell way short of alleging insolvency at the time of the transfers. In response, Harris retreats from its conclusory allegations of statutory insolvency (the debtor's debts being greater than its assets at fair value) — which is the cornerstone of its Complaint. Harris's Response relies instead on a conclusory allegation of "undercapitalization" or the empty characterization that the transfers put the transferor "on the road to ruin." Regardless of the insolvency standard it settles upon, however, Harris still failed to plead the requisite facts (rather than conclusions) that the standard was met at the time of each alleged transfer. *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Services Co.*, 910 F. Supp. 913, 944 (S.D.N.Y. 1995); *In re Iridium Operating LLC*, 373 B.R. 283, 345 (Bankr.S.D.N.Y. 2007); 740 ILCS 160/6(a), 160/3(a).

Harris's Response simply ignores the Complaint's fundamental failure to adequately allege when Homebuilding purportedly became insolvent. This deficiency is particularly damning in light of the alleged fact that the $87 million in transfers Harris seeks to put in issue

2

occurred at numerous different times over a five-year period, and only $1.3 million of it was transferred after July 2008. Thus, Harris's Response never refutes that the Complaint at one point alleges Homebuilding's insolvency "shortly after" "2007-2009" (Complaint, ¶257(F)), at another point alleges insolvency "during 2006-2007" (¶68), at another alleges insolvency from 2006-2009 (¶¶ 260, 265), and at another alleges insolvency at the time of "the transfers in question," which would include those going back to 2005 (¶¶ 65, 4, 54) Harris's Response also never addresses its own allegations that it was not until mid-2008 that the debtors first missed a loan payment (e g., ¶¶ 77-78), or that the debtors had achieved annual revenues of $580 million during the very years Harris purports to allege insolvency (¶40), or that Harris made loans to debtors on numerous occasions throughout these periods, including into 2008 (¶¶ 135, 149), reflecting its own contemporaneous findings of Homebuilding's lack of insolvency.

Harris's Complaint is indeed a trumped-up effort to revise history and turn back the clock of insolvency in order to make up for the lack of personal liability provisions in the loan documents. But as defendants demonstrated in their opening Brief, "the goal of fraudulent conveyance law is not to provide an insurance policy against business risk for creditors " *In re Joy Recovery Tech Corp* , 286 B R. 54, 76 (Bankr N.D. Ill. 2002). *See also, Kipperman v Onex Corp* , 411 B.R. 805, 836 (N D. Ga 2009) (company's financial condition must be evaluated "untainted by hindsight or post-hoc litigation interests")

Harris's Response also fails to address defendants' demonstration of the Complaint's failure to otherwise fulfill even the basic Illinois pleading standards. For example, Harris chose to name 26 defendants, but its Response ignores the Complaint's failure to differentiate among them (which include 15 different individuals and 11 separate entities) as to allegedly wrongful conduct that goes to the core of the six claims. Among other undifferentiated allegations· the

fraudulen transfer claims (Counts I-III) allege transfers to "one or more" of the 26 "Pasquinelli Defendants" or to unidentified "insiders," and that "one or more" of the 26 "Pasquinelli Defendants" knew Homebuilding was insolvent; Count IV alleges a breach of fiduciary duty by the 26 "Pasquinelli defendants"; Count V alleges unjust enrichment by "one or more" of the 26 "Pasquinelli Defendants"; and Count VI's claim to pierce the corporate veil alleges that "one or more" of the 26 "Pasquinelli Defendants" "abused" Homebuilding's limited liability form, and "many" of the defendants were "shell entities." (Complaint, ¶¶ 255, 260, 269, 271, 280, 286, 293, 309)  Each Count also requests a judgment against each of the 26 defendants.  (Complaint, pp. 46, 48, 49, 52, 53, 57).  And the Complaint's undifferentiated allegations are even more glaringly deficient when measured against the heightened pleading standard applicable here

At bottom, without any basis in law for its claims, Harris has pled hopelessly vague, conclusory and conflicted allegations of fraud concerning two brothers who spent decades building a successful business (Complaint, ¶39); and the travesty was compounded when the press picked up on Harris's sensationalized allegations (Defendants' Opening Brief ("Defs. Br.") at 14 n 7)  The pleading standards are designed precisely to "weed out" such legally deficient complaints of fraud, to mitigate this very "harm to reputations" that follows charges of such serious wrongdoing. *Bd  of Educ  of City of Chicago v  A, C and S, Inc* , 131 Ill.2d 428, 457, 546 N.E.2d 580, 593-94 (1989).   It would be an injustice to require defendants to answer the Complaint, as shown further below.

## ARGUMENT

### A. HARRIS'S RESPONSE FAILS TO REFUTE THE COMPLAINT'S LACK OF REQUISITE SPECIFICITY

Defendants' opening Brief identified the numerous allegations that are so lacking in specificity as to render the Complaint insufficient to clear even the basic pleading thresholds Harris's Response addresses neither the specific offending allegations nor the governing case law that defendants cited. Instead, Harris resorts to wholesale mischaracterization of defendants' argument as requiring it to plead "evidence" (citing only to a case for the irrelevant proposition that it is not required to plead evidence). (Harris Response ("Resp.") at 3). The opening Brief suggested nothing of the sort. The Brief relied on the proposition that the Court, in considering the legal sufficiency of a complaint pursuant to a §2-615 motion to dismiss, is to disregard any legal or factual conclusions not supported by specific factual allegations. *See, e g, LaSalle Nat Bank v City Suites, Inc*, 325 Ill.App.3d 780, 790, 758 N.E.2d 382, 390 (1st Dist. 2001); *Oravek v. Cmty. Sch. Dist. 146*, 264 Ill App.3d 895, 898, 637 N.E.2d 554, 557 (1st Dist 1994); Defs. Br. at 7-8 Harris's Response omits mention of either of these applicable cases

Harris wholly ignores defendants' showing that the Complaint is permeated with allegations against "one or more" undifferentiated groups of defendants, often including some undefined portion of all 26 separate defendants at once — as to assertions that go to the core of the claims (*e g* Complaint, ¶¶ 10, 12, 13, 34, 44, 78, 81-82, 99, 104, 109, 120-22, 255-56, 260, 280-83, 286-89, 290, 292, 294-95, 297, 299-300, 302-306, 308-309). The Complaint fails to identify which defendant(s) made each transfer to which defendant(s), absent that basic identification, Harris cannot allege the fundamental element that the transfer was not for reasonably equivalent value The Complaint does not differentiate which of the 26 defendants owed (let alone breached) fiduciary duties (¶280), or was unjustly enriched (¶287), or which of

5

the "many of the other entities" were allegedly "shell entities" (¶293). Defendants showed that such allegations, which fail to delineate which defendant was responsible for what conduct, warrant dismissal as a matter of law, citing to *Brainerd v First Lake County Nat Bank of Libertyville*, 109 Ill.App 2d 251, 257, 248 N.E.2d 542, 546 (2d Dist. 1969); *Exch Nat Bank v Farm Bureau Life Ins Co of Michigan*, 108 Ill.App.3d 212, 215, 438 N.E.2d 1247, 1249 (3d Dist. 1982). None of these cases are mentioned in Harris's Response.

Harris also ignores defendants' showing that the Complaint lacks the requisite specificity as to when Homebuilding allegedly became insolvent. The allegations are hopelessly conflicted. *Compare*, Complaint ¶257(F) (alleging it was "shortly after the 2007-09 Transfers were made"), *with* ¶¶ 260 and 265 (alleging it was at the time "one or more of the Transfers were made" over a period from 2006-2009), ¶68 (alleging it was "during 2006-2007"), ¶65 (alleging it was during the time of "the transfers in question," which would include those in 2005 - ¶¶ 4, 54), ¶40 (alleging Homebuilding had "grown to achieve annual revenues of over $580 million" in 2006) and ¶¶ 77-78 (alleging it was not until June and July of 2008 that Homebuilding and its operating subsidiaries first ceased making payments on certain of their loans). Defendants showed that this failure to allege an essential element of Harris's claim for constructive fraudulent transfer warrants dismissal, citing to *In re Caremerica, Inc.*, 409 B.R. 737, 756 (Bankr.E.D.N.C. 2009) (Defs. Br. at 2-3, 20) Harris's Response addresses neither the offending allegations nor the dismissal in *Caremerica*

Defendants' opening Brief went on to show that these pleading deficiencies were even more glaring when viewed under the heightened standard of particularity required for pleading fraud. *See, e.g., Miner v. Fashion Enterprises, Inc.*, 342 Ill App.3d 405, 419-20, 794 N.E.2d 902, 916 (1st Dist. 2003). The heightened standard is *at least* as stringent as that required under

6

Rule 9(b) of the Federal Rules of Civil Procedure, in order to protect defendants and their

reputations against baseless allegations of fraud:

> The facts which constitute an alleged fraud must be pleaded with
> sufficient specificity, particularity and certainty to apprise the
> opposing party of what he is called upon to answer. The pleadings
> must contain specific allegations of facts from which fraud is the
> necessary or probable inference. Even under the more lenient
> Federal Rules, a claim of fraud must be stated with particularity.
> (Fed.R.Civ.P. 9(b) ) The reason for this higher standard is "to
> protect against baseless complaints. This not only weeds out
> unmeritorious strike suits, but also protects defendants from the
> harm to their reputations that follows charges of serious
> wrongdoing." Thus, a plaintiff must at least plead with sufficient
> particularity facts establishing the elements of fraud, including
> what misrepresentations were made, when they were made, who
> made the misrepresentations and to whom they were made.

*Bd. of Educ. of City of Chicago v. A, C and S, Inc.,* 131 Ill.2d 428, 457, 546 N.E.2d 580, 593-94

(1989) (citations omitted). All of Harris's claims under the IUFTA (Counts I-III) are claims for

fraud and are thus controlled by these heightened pleading standards.[1]

Harris responds that the heightened standard is limited to fraud at common law only and

not claims for fraudulent transfer. But the Illinois Supreme Court holds that "general allegations

of fraud" are not sufficient for these fraudulent transfer claims as well, and the pleader must

"state the particular facts and circumstances relied on as constituting the fraud." *Garrett v.*

*Garrett,* 343 Ill. 577, 580, 175 N.E. 772, 773 (1931) (citations omitted). Likewise, the same

heightened standard of particularity is applicable to IUFTA claims brought by the bankruptcy

trustee, whether for actual or constructive fraudulent transfer. *See, e.g., Seidel v. Byron,* No. 05

C 6698, 2008 U.S. Dist. LEXIS 76306, at *14 (N.D. Ill. Sept. 26, 2008) (dismissing actual and

---

[1] Although heightened pleading standards apply to all of Harris's fraudulent transfer claims, this is most
clear with respect to Count I, claiming "actual fraud" under the IUFTA, which, like garden-variety claims
of common law fraud, requires intent. *See A, C and S, Inc.,* 131 Ill.2d at 452, 546 N.E.2d at 591, and 740
ILCS 160/5(a)(1).

constructive fraud claims under the IUFTA).[2]

Harris's last ditch effort to avoid applicability of the heightened pleading standard is another instance of knocking down an argument defendants do not make. Defendants do not (and would not) contend that Harris has to prove its case by "clear and convincing" evidence at the pleading stage. Indeed, in the case Harris cites to argue this phantom dispute, the defendant sought on a motion to dismiss to argue the evidence by affidavit. *Ballard v Granby*, 90 Ill.App.3d 13, 15, 412 N.E.2d 1067, 1069 (3d. Dist. 1980).[3]

Finally, Harris falls short in its effort to meet the heightened pleading standard. Its Response again steers clear of the Complaint's undifferentiated and vague allegations as to which of the 26 defendants did what, when Homebuilding purportedly became insolvent within the five year period, and other material elements of each of the six Counts. Harris likewise never addresses the no less than seven applicable cases cited in defendants' opening Brief that hold such allegations insufficient to clear the heightened pleading threshold. (Defs. Br at 15 and n 8). Moreover, the cases Harris relies on addressed allegations that weren't nearly as indeterminate as those here.

In *Judson Atkinson Candies, Inc v Latini-Hohberger Dhimantec*, 237 F.R D. 173 (N.D. Ill 2006), unlike here, the plaintiff specified which of the defendants were the parties to the transfers and further alleged the conduct specific to the defendant who was seeking dismissal

---

[2] Illinois law applies the heightened pleading standards to other statutory fraud claims as well. *See, e.g., White v. DaimlerChrysler Corp.*, 368 Ill App 3d 278, 283, 856 N E.2d 542, 547 (1st Dist. 2006) ("A complaint alleging a consumer fraud violation must be pled with the same particularity and specificity as that required under common law fraud.")

[3] Harris also could not miss the fact that defendants' citation to *Garrett* in the opening Brief (at 14) was to the court's statement about pleading standard (heightened specificity for fraud) and not to the proof required at trial (clear and convincing) 343 Ill at 580, 175 N E. at 773 If anything, though, the fact that fraud claims are held to higher burdens of proof at trial buttresses the rationale for holding fraud allegations to a higher pleading standard

(Carroll). *Id.* at 175 ("Judson alleges that under Carroll's direction, Hohberger and Elsen …

transferred almost all of LMC's assets to Dhimantec and CIC."). And in *Gelco Corp v Duval*

*Motor Co.*, No. 02 C 5613, 2002 U.S. Dist. Lexis 24651 (N.D. Ill. Dec. 24, 2002), unlike here,

the defendant's assertion was that a plaintiff, in alleging fraud against a corporate defendant, had

to specify the "natural person" who made the fraudulent statement  *(Id.* at *22), an assertion

defendants here do not even make.  Also, there were only two defendants to begin with

      Neither case concerned anything close to the magnitude of the group pleading and vague

allegations here.  Harris's Complaint names 26 defendants, including 15 different individuals and

11 separate entities, and the core assertions of each Count are made against all of them as a

group.  Counts I-III allege transfers to "one or more" of the 26 and to unidentified "insiders," and

that "one or more" of the 26 knew Homebuilding was insolvent; Count IV alleges breach of

fiduciary duty by the 26; Count V alleges unjust enrichment by "one or more" of the 26, and

Count VI alleges "one or more" of the 26 "abused" Homebuilding's limited liability form, and

that "many" of the defendants were "shell entities", and each Count also requests a judgment

against each of the 26  (Complaint, ¶¶ 255, 260, 269, 271, 280, 286, 293, 309; pp. 46, 48, 49, 52,

53, 57).  And recall that in *Miner*, which is an *Illinois* First District opinion (and one of the seven

cases cited in the opening Brief), allegations that failed to distinguish between just two parties

were held legally insufficient (342 Ill.App.3d at 421, 794 N.E.2d at 917); and in *A, C and S*

(another of the seven cases), the Illinois Supreme Court dismissed a fraud claim that was

predicated, as here, on allegations against defendants as a group concerning vague time periods

(131 Ill.2d at 458, 546 N.E.2d at 594).  Harris's Response mentions none of this [4]

---

[4] Harris also tries to salvage its Complaint by relying on the proposition that pleading standards may be
relaxed where factual information is unavailable to the plaintiff.  The principle is narrowly applied and is
inapplicable here because the Complaint makes none of the requisite allegations  Harris's own authority
holds that "even under a non-restrictive application [of Rule 9(b)], pleaders must allege that the necessary

## B. HARRIS'S RESPONSE FAILS TO REFUTE THE DEFICIENCIES IN COUNT I'S CLAIM FOR "ACTUAL FRAUD"

Defendants' opening Brief demonstrated that to survive a motion to dismiss, a claim for fraud must plead specific factual allegations such that fraudulent intent is "the necessary or probable inference." *See, e.g., Hirsch v Feuer*, 299 Ill.App.3d 1076, 1085, 702 N.E.2d 265, 272 (1st Dist. 1998) (dismissal). This standard applies with equal force to Harris's Count I claim for "actual fraud" under the IUFTA. *See In re Edgewater Med. Ctr.*, 373 B.R. 845, 856 (Bankr N.D.Ill 2007) (no actual fraud under 160/5(a)(1) because there was a plausible non-fraudulent explanation for the transfers).

Defendants then demonstrated that Harris's own allegations negate the requisite inference of fraudulent intent  The Complaint itself alleges that the cash transfers were in actuality part of an estate and corporate reorganization plan that was implemented in 2003-2004, the transfers were made pursuant to that plan, and this was disclosed to Harris: (¶¶ 41-49, 54)  As such, the Complaint fails to allege actual fraud because the intent to effectuate estate planning constitutes a reasonable inference of good faith, which precludes an inference of an intent to defraud. *See In re Zeigler*, 320 B.R. 362, 378-80 (Bankr.N.D Ill. 2005); Defs  Br. at 16-18.

Defendants also demonstrated that the Complaint's allegations of fraudulent intent were legally deficient for the additional reason that transfers that simply prefer one creditor over another do not constitute intent to defraud under the IUFTA. (Defs  Br  at 19)  Harris itself repeatedly alleges that the transfers were made pursuant to various contractual obligations to

---

information lies within defendants' control, and their allegations must be accompanied by a statement of the facts upon which the allegations are based " *Craftmatic Sec Litig  v. Kraftsow*, 890 F 2d 628, 645 (3d Cir. 1989).  Harris does not identify a single such allegation or even what necessary facts are somehow beyond its knowledge.  The Complaint actually alleges to the contrary — that the transfers were made pursuant to contractual obligations arising from an estate plan and reorganization at the end of 2003, with Harris's full knowledge (¶¶ 41, 43, 48-49, 54, Ex. A to Complaint)  This is another of Harris's arguments spurred not by merit but the convenience of the moment

others (which transfers preferred those creditors over Harris), and thus are not actionable as

actual fraud under the IUFTA:

> In fraud in fact cases, since actual consideration has been given for
> the transfer, a specific intent to defraud must be alleged and
> proved. ... Here the [liquidator] has alleged an intent to hinder and
> delay payment to one class of unsecured creditors in favor or
> another class of unsecured creditors. In effect, the [liquidator] has
> alleged a preference Under Illinois law, however, the mere
> preference of one or more creditors over others does not constitute
> a fraudulent transfer. A debtor may prefer one creditor to another
> provided such preference is made in good faith with the intent to
> pay or secure the payment of a just indebtedness against him.

*In re Liquidation of MedCare HMO, Inc* , 294 Ill.App.3d 42, 52, 689 N.E.2d 374, 381 (1st Dist.

1997) (citation omitted). Indeed, *MedCare* dismissed a fraud claim due to insufficient

allegations of actual intent, thus putting to rest Harris's assertion that the claim is not subject to

dismissal because intent is a question of fact

Harris's Response on Count I does not even mention any of these dispositive cases·

*Hirsch, Edgewater, Ziegler* or *MedCare*. Harris also avoids entirely the demonstration that its

claim is legally deficient because transfers that favor one creditor over another are not actionable

as actual fraud

Harris does try to avoid the legal implication of its own allegations that the transfers were

made pursuant to contractual obligations that were implemented in 2003 as part of an estate plan,

but comes up empty [5] Harris not only fails to address any of the multiple cases cited by

defendants, but the two cases it relies upon are entirely inapt. In *Casey Nat'l Bank v Roan*, 282

Ill.App.3d 55, 60, 668 N.E.2d 608, 611 (4th Dist. 1996), the debtors' assertion about the estate-

---

[5] Harris's side-step begins by making this argument in the wrong section of its responsive Brief. The
Complaint's failure to allege the requisite intent is pertinent to Count I, the claim for "actual fraud"
(which is where defendants made their demonstration in their opening Brief (at 16-18)), and not Count II,
the claim for "constructive fraud" (which is the section of Harris's Response in which Harris responds to
the argument (Resp. at 8))

planning purposes of their transfers was made only after the fact, as part of their litigation testimony  Here, it is by Harris's own allegation that in 2003-2004 – prior to any of the alleged transfers – debtors implemented a complex estate plan and reorganization, and assumed and entered various agreements thereto that obligated transfers at issue  Moreover, there is nothing "purported" about the estate planning purpose of the transfers, notwithstanding Harris's post-hoc suggestion otherwise.  The Complaint itself alleges that the contractual obligations (pursuant to which transfers were made) were part and parcel of the estate plan.  (*See* ¶¶ 41-49).

Harris similarly miscites *Alan Drey Co , Inc. v  Generation, Inc* , 22 Ill App 3d 611, 618, 317 N.E.2d 673, 679 (1st Dist. 1974).  *Alan Drey* does not support Harris's assertion that, despite its own allegations of good-faith estate planning, the Complaint alleges the "necessary or probable inference" of fraudulent intent.  Rather, the case confirms that only where one can "necessarily" conclude that the transfer was made with fraudulent intent can one ignore additional purposes for the transfers.  *Id*  If anything, the case underscores the governing standard that fraudulent intent must be the "necessary or probable inference" in order to state a claim for an actual fraudulent transfer.  *See Edgewater*, 373 B R  at 856, *Bergfeld v  Stork*, 7 Ill.App.3d 486, 490-91, 288 N.E.2d 15, 17-18 (5th Dist. 1972) (complaint dismissed for failure to sufficiently plead malice and intent where defendant's actions were "not inconsistent with a good faith purpose").

Finally, Harris's argument about the statutory factors the Court can consider to determine actual intent, while it consumes the bulk of Harris's response on Count I, is another effort to obfuscate defendants' actual argument.  Defendants do not contest that the Court can consider those factors.  What Harris's Response ignores is that the Complaint's rote allegations of the statutory factors are legally insufficient.  *See Seidel v  Byron*, No. 05 C 6698, 2008 U.S. Dist

12

LEXIS 76306, at *18 (N.D.Ill. Sept. 26, 2008) ("plaintiff's mere reiteration of the statutory language [in a fraudulent transfer claim] cannot fulfill the requirements of Rule 9(b)"). And in any event, the presence of even several of the statutory factors cannot overcome the Complaint's allegations about the estate-planning purpose of the transfers, which negate the requisite inference of actual intent — as squarely held by *Zeigler*, one of the many cases Harris ignores. 320 B R at 378.[6]

### C. HARRIS'S RESPONSE FAILS TO REFUTE THE DEFICIENCIES IN COUNT II'S CLAIM FOR "CONSTRUCTIVE FRAUD"

Defendants' opening Brief demonstrated that a claim for constructive fraud under the IUFTA (Count II) must allege both 1) lack of reasonably equivalent value in exchange for each transfer, and 2) insolvency at the time of each transfer (740 ILCS 160/5(a)(2), 160/6(a)) — and Harris alleges neither. As to the first element, Harris itself alleges that transfers at issue were made pursuant to contractual obligations specified in Homebuilding's Operating Agreement (¶¶ 48-49). Thus, the transfers were made in satisfaction of a valid antecedent debt and exchanged for value under the IUFTA (*see* 740 ILCS 160/4(a), 160/2(c), (e) (neither of which are mentioned in Harris's Response)); and the Complaint's conclusory allegation otherwise had to be disregarded. The Complaint's failure to adequately allege the lack of reasonably equivalent value alone warrants dismissal of Count II, and Harris's Response never mentions it.

Defendants also demonstrated that insolvency must be alleged "at [the] time" of each

---

[6] Defendants also never suggested that the statutory factors are "exhaustive or additive," so Harris's case citation on that issue adds nothing (*Brandon v. Anesthesia & Pain Management Assoc's, Ltd*, 419 F.3d 594, 599-600 (7th Cir. 2005)) The underlying circumstances in *Brandon* were also far different than those alleged here Unlike here, there were no pre-existing contractual obligations pursuant to which the transfers were made (or any other good-faith reason for the transfers) and all the transfers were made after suit had been filed against the debtor. 419 F.3d at 596-97. The other case cited by Harris is inapplicable for the same reasons. *CAPCO 1998-D7 Pipestone, LLC v Milton Ventures, LLP*, Nos. 05 C 1024, 2005 U S. Dist LEXIS 14174, at *1-3 (N D. Ill July 13, 2005)

transfer. 740 ILCS 160/6(a). Such insolvency occurs when "the sum of the debtor's debts [were] greater than all of the debtor's assets at a fair valuation " 740 ILCS 160/3(a).[7] Defendants have exhaustively demonstrated that the Complaint was legally deficient for its additional failure to allege insolvency at the time of each alleged transfer, which were at many different times over an alleged five-year period

Because the allegations of when Homebuilding purportedly became insolvent are conflicted and vague (it was "shortly after 2007-2009," or "during 2006-2007," or during 2006-2009, or as far back as 2005, or mid-2008 when a loan payment was first missed, or after Harris itself deemed the debtors solvent enough to make further loans in 2008), the Complaint failed to properly allege the second vital element of its claim for "constructive fraud." In any event, conclusory allegations of the insolvency element (or the lack of reasonably equivalent value element) are legally insufficient to survive a motion to dismiss, as made clear by defendants' citation to *In re Caremerica, Inc* , 409 B.R. 737, 756 (Bankr. E.D.N.C 2009) (dismissing claim for fraudulent transfer under 11 U S.C §548(a)(1)(B)):

> The Amended Complaint alleges that, with respect to transfers alleged to be fraudulent, the transferors "received less than reasonably equivalent value in exchange from the defendant for such fraudulent transfer." The Amended Complaint also alleges that these transferors were "insolvent on the date of each fraudulent transfer." . . . However, the trustee fails to support such allegations with factual assertions other than dates, amounts, and names of transferees included in Exhibit B. Missing from the Amended Complaint is an identification of the consideration received by each transferor, information as to why the value of such consideration was less than the amount transferred, and facts supporting the debtors' insolvency at the time of the transfer.

Harris's Response mentions neither the Complaint's deficient allegations of insolvency, nor the Complaint's effort to revise history, nor *Caremerica*. This, despite the fact that to state a

---

[7] Harris baldly states that insolvency is not defined by any such "mathematical formula" (Response p 9) and then never even mentions, much less addresses, the statute that sets out the formula

claim, the Complaint's central thesis has to be that the debtor was insolvent *at the time of* each transfer; absent such insolvency, transfers are not constructively fraudulent, as defendants demonstrated.

Instead, Harris makes two responses that are out of place, beside the point, or rely on inapplicable case law. Harris's lead response does not even belong in this section of the argument, as defendants noted earlier. (*See* fn. 5, *supra*). That is, Harris's efforts to avoid its own allegations that the transfers were not made with fraudulent intent (because they were made pursuant to the agreements implemented as part of the 2003-2004 estate plan and reorganization) (Resp at 8) concern the deficiencies in Harris's Count I claim for actual fraud, not its Count II claim for constructive fraud. Defendants disposed of Harris's response in the discussion on Count I (*supra*), where it belongs

Harris's second response is that a proxy for an allegation of balance-sheet insolvency is its assertion of "undercapitalization," where a debtor makes a transfer that would leave the remaining assets of the debtor "unreasonably small in relation to the business or transaction." 740 ILCS 160/5(a)(2)(A). This misses the point. "Unreasonably small remaining assets" – no less than "insolvency" – is considered on the basis of facts *at the time of* each transfer, as opposed to events at some point in the distant future:

> In order to determine the adequacy of capital, a court will look to such factors as the company's debt to equity ratio, its historical capital cushion, and the need for working capital in the specific industry at issue    *And, the adequacy of capital need only be tested within a reasonable period of the transfer at issue*

*MFS/Sun Life Trust-High Yield Series v Van Dusen Airport Services Co* , 910 F. Supp 913, 944 (S.D.N.Y. 1995) (emphasis added); *accord Kipperman v Onex Corp.*, 411 B R. 805, 836 (N.D. Ga 2009); *see also In re WCC Holding Corp* , 171 B.R. 972, 985 (Bankr.N.D.Tex. 1994) ("The sufficiency of WCC's assets must be analyzed by inquiring into the reasonableness of cash flow

15

projections given the circumstances *on the date of transfer*. ... Evaluation of cash flow projections must focus on information available *at the time of the transaction, not on hindsight*.") (emphasis added) (citations omitted); *In re Iridium Operating*, 373 B.R. at 345. And Harris's allegation of "undercapitalization" is just as imprecise and conclusory as its allegation of insolvency. *See, e g*, Complaint ¶5 (alleging Homebuilding was "ultimately" left without adequate capital)

Moreover, the decisions in *In re Joy Recovery Tech Corp.*, 286 B R. 54 (Bankr N.D.Ill. 2002), and *Johnson v Canfield-Swigart Co*, 211 Ill.App. 423 (1st Dist 1918), don't help Harris. *Joy Recovery* holds that to make a transfer actionable due to undercapitalization, there must be a direct causal connection between the transfer and the ruination of the debtor, 286 B.R. at 76 — which merely leads the analysis back to Harris's failure to allege which of the transfers spanning five years supposedly caused the ruination.[8] *Johnson* is not even a case interpreting the statute on which Count II rests The case predated the fraudulent transfer statute (the opinion was 90 years ago), and applied none of the standards applicable here, including the *statutory* tests for insolvency or unreasonably small remaining assets.[9]

---

[8] Harris tries to avoid the well-known reality of the massive housing collapse in late 2008 and complains about it being improper "extrinsic evidence." But it is well settled that defendants' reference to the October 3, 2008 passage of TARP and the September, 2008 collapse of Lehman Brothers are matters of which this Court may take judicial notice *See In re Estate of Savio*, 388 Ill.App.3d 242, 250, 902 N E.2d 1113, 1121 (3d Dist 2009) ("a court may take judicial notice of matters which are commonly known and of facts that are readily verifiable from sources of indisputable accuracy") Beyond that, though, Harris cannot avoid its own allegations about the housing collapse The Complaint itself alleges that it was not until "the 2006-2007 time period" that "defendants" (but apparently not Harris and its resident economists) purportedly foresaw an upcoming "downturn" in the housing market (¶66), which means that downturn (much less the collapse) did not occur until sometime after that And, as defendants noted in the opening Brief, there is a distinct difference between a "downturn" and a "collapse", few downturns turn into a subsequent total capitulation and collapse that occurred here in late 2008.

[9] Harris also mis-argues that because a particular issue is one of fact (this time the date of Homebuilding's solvency), it cannot be resolved on a motion to dismiss (Resp. at 10 n.1). That an issue is one of fact does not abrogate Harris's obligation to adequately plead the fact. Not surprisingly, the case relied upon by Harris had nothing to do with the legal sufficiency of a pleading *In re McCook Metals, L.L C*, No. 05

## D. HARRIS'S RESPONSE FAILS TO REFUTE THE DEFICIENCIES IN COUNT III'S CLAIM FOR "INSIDER PREFERENCE

Defendants' opening Brief demonstrated that the claim in Count III for insider preference under 740 ILCS 160/6(b) was deficient for several reasons, most of which Harris just ignores Harris never mentions that central allegations of its claim are legally deficient because they are naked conclusions  This includes the allegations that the transfers were made to insiders (without identifying which of the 26 defendants were the alleged recipient "insiders"), that the debtor was insolvent, and that "the insiders" (without identifying who they are) had reason to believe that the debtor was insolvent.

Defendants also showed that Harris's allegation in this Count (III) that the transfers were made for "antecedent debts" was at odds not only with the basic premise of its Complaint, as flawed it is (that the transfers were *not* made for reasonably equivalent value), but also with an allegation within Count III itself (*compare* ¶269: transfers made for antecedent debt, *with* ¶275. transfers made for no reasonably equivalent value).  Defendants understand alternative pleading, but not when it goes to the core of the claim, and not when it shows up in the same Count.  That is characteristic of someone retrofitting allegations to suit its litigation needs.

## E. HARRIS'S RESPONSE FAILS TO REFUTE THE DEFICIENCIES IN COUNT IV'S CLAIM FOR BREACH OF FIDUCIARY DUTY

Defendants' opening Brief demonstrated several independent reasons why Harris could not state a claim for breach of fiduciary duty (Count IV).  One stands above all but is ignored by Harris.  No fiduciary duty is owed to creditors under Illinois law unless and until the entity is insolvent.  Only then do creditors become constituents to whom fiduciary duties are owed  *See, e g , In re Fairgrieves*, 426 B R  748, 755-56 (Bankr. N.D. Ill. 2010) (dismissing claim for

---

C 2990, 2007 U S. Dist. LEXIS 89412, at *17-18 (N D  Ill. Dec. 4, 2007)

breach of fiduciary duty where creditor failed to sufficiently allege insolvency at time of allegedly wrongful transfer of debtor assets); *Technic Eng'g, Ltd .v Basic Envirotech, Inc*, 53 F Supp 2d 1007, 1010-11 (N.D. Ill. 1999). Harris's own case confirms this overriding rule. *See In re Hussain,* 308 B R 861, 867-68 (Bankr N D. Ill. 2004) ("so long as a corporation remains solvent, its directors … owe no duties or obligations [to creditors]").

Count IV is thus legally insufficient because it fails to adequately allege insolvency at the time of the transfers. The inadequacies in the Complaint's insolvency allegations are well documented by now, Count IV compounds the failures with its particularly vague allegation that "[a]t all relevant times, Homebuilding was insolvent" (¶278) Such allegations of insolvency have explicitly been held legally deficient to state a claim for breach of fiduciary duty:

> Nothing in the complaint indicates when [the debtor's] liabilities far exceeded its assets, or when it could no longer pay its debts. The court is asked to take on faith the trustee's statement that [the debtor] was insolvent, or within the zone of insolvency "during all relevant times." This vague language makes it impossible to know when defendants' alleged duties to [the debtor's] creditors arose, thereby failing to provide notice to defendants of the time frame for which they need to account.

*Seidel*, 2008 U.S. Dist. LEXIS 76306, at *8 (dismissing fiduciary duty claim).

Harris's Response also does not overcome other dispositive deficiencies in its fiduciary duty claim Defendants' opening Brief demonstrated that the "duty of care" portion of the claim (*e g*, ¶282(D)) also fails by reason of the failure to allege facts sufficient to overcome the presumption, embodied in the business judgment rule, that the directors and officers made decisions with due care. *See Ferris Elevator Co., Inc. v. Neffco, Inc*, 285 Ill.App.3d 350, 354, 674 N.E.2d 449, 452 (3d Dist. 1996) Harris responds that the business judgment rule cannot be applied at the pleading stage (Resp. at 15), but ignores the law defendants cited to the contrary, which requires dismissal where, as here, the plaintiff fails to "plead facts relating to the manner

18

in which the alleged erroneous decisions were reached." *Stamp v Touche Ross & Co*, 263 Ill.App.3d 1010, 1018, 636 N.E 2d 616, 623 (1st Dist. 1993) (affirming dismissal on basis of business judgment rule). In the lone case relied upon by Harris, the plaintiff pled just such specific allegations concerning the manner in which defendant directors and officers made their decisions. *Davis v Dyson*, 387 Ill App.3d 676, 695-96, 900 N E 2d 698, 715 (1st Dist. 2008).

Harris's purported *direct* (as opposed to derivative) claim for breach of fiduciary duty, newly asserted as it is,[10] suffers from the additional infirmity that it fails to allege the requisite harm unique to it regarding the alleged transfers; all creditors would have the same interest The case relied upon by Harris makes this very point *In re Hussain*, 308 B R. at 866 (creditor has direct claim only insofar as "the claimant himself is harmed and no other claimant or creditor has an interest in the cause").[11] This point should not be controversial (Harris does not try to contest it) so it is not surprising that another case relied upon by Harris (in a context of the business judgment rule, above) holds the same. *Davis*, 387 Ill App.3d at 678, 689-692, 900 N E 2d at 702, 710-12 (no direct claims against an association's officers and directors where the alleged harm – embezzlement of association funds – was to the association directly and only indirectly to individual homeowners) Harris does not and cannot allege that the transfers by Homebuilding –

---

[10] Harris's Response discombobulates the allegations of Count IV more than they already were, particularly concerning whether it purports to assert a direct claim in addition to a derivative claim   On its face, Count IV purports to assert only a derivative claim (on behalf of Homebuilding). Indeed, Count IV's lead allegation is that Harris is bringing the claim derivatively due to the purported futility of a demand on Homebuilding to bring the claim (¶ 277), and Harris requests only derivative relief, on behalf of Homebuilding (Complaint, p. 52). Harris now says it is bringing both a derivative and a direct claim for breach of fiduciary duty (Resp at 14)

[11] In *In re Hussain*, the defendant officer and director was himself the bankrupt debtor and no other creditor of that defendant had the same claim against him as plaintiff's claim based on his alleged defalcation regarding a corporation's funds   308 B R  at 864-66  Here, by contrast, the debtor is Homebuilding (not Homebuilding's directors and officers themselves), and Harris's claim for breach of fiduciary duty based on allegedly fraudulent transfers is a claim shared by all other creditors of Homebuilding.

purportedly caused by (unidentified) directors and officers – uniquely harmed Harris and no other creditor.

Harris makes little, if any, response at all to the still further deficiencies in its fiduciary duty claim. Harris ignores entirely defendants' showing that (1) it failed to allege sufficiently specific facts supporting its claim for "waste" in paragraph 282(C) of the Complaint, (2) it insufficiently alleged a failure to use advanced funds to pay contractors, and (3) to the extent it was duplicative of the fraudulent transfer claims (*e g* , ¶282(A)-(C)), the fiduciary duty claim should be dismissed (Defs. Br. at 28-30). And as for that portion of Harris's fiduciary duty claim premised on a theory of "deepening insolvency," Harris neglects to respond to its failure to allege any compensable damage Harris's complaint here is that "the Pasquinelli Defendants" (of which there are 26) allowed mechanic's liens to attach to the detriment of Harris (¶280) But it fails to allege that the mechanic's liens created a liability greater than the offsetting *improvements* that were a necessary condition for such liens to attach The alleged conduct was balance sheet neutral and, thus, resulted in no damage to Harris. Such conduct would be protected by the business judgment rule in any event:

> If the board of an insolvent corporation, acting with due diligence and good faith, pursues a business strategy that it believes will increase the corporation's value, but that also involves the incurrence of additional debt, it does not become a guarantor of that strategy's success. That the strategy results in continued insolvency and an even more insolvent entity does not in itself give rise to a cause of action Rather, in such a scenario the directors are protected by the business judgment rule

*Trenwick Am. Litig. Trust v. Ernst & Young, L L P* , 906 A 2d 168, 205 (Del.Ch. 2006) *aff'd sub nom Trenwick Am Litig Trust v Billett*, 931 A.2d 438 (Del. 2007) (applying Delaware law). [12]

---

[12] Harris's inability to allege damage is without regard to whether Illinois actually recognizes the widely-discredited theory of "deepening insolvency" (which is the only issue Harris addresses concerning this

Count IV is a legally deficient, confusing mess of allegations, the fundamental deficiencies of which Harris does not even contest.

## F. HARRIS'S RESPONSE FAILS TO REFUTE THE DEFICIENCIES IN COUNT V'S CLAIM FOR UNJUST ENRICHMENT

Defendants' opening Brief demonstrated that Harris's claim for unjust enrichment (Count V) is illogical and does not exist, as confirmed by a case on all fours  The tax refunds (generated by net operating losses) by which "one or more" of the 26 defendants were supposedly enriched to Harris's detriment were never an asset of Homebuilding.  The Complaint alleges that Homebuilding was a pass-through entity for tax purposes (¶117), so that its operating earnings (and losses) were passed through to others, who were the ones charged with paying the taxes (¶118)  Homebuilding never could have used the losses, so their tax benefit could never be used to satisfy its debts to creditors  Harris has no claim for unjust enrichment  *See In re Forman Enterprises, Inc.*, 281 B.R  600, 608-10 (Bankr.W.D.Pa. 2002).

Harris's response to *Forman* makes the exact argument that was squarely rejected there. Harris argues that the debtor (Homebuilding) should be deemed the taxpayer because its funds were used by the ultimate taxpayers to pay the taxes (pursuant to contractual obligations disclosed in Homebuilding's Operating Agreement (¶48)).  (Resp. at 16).  *Forman* considered and rejected the same argument, which was based on the same circumstances as those present here (the debtor funded the tax payments by the pass-through taxpayer), stating it was "illogical" and "a non sequitur":

> We reject the chapter 7 trustee's 'spin' concerning who paid defendants' income taxes in the first place.  As we see it, defendants, not debtor, paid the income taxes defendants owed as shareholders of an S corporation.

portion of its claim), or whether Count IV actually mentions such a claim (¶13 mentions the words "deepening insolvency," but the allegations unique to Count IV do not)

\* \* \*

> It is a *non sequitur* to conclude that an S corporation paid the tax
> owed by its shareholder on the corporation's income merely
> because the S corporation paid a dividend to the shareholder to
> enable the shareholder to pay the tax owed by the shareholder on
> the S corporation's income and the shareholder utilized the
> dividend to pay the tax owed   As a matter of logic this conclusion
> does not follow.

281 B.R. at 609.  As such, there is nothing "inequitable" about the use of NOLs here, as held by

still another applicable case that defendants cited but Harris ignores.  *See In re White Metal*

*Rolling and Stamping Corp.*, 222 B R. 417, 425-26 (Bankr S D.N Y  1998) (unjust enrichment

claim dismissed for failure to allege that NOLs had any value to the debtor).[13]

Harris's unjust enrichment claim adds nothing to the (legally insufficient) fraudulent

transfer claims.  The transfers that funded the payment of taxes were appropriate when made or

not.  Also, Harris's unjust enrichment claim is particularly inappropriate because the relationship

between the parties was governed by extensive loan agreements, and Harris cannot re-allocate,

through some extra-contractual claim, the risks it contractually assumed

> When parties enter into a contract they assume certain risks with
> an expectation of a return.  Sometimes, their expectations are not
> realized, but they discover that under the contract they have
> assumed the risk of having those expectations defeated  As a
> result, they have no remedy under the contract for restoring their
> expectations   In desperation, they turn to quasi-contract for
> recovery.  This the law will not allow.  Quasi-contract is not a
> means for shifting a risk one has assumed under contract.

*Indus  Lift Truck Serv  Corp  v  Mitsubishi Int'l Corp.*, 104 Ill.App.3d 357, 361, 432 N E.2d 999,

---

[13] Harris also never addresses from defendants' opening Brief the fact that Illinois courts reject claims for
unjust enrichment where, like here, there is no connection between the benefit to the defendant and the
detriment of the plaintiff. *See Dietz v. Illinois Bell Telephone Co* , 154 Ill.App.3d 554, 561, 507 N.E.2d
24, 28 (1st Dist. 1987) ("improper windfall to the plaintiff" absent such a connection), *Paolino v  Hussain
Egan Bendersky & Franczyk, L L.C.*, No. 06 C 611, 2006 U.S. Dist. LEXIS 97001, at *5-7 (N.D. Ill. July
11, 2006) (dismissing unjust enrichment claim). (Defs Br  at 32 and n.15). Here, the tax refunds were
not the property of and could not be used by Homebuilding, and thus there is no connection between their
use by other parties and any reduction in the Homebuilding assets available to Harris

22

1002 (1st Dist 1982), still another case Harris does not mention [14]

## G. HARRIS'S RESPONSE FAILS TO REFUTE THE DEFICIENCIES IN COUNT VI'S CLAIM FOR "VEIL PIERCING AND ALTER EGO LIABILITY"

Of the five independent deficiencies in Count VI that defendants demonstrated in the opening Brief, Harris responds to one, and that response acknowledges the deficiency.

Defendants demonstrated: (1) alter ego liability and piercing the corporate veil is not an independent cause of action, but a remedy on liability already established; (2) Harris's Count VI allegations are impermissibly vague as to which person or entity is the subject of the assertions; (3) the claim, which seeks to manufacture liability on the debtor's upstream owners, impermissibly relies on the debtor's downstream relationships; (4) where the parties defined their relationship by contract, courts apply even more stringent standards than in tort cases to determine whether to pierce the corporate veil; and (5) Harris's attempt to pierce Homebuilding's corporate veil "at all relevant times" is defeated by its own allegation that it was not until 2008 that "defendants" caused Homebuilding to abandon its corporate formalities Defendants supported each argument with citation to the Complaint's allegations and dispositive Illinois case law (Defs. Br. at 34-37).

Harris ignores the last four arguments entirely (including every case cited), and devotes its entire response only to the first, that Count VI is not cognizable under the law as an independent claim. Even as to the one argument to which it responds, Harris grudgingly acknowledges that such claims are often "put on hold until a later date," including by this Court. (Resp. at 16). Indeed, Harris has no real response because the best it argues is that this claim, despite its allegations to the contrary, actually is not an independent cause of action but intended

---

[14] Harris asserts that this doctrine should not apply to those defendants with whom it is not in privity. (Resp at 16) This assertion highlights the Complaint's failure to differentiate among the 26 defendants, so that one does not know which defendants are in privity and which are not

(Resp. at 16). Indeed, Harris has no real response because the best it argues is that this claim, despite its allegations to the contrary, actually is not an independent cause of action but intended as relief for the judgments it has obtained. (Resp. at 17). In any event, even if Harris were to recast its Complaint to conform to its current response, the fact would remain that it has no response to the many other reasons Count VI is legally deficient.

## **CONCLUSION**

Harris's Response underscores that plaintiff is trying to manufacture a claim where none exists. The Response ignores most of the arguments demonstrated in the opening Brief and contains ineffective responses to those it does not ignore. The numerous pleading deficiencies stand and the Complaint should be dismissed as substantially insufficient in law.

Respectfully submitted,

PASQUINELLI HOMEBUILDING, LLC, BRUNO A PASQUINELLI, ANTHONY R. PASQUINELLI, BRUNO H PASQUINELLI, CHRISTINE PASQUINELLI, and MARIA P PASQUINELLI

By: _____
One of their attorneys

Bruce S. Sperling
Mitchell H. Macknin
SPERLING & SLATER, P.C. (#22288)
55 West Monroe Street, Suite 3200
Chicago, IL 60603
312-641-3200

PASQUINELLI MANAGEMENT, LLC, PASQUINELLI FINANCIAL, LLC, PASQUINELLI HOMEBUILDING, L P , PASQUINELLI HOMEBUILDING TRUST, PASQUINELLI FAMILY FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST, ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989 FAMILY TRUST, ANTHONY J PASQUINELLI, BETSY PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI, ELLEN PASQUINELLI, ANN MARIE PASQUINELLI, JOAN PASQUINELLI, SALLY PASQUINELLI, AS TRUSTEE, MARYANN PASQUINELLI, AS TRUSTEE, AND JOSEPH PASQUINELLI

By _____
One of their attorneys

Michael R Grimm, Sr.
Harvey R. Herman

24

## CERTIFICATE OF SERVICE

I, Mitchell H. Macknin, an attorney, hereby certify that a true and correct copy of **DEFENDANTS' REPLY BRIEF IN SUPPORT OF §2-615 MOTION TO DISMISS** was served upon the following persons by hand delivery this 14th of December, 2010:

Joseph Lombardo
Chapman and Cutler
111 W. Monroe Street, 15th Floor
Chicago, IL  60603

Mitchell H. Macknin

25

Order                                                    (2/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Harris NA and BNO Capital
Markets Financing, Inc., Plaintiffs,

v.

Pasquinelli Homebuilding LLC, et al.,
Defendants

No. 10 L 6909

Judge Bill Taylor

### ORDER

This cause coming to be heard on defendants 2-615 motion to dismiss the Complaint, the Court having considered the parties' written and oral arguments and being otherwise fully advised, IT IS HEREBY ORDERED:

1. The Complaint is dismissed, with leave to replead on or before February 18, 2011. Count VI shall not be repled at this time, based on the Court's statement that it is an equitable remedy and not a separate Count.

2. Defendants to answer or otherwise plead to any repled Complaint on or before April 15, 2011.

3. Status set for April 26, 2011 at 10:30 a.m.

Atty. No.: 22288

Name: MACKNIN (Sperling : Slater)

Atty. for: Certain defendants

Address: 55 W. Monroe # 3200

City/State/Zip: Chi, Ill 60603

Telephone: 312-641-3200

ENTERED:

Dated: _____

**ENTERED**
JUDGE BILL TAYLOR-1648
JAN 11 2011
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge                                          Judge's No. 1642

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

ORIGINAL - COURT FILE

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

HARRIS N.A., and )
BMO CAPITAL MARKETS FINANCING, INC., )
                     )
             Plaintiffs, )
                     )
            v. ) Case No. 10 L 6909
                     )
PASQUINELLI HOMEBUILDING LLC, BRUNO A. )
PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI ) Judge Taylor
MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC, )
PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI )
HOMEBUILDING TRUST, PASQUINELLI FAMILY )
FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST, )
ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989 )
FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H )
PASQUINELLI, CHRISTINE PASQUINELLI, BETSY )
PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI, )
JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA )
PASQUINELLI, ANN MARIE PASQUINELLI, JOAN )
PASQUINELLI, SALLY PASQUINELLI, as Trustee and )
MARYANN PASQUINELLI, as Trustee )
                     )
             Defendants. )

### AGREED ORDER

This cause coming to be heard, notice given, the parties in agreement, and the Court being duly advised in the premises, IT IS HEREBY ORDERED:

(1) Plaintiffs shall file their Amended Complaint on or before March 23, 2011; P-429a

(2) Defendants shall answer or otherwise plead to the Amended Complaint on or before May 26, 2011; D-423Y

(3) The status hearing of April 26, 2011 is hereby stricken; and 4304

(4) Hearing on status is set for ~~June 3, 2011 at 10:30 a.m.~~ June 6, 2011 at 10:00 a.m. 4619



_____
Judge Bill Taylor

Richard A. Wohlleber
David T.B Audley
Joseph P Lombardo
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
(312) 845-3000
Firm No. 90170
Attorneys for Plaintiffs



Judge Bill Taylor

FEB 15 2011

Circuit Court - 1648

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| HARRIS N.A., and<br>BMO CAPITAL MARKETS FINANCING, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>PASQUINELLI HOMEBUILDING LLC, BRUNO A.<br>PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI<br>MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC,<br>PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI<br>HOMEBUILDING TRUST, PASQUINELLI FAMILY<br>FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST,<br>ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989<br>FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H.<br>PASQUINELLI, CHRISTINE PASQUINELLI, BETSY<br>PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI,<br>JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA<br>PASQUINELLI, ANN MARIE PASQUINELLI, JOAN<br>PASQUINELLI, SALLY PASQUINELLI, as Trustee and<br>MARYANN PASQUINELLI, as Trustee<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 10 L 6909<br><br>Judge Taylor |

**AGREED ORDER**

This cause coming to be heard, notice given, the parties in agreement, and the Court being duly advised in the premises, IT IS HEREBY ORDERED:

(1)  Plaintiffs shall file their Amended Complaint on or before April 25, 2011;

(2)  Defendants shall answer or otherwise plead to the Amended Complaint on or before July 1, 2011;

(3)  The status hearing of June 6, 2011 is hereby stricken; and

(4)  Hearing on status is set for July __12__, 2011 at ~~10:30 am~~ 10:15 am.



Judge Bill Taylor

Richard A. Wohlleber
David T.B. Audley
Joseph P. Lombardo
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
(312) 845-3000
Firm No. 90170
Attorneys for Plaintiffs

- 2 -

B1 (Official Form 1)(4/10)

| United States Bankruptcy Court<br>Northern District of Illinois | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle)<br>Pasquinelli Homebuilding, LLC | Name of Joint Debtor (Spouse) (Last, First, Middle) |
|---|---|

| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names)<br>  DBA See Exhibit A attached | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names) |
|---|---|

| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all)<br>20-0959884 | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all) |
|---|---|

| Street Address of Debtor (No. and Street, City, and State)<br>161 Tower Road<br>Unit F<br>Burr Ridge, IL                  ZIP Code 60527 | Street Address of Joint Debtor (No. and Street, City, and State)                  ZIP Code |
|---|---|

| County of Residence or of the Principal Place of Business<br>Cook | County of Residence or of the Principal Place of Business |
|---|---|

| Mailing Address of Debtor (if different from street address)                  ZIP Code | Mailing Address of Joint Debtor (if different from street address)                  ZIP Code |
|---|---|

| Location of Principal Assets of Business Debtor<br>(if different from street address above) | |
|---|---|

| Type of Debtor<br>(Form of Organization)<br>(Check one box) | Nature of Business<br>(Check one box) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box) |
|---|---|---|
| ☐ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>■ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities,<br>check this box and state type of entity below) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined<br>in 11 U.S.C. § 101 (51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☐ Other | ■ Chapter 7          ☐ Chapter 15 Petition for Recognition<br>☐ Chapter 9              of a Foreign Main Proceeding<br>☐ Chapter 11<br>☐ Chapter 12          ☐ Chapter 15 Petition for Recognition<br>☐ Chapter 13              of a Foreign Nonmain Proceeding |

| | Tax-Exempt Entity<br>(Check box, if applicable)<br>☐ Debtor is a tax-exempt organization<br>under Title 26 of the United States<br>Code (the Internal Revenue Code). | Nature of Debts<br>(Check one box)<br>☐ Debts are primarily consumer debts,          ■ Debts are primarily<br>defined in 11 U.S.C. § 101(8) as              business debts<br>"incurred by an individual primarily for<br>a personal, family, or household purpose." |
|---|---|---|

| Filing Fee (Check one box)<br>■ Full Filing Fee attached<br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must<br>attach signed application for the court's consideration certifying that the<br>debtor is unable to pay fee except in installments. Rule 1006(b). See Official<br>Form 3A.<br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must<br>attach signed application for the court's consideration. See Official Form 3B. | Check one box<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates)<br>are less than $2,343,300 *(amount subject to adjustment on 4/01/13 and every three years thereafter).*<br>Check all applicable boxes<br>☐ A plan is being filed with this petition<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors,<br>in accordance with 11 U.S.C. § 1126(b). |
|---|---|

| Statistical/Administrative Information | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ☐ Debtor estimates that funds will be available for distribution to unsecured creditors<br>■ Debtor estimates that, after any exempt property is excluded and administrative expenses paid,<br>there will be no funds available for distribution to unsecured creditors | |

Estimated Number of Creditors

| ☐<br>1-49 | ☐<br>50-99 | ☐<br>100-199 | ☐<br>200-999 | ☐<br>1,000-5,000 | ■<br>5,001-10,000 | ☐<br>10,001-25,000 | ☐<br>25,001-50,000 | ☐<br>50,001-100,000 | ☐<br>OVER 100,000 |
|---|---|---|---|---|---|---|---|---|---|

Estimated Assets

| ☐<br>$0 to $50,000 | ☐<br>$50,001 to $100,000 | ☐<br>$100,001 to $500,000 | ■<br>$500,001 to $1 million | ☐<br>$1,000,001 to $10 million | ☐<br>$10,000,001 to $50 million | ☐<br>$50,000,001 to $100 million | ☐<br>$100,000,001 to $500 million | ☐<br>$500,000,001 to $1 billion | ☐<br>More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

Estimated Liabilities

| ☐<br>$0 to $50,000 | ☐<br>$50,001 to $100,000 | ☐<br>$100,001 to $500,000 | ☐<br>$500,001 to $1 million | ☐<br>$1,000,001 to $10 million | ■<br>$10,000,001 to $50 million | ☐<br>$50,000,001 to $100 million | ☐<br>$100,000,001 to $500 million | ☐<br>$500,000,001 to $1 billion | ☐<br>More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

B1 (Official Form 1)(4/10)                                                                                                     Page 2

| **Voluntary Petition** | Name of Debtor(s) |
|---|---|
| *(This page must be completed and filed in every case)* | Pasquinelli Homebuilding, LLC |

| All Prior Bankruptcy Cases Filed Within Last 8 Years (If more than two, attach additional sheet) | | |
|---|---|---|
| Location Where Filed   - None - | Case Number | Date Filed |
| Location Where Filed | Case Number | Date Filed |

| Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor - None - | Case Number | Date Filed |
| District | Relationship | Judge |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e g , forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11 ) | (To be completed if debtor is an individual whose debts are primarily consumer debts ) I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter I further certify that I delivered to the debtor the notice required by 11 U S C §342(b) |
| ☐ Exhibit A is attached and made a part of this petition | X _____ Signature of Attorney for Debtor(s)                  (Date) |

| **Exhibit C** |
|---|
| Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety? |
| ☐ Yes, and Exhibit C is attached and made a part of this petition |
| ■ No |

| **Exhibit D** |
|---|
| (To be completed by every individual debtor If a joint petition is filed, each spouse must complete and attach a separate Exhibit D ) |
| ☐ Exhibit D completed and signed by the debtor is attached and made a part of this petition |
| If this is a joint petition |
| ☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition |

| **Information Regarding the Debtor - Venue** |
|---|
| (Check any applicable box) |
| ■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District. |
| ☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District |
| ☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District |

| **Certification by a Debtor Who Resides as a Tenant of Residential Property** |
|---|
| (Check all applicable boxes) |
| ☐ Landlord has a judgment against the debtor for possession of debtor's residence (If box checked, complete the following ) |
| _____ (Name of landlord that obtained judgment) |
| _____ (Address of landlord) |
| ☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and |
| ☐ Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition |
| ☐ Debtor certifies that he/she has served the Landlord with this certification (11 U S C § 362(l)) |

B1 (Official Form 1)(4/10)                                                         Page 3

| **Voluntary Petition** | Name of Debtor(s) |
|---|---|
| *(This page must be completed and filed in every case)* | Pasquinelli Homebuilding, LLC |

**Signatures**

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|

I declare under penalty of perjury that the information provided in this petition is true and correct
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7 [If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U S C §342(b)

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition

X _____
   Signature of Debtor

X _____
   Signature of Joint Debtor

_____
   Telephone Number (If not represented by attorney)

_____
   Date

**Signature of Attorney**

X /s/ Brian L Shaw
   Signature of Attorney for Debtor(s)

   Brian L Shaw 6216834
   Printed Name of Attorney for Debtor(s)

   Shaw Gussis et al
   Firm Name
   321 N Clark Street
   Suite 800
   Chicago, IL 60654
   Address

   312-541-0151  Fax  312-980-3888
   Telephone Number
   April 7, 2011
   Date
*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor
The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition

X /s/ Bruno A Pasquinelli
   Signature of Authorized Individual
   Bruno A Pasquinelli
   Printed Name of Authorized Individual
   Trustee, of GP of Sole Member
   Title of Authorized Individual
   April 7, 2011
   Date

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition

(Check only one box )

☐ I request relief in accordance with chapter 15 of title 11 United States Code Certified copies of the documents required by 11 U S C §1515 are attached

☐ Pursuant to 11 U S C §1511, I request relief in accordance with the chapter of title 11 specified in this petition A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
   Signature of Foreign Representative

_____
   Printed Name of Foreign Representative

_____
   Date

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that (1) I am a bankruptcy petition preparer as defined in 11 U S C § 110, (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U S C §§ 110(b), 110(h), and 342(b), and, (3) if rules or guidelines have been promulgated pursuant to 11 U S C § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section Official Form 19 is attached.

_____
   Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
   Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer )(Required by 11 U S C § 110 )

_____
   Address

X _____

_____
   Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person, or partner whose Social Security number is provided above

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U S C §110, 18 U S C. §156*

# PASQUINELLI/PORTRAIT HOMES
## LIST OF ENTITIES

All entities set forth herein, unless otherwise noted, are Illinois limited liability companies authorized to do business in the respective states

TIER 1

      Pasquinelli Homebuilding, LLC

TIER 2

      Pasquinelli Financial, LLC
      Pasquinelli Management, LLC
      Pasquinelli Homes, LLC
      Portrait Homes-Indiana, LLC
      Portrait Homes-Ohio, LLC
      Portrait Homes-North Carolina, LLC
      Portrait Homes-South Carolina L L C.
      Portrait Homes-Georgia, LLC
      Portrait Homes-Florida, LLC
      Portrait Homes-Mid-Atlantic, LLC
      Portrait Homes-Texas, LLC
      Pasquinelli GP, LLC*

TIER 3

      PPH Title Company Dallas LP**
      PPH Title Company Houston LP**
      Pasquinelli Mortgage, LLC
      PHCC LLC
      Portrait Homes-Bordeaux LLC
      Portrait Homes-Brook Meadow LLC
      Portrait Homes-Scotland Run LLC
      Portrait Homes-Persimmon Grove LLC
      Portrait Homes-McAlister Woods LLC
      Portrait Homes-Forest Springs LLC
      Portrait Homes-Shearon Farms LLC
      Portrait Homes-Sawgrass East LLC
      Portrait Homes-Retreat at Forest Lakes LLC
      Portrait Homes-Wildwood Trace LLC
      Portrait Homes-RG II LLC
      Portrait Homes-McDermott LLC
      Portrait Homes-Oxford Park LLC
      Portrait Homes-Bedford Place LLC
      Portrait Homes-Villas at West Albany LLC
      Portrait Homes-Mallard Lakes LLC
      Pasquinelli-Theodores Ridge LLC
      Portrait Homes-Little Elm Trail Townhouses LLC
      Pasquinelli-Creekside LLC
      Portrait Homes-Oakbrooke LLC
      Portrait Homes-Prairie Lakes LLC
      Portrait Homes-Hickory at Shiloh LLC

# PASQUINELLI PORTRAIT HOMES
## LIST OF ENTITIES

Portrait Homes-The Oaks LLC
Portrait Homes-Parkview LLC
Portrait Homes-Robyn's Glen LLC
Portrait Homes-Tuscany LLC
Portrait Homes-Gabriel's Landing LLC
Portrait Homes-The Vintage Royale LLC
Portrait Homes-Commons at Grand Oaks LLC
Portrait Homes-Marsh View Commons LLC
Portrait Homes-Creekside LLC
Pasquinelli Portrait Homes-Home Town LP***
Pasquinelli-Countrybrook LLC
Portrait Homes-Bridford Downs LLC
Portrait Homes-Cole Creek LLC
Portrait Homes-Beresford Commons LLC
Portrait Homes-Northwoods Crossing LLC
Portrait Homes-Southall Commons LLC
Pasquinelli Portrait Homes-Durango Ridge LP***
Portrait Homes-LeChateau LLC
Pasquinelli-Blackberry Knoll LLC
Pasquinelli-Fieldstone LLC
Pasquinelli-Theodores Crossing LLC
Pasquinelli Portrait Homes-Crestwood at Ridgeview LP***
Portrait Homes-Silver Oaks Townhomes LLC
Pasquinelli Portrait Homes-Bandera LP***
Pasquinelli Portrait Homes-Castlebrook LP***
Pasquinelli Portrait Homes-Hidden Creek LP***
Pasquinelli Portrait Homes-Kingsbrook LP***
Pasquinelli Portrait Homes-Morningstar Meadow LP***
Pasquinelli Portrait Homes-Parker Estates LP***
Pasquinelli Portrait Homes-Village on the Green LP***
Portrait Homes-Coosaw Commons LLC
Portrait Homes-Hidden Oaks LLC
Portrait Homes-Kings Creek LLC
Portrait Homes-Westridge LLC
Portrait Homes-Shiloh Ridge LLC
Portrait Homes-Arlington Downs LLC
Portrait Homes-Bennington Place LLC
Portrait Homes-Brookhaven LLC
Portrait Homes-Covington at Providence LLC
Portrait Homes-Holly Ridge LLC
Portrait Homes-Hunter Downs LLC
Portrait Homes-Kimmerly Woods LLC
Portrait Homes-Lexington Commons LLC
Portrait Homes-Little Suwanee Point LLC
Portrait Homes-Old Stone Crossing LLC
Portrait Homes-River Crossing LLC
Portrait Homes-Rozzelles Landing LLC

2

# PASQUINELLI PORTRAIT HOMES
## LIST OF ENTITIES

Portrait Homes-Southbrook LLC
Portrait Homes-Sugarloaf Forest LLC
Portrait Homes-Tyler Woods LLC
Portrait Homes-University Heights LLC
Portrait Homes-Windsor Trace LLC
Portrait Homes-Mustang Park LLC
Pasquinelli-Fox Glen LLC
Pasquinelli-Hampton Park LLC
Pasquinelli-Heron Bay LLC
Pasquinelli-Hunters Ridge LLC
Pasquinelli-Huntley Meadows LLC
Pasquinelli-Park Avenue LLC
Pasquinelli-Prairie Ridge LLC
Pasquinelli-The Fields LLC
Pasquinelli-Walnut Creek LLC
Pasquinelli-Whispering Oaks LLC
Pasquinelli-Woodlands LLC
Portrait Homes-Coble Farm LLC
Portrait Homes-Hampton Commons LLC
Portrait Homes-Links at Eagle Creek LLC
Portrait Homes-Mapleton at Countryside LLC
Portrait Homes-Montibello LLC
Portrait Homes-Oak Bluff LLC
Portrait Homes-Parkside at Georgetown LLC
Portrait Homes-Pawleys Place LLC
Portrait Homes-Persimmon Hill LLC
Portrait Homes-Rachel's Keep LLC
Portrait Homes-Ridge Creek LLC
Portrait Homes-Rosewood LLC
Portrait Homes-Summer Wood LLC
Portrait Homes-Sutton Crossing LLC
Portrait Homes-Wynbrooke LLC
Portrait Homes-Stoney Creek LLC
Portrait Homes-Gahanna Grove LLC
Portrait Homes-The Townes at Berkshire LLC
Portrait Homes-McAlister Place LLC
Portrait Homes-Sweetwater LLC
Portrait Homes-Mill Creek Lakes LLC
Portrait Homes-Rose Run LLC
Pasquinelli-Huntercrest LLC
Portrait Homes-Hanover LLC
Tuscany Woods Homes LLC
Portrait Homes-Creekside Georgia LLC
Portrait Homes-Castle Hills Phase VI Area C LLC
Portrait Homes-Castle Hills Phase VI Area D LLC
Portrait Homes-Castle Hills Phase VI Areas A&B LLC
Pasquinelli Portrait Homes-Ridgeview LP***

# PASQUINELLI PORTRAIT HOMES
## LIST OF ENTITIES

Portrait Homes-Midtown Village LLC
Portrait Homes-The Pointe at Centennial Lakes LLC
Portrait Homes-The Townes of Avondale LLC
Portrait Homes-The Avenues LLC
Portrait Homes-Broad Street Villas
Portrait Homes-Treymont LLC
Pasquinelli Portrait Homes-Parker Estates at Arborview LP**
Pasquinelli Portrait Homes-Westbrook Phases I & II LP***
Portrait Homes-Ravenscroft Townhomes LLC
Portrait Homes-Grant Park LLC
Portrait Homes-Hanover on the Green LLC
Pasquinelli-Cedar Creek LLC
Portrait Homes-The Townes at Buckwalter LLC
Portrait Homes-Pickerington Pointe LLC
Portrait Homes-Meadows at Bainbridge LLC
Pasquinelli-Grande Reserve LLC
Carolina Crossing Homes LLC
Portrait Homes-Harmony Townes LLC
Portrait Homes-Lakeview Commons LLC
Portrait Homes-Bison Court LLC
Portrait Homes-Old Mill Village LLC
Portrait Homes-Oxford Commons LLC
Portrait Homes-Traditions at Lawyers Glen LLC
Portrait Homes-Northlake Crossing LLC
Portrait Homes-Braddock Park LLC
Pasquinelli-Mill Crossing LLC
Pasquinelli-Pioneer Place LLC
Pasquinelli-The Colonies LLC
Pasquinelli-The Commons LLC
Portrait Homes-LaVillita LLC
Pasquinelli-Tall Pines LLC
Portrait Homes-The Villas at Wellington LLC
Pasquinelli-Meadow Brook LLC
Portrait Homes-River Bend LLC
Portrait Homes-Hampton Knoll LLC
Portrait Homes-Townes at Catawba River LLC
Portrait Homes-Charlotte Pines LLC
Portrait Homes-The Arbors LLC
Portrait Homes-Townes at West Albany LLC
Portrait Homes-Wendover at Curry Place LLC
Portrait Homes-Calabash Lakes LLC
Portrait Homes-Willow Crest LLC
Portrait Homes-Wyndsor Court LLC
Portrait Homes-West Haven LLC
Portrait Homes-Promenade LLC
Portrait Homes-Deerfield Links LLC
Portrait Homes-Horsepen Creek LLC

# PASQUINELLI/PORTRAIT HOMES
## LIST OF ENTITIES

Portrait Homes-Woodburn Crossing LLC
Portrait Homes-Noble West LLC
Portrait Homes-Fenwick Commons LLC
Portrait Homes-Riverside Townhomes LLC
Portrait Homes-Cascades LLC
Portrait Homes-Weston Pointe LLC
Portrait Homes-Azalea Square LLC
Portriat Homes-Palmetto Pointe LLC
Portrait Homes-White Oak LLC
Portrait Homes-Creekside at Wyndham Place LLC
Portrait Homes-Villages at Back Creek LLC
Portrait Homes-Avondale LLC
Portrait Homes-Bedford Road Multi-Family LLC
Portrait Homes-Carrington Court LLC
Portrait Homes-City Side Townhomes LLC
Portrait Homes-Creekside LLC
Portrait Homes-Hanover LLC
Portrait Homes-Havenwood LLC
Portrait Homes-Heritage Hill LLC
Portrait Homes-Naaman Road Townhomes LLC
Portrait Homes-Parkside Trails LLC
Portriat Homes-Spanish Oak Townhomes LLC
Portrait Homes-The Enclave at Willow Crest LLC
Portrait Homes-The Fairways LP***

\*    Pasquinelli GP, LLC is a Delaware limited liability company
\*\*   Pasquinelli GP, LLC owns 1% of PPH Title Company Houston LP and PPH Title Company Dallas LP,
which are Texas limited partnerships

\*\*\* These entities are Texas limited partnerships and were never converted to LLCs  Their original general
partner was Pasquinelli GP, LLC, which was convereted to a Delaware limited liability company on 3 19 2004.

5

## GENERAL STATEMENT REGARDING THE DEBTOR'S PETITION

This Voluntary Petition for relief under chapter 7 of the Bankruptcy Code (the "Petition") was filed by Pasquinelli Homebuilding, LLC (the "Debtor") in the United States Bankruptcy Court of the Northern District of Illinois, Eastern Division. The Petition was signed by Mr. Bruno A Pasquinelli, acting in his capacity as trustee of the general partner of Pasquinelli Homebuilding LP, the sole member of the Debtor.

Attached as Exhibit A to the Petition is a list of legal entity names directly or indirectly owned by the Debtor under which the Debtor may have operated   In addition, each entity identified in Exhibit A as "Tier 2" entities (the "Tier 2 Entities"), upon the filing of the Petition, and as an operation of law provided for in the various operating agreements establishing each Tier 2 Entity, dissolved and collapsed into the Debtor

Furthermore, each legal entity identified in Exhibit A as "Tier 3" entities (the "Tier 3 Entities"), upon the dissolution of each Tier 2 Entity, and as an operation of law provided for in the various operating agreements establishing each Tier 3 Entity, dissolved and collapsed into the Debtor.

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

Harris

Plaintiff,

v.

Pasquinelli

Defendant.

Case Number 10 L 6909
Calendar Q

CC LAB

## ORDER

**IT IS HEREBY ORDERED:**

This cause is continued for status on **January 13, 2012** at **10:15 am** in

Courtroom 2007 in the Richard J. Daley Center without further notice. Failure to show

will result in the case being Dismissed for Want of Prosecution or a Default Judgment

being entered.

Entered:

Court Order

Judge Bill Taylor # 1648

JUDGE BILL TAYLOR

DEC 1 4 2011

CIRCUIT COURT-1648

Order to Special Stay Calendar            (Rev. 3/18/03) CCL 0527

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT-LAW DIVISION

Harris N.A., et al.

v.            No. 10 L 6909

Pasquinelli Homebuilding LLC, et al.

## ORDER TO SPECIAL STAY CALENDAR

    The Court determining that this cause should be placed on an appropriate Law Division Stay Calendar, due notice given, IT IS HEREBY ORDERED:

This matter is placed on the following Law Division Stay Calendar:

    ❑ **Appellate Calendar**        ☑ **Bankruptcy Calendar**
    4854                                  4853

    ❑ **Insurance /Stay Calendar**    ❑ **Military Calendar**
    4852                                  4851

    ❑ **Other:** _____
    (     )

    All motions to remove a case from a Stay Calendar must be brought in Courtroom 2005 irrespective of the judge who originally transferred the case to the Stay Calendar. The Presiding Judge or a judge sitting in his/her stead in Courtroom 2005 upon removing a case from a Stay Calendar must then have the case renumbered pursuant to Circuit Court General Order 6.2(c).

```
ENTERED
JUDGE BILL TAYLOR-1648
DEC 21 2011
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK
```
Judge's Stamp

Atty. No.: 90170

Name: Lombardo / Chapman and Cutler LLP

Atty. for: Plaintiffs                    ENTERED:

Address: 111 W. Monroe

City/State/Zip: Chicago, IL 60603          _____    16/5

Telephone: 312-845-3000               Judge              Judge's No.

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Order to Special Stay Calendar        (Rev. 3/18/03) CCL 0527

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT-LAW DIVISION**

*(handwritten)* Harris Bank      )
      )
      )
    v.       )   No. *(handwritten)* 10 L 6909
      )
*(handwritten)* Pasquinelli Homebuilding    )
      )
      )

**ORDER TO SPECIAL STAY CALENDAR**

The Court determining that this cause should remain on the appropriate Law Division Stay Calendar, due notice given, IT IS HEREBY ORDERED:

This matter shall remain on the following Law Division Stay Calendar:

[ ] Appellate Calendar      [X] Bankruptcy Calendar
4854                                    4853

[ ] Insurance /Stay Calendar      [ ] Military Calendar
4852                                    4851

[ ] Other: _____
(     )

*(stamp)*
**ENTERED**
JUDGE MARCIA MARAS, 1781
NOV 13 2013
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

All motions to remove a case from a Stay Calendar must be brought in Courtroom 2005 irrespective of the judge who originally transferred the case to the Stay Calendar. The Presiding Judge or a judge sitting in his/her stead in Courtroom 2005 upon removing a case from a Stay Calendar, must then have the case renumbered pursuant to Circuit Court General Order 6.2(c).

Atty. No.: *(handwritten)* 90170
Name: *(handwritten)* Clugan and Cutler LLP / JPC
Atty. for: *(handwritten)* Harris
Address: *(handwritten)* 111 W. Monroe
City/State/Zip: *(handwritten)* Chicago, IL 60603
Telephone: *(handwritten)* 312 845-3000

ENTERED: *(handwritten)* 11-13-13

*(handwritten signature)* Marcia M____

_____     _____
Judge                               Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

```
CIRCUIT COURT OF COOK COUNTY
LAW DIV., RM 2005 DALEY CTR.
CHICAGO, IL. 60602
```

```
ID: LD2010L006909    20151008000041
AT: CLAUSEN MILLER GORMAN ETC
TO: LAWCLERKS@CLAUSEN.COM
```

STAY CALENDAR STATUS CALL

N O T I C E

CASE  10-L-006909

HARRIS                    V.  PASQUINELLI HOMEBUILDING

THIS CASE CURRENTLY ON THE BANKRUPTCY    CALENDAR IS SCHEDULED
FOR STATUS BEFORE PRESIDING JUDGE JAMES P. FLANNERY, OR ANY JUDGE
SITTING IN HIS STEAD ON 11/02/2015 AT 02:00 P.M., IN ROOM 2006 OF
THE RICHARD J. DALEY CENTER.

ALL ATTORNEYS OF RECORD ARE REQUIRED TO APPEAR AND SHALL FULLY
ADVISE THE COURT REGARDING THE STATUS OF THE CASE. IF COUNSEL FOR
PLAINTIFF FAILS TO APPEAR OR CANNOT REPORT ON THE STATUS OF THE
CASE, THE CASE WILL BE DISMISSED FOR WANT OF PROSECUTION.

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

Harris )
)
)
v. )
)
Pasquinelli Homebuilders )
)
)

No. 10L6909 (Q)

# 74

## ORDER

This cause coming to be heard pursuant to;

☐ The Court's determination that this matter should be removed from the Bankruptcy calendar.

   **IT IS HEREBY ORDERED** that the Clerk of the Circuit Court is directed to administratively renumber this cause pursuant to Circuit Court General Order 6.2(c), no fee being required.                                    (4099 / 4800)

_____

No.

This cause having been renumbered pursuant to the above order ;                    (9800)

☐    **IT IS HEREBY ORDERED** this case is released into the Black Line    (8350)
      Pool of Cases for trial assignment.

☐    **IT IS HEREBY ORDERED** this case is set for trial on                (4305)
      _____ at 10:00 a.m. in Room 2005.

☐    **IT IS HEREBY ORDERED** this case is set for status on               (4315)
      _____ at 10:00 a.m. in Room 2005.

☐    **IT IS HEREBY ORDERED** this case is assigned / returned to    (8213 /        )
      Judge _____ ,
      Calendar_____, pursuant to a random or prior
      random computer assignment.

☐    **IT IS HEREBY ORDERED** this case is dismissed for want of prosecution. (8005)

      Other_____
      _____

Name:
Atty. No:
Atty. For:
Address:
City:
Telephone:

ENTERED
JUDGE MARCIA MARAS - 1781
NOV 02 2015
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

ENTER:

*Marcia Maras*

JUDGE _____

**CLERK OF THE CIRCUIT COURT OF COOK COUNTY**

CIRCUIT COURT OF COOK COUNTY
LAW DIV., RM. 801, DALEY CTR.
CHICAGO, IL. 60602

ID: LD2010L006909    20151104000043
AT: SPERLING & SLATER PC
TO: SPERLINGETF@SPERLING-LAW.COM

```
       * * * * *  N O T I C E  * * * * *

              CASE  10-L-006909

  HARRIS              V.       PASQUINELLI HOMEBUILDING


  YOU ARE NOTIFIED THAT YOUR CASE WAS DISMISSED FOR WANT
  OF PROSECUTION AGAINST PASQINELLI HOMEBU
  ON 11/02/2015 BY JUDGE MARAS, MARCIA
```

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| HARRIS N.A., and<br>BMO CAPITAL MARKETS FINANCING, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 10 L 6909 |
| | ) | |
| PASQUINELLI HOMEBUILDING LLC, BRUNO A.<br>PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI<br>MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC,<br>PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI<br>HOMEBUILDING TRUST, PASQUINELLI FAMILY<br>FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST,<br>ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989<br>FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H.<br>PASQUINELLI, CHRISTINE PASQUINELLI, BETSY<br>PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI,<br>JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA<br>PASQUINELLI, ANN MARIE PASQUINELLI, JOAN<br>PASQUINELLI, SALLY PASQUINELLI, as Trustee and<br>MARYANN PASQUINELLI, as Trustee | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on ___11 - 18___, 2015, at _10:30_ a.m. or as soon thereafter as counsel can be heard, we shall appear before the Honorable Judge Flannery in Room 2005 in the Richard J. Daley Center, Chicago, Illinois, and then and there present Plaintiffs' Motion to Vacate Dismissal and Replace Case on Bankruptcy Stay Docket, a copy of which is included herewith and thereby served upon you.

BMO HARRIS BANK N.A. and
BMO CAPITAL MARKETS FINANCING, INC.

By _____

One of Their Attorneys

Joseph P. Lombardo
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
(312) 845-3000
(312) 701-2361

3883634 01 01 doc
1909969

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

HARRIS N.A., and )
BMO CAPITAL MARKETS FINANCING, INC., )
)
        Plaintiffs, )
)
)
        v. ) Case No. 10 L 8100
)
PASQUINELLI HOMEBUILDING LLC, BRUNO A. )
PASQUINELLI, ANTHONY R. PASQUINELLI, PASQUINELLI )
MANAGEMENT, LLC, PASQUINELLI FINANCIAL LLC, )
PASQUINELLI HOMEBUILDING, L.P., PASQUINELLI )
HOMEBUILDING TRUST, PASQUINELLI FAMILY )
FOUNDATION, B&A HOMES, LLC, ARP 2003 TRUST, )
ARP 1989 FAMILY TRUST, BAP 2003 TRUST, BAP 1989 )
FAMILY TRUST, ANTHONY J. PASQUINELLI, BRUNO H. )
PASQUINELLI, CHRISTINE PASQUINELLI, BETSY )
PASQUINELLI, JOHN PASQUINELLI, DAVID PASQUINELLI, )
JOSEPH PASQUINELLI, ELLEN PASQUINELLI, MARIA )
PASQUINELLI, ANN MARIE PASQUINELLI, JOAN )
PASQUINELLI, SALLY PASQUINELLI, as Trustee and )
MARYANN PASQUINELLI, as Trustee )
)
        Defendants. )

### MOTION TO VACATE DISMISSAL AND REPLACE CASE ON BANKRUPTCY STAY DOCKET

NOW COME, Plaintiffs, BMO Harris Bank N.A., successor to Harris N.A., and BMO

Capital Markets Financing, Inc. ("*BMO*"), by and through its attorneys, Chapman and Cutler

LLP, and for its Motion to Vacate the November 2, 2015 Order dismissing this case for want of

prosecution and removing the case from the bankruptcy stay docket, respectfully state as follows:

    1.    This matter was placed on the bankruptcy stay docket on December 21, 2011

when Pasquinelli Homebuilding LCC and its related entities filed their Chapter 11 bankruptcy

case in the Northern District of Illinois Bankruptcy Court, case 11 B 14829.

    2.    The bankruptcy case is still pending and a related adversary case has been filed by

3883634 01 01 doc
1909969

the bankruptcy trustee against many of the above-named defendants: *Moglia v. Bruno A. Pasquinelli, et al.*, case no. 13-05024, currently pending the U.S. District Court for the Northern District of Illinois.

3. The present matter was set for status on November 2, 2015.

4. Due to a calendaring error, BMO was not present at the November 2 status hearing. However, this case should remain pending and on the bankruptcy stay calendar while the bankruptcy and adversary cases are pending.

5. This motion has been filed within thirty (30) days of the entry of the dismissal and the fee has been paid.

WHEREFORE, Plaintiffs pray that this Court enter an order vacating the November 2, 2015 Order dismissing this case for want of prosecution and placing this case back on the bankruptcy stay calendar, and for such other relief as this Court deems just and proper.

Respectfully submitted,

BMO HARRIS BANK N.A. and
    BMO CAPITAL MARKETS FINANCING, INC.

By _____
    One of Their Attorneys

Joseph P. Lombardo
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
(312) 845-3000
(312) 701-2361 (Fax)

- 2 -

### CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that he caused a copy of the foregoing Notice of Motion and Motion To Vacate, to be served upon:

> Bruce S. Sperling
> Mitchell H. Macknin
> SPERLING & SLATER, P.C.
> 55 W. Monroe, Suite 3200
> Chicago, IL 60603
>
> Michael R. Grimm, Sr.
> Harvey R. Herman
> CLAUSEN MILLER, P.C.
> 10 S. LaSalle St.
> Chicago, IL 60603

by placing a copy of the same in a properly addressed envelope, with sufficient postage affixed, and depositing the same in a U.S. Mailbox located at 111 West Monroe Street, Chicago, IL 60603 before 5:00 p.m. on November 9, 2015.

Joseph P. Lombardo

3883634 01 01 doc
1909969

Order to Special Stay Calendar                                    (Rev. 3/18/03)  CCL 0527

*M #4*

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT-LAW DIVISION

*Harris N.A. et al*

v.

*Pasquinelli Homebuilding LLC, et al.*

No. *10 L 0909*

## ORDER TO SPECIAL STAY CALENDAR

The Court determining that this cause should be placed on an appropriate Law Division Stay Calendar, due notice given, IT IS HEREBY ORDERED:

This matter is placed on the following Law Division Stay Calendar:

☐ **Appellate Calendar**
4854

☒ **Bankruptcy Calendar**
4853

☐ **Insurance /Stay Calendar**
4852

☐ **Military Calendar**
4851

☒ Other: *Motion to vacate the Nov. 2 2015 DWP,*
*Order is GRANTED.*

All motions to remove a case from a Stay Calendar must be brought in Courtroom 2005 irrespective of the judge who originally transferred the case to the Stay Calendar. The Presiding Judge or a judge sitting in his/her stead in Courtroom 2005 upon removing a case from a Stay Calendar must then have the case renumbered pursuant to Circuit Court General Order 6.2(c).

Atty. No.: *90190*

Name: *Chapman and Cutler LLP / Lombardo*

Atty. for: *Plaintiffs*

Address: *111 W. Monroe*

City/State/Zip: *Chgo, IL 60603*

Telephone: *312-845-3000*

E N T E R E D
JUDGE MARCIA MARAS - 1781
NOV 18 2015
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

**Judge's Stamp**

ENTERED: *11-18-15*

*Marcia*

Judge                                    Judge's No.

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

```
CIRCUIT COURT OF COOK COUNTY
LAW DIV., RM 2003 DALEY CTR.
CHICAGO, IL. 60602


ID: LD2010L006909    20171010000092
AT: SPERLING & SLATER PC
TO: CLERK@SPERLING-LAW.COM

          STAY CALENDAR STATUS CALL

               N O T I C E

          CASE  10-L-006909

     HARRIS              V.  PASQUINELLI HOMEBUILDING


THIS CASE CURRENTLY ON THE BANKRUPTCY     CALENDAR IS SCHEDULED
FOR STATUS BEFORE PRESIDING JUDGE JAMES P. FLANNERY, OR ANY JUDGE
SITTING IN HIS STEAD ON 11/07/2017 AT 01:30 P.M., IN ROOM 2006 OF
THE RICHARD J. DALEY CENTER.

ALL ATTORNEYS OF RECORD ARE REQUIRED TO APPEAR AND SHALL FULLY
ADVISE THE COURT REGARDING THE STATUS OF THE CASE. IF COUNSEL FOR
PLAINTIFF FAILS TO APPEAR OR CANNOT REPORT ON THE STATUS OF THE
CASE, THE CASE WILL BE DISMISSED FOR WANT OF PROSECUTION.
```

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

PLAINTIFF: HARRIS    ====>
                     ====>
                     ====>
          V.         ====>    CASE NUMBER: 10-L-006909
                     ====>
                     ====>
DEFENDANT: PASQUINELLI HOMEBUILDING    ====>

### ORDER TO SPECIAL STAY CALENDAR

The Court determining that this cause should be placed on an appropriate Law Division Stay Calendar, due notice given, IT IS HEREBY ORDERED:

This matter is placed on the following Law Division Stay Calendar:

!_! Appellate Calender          !X! Bankruptcy Calendar
4854                            4853

!_! Insurance/Stay Calendar     !_! Military Calendar
4852                            4851

!_! Other: _____
(    )

All motions to remove a case from a Stay Calendar must be brought in Courtroom 2005 irrespective of the judge who originally transferred the case to the Stay Calendar.  The Presiding Judge or a judge sitting in his/her stead in Courtroom 2005 upon removing a case from a Stay Calendar must then have the case renumberd pursuant to Circuit Court General Order 6.2(c).



Judge's Stamp

Name      : _Spenser Firel (Sperling +Slater)_

Atty. No  : _22288_

Atty. For : _certain defendants_

Address   : _55 W. Monroe St., #3200_

City/St   : _Chicago, IL 60603_

Telephone : _(312) 641-3200_

ENTER: _____

_11-7-17_

JUDGE: _Marcia_

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

```
CIRCUIT COURT OF COOK COUNTY
LAW DIV., RM 2005 DALEY CTR
CHICAGO, IL 60602
```

```
ID: LD2010L006909    20190909000102
AT: CLAUSEN MILLER GORMAN ETC
TO: LAWCLERKS@CLAUSEN.COM
```

                    STAY CALENDAR STATUS CALL

                       N O T I C E

                  CASE  10-L-006909


        HARRIS              V.  PASQUINELLI HOMEBUILDING


THIS CASE CURRENTLY ON THE BANKRUPTCY    CALENDAR IS SCHEDULED
FOR STATUS BEFORE PRESIDING JUDGE JAMES P. FLANNERY, OR ANY JUDGE
SITTING IN HIS STEAD ON 10/08/2019 AT 02:30 P.M., IN ROOM 2006 OF
THE RICHARD J. DALEY CENTER.


ALL ATTORNEYS OF RECORD ARE REQUIRED TO APPEAR AND SHALL FULLY
ADVISE THE COURT REGARDING THE STATUS OF THE CASE. IF COUNSEL FOR
PLAINTIFF FAILS TO APPEAR OR CANNOT REPORT ON THE STATUS OF THE
CASE, THE CASE WILL BE DISMISSED FOR WANT OF PROSECUTION.


** PLEASE DISREGARD THE PREVIOUS EMAIL REGARDING THE STAY
CALENDAR STATUS CALL.  THE DATE AND TIME MAY HAVE BEEN GENERATED
IN ERROR.  **

COUNTY DEPARTMENT, LAW DIVISION

PLAINTIFF: HARRIS                    ====>
                                     ====>
                                     ====>
                    V.               ====>        CASE NUMBER: 10-L-006909
                                     ====>
                                     ====>
DEFENDANT: PASQUINELLI HOMEBUILDING   ====>

### ORDER TO SPECIAL STAY CALENDAR

The Court determining that this cause should be placed on an appropriate
Law Division Stay Calendar, due notice given, IT IS HEREBY ORDERED:

This matter is placed on the following Law Division Stay Calendar:

   !_! Appellate Calender      !√! Bankruptcy Calendar
   4854                            4853

   !_! Insurance/Stay Calendar    !_! Military Calendar
   4852                            4851

   !_! Criminal Calendar       !_! Other: _____
   4850

All motions to remove a case from a Stay Calendar must be brought in
Courtroom 2005 irrespective of the judge who originally transferred the case to
the Stay Calendar. The Presiding Judge or a judge sitting in his/her stead in
Courtroom 2005 upon removing a case from a Stay Calendar must then have the
case renumberd pursuant to Circuit Court General Order 6.2(c).

```
!                                    !
!          E N T E R E D             !
!      Judge Marcia Maras-1781       !
!                                    !
!          OCT 08 2019               !
!                                    !
!          DOROTHY BROWN             !
!     CLERK OF THE CIRCUIT COURT     !
!        OF COOK COUNTY, IL          !
!          DEPUTY CLERK              !
!                                    !
```
**Judge's Stamp**

Name      : Chapman and Cutler LLP          ENTER: _____

Atty. No  : Plaintiff

Atty. For : 90170                                  _Marcia Maras_ (signature)

Address   : 111 W. Monroe St.

City/St   : Chicago, IL 60603                JUDGE: _____

Telephone : 312-845-3000

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS